## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 0-20-CV-61872-AHS

ALAN DERSHOWITZ,                              )
                                             )
                         Plaintiff,          )
                                             )
            vs.                              )
                                             )
CABLE NEWS NETWORK, INC.                     )
                                             )
                         Defendant.          )
                                             )
                                             )
_____     )

### DEFENDANT CABLE NEWS NETWORK INC.'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Katherine M. Bolger
Amanda B. Levine
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:  (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com

-and-

George S. LeMieux
(Florida Bar No. 16403)
Eric C. Edison
(Florida Bar No. 010379)
GUNSTER, YOAKLEY & STEWART, P.A.
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com

*Attorneys for Defendant Cable News Network, Inc.*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Cable News Network, Inc. ("CNN") moves to dismiss with prejudice Plaintiff Alan Dershowitz's ("Dershowitz") Complaint (Dkt. 1) for failure to state a claim.  In support thereof, CNN states as follows:

## INTRODUCTION

Beginning on January 27, 2020, CNN aired live the trial in the United States Senate of President Donald Trump on two articles of impeachment.  Plaintiff Dershowitz represented the President in the trial.  In a moment shown live on CNN, Dershowitz answered a question from Senator Ted Cruz by advocating that quid pro quos could not form the basis for impeachment of a president when those quid pro quos were in aide of the president's reelection campaign.  When the day's proceedings were over and throughout the next days, CNN re-aired a clip of Dershowitz's argument, and CNN commentators offered their opinions—shared by many other news outlets and commentators—that Dershowitz's understanding of permissible quid quo pros would far expand the modern concept of presidential power.  The day after making his argument, Dershowitz himself appeared on CNN and claimed that CNN and other outlets had distorted his position and that his comments about quid pro quos, in fact, related only to legal behavior by the President.  Dershowitz's disagreement with CNN about the meaning of the words he spoke on the Senate floor is just the type of political debate involving matters of profound national importance that is central to the American values of self-governance; it is not grounds for a defamation lawsuit.  As  Dershowitz himself once wrote: "[f]or me, the freedom to speak, to write, to dissent, to seek a redress of grievances, to assemble, to doubt, to challenge, has always been central not only to democratic governance but to life itself.  It is both a means and an end."  Alan Dershowitz, TAKING THE STAND: MY LIFE IN THE LAW 105 (Crown, 1st ed. 2013) ("*Taking the Stand*").

Based on the four corners of the Complaint, this Court should dismiss Dershowitz's

Complaint for three reasons.  *First,* CNN's reporting is absolutely privileged as a fair report of a government proceeding because CNN aired the actual footage of Dershowitz's argument in Congress.  Nothing was changed or "doctored"—the words spoken in the clip aired were spoken just so on the floor of the Senate.  In hindsight, like so many lawyers before him, Dershowitz may wish he made his argument more clearly, but CNN cannot be liable for reporting—verbatim— what Dershowitz actually said to Congress.  *Second*, to the extent Dershowitz complains about statements made by CNN commentators, those statements are non-actionable opinions based on Dershowitz's public testimony.  *Finally*, Dershowitz has not and cannot plead that the individuals responsible for making the challenged statements acted with actual malice.  The fact that CNN reporters, along with other Congressmen and news outlets, understood Dershowitz's legal argument differently than he intended does not establish that CNN knew its reporting was false.  The Complaint should be dismissed with prejudice.

## BACKGROUND

### A.    The Parties

Dershowitz is a lawyer who pleads that he is one of the "most revered and celebrated legal minds of the past century."  *See* Compl.  ¶ 14.  CNN owns and operates numerous news platforms and services, including the television network known as CNN and the website www.cnn.com.

### B.    Dershowitz Serves as Counsel for the President

On December 18, 2019, the United States House of Representatives impeached President Trump based on findings that he solicited the interference of Ukraine in the 2020 presidential election and that he obstructed Congress's investigation of the interference.  Dershowitz represented President Trump at the Senate trial, which was aired live by CNN, one of the few news organizations to air the proceedings in their entirety.  During the trial, Dershowitz was asked by Senator Cruz "[a]s a matter of law, does it matter if there was a quid pro quo?  Is it true that quid

pro quos are often used in foreign policy?"  *See* Ex. 1 (Congressional Record) at S650.[1]

To this vague question, Dershowitz responded with an equally vague, five-minute-long answer, which was aired on CNN, *see* Riner Decl. Ex. A, and recorded in the Congressional Record, the official record of the proceedings of the United States Congress.  Dershowitz began:

> Yesterday, I had the privilege of attending the rolling-out of a peace plan by the President of the United States regarding the Israel-Palestine conflict, and I offered you a hypothetical the other day:  What if a Democratic President were to be elected and Congress were to authorize much money to either Israel or the Palestinians and the Democratic President were to say to Israel "No; I am going to withhold this money unless you stop all settlement growth" or to the Palestinians "I will withhold the money Congress authorized to you unless you stop paying terrorists, and the President said "Quid pro quo.  If you don't do it, you don't get the money.  If you do it, you get the money"?  There is no one in this Chamber who would regard that as in any way unlawful.  The only thing that would make a quid pro quo unlawful is if the quo were some way illegal.

> Now, we talked about motive.  There are three possible motives that a political figure can have:  One, a motive in the public interest, and the Israel argument would be in the public interest; the second is in his own political interest; and the third, which hasn't been mentioned, would be in his own financial interest, his own pure financial interest, just putting money in the bank.  I want to focus on the second one for just one moment.

> Every public official whom I know believes that his election is in the public interest. Mostly, you are right.  Your election is in the public interest.  If a President does something which he believes will help him get elected—in the public interest—that cannot be the kind of quid pro quo that results in impeachment.

Ex. 1 at S650.  Dershowitz then gave a hypothetical example involving President Lincoln before re-asserting his sweeping claim that impeachable offenses require purely corrupt motives:

> Now, we may argue that it is not in the national interest for a particular President to get reelected or for a particular Senator or Member of Congress—and maybe we are right; it is not in the national interest for everybody who is running to be elected—but for it to be impeachable, you would have to discern that he or she made a decision solely on the basis of, as the House managers put it, corrupt

---

[1] This Court can and should take judicial notice of the Congressional Record, *see Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal. 2017) ("[C]ourts regularly take judicial notice of congressional records*); South Carolina v. United States*, No. 1:16-cv-00391-JMC, 2017 WL 976298, at *5 (D.S.C. Mar. 14, 2017) ("Six references are to portions of the congressional record and are thus appropriately subject to judicial notice.").  The paragraph breaks above are identical to those in the Congressional Record.  *See* Ex. 1.

> motives, and it cannot be a corrupt motive if you have a mixed motive that partially involves the national interest, partially involves electoral, and does not involve personal pecuniary interest.

*Id.* at S651.  Immediately following Dershowitz's remarks, Congressman Adam Schiff, who was serving as a House Manager, expressed outrage at Dershowitz's "argument that all quid pro quos are the same and all are perfectly copacetic."  *Id.*  He then asked the Senators whether they were "ready to say that the President can sacrifice the interest of the people of [foreign countries], or . . . the people of our country because *all* quid pro quos are fine?"  *Id.* (emphasis added).  He concluded, "all quid pro quos are not the same.  Some are legitimate and some are corrupt, and you don't need to be a mind reader to figure out which is which."  *Id.*

### C.    News Organizations—Including CNN—Report on Dershowitz's Arguments

After airing the trial itself, CNN commentators discussed the arguments made by Dershowitz and other members of the President's legal team.  Dershowitz's Complaint cites to three examples of CNN's coverage.  On the evening of January 29, 2020, on the show "Erin Burnett Out Front," a twenty-seven second clip from Dershowitz's answer was played (beginning with the statement, "Every public official that I know . . .") (the "Clip").  Joe Lockhart described Dershowitz's argument as "un-American," compared his reasoning to that of authoritarian leaders, and expressed his belief that merely doing something in one's electoral interest does not give a politician permission to "commit crimes or do things that are unethical"  (the "Lockhart Statement").  Riner Decl. Ex. B(i) at 6; B(ii) at 09:16.

On January 30, 2020, CNN's morning show, "New Day," played the Clip and anchor John Berman stated that Dershowitz's argument "seem[ed] to be redefining the powers of the President" because "if a President is running for re-election because he thinks getting elected will help America, he can do anything" (the "Berman Statement").  Riner Decl. Ex. C(i) at 3; C(ii) at 05:09.

Similarly, on January 29, 2020, Paul Begala wrote an opinion column on CNN.com titled

"Presenting the ludicrous 'Dershowitz Doctrine.'"  *See* Riner Decl. Ex. D.  In the article, Begala quoted Dershowitz's statements in the Clip and opined that his position "would make presidents immune from every criminal act, so long as they could plausibly claim they did it to boost their re-election effort" (the "Begala Statement") (collectively, the Lockhart Statement, Berman Statement, and Begala Statement are the "Statements").[2]

CNN's coverage of Dershowitz's argument was not unique.   Many other news organizations reported on his argument in exactly the same way—interpreting it to mean that any action undertaken in the president's electoral interests, legal or illegal, are not impeachable.  MSNBC reported, "[a]s Dershowitz sees it, a president can't be impeached if he or she is acting in the public interest," and under Dershowitz's "crazypants bonkers" theory, a president would seemingly be free to "ignore Congress and federal law, endanger a foreign ally, and undermine U.S. national security interests" without fear of impeachment.  *See* Ex. 2 at 2.[3]  NPR published an article titled "Trump Legal Team Says Quid Pro Quo in Pursuit of Reelection Isn't Impeachable," which quoted the same portion of Dershowitz's argument.  *See* Ex. 3.  NPR reporters also quoted the language in the Clip in a podcast, explaining that Dershowitz also said that "a quid pro quo can't be illegal unless the quo is illegal," but there is "no illegal quo in his mind."  *Id.*[4]

### D.      Dershowitz Attempts to Clarify His Argument

Following the widespread criticism of his argument, Dershowitz did what a public figure

---

[2] On this motion to dismiss, the Court may consider the transcript and video clips of the Statements because they are incorporated into the complaint by reference.  *See Davis v. McKenzie*, No. 16-62499-CIV, 2017 WL 8809359, at *5 (S.D. Fla. Nov. 3, 2017), *report and recommendation* adopted, No. 16-62499-CIV, 2018 WL 1813897 (S.D. Fla. Jan. 19, 2018); Compl. ¶ 13.

[3] These articles are referenced not to establish the truth of the statements contained therein, but to establish the fact that they were published and contain certain statements.  On a motion to dismiss, "courts may take judicial notice of … [] newspaper articles . . . for the limited purpose of determining which statements the documents contain."  *U.S. ex rel Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

[4] Audio available at: https://www.npr.org/2020/01/29/800817125/trump-legal-team-says-quid-pro-quo-in-pursuit-of-reelection-isnt-impeachable (NPR, Jan. 29, 2020 8:53 p.m.).

with access to the media can do—he immediately went to the press to clarify his position.  On January 30, 2020, Dershowitz wrote an opinion column on TheHill.com titled, "I never said president could do anything to get reelected."  *See* Ex. 4 at 157.  In the column, Dershowitz attempted to clarify his advocacy on behalf of the President, claiming his arguments were misrepresented by "media pundits and partisan politicians" (he did not name CNN).

Later that day, Dershowitz appeared on CNN itself, sitting for a nearly fifteen-minute-long interview on Wolf Blitzer's show "The Situation Room."  During the interview, Dershowitz insisted on numerous occasions that CNN "distorted" his argument, claiming that he "do[es] not believe and never said that a President can do anything if he believes his election is in the public interest to get reelected."  *See* Riner Decl. Ex. E.  He further explained that when making the statements in the Clip he was "talking about entirely lawful conduct."  *Id.*

On January 31, 2020, Dershowitz again appeared on CNN—interviewed by Chris Cuomo. Dershowitz reiterated, "I do not believe a president can do anything he wants," claimed that he made this clear "all through [his] Senate proceedings" and that CNN undertook a "deliberate effort to try to destroy [his] credibility by quoting out of context something that was intentionally designed to mislead [CNN's] viewers."  *See* Riner Decl. Ex. F.  After being interviewed by Cuomo, Dershowitz stated that it was a "fair, tough, and good interview" that he "really enjoyed."  *Id.*

Taking it even further, in February 2020, Dershowitz published a book titled *Defending the Constitution*.[5]  *See* Ex. 4.  The book included a verbatim transcript of his opening statement and his responses to the Senators' questions.  *Id.* at 31-155.  The portions of the transcripts relevant to this dispute contain the same paragraph breaks as those in the Congressional Record—*i.e.* the

---

[5] "The Court may consider a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (*citing Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).  Here, Dershowitz cannot dispute the authenticity of his own book or the article attached as Exhibit 5 and this court can, therefore, consider them on this motion.

four sentences of the argument quoted in the Clip are contained in one discrete paragraph. *Id.* at 106-09.  The book also includes a copy of his *Hill* opinion column and a final epilogue titled "The Dershowitz Doctrine: The Danger of Demonization by Distortion." *Id.* at 157, 165.  In the epilogue, Dershowitz claims that Congressmen and the media distorted his position and then asserts that "if [a president's] entirely lawful act had 'mixed motives,' including in his re-election, that would not turn a lawful act into a crime or impeachable offense." *Id.* at 167 (emphasis added).[6]

### E.    Dershowitz Sues CNN

Evidently dissatisfied with the impact of these press efforts, on September 15, 2020, Dershowitz sued CNN for defamation and issued an article titled "Why I'm Suing CNN," containing a patently false claim that CNN "doctor[ed]" the video of his argument. *See* Ex. 5.[7] The Complaint alleges that Dershowitz "said that the constitution does not support an impeachment of a president simply because a lawful action taken by a president might have been based . . . on a desire to be reelected and if the president believes his reelection is in the public interest."  Compl. ¶ 6.  It further alleges that CNN defamed Dershowitz by airing the Clip and creating the "false narrative that Professor Dershowitz believes and argued that as long as the President believes his reelection is in the public interest, that he could do anything at all – including illegal acts – and be immune from impeachment." *Id.* ¶ 8. The Complaint also cites the Statements as "a few egregious examples" of the purported mischaracterization of his argument. *Id.* ¶ 12.  In so doing, it is unclear whether Dershowitz is using these individuals purely as *examples* of the criticism that he faced or if he believes that the Statements were independently defamatory (this

---

[6] This is not a complete recounting of Dershowitz's press appearances, which went far beyond these three instances.

[7] Dershowitz's claim that CNN "doctor[ed]" the recording of his argument is patently false.  Merriam Webster Dictionary defines the verb "doctor" as "to adapt or modify for a desired end by alteration or special treatment" or "to alter deceptively." *See* https://www.merriam-webster.com/dictionary/doctor.  CNN did not "alter" the recording of Dershowitz's argument in any way.  It simply played a portion of the argument that Dershowitz made verbatim, which the Congressional Record indicates is a single, complete thought.

Motion assumes the latter).  Finally, the Complaint alleges that Dershowitz has suffered "damage to his reputation" because the public now believes that "Professor Dershowitz had lost his mind." Compl. ¶ 19.  As a result, Dershowitz, who recently lamented that "dialogue and debate about controversial and interesting ideas are becoming much more difficult in our divisive age," Ex. 4 at 164, nonetheless seeks to make it still more difficult by claiming that proper debate caused him to be damaged to the outrageous tune of $50 million in compensatory damages and $250 million in punitive damages.

## **ARGUMENT**

This lawsuit is about statements made by Dershowitz on the floor of the Senate while arguing that an impeached President should not be convicted and removed from office.  Without question, it involves core political speech.  Yet in this lawsuit, Dershowitz seeks to recover from CNN for choosing to air a Clip of this argument and comment on it, not because the Clip itself is altered, but because he thinks CNN should have used a slightly longer Clip that he believes makes his arguments look better.  But CNN had no such obligation or duty to air a longer clip.  CNN accurately aired a portion of Dershowitz's argument and fairly commented on it.  The First Amendment precludes recovery.  Dershowitz has already had ample opportunity to air his grievances with CNN in the court of public opinion—and that is where this dispute should remain. This Court should dismiss Dershowitz's Complaint with prejudice.

To survive a motion to dismiss for failure to state a claim, a complaint must allege sufficient facts to state a claim for relief that is plausible on its face.  *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1257 (S.D. Fla. 2010).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Dismissal is appropriate

where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Marshall County Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). A court may therefore dismiss a complaint under Rule 12(b)(6) "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Id.*; *see also Ortega Trujillo v. Banco Cent. del Ecuador*, 17 F. Supp. 2d 1340, 1342 (S.D. Fla. 1998) (a court need not accept the truth of conclusions of law in the complaint, and, "[r]egardless of the alleged facts . . . may dismiss a complaint on a dispositive issue of law").

Because defamation cases implicate free speech rights, their early dismissal is favored because of "the chilling effect" these cases have on First Amendment rights. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[T]here is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation."); *Stewart v. Sun-Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997). Here, this Complaint must be dismissed with prejudice for three separate reasons.

## I.    CNN's Telecasts and Articles Are Protected under the Fair Report Privilege

First, CNN's airing of verbatim arguments that Dershowitz made on the floor of the United States Senate is unquestionably protected by the fair report privilege. The fair report privilege shields the press from liability for reporting on information in official government proceedings and "exists so that the public may be kept informed of the workings of government." *Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So. 2d 972, 976 (Fla. 3d DCA 1987); *see also Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993) ("The news media has been given a qualified privilege to accurately report on the information they receive from government officials."). As this Court recently held, the fair report privilege should be read broadly. A "cramped reading of the fair report privilege" would "open the door" to harassing lawsuits and

would "contribute to the ongoing chipping-away of the rights and privileges necessary to the press's ability to play its intended role as government watchdog." *Larreal v. Telemundo of Fla., LLC*, No. 19-22613-Civ-Cooke/Goodman, 2020 WL 5750100, at *8 (S.D. Fla. Sept. 21, 2020), *report and recommendation adopted*, 2020 WL 5750099 (S.D. Fla. Sept. 25, 2020).

It is self-evident that the fair report privilege applies to the reporting at issue here—matters of virtually unprecedented historical and public interest concerning the impeachment trial of the President of the United States for soliciting foreign interference in an upcoming domestic election. *See Ortega*, 510 So. 2d at 976 (dismissing as privileged a report on testimony from the House of Representatives Subcommittee on Commerce, Consumer, and Monetary Affairs); *Larreal*, 2020 WL 5750099, at *7 (explaining that the privilege "broadly extends to the publication of the contents of public records and statements from government officials").

Accordingly, the only question is whether the CNN telecast constitutes a fair and accurate report of those proceedings. *Woodard*, 616 So. 2d at 502 (citations omitted); *Rasmussen*, 946 So. 2d at 570 (privilege applied because publications were "substantially truthful" accounts of public records); *Jamason v. Palm Beach Newspapers, Inc.*, 450 So. 2d 1130, 1132 (Fla. 4th DCA 1984) (privilege applied to "accurate report of a judicial proceeding"). To meet this standard, the publication at issue does not need to "be exact in every immaterial detail or . . . conform to the precision demanded in technical or scientific reporting. It is enough that it coveys to the persons who read it a substantially correct account of the proceedings." *Woodard*, 616 So. 2d at 502-03 (*quoting* Restatement (Second) of Torts § 611, cmt. f (1977)).

Here, CNN's airing of Dershowitz's arguments, whether in whole or in part, was unquestionably a "reasonably accurate and fair" report of the Senate trial. As a preliminary matter, CNN aired the entire impeachment trial on January 29, 2020, including Dershowitz's arguments.

*See* Riner Decl. Ex. A.  Clearly, this was an accurate report of the proceeding—it reproduced the proceeding itself.  *See Gubarev v. Buzzfeed, Inc.*, 340 F. Supp. 3d 1304, 1318 (S.D. Fla. 2018) (finding BuzzFeed's reporting on Steele Dossier privileged when it "simply reproduces the Dossier").  The Clip on which Dershowitz focuses is also a fair report of what Dershowitz argued to the jury of Senators—in fact, it is a video of the exact words he spoke.  In addition, the Clip contains four sentences that the Congressional Record also grouped as one thought, by placing them in one, discrete, complete paragraph.

> Every public official whom I know
> believes that his election is in the pub-
> lic interest.  Mostly, you are right.
> Your election is in the public interest.
> If a President does something which he
> believes will help him get elected—in
> the public interest—that cannot be the
> kind of quid pro quo that results in im-
> peachment.

*See* Ex. 1 at S650.  Dershowitz's book breaks up his statements in exactly the same way.  *See* Ex. 4 at 106-09.  Because CNN aired the Clip of this paragraph in its entirety, it accurately reported on the Senate proceedings, and this Court need look no further in order to dismiss this matter.

Dershowitz alleges that CNN "omitted" from the Clip the sentence "the only thing that would make a quid pro quo unlawful is if the quo were somehow illegal."  In the Complaint, Dershowitz claims these words were "spoken <u>immediately before</u>" the Clip and that airing them with the Clip would change its meaning.  Compl. ¶ 9 (emphasis in original).  This claim is demonstrably false—those words were not spoken immediately before the Clip, they were instead the last sentence of one paragraph, separated from the sentences in the Clip by another paragraph, expressing an entirely new idea.  *See* Ex. 1 at S650; Ex. 4 at 106-09.[8]  Dershowitz may wish that he had spoken the sentence about illegality immediately before the sentences in the Clip, but he has no claim against CNN for accurately quoting him.

---

[8] Although Dershowitz's book adopts the pagination of the Congressional Record, the Complaint at Paragraph 7, splices together these three paragraphs as if they were one thought.

In this way, Dershowitz's claim is similar to that at issue in *Folta v. New York Times Company*, No. 1:17cv246-MW/GRJ, 2019 WL 1486776, at *8 (N.D. Fla. Feb. 27, 2019).  There, *The New York Times* published an article discussing the close relationship between public universities and biotechnology companies.  The article quoted an email that was sent to the plaintiff by a Monsanto employee, stating that a "misinformation campaign in [agricultural] biotech area is more than overwhelming" and then noted that this email was sent "as the company started to work closely with [the plaintiff]." *Id.* The plaintiff claimed that the *Times'* selected quotation from the email created the false impression that he had a relationship with Monsanto that caused him to compromise his science, while the inclusion of the remainder of the email would show that precisely the opposite was true.  The court rejected the plaintiff's argument, finding that the *Times*' abridgement was a fair report.  It explained, "[i]t is not apparent that the inclusion of [the omitted] sentences would at all change the effect of the statement in an average reader's mind." *Id.*  The court also noted that the defendants were "under no obligation to include additional information that would portray the Plaintiff in a more favorable light" because "the press can select the focus of their own publications." *Id.*  Here too, CNN was under no obligation to re-air multiple paragraphs of Dershowitz's arguments nor to manipulate them to push together certain sentences in an effort to make them read the way Dershowitz wishes.

A central tenet of Dershowitz's claim seems to be that his arguments on the Senate floor were so pellucid that excerpting them in any way (other than the way he wants) amounts to an intentional falsification.  But his arguments were not as clear as he thinks.  Dershowitz was not embarking on a dispassionate factual statement or even writing a law review article but was, instead, engaged in advocacy on the President's behalf in response to spontaneous questions read by the Chief Justice of the Supreme Court. *See 600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d

130 (N.Y. 1992) ("Reasonable listeners are aware that impromptu comments at a heated public debate, unlike official testimony before a governmental subcommittee or even the reading of prepared remarks, are more likely to be the product of passionate advocacy than careful, logically developed reason."); *Marom v. Pierot*, 18 Civ. 12094 (VB)(JCM), 2020 WL 1862974, at *8 (S.D.N.Y. Jan. 16, 2020), *report and recommendation adopted*, No. 18 CV 12094 (VB), 2020 WL 1444938 (S.D.N.Y. Mar. 25, 2020) (statements made during a "heated" public debate are "'the product of passionate advocacy' rather than deliberate statements of fact"). In reality, Dershowitz's arguments were ambiguous.[9] Like CNN, media outlets nationwide understood Dershowitz to argue that presidents cannot be impeached for actions taken to win an election if the President believes his own victory would be in the public interest, regardless of the legality of those actions. *See, e.g.*, Exs. 2-3. Dershowitz disagrees with the way CNN excerpted his arguments, but CNN cannot be liable for correctly quoting the statements he actually made in Congress as memorialized in the Congressional Record.

Ultimately, Dershowitz's main complaint is that CNN should have aired his full-five minute response each time his testimony was discussed. But "this preference is not the yardstick by which statements in a news report are measured." *Folta*, 2019 WL 1486776, at *5. The First Amendment prohibits interference with publishers' discretion in determining what information to publish in their papers. *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper . . . constitute the exercise of editorial control and judgment," and the First

---

[9] He also concluded his response (in a quotation omitted from the Complaint) by saying "for it to be impeachable, you would have to discern that he or she made a decision solely on the basis of, as the House managers put it, corrupt motives, and it cannot be a corrupt motive if you have a mixed motive that partially involves the national interest, partially involves electoral, and does not involve personal pecuniary interest"—a quotation that makes it clear that Dershowitz actually did mean what the press thought he meant. *See* Ex. 1 at S651.

Amendment will not allow civil liability arising from that exercise).   "Editorial decisions about

broadcasts are best left to editors, not to judges and juries."   *Newton v. Nat'l Broad. Co.*, 930 F.2d

662, 686 (9th Cir. 1990); *see also Turner v. Wells*, 198 F. Supp. 3d 1355 (S.D. Fla. 2016), *aff'd*,

879 F.3d 1254 (11th Cir. 2018); *Perk v. Reader's Digest Ass'n*, 931 F.2d 408, 412 (6th Cir. 1991)

("[Publishers] have no legal obligation to present a balanced view of what led up to [the publicized

event].");  *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1306 (8th Cir. 1986) (*"*Accounts of past

events are always selective, and under the First Amendment the decision of what to select must

almost always be left to writers and editors.").   The reporting at issue here is absolutely privileged

as a fair report of the trial of President Trump, and Dershowitz's Complaint should be dismissed.

## II.      The Allegedly Defamatory Statements Are Non-Actionable Opinion

In addition to referencing CNN's airing of the Clip of his Senate argument, Dershowitz

also cites to the Statements as "egregious examples" of Dershowitz being "openly mocked" for his

argument.  Compl. ¶ 13.  It is unclear from the face of the Complaint whether Dershowitz actually

seeks recovery on the Statements, but to the extent he does, this Court should dismiss those claims

because the Statements are non-actionable opinions.[10]

"A false statement of fact is the *sine qua non* for recovery in a defamation action."  *Byrd

v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983).   Thus, the U.S. Supreme

Court has held that statements of opinion that do "not contain a provably false factual connotation"

are protected under the First Amendment.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990);

*Turner*, 879 F.3d at 1262 ("[S]tatements of pure opinion are protected from defamation actions by

the First Amendment.").   It is well settled in Florida that "[c]ommentary or opinion based on facts

---

[10] Whether the statement is one of opinion [is a] question[] of law for the court."  *Turner*, 879 F.3d at 1262-63.  Making
this determination requires a court to "examine the statement in its totality and the context in which it was uttered or
published."  *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981).

that are set forth in the article or which are otherwise known or available to the reader or listener are not the stuff of libel." *Turner*, 198 F. Supp. 3d at 1366 (quoting *Rasmussen v. Collier Cnty. Publ'g Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006); *see also Zambrando v. Devanesan*, 484 So. 2d 603, 606 (Fla. 4th DCA 1986) ("[E]ven if the speaker or writer does not present the facts, or does not present all of them, like comments may still justify a finding of pure opinion where the facts are already known to the audience."); *Rasmussen*, 946 So. 2d at 571 ("[Defendants'] editorials were based on facts disclosed in the articles themselves or in the extensive coverage that [Defendants] afforded to the . . . controversy.").[11]

It is hard to imagine a more archetypal instance of opinion based upon available facts than the case here—commentators analyzing and interpreting public arguments made by the President's advocate on the Senate floor during the impeachment trial.[12]  The commentators who made the Statements also held them out as opinion—making them not during the impeachment proceedings, but in commentary shows about the proceedings.  In the following days, CNN interviewed Dershowitz on Wolf Blitzer and Chris Cuomo's shows and gave him the opportunity to explain his view that CNN was "distort[ing]" his position and "trying to destroy [his] credibility."  *See* Riner Decl. Exs. E-F.  This exchange of viewpoints—rather than the filing of meritless lawsuits—is exactly the type of discourse the opinion doctrine is designed to encourage.

Even setting aside this context, the Statements themselves are marked by the loose, rhetorical language that is the hallmark of opinion.  As the Eleventh Circuit has explained,

---

[11] Dershowitz himself has spoken of the importance of protecting opinion, writing:  "I have defended the right of my enemies to lie about me, to heckle me, to boycott me, and event try to get me fired.  While defending the right of my opponents to say nearly anything they want, I have insisted on my own right to criticize, condemn, and vilify them for the wrongness of what they have chosen to say."  *Taking the Stand* at 107.  As Dershowitz puts it, "sometimes being a First Amendment lawyer requires a thick skin."  *Id.* at 180.

[12] The Begala Statement is also found in a section of CNN.com titled "Political Op-Eds Social Commentary" and an Editor's Note reads "[t]he opinions expressed in this commentary are his."  Riner Decl. Ex. D.

"exaggeration and non-literal commentary have become an integral part of social discourse," *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002), and cannot form the basis of a defamation complaint, *see, e.g.*, *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1380 (S.D. Fla. 2006).  Here, Dershowitz has himself highlighted the degree to which the Statements are non-literal commentary, describing them as open mockery and alleging that they imply Dershowitz has "lost his mind."  Compl. ¶¶ 7, 13.  The very words complained of bear this out—the Statements refer to Dershowitz's argument as "un-American," that he was "redefining the powers of the President," and that his position "blows your mind."   As a result, these statements and statements like Lockhart's, that Dershowitz's argument "is what you hear from Stalin . . . what you hear from Mussolini, what you hear from authoritarians" are the kind of rhetorical hyperbole for which Dershowitz cannot recover.  At bottom, as the United States Supreme Court has long recognized, "debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964).  Dershowitz's claim must be dismissed with prejudice.

## III.    Dershowitz Fails to Plead Actual Malice

Dershowitz's Complaint should also be dismissed for the entirely separate reason that he has failed to plead actual malice.  In order to plead a defamation claim, a public figure—like Dershowitz—is required to prove with "convincing clarity" that the defendant published a statement with "actual malice," defined as "knowledge that it was false or with reckless disregard of whether it was false or not."  *Sullivan*, 376 U.S. at 280.  "Actual malice requires more than a departure from reasonable standards of journalism; '[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'"  *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999) (citation omitted).  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements,' are insufficient to support a cause of action." *Michel*, 816 F.3d at 704

(quoting *Iqbal*, 556 U.S. at 678).   Dershowitz has not—and cannot—make this showing, and,

accordingly, his Complaint should be dismissed with prejudice.

Initially, there can be no doubt that Dershowitz, who pleads that he is "one of the most

revered and celebrated legal minds of the past half century," is a public figure who placed himself

in the cross-hairs of the most political process possible—a presidential impeachment.   Compl.

¶ 14.  The Complaint, however, falls far short of pleading actual malice with "convincing clarity."

The U.S. Supreme Court has held that "[w]here the defendant in a defamation action is a publishing

organization, this 'actual malice' must be 'brought home to the persons in the [publishing]

organization having responsibility for the publication.'"   *Mile Marker, Inc. v. Petersen Publ'g,

L.L.C.,* 811 So. 2d 841, 847 (Fla. 4th DCA  2002) (quoting *Sullivan*, 376 U.S. at 287).  That means

that "[w]hen there are multiple actors involved in an organizational defendant's publication of a

defamatory statement, the plaintiff must identify the individual responsible for publication of a

statement, and it is *that individual* the plaintiff must prove acted with actual malice."   *Dongguk

Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) (emphasis added); *Resolute Forest Prod.,

Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017).

*Mejia v. Telemundo Mid-Atlantic LLC*, 440 F. Supp. 3d 495 (D. Md. 2020), recently

summarized the importance of "homing" actual malice allegations.  There, the plaintiff's photo

was displayed on television with a banner stating that he was arrested for sexual assault while the

on-air commentator said (correctly) that he was arrested for drunk driving.  *Id.* at 497.  The court

held that, despite this juxtaposition, it "does not mean that the banner stating that [the plaintiff]

was arrested for sexual assault was published maliciously," *id.* at 502, as the "Complaint contains

no factual allegations referring to the state of mind of the *individual in charge of Defendant's*

*banners*." *Id.* (emphasis added).

Here, as in *Mejia*, Dershowitz utterly fails to "home" his allegation of actual malice to any individual at CNN. First, Dershowitz repeatedly refers to "CNN's" state of mind, as if CNN were an individual as opposed to a media organization composed of thousands of employees. *See, e.g.*, Compl. ¶¶ 10, 18, 20. As *Sullivan* and *Mejia* make clear, however, Dershowitz was required to plead that a specific individual acted with subjective awareness of probable falsity in excerpting the Clip. The total absence of such pleading requires dismissal.[13]

Further, to the extent Dershowitz seeks to meet the required pleading standard by alleging generally that "CNN's hosts and panelists knew that the selective editing of the tape and the elimination of Dershowitz's words . . . would allow them to pretend that Dershowitz had said the exact opposite of what he argued on the Senate floor," Compl. ¶ 10, his efforts fail. This is just a "threadbare" recitation of the standard, insufficient as a matter of law. *Michel*, 816 F.3d at 704; *Hakky v. The Washington Post Co.*, No. 8:09-cv-2406-T-30MAP, 2010 WL 2573902, at *6 (M.D. Fla. Jun. 24, 2010). In any event, like in *Mejia*, these allegations do not bring home the alleged knowing conduct to the individual who actually edited the Clip.

Finally, Dershowitz's claim that reporters Wolf Blitzer and Jake Tapper "played the entire clip properly, so CNN knew for certain that Dershowitz had prefaced his remarks with the qualifier that a quid pro quo could not include an illegal act" also fails to establish malice. Compl. ¶ 9. The U.S. Supreme Court has held that allegations that a news organization was in possession of accurate facts at the time it reported false facts cannot constitute actual malice unless it can be shown that the speaker herself knew the allegedly true facts. *See Sullivan*, 376 U.S. at 287-88.

---

[13] Moreover, Dershowitz's claims of disinterested political malevolence are insufficient. Compl. ¶ 14. "The court will not pry open the gates of discovery just because [the plaintiff] believes the erroneous communications were motivated by differences in political opinions . . . doing so would run afoul of the Supreme Court's landmark ruling in *New York Times Co. v. Sullivan*." *Arpaio v. Robillard*, 459 F. Supp. 3d 62, 66 (D.D.C. 2020).

There simply is no such allegation here.  And a complete look at CNN's fulsome reporting of Dershowitz's arguments makes it impossible for Dershowitz to plead actual malice.  "[W]here the publisher includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of malice. . . .The reasoning behind the rule is simple. Where a publisher gives readers sufficient information to weigh for themselves the likelihood of an article's veracity, it reduces the risk that readers will reach unfair (or simply incorrect) conclusions, even if the publisher itself has." *Michel*, 816 F.3d at 703.  Here, CNN aired live Dershowitz's *full* argument.  Dershowitz also appeared on Wolf Blitzer and Chris Cuomo's shows claiming that CNN had "distorted" his arguments and was "trying to destroy [his] credibility." *See* Riner Decl. Exs. E-F.  CNN certainly gave the public information to weigh Dershowitz's interpretation of his arguments.  This precludes the possibility that Dershowitz will ever be able to establish that CNN acted with actual malice.

Perhaps aware of this fatal flaw, Dershowitz cites to the U.S. Supreme Court's decision in *Masson v. New Yorker Magazine Inc.*, 501 U.S. 496 (1991), claiming that it creates a "broad" exception that allows Dershowitz to recover here because CNN made "changes [to] the meaning of what Dershowitz said."  Compl. ¶ 10.  But *Masson* is not the panacea Dershowitz thinks it is. In *Masson*, a journalist for *New Yorker* magazine conducted a series of lengthy private interviews with the plaintiff.  Following these interviews, the journalist published an article purporting to "quote" the plaintiff.  The plaintiff alleged that these quotes were, for the most part, purely fabricated, and discovery proved the plaintiff's allegations were true.  The Court recognized that while the Constitution does not require journalists to verbatim quote interview subjects, in the case of *Masson*, where the defendant journalist simply made up words, there was a factual question as to whether the defendant acted with knowledge of the statements' falsity.

19

This case is entirely different. There are no made up words.  Dershowitz did not give a private interview to a CNN reporter.  Instead, he advocated on the Senate floor during a presidential impeachment hearing that the President should not be removed from office even though he admitted engaging in a quid pro quo with foreign leaders.  CNN aired the trial in its entirety. Unlike in *Masson*, in which the *New Yorker's* story was the only conduit for the public to hear the plaintiff's words, Dershowitz's argument was published widely (including on CNN) and lives on today for public consumption not just in the media, but also in the official records of the United States—the Congressional Record.  *Masson* is unhelpful here.

Instead, this case is like *Time, Inc. v. Pape*, 401 U.S. 279 (1971), which made clear that a news organization's misconception of an unclear source cannot constitute actual malice.  In *Pape*, *Time Magazine* wrote an article about a government report.  The article quoted from the report but did not make clear that many of the statements in the report were merely allegations, rather than established facts.  The Court held that because the report was "extravagantly ambiguous," and because *Time Magazine's* article was a "rational interpretation" of the source, *Time Magazine* did not act with actual malice.  The court emphasized, "[t]hese considerations apply with even greater force to the situation where the alleged libel consists of claimed misinterpretations of the gist of a lengthy government document." *Id.* at 291.  Here, as in *Pape,* Dershowitz's arguments were made in a significant government proceeding.  Here, as in *Pape*, Dershowitz's comments were so "extravagantly ambiguous" that they were not only panned by Congressmen and in the press, but Dershowitz himself went on a press tour to clarify them.  As a result, here, as in *Pape*, Dershowitz cannot establish that CNN acted with actual malice in airing the Clip or discussing his arguments.

## **CONCLUSION**

For the foregoing reasons, Dershowitz's Complaint should be dismissed with prejudice.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), CNN respectfully requests oral argument on this motion. Because the motion raises important First Amendment considerations and dispositive issues of law, CNN believes that oral argument would assist the Court's decision-making process. CNN estimates that a total of two to three hours will be required for argument.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and served via the Court's CM/ECF portal on this 6th day of November, 2020 to Brian M. Rodier, Esq., bmrodier@rodierlegal.com; Rodier & Rodier, P.A., *Counsel for Plaintiff,* 400 N. Federal Highway, Hallandale, Florida 33009.

**GUNSTER, YOAKLEY & STEWART, P.A.**
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000

By:  /s/ George S. LeMieux, Esq.
George S. LeMieux, Esq.
Florida Bar No. 16403
Email:  glemieux@gunster.com
Eric C. Edison, Esq.
Florida Bar No. 010379
Email:  eedison@gunster.com

**DAVIS WRIGHT TREMAINE LLP**
Katherine M. Bolger, Esq.
(admitted *pro hac vice*)
Email:  katebolger@dwt.com
Amanda B. Levine, Esq.
*(admitted pro hac vice)*
Email: amandalevine@dwt.com
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-489-8230

*Counsel for Defendant, Cable News Network, Inc.*