UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:20-CV-61872-AHS

ALAN DERSHOWITZ,

    Plaintiff,

v.

CABLE NEWS NETWORK, INC.,

    Defendant.
_____/

**CNN'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO SECOND REQUEST TO PRODUCE[1]**

Defendant Cable News Network, Inc. ("CNN") respectfully submits this Memorandum in Opposition to Plaintiff, Alan Dershowitz's ("Plaintiff") Motion to Overrule Objections and Compel Better Responses to Plaintiff's Second Request to Produce [ECF No. 85] ("Motion to Compel") and states as follows:

**INTRODUCTION**

This is a defamation action arising from four statements published by CNN (the "Challenged Statements"). In order to defend itself against Plaintiff's claims, CNN has produced extensive discovery regarding the drafting, editing, and publication of those statements—despite, and without otherwise waiving, the journalist's privilege that applies to unpublished newsgathering information. But Plaintiff is now seeking discovery of unpublished newsgathering information related to a *totally separate article* that is not the subject of this defamation action, that does not contain any of the Challenged Statements, and was not authored by any of the

---

[1] This Response was initially filed on April 7, 2022, but the Clerk of the Court requested that it be refiled [D.E.91].

speakers or creators of the Challenged Statements (the "Separate Article"). Plaintiff does not have the right to that information, which is protected from disclosure by the reporter's privilege guaranteed to CNN by D.C. Code § 16-4702, Fla. Stat. § 90.5015, and the First Amendment. As such, the Motion to Compel should be denied.

## FACTUAL BACKGROUND

By way of background, it is important to focus on precisely what information CNN has already produced in this litigation and what information Plaintiff seeks now through this motion. CNN has produced or agreed to produce materials relied on in drafting or editing the Challenged Statements. Consistent with that production, CNN, as Plaintiff acknowledges, has also produced (1) all published versions of the Separate Article; (2) all versions of the Separate Article that were distributed to or reviewed by the speakers of the Challenged Statements and the employees primarily responsible for substantive decisions in connection with those statements; and (3) all communications regarding the Separate Article involving any of those speakers or employees. (*See* Motion to Compel at 2–3.) Nevertheless, Plaintiff's motion also seeks "all versions, drafts …, notes and edits" of the Separate Article, as well as the internal communications of the authors of the Separate Article. (*Id.* at 1–2.)

Significantly, even though Plaintiff was aware of the Separate Article at the time he amended his complaint to add an additional claim for defamation based on an additional statement (s*ee* ECF No. 66), the Amended Complaint does not mention the Separate Article, let alone assert a defamation claim based on any statement in it.

## ARGUMENT

### A. The Discovery Plaintiff Seeks Is Protected by the Journalist's Privilege

Plaintiff does not even attempt to meet the strict requirements to overcome the journalist's privilege against compelled disclosure of unpublished newsgathering information; instead, he

flatly asserts "there is no privilege available" at all. (Motion to Compel at 2.) Plaintiff is wrong. Indeed, Plaintiff's Motion to Compel fundamentally misconstrues the nature and scope of the journalist's privilege, as well as how the privilege applies in cases where the newsgathering organization is a defendant.

The law of the District of Columbia—where the three authors of the Separate Article are based—"accords total protection to news sources, whether confidential or not, and whether disclosed to others or not." *Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 336 (D.D.C. 1994).[2] Under the D.C. Free Flow of Information Act, "any person who is or has been employed by the news media in a news gathering or news disseminating capacity" cannot be compelled to disclose "[a]ny news or information procured by the person while employed by the news media in the course of pursuing professional activities that is not itself communicated in the news media." D.C. Code § 16-4702.[3]

Plaintiff makes two arguments to avoid the protections of the journalist's privilege. First, he argues that in a libel case in which the plaintiff must prove actual malice, "there is no privilege,"

---

[2] D.C. privilege law should apply here because Washington, D.C. has "the most significant relationship with the communications at issue" and several factors support the application of the D.C. privilege. *Anas v. Blecker*, 141 F.R.D. 530, 532 (M.D. Fla. 1992). The authors of the Separate Article (Nikki Carvajal, Paul LeBlanc, and Marshall Cohen) are all based in Washington, D.C., were covering the impeachment trial held in Washington, D.C, and conducted their newsgathering activities in reliance on D.C.'s privilege. In any event, as discussed below, Plaintiff does not come close to meeting the standard to overcome the journalist's privilege whether the Court applies D.C. law, Florida law, or federal constitutional law. *See, e.g.*, *United States v. Fountain View Apartments, Inc.*, 2009 WL 1905046, at *2 n.5, *4 (M.D. Fla. July 1, 2009) (holding that federal reporter's privilege principles are "virtually indistinguishable" from, and "will yield the same result" as, the Florida statutory privilege).

[3] Florida law, to the extent it applies here, is in accord. *See* Fla. Stat. § 90.5015(2) ("A professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news."); *State v. Davis*, 720 So. 2d 220, 227 (Fla. 1998) (The "privilege extends to both confidential *and* nonconfidential information gathered in the course of a reporter's employment.").

3

citing to *CNN v. Black*, 308 So. 3d 997 (Fla. 4th DCA 2020). (Motion to Compel at 2.) But, as discussed further below, the *Black* court did not remotely hold that "the journalist privilege … is inapplicable" to a defendant in a libel case (Motion to Compel at 2); it merely held that—under the unique and easily distinguishable circumstances in that case—the plaintiff had met the standard to overcome the privilege under a different law (the Florida journalist's privilege statute). Beyond his egregious misreading of *Black*, Plaintiff offers no support for his argument that would, in effect, nullify the journalist's privilege in all defamation cases. Indeed, contrary to Plaintiff's suggestion, courts routinely apply the journalist's privilege to defendants in defamation actions. *See Prentice v. McPhilemy*, 1999 D.C. Super. LEXIS 29, *14–15 (D.C. Super. Ct. May 5, 1999) (noting that, unlike the laws in a handful of other states, the D.C. statute does not include an exemption for libel cases, and applying the privilege to newsgathering materials of defendant news organization); *see also Zerilli v. Smith*, 656 F.2d 705, 714 (D.C. Cir. 1981); *Liberty Lobby, Inc. v. Rees*, 111 F.R.D. 19, 21–23 (D.D.C. 1986); *Gubarev v. BuzzFeed, Inc.*, 2017 WL 6547898, at *4–5 (S.D. Fla. 2017); *TheStreet.com, Inc. v. Carroll*, 20 So.3d 947, 948–50 (Fla. 4th DCA 2009); *Gadsden Cnty. Times, Inc. v. Horne*, 426 So. 2d 1234, 1240–42 (Fla. 1st DCA 1983). Plaintiff's argument that the journalist's privilege is "unavailable" to CNN in this case is simply incorrect.

To the extent that Plaintiff makes an argument that there is no applicable journalistic privilege because CNN somehow waived it by producing materials relied on in drafting or editing the Challenged Statements, his argument is unavailing. A libel defendant may make a limited production of material directly relied on in the specific publications in suit in order to allow a plaintiff to access evidence of the defendant's state of mind in publishing the allegedly defamatory statements. But, under well-established law, that does not somehow constitute a waiver as to all unpublished newsgathering materials. *See* D.C. Code § 16-4704 ("The publication by the news

4

media or the dissemination by a person employed by the news media of a source of news or information, or a portion of the news or information, procured while pursuing professional activities shall not constitute a waiver of the protection from compelled disclosure ...."); Fla. Stat. § 90.5015(4) ("A professional journalist does not waive the privilege by publishing or broadcasting information."); *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 43 (N.D. Fla. 1998) (where privileged documents are produced under a protective order, "that privilege should not be subject to implied waiver simply by virtue of the fact that the disclosing party relied on a court order ensuring confidentiality and non-disclosure to third parties"). The information sought in this motion is, therefore, privileged. Plaintiff tries to avoid this outcome by arguing that the Separate Article (and the newsgathering behind it) *is* related to the Challenged Statements because Paul Begala saw a version of the Separate Article before he published the Challenged Statement. But Plaintiff's argument is simply incorrect. CNN has agreed to produce the information Begala relied on in drafting the Challenged Statement, including the Separate Article; he did not see the newsgathering information sought in this motion.

Next, Plaintiff argues (without citation to any authority) that the privilege's protection extends only to a journalist's "methods of news gathering." (Motion to Compel at 4.) But the D.C. statute explicitly states that the "news or information" that is protected under the statute "includ[es] any: (A) Notes; (B) Outtakes; (C) Photographs or photographic negatives; (D) Video or sound tapes; (E) Film; or (F) Other data, irrespective of its nature, not itself communicated in the news media." D.C. Code § 16-4702(2). And courts have long recognized that, under First Amendment principles, compelling a journalist to produce material such as reporter notes constitutes a "significant intrusion into and certainly a chilling effect upon the newsgathering and editorial process," and thus "compelled production of such materials is equally as invidious as the

compelled disclosure of … confidential informants." *Maughan v. NL Indus.*, 524 F. Supp. 93, 95 (D.D.C. 1981) (internal quotes omitted).[4] The materials Plaintiff is seeking fall squarely within this category, and are protected by the journalist's privilege.

### B. Plaintiff Cannot Overcome the Privilege as to the Separate Article

Plaintiff has not made the required showing to overcome the privilege, which can be overcome only if the party seeking disclosure establishes "*by clear and convincing evidence*" that:

> (1) The news or information is relevant to a significant legal issue before a judicial, legislative, administrative, or other body that has the power to issue a subpoena;
>
> (2) The news or information could not, with due diligence, be obtained by any alternative means; and
>
> (3) There is an overriding public interest in the disclosure.

D.C. Code § 16-4703(a) (emphasis added).[5] Plaintiff does not even attempt to meet this heavy burden—and he cannot do so, because the additional material he seeks is not relevant to any issue in the case.

First, the drafts, notes, and communications of the authors of the Separate Article are irrelevant and immaterial to this case. The U.S. Supreme Court has held that "[w]here the defendant in a defamation action is a publishing organization, … 'actual malice' must be 'brought home to the persons in the [publishing] organization having responsibility for the publication.'" *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 847 (Fla. 4th DCA 2002) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964)). Courts "focus *solely* on [the] state of mind"

---

[4] Again, the law of Florida is in accord. *See, e.g.*, *Fountain View Apartments*, 2009 WL 1905046, at *4 (quashing subpoena for "reporter's notes, internal emails with editors about the story, draft of scripts, or other requests of the sort" under journalist's privilege).

[5] *See also* Fla. Stat. § 90.5015(2); *McCarty*, 195 F.R.D. at 46–47 (noting that the movant bears a "heavy burden" of "showing by clear and convincing evidence" each prong of the test).

of the "employee responsible for the publication of the allegedly defamatory statements." *Holbrook v. Harman Auto., Inc.*, 58 F.3d 222, 225 (6th Cir. 1995) (emphasis added). *See also Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1357 n.4 (N.D. Ga. 2020) (noting that "the state of mind required for actual malice [must] be brought home to the persons in the ... organization having responsibility for the publication," and dismissing because "the complaint d[id] not connect the CNN staff members [who the plaintiff alleged harbored bias against it] to the specific article in question"); *Blankenship v. Fox News Network, LLC*, 2022 WL 321023, at *24, *31 (S.D.W. Va. Feb. 2, 2022) (granting summary judgment in libel case where no evidence established that any of the speakers of the allegedly defamatory statements published the statements with actual malice, notwithstanding evidence of knowledge of others within the defendant news organizations, because "'it is the state of mind of the speaker that is relevant' in assessing actual malice" (quoting *Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865, 868 (7th Cir. 2018))); *Gilmore v. Jones*, 2021 WL 68684, at *4 (W.D. Va. Jan. 8, 2021) ("[W]here one or more defendants are institutional actors rather than individuals, the state of mind inquiry focuses on the subjective state of mind of the individuals responsible for the publication at issue."); *Brewer v. Memphis Pub. Co.*, 626 F.2d 1238, 1258 n.26 (5th Cir. 1980) ("Failure to discover misstatements might show negligence but did not show actual malice; even failure to check its own files did not show that the state of mind required for actual malice was 'brought home to' those responsible for publishing the advertisement."). Knowledge of people in an organization who did not create or speak the allegedly defamatory communications cannot be "imputed" to those who were so involved. *Mimms*, 889 F.3d at 868. Thus, contrary to Plaintiff's misguided assertion, in assessing what "CNN subjectively knew", the test is what the creators and speakers of the Challenged Statements knew, not what employees unrelated to the publication of the Challenged Statements

7

said or did (Motion to Compel at 2).

Here, the Separate Article does not contain any of the Challenged Statements at issue, and none of the Separate Article's authors were the decision-makers behind the Challenged Statements. Plaintiff cannot, therefore, as a matter of law establish "what CNN subjectively knew when it made the defamatory statements" (Motion to Compel at 2) through any of the requested materials.

The only possible relevance of the Separate Article is the extent to which it was shown to and affected the state of mind of the creators and speakers of the Challenged Statements. Plaintiff asserts that the Separate Article "was disseminated to CNN employees and Paul Begala prior to their broadcasts of the alleged defamatory statements" (Motion to Compel at 3), which CNN does not dispute. But that does not mean that the drafts, notes and other internal communications among the authors of the Separate Article were disseminated to any of the creators and speakers of the Challenged Statements. They were not. They are not, therefore, relevant to this case. As explained above, CNN has already produced the materials relied on in drafting or editing the Challenged Statements, including any versions of the Separate Article that were distributed to the individuals who created and wrote the Challenged Statements, including Begala, and any communications regarding the Separate Article involving any of those individuals. Accordingly, the requested materials, which target the states of mind of Carvajal, LeBlanc, or Cohen, are irrelevant to Plaintiff's claims.

Plaintiff's citation to *CNN v. Black*, 308 So. 3d 997, is inapposite. In *Black*, unlike in the instant motion, the plaintiff was seeking communications related to the alleged defamatory reporting at issue in that case. The communications sought were between the CNN journalists central to the allegedly defamatory reporting (who were named defendants in the case) and one of their sources (who was also a named defendant) related to the reporting. Far from stating a blanket

8

"no privilege rule" as Plaintiff would like this court to believe, both the trial and appellate courts in *Black* were clear to distinguish the "unique circumstances" that were sufficient to overcome the privilege in that case, including the alleged "centrality of [the co-defendant's] role as a source of CNN's reporting," and the fact that the co-defendant had apparently "deleted her own copies of the communications." 308 So. 3d at 1000.

Of course, here, *CNN has already produced the exact types of documents that the court ordered to be produced in Black*: the communications involving the speakers and creators of the Challenged Statements related to the publications and broadcasts containing the Challenged Statements. What Plaintiff is seeking now, in addition, are the communications of different journalists regarding another article not in suit. *Black* has no application to that demand.

Indeed, in stark contrast to the journalists in *Black*, Carvajal, LeBlanc, and Cohen—the authors of the Separate Article—are not named defendants, are not alleged to have uttered any defamatory statements or otherwise even worked on the Challenged Statements, and do not even appear in the Amended Complaint. Plaintiff argues that the evidence he is seeking would "show what CNN knew, and what CNN was considering but ultimately decided to leave out" (Motion to Compel at 3), but that inquiry matters only as to the Challenged Statements and publications in suit. Plaintiff offers no explanation as to how editorial decisions behind a completely different article, authored by totally different people, somehow bears on that question. Since Plaintiff cannot show how the requested information is remotely relevant to this case—let alone relevant to a "significant legal issue," D.C. Code § 16-4703(a)(1)—he cannot overcome the privilege.

Finally, Plaintiff has not made the requisite clear and convincing showing of an overriding public interest in the disclosure he seeks. To the contrary, given the irrelevance of the requested materials, there is no need—let alone a compelling need—to intrude on CNN's privileged

9

information, and there is a strong public interest in upholding the privilege. The journalist's privilege supports the "paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters." *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 35 (2d Cir. 1999) (citation omitted). It is "the strong responsibility of the courts to protect the rights of a free press" that are safeguarded by the journalist's privilege. *Davis*, 720 So. 2d at 222.

Accordingly, the documents that Plaintiff seeks are protected by the journalist's privilege, and Plaintiff has failed to overcome that privilege.

## CONCLUSION

For all these reasons, the Court should deny Plaintiff's motion to compel, as well as his request for attorney fees and costs.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and served via the Court's CM/ECF portal on this 13th day of April, 2022 to Brian M. Rodier, Esq., bmrodier@rodierlegal.com; Rodier & Rodier, P.A., *Counsel for Plaintiff,* 400 N. Federal Highway, Hallandale, Florida 33009.

GUNSTER, YOAKLEY & STEWART, P.A.

By: /s/ *Eric C. Edison*
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: (954) 462-2000
George S. LeMieux
Florida Bar No. 16403
glemieux@gunster.com
Eric C. Edison
Florida Bar No. 010379
eedison@gunster.com

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger

*(pro hac vice admitted)*
Amanda B. Levine
*(pro hac vice admitted)*
Abigail B. Everdell
*(pro hac vice admitted)*
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
katebolger@dwt.com
amandalevine@dwt.com
abigaileverdell@dwt.com

*Attorneys for Defendant Cable News Network, Inc.*