UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:20-CV-61872-AHS

ALAN DERSHOWITZ,

      Plaintiff,

v.

CABLE NEWS NETWORK, INC.,

      Defendant.

_____/

## DECLARATION OF KATHERINE M. BOLGER
## IN SUPPORT OF DEFENDANT'S RULE 72(a) OBJECTIONS

I, KATHERINE M. BOLGER, declare:

1.      I am a partner at Davis Wright Tremaine LLP, counsel to Defendant Cable News Network, Inc. ("CNN") in this action.  I submit this declaration in support of CNN's Objection to Portion of Magistrate Judge's Order Partially Granting Plaintiff's Motion to Compel (ECF No. 53) and in support of CNN's Objections to Certain Rulings in Magistrate Judge's Partial Denial of CNN's Motions to Compel (ECF Nos. 52 and 72) (collectively, the "Objections").

2.      On November 22, 2021, Magistrate Judge Alicia O. Valle issued an order setting a briefing schedule on the parties' anticipated motions to compel further responses to their respective discovery requests.  *See* ECF No. 50.

3.      On December 3, 2021, CNN filed a Motion to Compel Production of Documents and Interrogatory Responses.  *See* ECF No. 52.

4.      On the same day, Plaintiff filed a Motion to Compel Better Responses and Overrule Objections to Plaintiff's Request to Produce (ECF No. 53) ("Pl. Mot.") and a Motion to Compel Better Answers to Plaintiff's Interrogatories (ECF No. 51).

5.      On January 27, 2022, CNN filed a Motion to Compel Production of Pre-January 29, 2020 Documents by Plaintiff.  *See* ECF No. 72.

6.      On March 31, 2022, Plaintiff filed a Motion to Compel Production Related to Second Request to Produce.  *See* ECF No. 85.

7.      On April 21, 2022, Judge Valle held a hearing to address all of the pending motions to compel.  At the conclusion of the hearing, Judge Valle issued rulings on each of the pending motions and, later that day, issued a Paperlesss Order on Discovery Motions that granted in part and denied in part CNN's Motions to Compel (ECF Nos. 52, 72), granted in part and denied in part Plaintiff's first Motions to Compel (ECF Nos. 51, 53), and denying Plaintiff's March 31, 2022 Motion to Compel (ECF No. 85).  *See* ECF No. 101.

8.      Because reference was made during the hearing to certain documents that had been produced with a designation of "Confidential" pursuant to the Confidentiality and Protective Order in place in the case (ECF No. 48), the parties jointly moved on April 29, 2022, to place the transcript of the April 21 hearing (ECF No. 105 (the "April 21 Transcript")) under seal pending proposed redactions of certain parts of the transcript.  *See* ECF No. 106.

9.      On May 2, 2022, the Court granted the motion to seal and placed the April 21 Transcript under seal until further notice.  *See* ECF No. 107.

10.      As part of Plaintiff's Motion to Compel, he sought production of documents in response to his Request for Production No. 8 ("Plaintiff's RFP No. 8"), which requested: "Produce all written employment or engagement agreements between CNN and each commentator that appeared on air for any broadcast in which Alan Dershowitz's response to Ted Cruz's question was discussed."  *See* ECF No. 64 (Joint Status Report in Connection With Motions to Compel (ECF Nos. 51, 52, and 53) ("JSR") at 4.

2

11.     In his brief in support of his Motion to Compel as to RFP No. 8, Plaintiff argued that the agreements "might contain information relevant to what incentives were offered to commentators depending on viewership or click volume generated by their work or how many other news organizations picked up the CNN content." Pl. Mot. at 4.

12.     At the April 21 hearing, in further explaining the basis for his motion to compel as to Plaintiff's RFP No. 8, Plaintiff's counsel stated: "I don't keep secret what I'm looking for. I'm looking to find out if there is incentives. … That's all I'm interested there. Like, for example if [Paul] Begala [the author of one of the challenged statements] has an incentive that X million clicks …." April 21 Transcript at 46:6-16.

13.     At the conclusion of the April 21 hearing, Judge Valle partially granted Plaintiff's motion to compel as to RFP No. 8 in part, ordering CNN to produce the employment agreements but only for "the commentators who made the allegedly defamatory statements." *Id.* at 167:24-168:1.

14.     Following the hearing, CNN reviewed the relevant employment and contributor agreements to determine whether any of them contained any "incentive" provisions along the lines of what Plaintiff described.

15.     On April 27, 2022, I conferred by phone with Plaintiff's counsel, Brian Rodier, and provided him with information about the relevant employment agreements. Given that Plaintiff's only stated interest in the agreements was the possibility of "incentive" provisions, I proposed a compromise pursuant to which CNN would produce a sworn statement that there were no contracts with "incentives" and/or identifying any contract containing such a provision and setting forth the language of those provisions in full, thereby fully satisfying the reason Plaintiff provided for seeking these documents.

16.     During the course of further discussions on this issue, Plaintiff proposed that he would possibly consider this limited production if CNN agreed to accept some degree of redactions of Plaintiff's tax returns, which Judge Valle had ordered Plaintiff to produce.  *See* April 21 Transcript at 160:2-4.  I told Mr. Rodier that I would be open to discussing that compromise if he had a proposal to make.

17.     Mr. Rodier and I spoke again on May 2, 2022. At that time, Mr. Rodier offered that he would not seek the employment agreements if CNN agreed to drop its request for Plaintiff's tax returns.  CNN declined that request.

18.     On May 4, 2022, at CNN's request, Judge Valle issued an order setting a telephonic hearing for May 6, 2022on CNN's motion to clarify the April 21 order .  *See* ECF No. 112.  During that hearing, I explained CNN's proposal to limit the production in response to Plaintiff's RFP No. 8 to the provisions containing any "incentives" provisions and sought clarity whether production of those provisions would constitute compliance with Judge Valle's ruling on that portion of Plaintiff's Motion to Compel.

19.     Judge Valle denied CNN's Motion to Clarify and instructed CNN to file objections pursuant to Fed. R. Civ. P. 72(a) to obtain any further review of the order on the parties' Motions to Compel.

20.     In support of its Objections to Judge Valle's rulings as to certain portions of CNN's Motion to Compel (ECF No. 53), CNN cites to complaints and counterclaims that Plaintiff Alan Dershowitz has filed in other recent defamation lawsuits.  Those same filings were discussed in CNN's Motions to Compel and during the April 21 Hearing (*see* April 21 Transcript at 113:13-23), and the documents are available on the public dockets of the courts in which they were filed.

Solely for the convenience of the Court, I attach copies of those filings as exhibits to this Declaration:

21.     Attached hereto as **Exhibit 1** is a true and correct copy of the Amended Counterclaims filed by Alan Dershowitz on June 3, 2020 in *Giuffre v. Dershowitz*, No. 1:19-cv-3377, ECF No. 127 (S.D.N.Y. June 3, 2020), as retrieved from the court's electronic filing system.

22.     Attached hereto as **Exhibit 2** is a true and correct copy of the First Amended Counterclaim filed by Alan Dershowitz on August 12, 2015 in *Edwards v. Dershowitz*, No. CACE-15-000072, Filing No. 30764726 (Fla. Broward Cty. Ct. Aug. 12, 2015), as retrieved from the court's electronic filing system.

23.     Attached hereto as **Exhibit 3** is a true and correct copy of the Verified Answer with Affirmative Defenses and Counterclaims filed by Alan Dershowitz on January 27, 2020 in *Boies v. Dershowitz*, No. 160874/2019, NYSCEF Doc. No. 2 (Sup. Ct. N.Y. Cty. Jan. 27, 2020), as retrieved from the court's electronic filing system..

24.     Attached hereto as **Exhibit 4** is a true and correct copy of the Amended Complaint filed by Alan Dershowitz on June 1, 2021 in *Dershowitz v. Netflix, Inc. et al*., No. 21-cv-21961, ECF No. 8 (S.D. Fla. June 1, 2021), as retrieved from the court's electronic filing system.

I declare under the penalties of perjury that the foregoing is true and correct.

Dated: May 9, 2022

_____

Katherine M. Bolger

# **<u>EXHIBIT 1</u>**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

ALAN DERSHOWITZ,

      Defendant.

Civil Action No. 19-cv-03377-LAP

ALAN DERSHOWITZ,

      Counterclaim Plaintiff,

v.

VIRGINIA L. GIUFFRE,

      Counterclaim Defendant.

**AMENDED COUNTERCLAIMS**

Defendant Alan Dershowitz ("Dershowitz") hereby asserts the following Amended Counterclaims to the Amended Complaint of Plaintiff Virginia Roberts Giuffre ("Giuffre") (ECF No. 117):

1.     Since 2014, Counterclaim Plaintiff Alan Dershowitz ("Dershowitz") and Counterclaim Defendant Virginia Roberts Giuffre ("Giuffre") and her lawyers – motivated by money and other improper factors – have engaged in a sustained campaign to subvert the judicial process for the purposes of disseminating outrageous, knowingly false and defamatory claims accusing Dershowitz of sexually abusing her when she was a minor. Dershowitz now brings this action for defamation in order to establish the truth – that he never met Giuffre – and to hold

Giuffre accountable for her defamatory claims and recover for the serious harm she has caused to his reputation, his business, and his health.

2.    Dershowitz never met Giuffre and never had sex with her. Prior to meeting her lawyers at Boies Schiller Flexner LLP, Giuffre – in accounts she gave to the FBI, her best friend, her boyfriend, and a journalist with whom she had a close relationship – had never included Dershowitz among the individuals she was allegedly trafficked to by Jeffrey Epstein. To the contrary, she wrote emails, a manuscript, and other material that made it clear that she *did not* have sex with Dershowitz. She then met her lawyers, who "pressured" her to falsely accuse Dershowitz, suggesting to her that she could make money by doing so.

3.    On December 30, 2014, Giuffre alleged for the first time that she had been sexually abused by Dershowitz as a minor in the early 2000s while he was a guest at properties owned by Epstein. She made these salacious false allegations in a public pleading in which she purportedly sought to intervene as a plaintiff in an ongoing Crime Victims' Rights Act lawsuit ("CVRA Action") brought against the government by victims of sexual abuse committed by Epstein, who alleged that the government had violated their rights by failing to timely inform them that it had entered into a non-prosecution agreement with Epstein. Giuffre falsely alleged in the pleading (the "CVRA Joinder Motion") that in addition to sexually abusing her himself, Epstein had "required [Giuffre] to have sexual relations with Dershowitz on numerous occasions while she was a minor, not only in Florida but also on private planes, in New York, New Mexico and the U.S. Virgin Islands[,]" and that, "in addition to being a participant in the abuse of [Giuffre] and other minors, Dershowitz was an eye-witness to the sexual abuse of many other minors by Epstein and several of Epstein's co-conspirators." Exhibit A at p. 4. Giuffre repeated and expanded upon these false

accusations against Dershowitz in a sworn declaration filed under seal in the same action on January 21, 2015. All of these accusations are categorically false and defamatory.

4.      Giuffre's accusations against Dershowitz in the CVRA Joinder Motion were stricken as a "sanction" by the Court pursuant to Fed. R. Civ. P. 12(f) as "impertinent" and "immaterial" because they were "unnecessary to the determination of whether [Giuffre] should be permitted to join [the original Petitioners'] claim that the Government violated their rights under the CVRA." Exhibit B at p. 5.

5.      On information and belief, the inclusion of the accusations against Dershowitz in the CVRA Joinder Motion was part of a broader conspiracy to subvert the judicial process for the purpose of making false claims against him in order to make a public example out of him, and extort private settlements from other, wealthier individuals associated with Epstein. Notably, the CVRA Joinder Motion asserted that Giuffre had been sexually abused by "many other powerful men, including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders," but publicly identified none of them, with the exception of Dershowitz, British Royal Prince Andrew, and a French modeling agency executive, Jean Luc Brunel. Ex. A at p. 4-6. She privately named these "powerful men" to her lawyers and in sealed depositions, but not publicly.

6.      The CVRA filing, and the lurid accusations against Dershowitz contained therein, generated massive media coverage. Upon information and belief, Giuffre or her lawyers either provided the media with copies of the CVRA Joinder Motion or directed them to the docket, in order to stimulate media coverage at a time of year when most people were on vacation, and long before the Epstein story was national news.

7.      In the years since making her original accusation against Dershowitz in the CVRA Joinder Motion, Giuffre and her lawyers have repeatedly reaffirmed, incorporated by reference, and otherwise affirmatively republished to new audiences the false and defamatory claims made in that filing, which, in turn, have been republished in the media on countless occasions, and in particular over the past year as public interest over the Epstein saga intensified.

8.      In addition, upon information and belief, Giuffre and her lawyers have spoken to reporters, repeating the substance of her defamatory allegations on an off the record basis, in order to promote the further dissemination of her false narrative regarding Dershowitz. Giuffre has undertaken these actions to enrich herself financially. Committed to her lie, and using Dershowitz's public invitation to sue as cover, Giuffre has now sued Dershowitz for defamation for calling her a liar. But Giuffre *is* a liar. She has told numerous provable lies about her age, who she has met, whether she had emails concerning Dershowitz, and other fabrications, in addition to her false accusations about sex with Dershowitz. Her lies concerning Dershowitz have caused tremendous damage to his personal and professional reputation, his business, his health and caused him emotional and physical pain and suffering. Through these counterclaims, he seeks to hold her accountable for that damage.

## PARTIES

9.      Dershowitz is a renowned criminal defense attorney and *Professor Emeritus* at Harvard Law School. He has authored more than 40 books and is a frequent public speaker on issues of criminal defense, constitutional law, First Amendment freedoms, and the Middle East.

10.      Giuffre is known as one of Epstein's accusers and has become a public figure by seeking media attention and accepting money for interviews in which she has made accusations against prominent men, including the false accusations against Dershowitz.

## JURISDICTION AND VENUE

11.      This is an action for damages in an amount in excess of the minimum jurisdictional limits of this Court.

12.      Insofar as this Court has subject matter jurisdiction over Giuffre's Complaint, it has supplemental jurisdiction over Dershowitz's Counterclaims pursuant to 28 U.S.C. § 1367.

13.      This Court has personal jurisdiction over Giuffre because she has voluntarily submitted to jurisdiction in the Southern District of New York by filing her Complaint there, and because she has caused tortious injury to Dershowitz in the Southern District of New York.

## FACTUAL ALLEGATIONS

14.      In or about 1996, Dershowitz began to develop a professional and academic relationship with Epstein, who was a patron of the arts and academia who would frequently host "salon"-type gatherings of academics, politicians, business leaders, and other influential individuals at his homes in New York, Florida, and elsewhere.   Dershowitz was a guest at some of these events and an occasional visitor to Epstein's properties.  He joined such distinguished guests as the President and Provost of Harvard, the Dean of the Kennedy School, and several distinguished professors, business leaders, and government officials.

15.      When Epstein learned that prosecutors in Florida were investigating him for alleged sex crimes, Epstein asked Dershowitz to join his legal defense team, and Dershowitz accepted. Ultimately, Epstein negotiated a non-prosecution agreement with federal prosecutors and agreed to plead guilty to state charges for soliciting a minor for prostitution and to register as a sex offender.

16.      In 2008, two women whom the government had previously identified as victims of sexual abuse by Epstein filed the CVRA Action, alleging that the United States Attorney's Office

for the Southern District of Florida had violated their rights under the CVRA, 18 U.S.C. § 3771, by failing to timely inform them that it had entered into the non-prosecution agreement with Epstein. *See Doe v. United States*, 9:08-cv-80736, Dkt. No. 435 at pp. 22-23 (S.D. Fla. Feb. 21, 2019).

17.     On December 30, 2014, counsel for Plaintiffs in the CVRA Action filed the Joinder Motion on behalf of Giuffre and another woman, seeking to have them added as Plaintiffs in the case.  Although it was not publicly known at the time, Boies Schiller Flexner LLP represented Giuffre in connection with the Joinder Motion, though David Boies subsequently falsely denied it.

18.     Giuffre and her lawyers alleged in the CVRA Joinder Motion that in addition to sexually abusing her himself, Epstein had "required [Giuffre] to have sexual relations with Dershowitz on numerous occasions while she was a minor, not only in Florida but also on private planes, in New York, New Mexico and the U.S. Virgin Islands[,]" and that, "in addition to being a participant in the abuse of [Giuffre] and other minors, Dershowitz was an eye-witness to the sexual abuse of many other minors by Epstein and several of Epstein's co-conspirators." Ex. A at p. 4.  Giuffre had not previously accused Dershowitz of having sex with her.  To the contrary, she has made statements – both orally and in writing – that directly contradicted her accusation.

19.     Giuffre further alleged in the CVRA Joinder Motion that she had been sexually abused by British Royal Prince Andrew, and "many other powerful men, including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders," none of whom were publicly identified (other than Dershowitz, Prince Andrew, and a French modeling agency executive, Jean Luc Brunel).  *Id.* at p. 4-6.

20.     In a sworn declaration filed under seal a few weeks after the Joinder Motion, Giuffre repeated and expanded upon her allegations against Dershowitz. *See* Exhibit C. She claimed in the declaration that she was 15 when she met Epstein, and that she had sex with Dershowitz at least six times between the ages of 16 and 19, and gave specific details of the alleged encounters, though no timeframes. *Id.* However, her employment records prove that she did not even meet Epstein until she was 17, and she later admitted that she was well over 18 when she claimed to have had sex with Epstein's friends. In submitting this sworn declaration, Giuffre committed perjury, suborned by her lawyers at Boies Schiller Flexner LLP.

21.     Giuffre's false accusations against Dershowitz in the CVRA Joinder Motion were stricken as a sanction by the Court pursuant to Fed. R. Civ. P. 12(f) as "impertinent" and "immaterial" because they were "unnecessary to the determination of whether [Giuffre] should be permitted to join [the original Petitioners'] claim that the Government violated their rights under the CVRA." Ex. B at p. 5.

22.     The circumstances of the CVRA Joinder Motion – from the timing of the filing, to the decision to publicly name Dershowitz but not the other prominent men, to the unusual amount of media coverage of the filing – strongly suggest that the accusation against Dershowitz was part of a larger conspiracy undertaken by Giuffre and her lawyers to subvert the judicial process for the purposes of making false claims against Dershowitz in order to make a public example out of him, and extort private settlements from other, wealthier individuals associated with Epstein, whose alleged misconduct was well outside the statute of limitations. Giuffre and her lawyers deliberately made these false allegations against Dershowitz in a court pleading in a misguided effort to shield Giuffre from liability for defamation under the litigation and fair report privileges. She and her

lawyers intended that the allegations contained in the CVRA Joinder Motion would be continuously repeated and widely disseminated by the media, which they were.

23. Around the same time that she publicly accused Dershowitz, Giuffre, through her lawyers at Boies Schiller Flexner LLP, privately made an accusation against Leslie Wexner, the billionaire founder and CEO of L Brands and owner of Victoria's Secret. David Boies personally met with Wexner's lawyer in what Wexner's lawyer and wife both described as a "shakedown". Although the statute of limitations had long expired for any legal action against Wexner, Boies and his partner described in detail the alleged sexual encounters between Giuffre and Wexner, including an alleged demand by Wexner that Giuffre wear Victoria's Secret-type lingerie during their encounters. Such an accusation, if made publicly, could have massively damaged Wexner and his company. No public accusation against Wexner was ever made. This means that Wexner either submitted to Giuffre and her lawyers' extortion conspiracy and paid the demanded hush money, or that David Boies came to disbelieve Giuffre's claims regarding Wexner. If the latter, the Boies firm suborned perjury when Giuffre later testified under oath in a sealed deposition that she was sexually trafficked to Wexner. Upon information and belief, Giuffre's lawyers also approached other wealthy individuals whose alleged misconduct was well beyond the statute of limitations, as part of an extortion and shake down conspiracy.

24. Giuffre's claims regarding Dershowitz are totally false, and have been disseminated with a knowledge of their falsity or a reckless disregard for the truth, and out of ill-will and spite.

25. Giuffre gave the first public account of her experiences with Epstein in a series of interviews with British tabloid journalist Sharon Churcher in 2011, which Churcher published via a series of articles in the *Daily Mail*. Giuffre was paid $160,000 for her story. Giuffre gave Churcher the names of prominent men she allegedly had sex with. The *Daily Mail* articles make

no mention of Dershowitz (except as an attorney for Epstein), because Dershowitz was not among the men with whom Giuffre claimed to have had sex. Churcher has confirmed that Giuffre never accused Dershowitz of having sex with her.

26.    At the same time she was speaking with Churcher, Giuffre was shopping the rights to a book she was writing about her time with Epstein. The manuscript of her book mentions Dershowitz, but only as a friend of Epstein's – ***not*** as someone with whom Giuffre had sex.

27.    An email exchange produced in discovery in a related litigation – which Giuffre unsuccessfully fought to keep private – explains how this came to be and constitutes smoking gun evidence of Giuffre's knowing and intentional fabrication of her allegations against Dershowitz. After telling her story to Churcher, Giuffre emailed Churcher in May 2011 to report that she was working towards a book deal and was "[j]ust wondering if you have any information on you from when you and I were doing interviews about the J.E. story. I wanted to put the names of some of these assholes, oops, I meant to say, pedo's, that J.E. sent me to. With everything going on my brain feels like mush and it would be a great deal of help." Exhibit D. Churcher replied: "***Don't forget Alan Dershowitz***….JE's buddy and lawyer…***good name for your pitch*** as he repped Claus Von Bulow and a movie was made about that case….title was Reversal of Fortune. We all suspect Alan is a pedo and ***tho no proof of that, you probably met him*** when he was hanging [out] with JE." *Id.* (ellipses in original; emphasis supplied).

--- On Wed, 11/5/11, Sharon.Churcher@mailonsunday.co.uk <Sharon.Churcher@mailonsunday.co.uk> wrote:

From: Sharon.Churcher@mailonsunday.co.uk <Sharon.Churcher@mailonsunday.co.uk>
Subject: Re: Good News!!
To: "Virginia Giuffre" <​                        ​>
Received: Wednesday, 11 May, 2011, 4:17 PM

Don't forget Alan Dershowitz. JE's buddy and lawyer..good name for your
pitch as he repped Claus von Bulow and a movie was made about that
case...title was Reversal of Fortune. We all suspect Alan is a pedo and tho
no proof of that, you probably met him when he was hanging put w JE

28.     Giuffre wrote back but did not inform Churcher that she was mistaken that there
was "no proof" of sexual misconduct by Dershowitz.  She did not do so because Churcher was
correct, and Giuffre had not reported having sex with Dershowitz.  Instead, she replied only:
"Thanks again [Sharon], I'm bringing down the house with this book!!!"  *Id.*

29.     Churcher has confirmed that Giuffre never accused Dershowitz of having sex with
her.  This evidence proves that Giuffre's claim that she had sex with Dershowitz is a fabrication
and she published her claim while knowing it was false, and after having been pressured by her
lawyers to name him.  Indeed, Giuffre has lied about these emails by falsely testifying under oath
that no such emails between her and Churcher about Dershowitz existed.  Her counsel, upon
becoming aware of Giuffre's false testimony, took no steps to correct the record.  Despite her
perjury having been suborned by her lawyers, she is responsible for her defamation.

30.     Around this same time, in the spring of 2011, Giuffre was interviewed by the FBI
regarding her time with Epstein.  At risk of criminal penalty for making a false statement to a
federal agent, she described in detail her time with Epstein and her allegations of being "lent out"
to Epstein's friends, who she named, but ***never accused Dershowitz***.  This and the other evidence
described above corroborates the account of Giuffre's former best friend, who confirmed that
Giuffre only accused Dershowitz after she was pressured by her lawyers to do so.

31.     Giuffre's credibility has been completely destroyed. She has repeatedly and deliberately lied and committed perjury for money.  Some of these lies were made before she met her lawyers but some were made after she met her lawyers, who pressured and suborned her to lie for their own and her profit.  Her lawyers were fully aware of her history of lying when they submitted and vouched for her perjured affidavits.  In addition to the false allegations against Dershowitz, she has fabricated allegations and far-fetched stories against a number of high-profile individuals. For example, she has described in great detail having dinner with and closely observing former Vice President Al Gore and his wife Tipper on Epstein's Caribbean island and claims she saw Vice President Gore and Epstein walk on the beach of the island together.  The Gores did not know Epstein and have never set foot on his island.  When Dershowitz directly asked Boies to call Al Gore, his former client, to confirm that Giuffre had lied when she claimed to have met the Gores on Epstein's Caribbean island, Boies refused and responded: "I'm not vouching for her general credibility.  I know she's wrong about you and that's enough."

32.     Giuffre has also alleged that she was forced to have sex with former Israeli Prime minister Ehud Barack, former New Mexico Governor Bill Richardson, former Democratic Senate Majority Leader Sen. George Mitchell, the late MIT computer scientist Marvin Minsky, billionaire Thomas Pritzker of Hyatt Hotels, hedge fund manager Glenn Dubin, MC2 model agency cofounder Jean Luc Brunel, England's Prince Andrew, and also an unnamed "prince," "foreign president," and owner of "a French hotel chain."  Many of these accused men have issued denials and disclaimers stating that they have never even met Giuffre.  While Dershowitz has no knowledge of the truth or falsity of any or all of these accusations, Giuffre has offered no proof other than her own uncorroborated word, which has been thoroughly discredited by her proven lies

11

about the Gores, President Clinton, her age, the absence of emails naming Dershowitz, and other

matters.

33.     Perhaps one of the most prominent denials to Giuffre's fabrications is from

President Bill Clinton.  Giuffre's statements – some under oath, and others made in a 2011 *Daily*

*Mail* article – claimed that she was on Little St. James Island with former President Clinton:

> Clinton was present on the island at a time when I was also present on the island . .
> . . Maxwell went to pick up Bill in a huge black helicopter … Bill had the Secret
> Service with him and I remember him talking about what a good job she did… We
> all dined together that night. Jeffrey was at the head of the table. Bill was at his left.
> I sat across from him.  Emmy Tayler, Ghislaine's blonde British assistant sat at my
> right.  Ghislaine was at Bill's left and at the left of Ghislaine there were two olive-
> skinned brunettes who'd flown in with us from New York…. Maybe Jeffrey
> thought they would entertain Bill, but I saw no evidence that he was interested in
> them.  He and Jeffrey and Ghislaine seemed to have a very good relationship.  Bill
> was very funny.

Exhibit E; Exhibit F.  A statement released by President Clinton on July 8, 2019 directly refutes

these claims and reads:

> In 2002 and 2003, President Clinton took a total of four trips on Jeffrey Epstein's
> airplane: one to Europe, one to Asia, and two to Africa, which included stops in
> connection with the work of the Clinton Foundation. Staff, supporters of the
> foundation, and his Secret Service detail traveled on every leg of every trip. He had
> one meeting with Epstein in his Harlem office in 2002, and around the same time
> made one brief visit to Epstein's New York apartment with a staff member and his
> security detail. He's not spoken to Epstein in well over a decade, **and he has never
> been to Little St. James Island**, Epstein's ranch in New Mexico, or his residence
> in Florida.

Exhibit G (emphasis supplied).

34.     After being falsely accused by Giuffre, Dershowitz assembled travel records, credit

card statements, phone records, and other documentation which prove that Dershowitz could not

have been in the places during the time period when Giuffre claims to have had sex with him.

These documents were inspected for authenticity by former FBI Director Louis Freeh. When

Dershowitz presented this documentation to Giuffre's lawyer, David Boies, he concluded that it

was "impossible" for Dershowitz to have been where Giuffre claims they had sex, and that her claims were "wrong," "simply wrong." Nevertheless, Boies and his firm continued to persist in advancing Giuffre's false claims, and in submitting perjurious affidavits.

35. Since accusing Dershowitz in the CVRA Joinder Motion in December 2014, Giuffre and her lawyers have repeatedly and publicly outside of court reaffirmed her false claims, directing the media and the public to her allegations in the CVRA Joinder Motion and making clear that she stands by those accusations against Dershowitz. The full scope of Giuffre's and her lawyers' efforts to promote media coverage of her false accusations against Dershowitz through confirming and repeating those false accusations to members of the media, with the intention that they publish those claims to mass audiences, is not yet known and will be the subject of discovery in this case.

36. Giuffre has never retracted any part of her accusations, even the central claim that she was a minor at the time she allegedly had sex with Dershowitz, a claim which has since been conclusively proven to be false by Giuffre's own admissions and employment records, and which is conspicuously absent from the allegations of Giuffre's Complaint in this case. On information and belief, Giuffre continues to call Dershowitz a "pedophile" and "child rapist" and "child molester" despite her own admissions and her own records that prove she was an adult when she falsely claimed to have had sex with him.

37. On November 28, 2018, the *Miami Herald* published an interview with Giuffre as part of a lengthy article discussing the preferential treatment Epstein allegedly received from the criminal justice system. Exhibit H. Giuffre and her lawyers at Boies Schiller Flexner LLP provided the reporter, Julie Brown, with a copy of Giuffre's sworn declaration in the CVRA action (attached as Ex. C hereto and described in Paragraph 20), which – unlike the CVRA Joinder

13

Motion – remained under seal, intending that Brown publish details of the sealed declaration, which she did. The article quoted at length from Giuffre's declaration, including publishing, in particular, the details of her accusations against Dershowitz. This is false and defamatory. This was not the only time that Giuffre and her lawyers at Boies Schiller Flexner LLP provided sealed court records to the media. Later, in July 2019, in anticipation of an order by the Second Circuit unsealing documents in the related *Giuffre v. Maxwell* case – including the smoking gun Churcher emails referenced above – Giuffre's lawyers at Boies Schiller Flexner LLP supplied Brown and *New Yorker* reporter Connie Bruck with selected documents, still under seal, which they perceived as favorable to Giuffre. Brown and Bruck thereafter pressured Dershowitz to provide them with the Churcher emails and other evidence establishing his innocence even though they remained under seal, which Dershowitz refused to do.

38.     Brown has confirmed that Giuffre told her in their interview which led to the publication of the November 28, 2018 *Miami Herald* article that she (Giuffre) had sex with Dershowitz. In a videotaped interview that the *Herald* posted to its website as part of the story, "Giuffre described how Epstein and [Ghislaine] Maxwell began grooming her – not just to perform massages, but to sexually pleasure them and others[,]" including "politicians and academics and royalty." When she mentioned "academics," the video showed a picture of Dershowitz. Giuffre and her lawyers were the sources of this false and defamatory publication.

39.     Upon information and belief, before filing her Complaint against Dershowitz in this action, Giuffre and/or her lawyers at Boies Schiller Flexner LLP, acting in their capacity as attorneys for Giuffre, provided an advance copy of the Complaint to Brown to induce Brown to publish a story about the lawsuit on the same day it was filed, April 16, 2019. Exhibit I. In a statement issued that same day outside of any legal proceeding and published in the *Miami Herald*

14

and other news outlets, Giuffre stated, in reference to her Complaint against Dershowitz: "As my complaint shows, my abusers have sought to conceal their guilt behind a curtain of lies. My complaint calls for the accounting to which I, and their other victims, are entitled." *Id.* This statement was later provided to the television program The View, which read it on air during an appearance by Dershowitz on that show on May 2, 2019. Exhibit J. Accusing Dershowitz out of court of being one of her abusers is false and defamatory.

40. Since filing the Complaint in this action, Giuffre and her lawyers at Boies Schiller Flexner LLP have continued to make public, out of court statements falsely accusing Dershowitz of participating in the sexual abuse of Giuffre. For example, in response to the Court's ruling disqualifying Boies Schiller Flexner LLP from representing Giuffre in this action, on October 16, 2019, Giuffre issued a statement which referred to Dershowitz as a "co-conspirator" of Epstein. Exhibit K. This is false and defamatory.

41. Giuffre and her lawyers also served as a source for a lengthy *New Yorker* profile of Dershowitz published on August 5, 2019, and on information and belief, prior to the publication of the article, falsely stated to the article's author, Connie Bruck, that Giuffre had sex with Dershowitz, intending that the *New Yorker* publish the accusation, which it did. Ex. J. This is false and defamatory.

42. Clearly, Giuffre has engaged in a campaign to maliciously disparage and attack Dershowitz, and over the years, has made a number of defamatory statements about Dershowitz, either herself, or speaking through her authorized agents. For example:

    a. On or about May 27, 2020, in the Netflix documentary series, *Jeffrey Epstein: Filthy Rich*, approximately seven minutes and six seconds into the fourth episode of the series, entitled "Finding Their Voice," Giuffre states on camera: "I was with

Alan Dershowitz multiple times—at least six that I can remember. Well, I was trafficked to-to Alan Dershowitz, from Epstein. Epstein made me, essentially, forced me, to-to have sex with him. Every time I was trafficked was at Epstein or Ghislaine's behest. He's denied being with me. Is one of us telling the truth? Yes. Is that person me? Yes."

b. On or about July 31, 2019, in *The American Lawyer*, David Boies, in his capacity as Giuffre's attorney and authorized agent, stated: "[T]he problem is that [Dershowitz] believes that if he quacks loudly enough and outrageously enough, people will focus on what he's saying and not the underlying conduct… [H]e's desperate to detract attention from the underlying accusation. People who have good defenses present those defenses. Those who don't engage in ad hominem attacks." Exhibit L.

c. On or about July 19, 2019, in *New York Magazine*, in his capacity as an attorney and authorized agent for Giuffre and other Epstein accusers, Boies stated: "This is simply more evidence of how desperate Mr. Dershowitz is to distract attention from the evidence of his misconduct. . . . Mr. Dershowitz's misconduct, and his lies about it, are documented in sworn affidavits, sworn depositions, and contemporaneous documents… I can understand why Mr. Dershowitz wants to distract attention from the facts…" Exhibit M.

d. On or about July 17, 2019, in *Vanity Fair*, in his capacity as Giuffre's attorney and authorized agent, Boies stated: "Epstein's former employees said in sworn depositions that they saw Dershowitz at the house multiple times without his wife.

16

'This Olga woman doesn't exist. Epstein's barely kept women around who were over 25. It's a figment of Alan's imagination.'"   Exhibit N.

e.   On or about July 7, 2019, outside the Manhattan federal courthouse, in his capacity as Giuffre's attorney and authorized agent, Boies stated: "Virginia sued Ms. Maxwell in the Southern District of New York for her participation in the sex trafficking.  She is currently suing Alan Dershowitz for his participation in the sex trafficking."

f.   On or about July 5, 2019, in the *Miami Herald*, in his capacity as Giuffre's attorney and authorized agent, Boies stated, in reference to Dershowitz: "It's very dangerous to take one position publicly and another position in court.  Eventually, both the public and the court figure out that you're lying and you lose your credibility in both forums and that's what he has been doing - trying to take one position publicly and another in court - and they are now clashing."  Exhibit O.

g.   On or about December 18, 2018, in the *New York Daily News*, in his capacity as an attorney and authorized agent for Giuffre and other Epstein accusers, Boies stated: "Alan Dershowitz's absurd attacks... are consistent with his pattern of attacking every lawyer who has represented women who have accused him of sexual abuse… This is simply a pattern where he thinks if he is loud enough and crazy enough it will distract attention from what he's done."  Exhibit P.

43.   Upon information and belief Giuffre and her attorneys at Boies Schiller Flexner LLP have made other defamatory statements and engaged in further tortious conduct that Dershowitz intends to document during discovery and through the unsealing of documents in collateral matters.

## COUNT ONE – DEFAMATION

44.     Dershowitz realleges and incorporates herein by reference each of the prior paragraphs.

45.     Giuffre has conspired with her lawyers to publish her false and defamatory claims of and concerning Dershowitz with a knowing or reckless disregard of their falsity.  She has done so with the specific intent and design that her statements be a source for the media so that the media will publish her false allegations of and concerning  Dershowitz that he had sex with her while she was underage as part of Epstein's criminal sex trafficking of minors.  Giuffre has falsely and with a knowing and reckless disregard of falsity and acting out of ill-will and spite publicly labelled Dershowitz as a child rapist and molester.

46.     Giuffre's campaign of defamation against Dershowitz, assisted and promoted by her lawyers, consists of a combination of: (i) out of court statements and; (ii) statements made in pleadings, including but not limited to the CVRA Joinder Motion, Giuffre's declaration in the CVRA Action, and the Complaint in this action, which were knowingly false and instituted with malice of the constitutional and common law varieties, for the purposes of publicly disseminating libelous statements about  Dershowitz via media statements which refer to those pleadings, and causing the repeated republication of her false allegations. In addition, Giuffre, assisted and promoted by her lawyers, has defamed Dershowitz by making direct statements to the media and public untethered to any court proceeding.

47.     Giuffre is liable for the defamatory statements of her authorized agents.

48.     Giuffre's false allegations constitute libel.

49.     Giuffre's false allegations constitute libel per se, including that they: (i) accused Dershowitz of a crime; (ii) exposed him to public contempt, ridicule, aversion and disgrace, and

induced an evil opinion of him in the minds of right-thinking persons; and (iii) tended to injure

him in his professional capacity as a legal scholar and civil libertarian.

50.    Giuffre intended her false statements to be widely published and disseminated on

television, through newspapers, by word of mouth, and on the internet.  As she intended, Giuffre's

statements were published and disseminated around the world.

51.    As a result of Giuffre's campaign to spread malicious lies accusing  Dershowitz of

being a sexual predator, pedophile, abuser, child molester and other negative epithets,  Dershowitz

has suffered substantial damages in the form of personal and professional reputational harm, lost

business opportunities, emotional harm, embarrassment, humiliation, and pain and suffering in an

amount to be proven at trial.

### COUNT TWO - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52.    Dershowitz realleges and incorporates herein by reference each of the prior

paragraphs.

53.    Giuffre has engaged in extreme and outrageous conduct in engaging in a campaign

of lies, disparagement, defamation, harassment, intimidation, and maliciousness directed at

Dershowitz that is beyond the bounds of decency and not tolerated in civilized society.

54.    By engaging in the aforementioned conduct, Giuffre intended to cause, or

disregarded a substantial probability of causing, severe emotional distress to Dershowitz, and did

in fact cause severe emotional distress to Dershowitz.

55.    There exists a causal connection between the aforementioned conduct and the

injury and damages suffered by Dershowitz.

56.    As a result of said conduct Dershowitz has suffered and continues to suffer from

severe emotional distress including anxiety, stress, mental anguish, and the physical effects

therefrom, medical conditions including but not limited to cardiac conditions, and other ailments, precipitated by the harassment, disparagement, and other tortious conduct by Giuffre.

## **JURY DEMAND**

Dershowitz demands a jury trial on all issues so triable in this action.

**WHEREFORE,** Counterclaim Plaintiff **ALAN DERSHOWITZ** respectfully seeks the following relief: (a) a judgment awarding compensatory damages; (b) punitive damages; (c) attorney's fees; (d) costs; (e) such other and further relief as to this Court may seem just and proper.

Respectfully submitted,

ALAN DERSHOWITZ,

By his attorneys,

/s/ Howard M. Cooper
Howard M. Cooper (MA BBO# 543842)
(*pro hac vice*)
Christian G. Kiely (MA BBO# 684308)
(*pro hac vice*)
Kristine C. Oren (MA BBO# 705730)
(*pro hac vice*)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
ckiely@toddweld.com
koren@toddweld.com

/s/ Imran H. Ansari
Arthur L. Aidala (S.D.N.Y. Bar No. ALA-0059)
Imran H. Ansari (S.D.N.Y. Bar No. IHA-1978)
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
iansari@aidalalaw.com
aidalaesq@aidalalaw.com

20

Dated:  June 3, 2020

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing was sent via the Court's electronic filing system and served to all counsel of record on June 3, 2020.

<u>/s/ Kristine C. Oren</u>
Kristine C. Oren

# **<u>EXHIBIT 2</u>**

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA

Case No.: CACE 15-000072

BRADLEY J. EDWARDS and PAUL G.
CASSELL,

      Plaintiffs/Counterclaim Defendants,

vs.

ALAN M. DERSHOWITZ,

      Defendant/Counterclaim Plaintiff.

_____/

## DEFENDANT/COUNTERCLAIM PLAINTIFF
## ALAN M. DERSHOWITZ'S FIRST AMENDED COUNTERCLAIM

Defendant/Counterclaim Plaintiff, Alan M. Dershowitz ("Dershowitz"), by and through his undersigned counsel, hereby asserts this First Amended Counterclaim for defamation on knowledge, information and belief against Plaintiffs/Counterclaim Defendants Paul G. Cassell ("Cassell") and Bradley J. Edwards ("Edwards"), based on their false and defamatory statements about Dershowitz made both in court pleadings and directly to the press and others totally outside of any judicial proceeding.

As detailed below, Cassell and Edwards falsely accused Dershowitz in publicly filed court documents of engaging in criminal conduct by having sex with a minor, and then alerted the press to the false and defamatory statements included in the pleadings. These statements are not privileged because, among other things, they were totally irrelevant to the proceeding before the court and were made in bad faith, with the intent to injure Dershowitz. Indeed, United States District Judge Kenneth Marra has held that the "lurid" allegations about Dershowitz were "unnecessary," "immaterial," and "impertinent," and ordered them stricken from the record.

Edwards and Cassell have also accused Dershowitz of the same criminal conduct in direct and unqualified statements to the press and others, entirely separate from the pleadings referenced above.  Among other such statements, Cassell told ABC News in writing and without qualification that Dershowitz had sexually abused a minor.  Specifically, in a newly disclosed email to ABC News, Cassell stated that he represents "*the young woman who was sexually abused by Prince Andrew and Alan Dershowitz*" (emphasis added).  Edwards and Cassell have also made other false and defamatory statements to the press and otherwise by asserting directly or by implication that Dershowitz, in fact, sexually abused a minor.

## FACTUAL BACKGROUND

**The Parties**

1.     Dershowitz is the Felix Frankfurter Professor Emeritus of Law at Harvard Law School.  Dershowitz is a graduate of Brooklyn College and Yale Law School who joined the Harvard Law School faculty at age 25 after clerking for Judge David Bazelon and Justice Arthur Goldberg.

2.     Dershowitz is one of many attorneys who represented Jeffrey Epstein in connection with a criminal investigation conducted by federal and local law enforcement officials, including with respect to the negotiation of a Non-Prosecution Agreement entered into between Mr. Epstein and the United States Attorney's Office for the Southern District of Florida in 2007.

3.     Cassell is a former United States District Court Judge for the District of Utah and is a law professor at the University of Utah.  Cassell has appeared as counsel in several litigation matters that involve crime victims' rights, including in matters that have generated significant national media attention.  Cassell has been admitted to practice *pro hac vice* in at least one case

pending in federal court in Florida, which has generated substantial national publicity and which is defined below as the "Federal Action."

4.      Edwards is a resident of the State of Florida and is an attorney in the State of Florida.  Edwards formerly served as an attorney in the Broward County State's Attorney Office. Edwards has appeared as counsel in several litigation matters that involve crime victims' rights, including the "Federal Action" defined below and other matters that have generated substantial national publicity.

**The Federal Action**

5.      On July 7, 2008, Edwards initiated a civil lawsuit on behalf of "Jane Doe #1" against the United States of America (the "Government") under the Crime Victims' Rights Act, 18 U.S.C. § 3771 (the "CVRA") captioned *Jane Doe #1, et al. v. United States*, Case No. 08-cv-80736-MARRA/JOHNSON (S.D. Fla.) (the "Federal Action").

6.      According to the "Emergency Petition" filed in the Federal Action (DE #1), Jane Doe #1 is an adult who allegedly "was a victim of federal crimes committed by Jeffrey Epstein" ("Epstein") within the jurisdiction of the Southern District of Florida when Jane Doe #1 was a minor, including but not limited to sex trafficking of children by fraud; use of a means of interstate commerce to entice a minor to commit prostitution; and wire fraud.  The Emergency Petition alleged that the Government had violated Jane Doe #1's rights under the CVRA in connection with its plea negotiations with Epstein.

7.      At a hearing held on July 18, 2008 (DE #15), the court in the Federal Action granted Edwards's oral motion to join "Jane Doe #2" as an additional plaintiff in the Federal Action.   Like Jane Doe #1, Jane Doe #2 alleges that she was a victim of federal crimes

committed by Epstein when she was a minor and that the Government violated her rights under the CVRA.

8.      Cassell filed a motion for limited appearance in the Federal Action as co-counsel on behalf of Jane Doe #1 and Jane Doe #2 on July 28, 2008 (DE # 16), which was granted on July 30, 2008 (DE #18).

9.      On March 21, 2011, Jane Doe #1 and Jane Doe #2 filed a "Motion for Finding of Violations of the Crime Victims' Rights Act and Request for a Hearing on Appropriate Remedies" (DE #48).  That filing alleged that the actions of the Government in connection with its investigation of Epstein and the execution of the Non-Prosecution Agreement violated Jane Doe #1 and Jane Doe #2's rights under the CVRA, including "the right to confer with prosecutors and the right to fair treatment."  Jane Doe #1 and Jane Doe #2 further argued that, in the event that the Court agreed that the Government committed one or more CVRA violations, the appropriate remedy would be to invalidate the Non-Prosecution Agreement.

10.     By order dated September 26, 2011 (DE #99), the court held that the Federal Action could go forward under the CVRA but deferred a ruling, pending further factual development, as to whether the CVRA's rights attached to Jane Doe #1 and Jane Doe #2 and whether the Government violated those rights.

11.     The Federal Action remains pending.

## COUNT I – DEFAMATION
## (FALSE ALLEGATIONS IN JOINDER MOTION)

12.     Dershowitz re-alleges Paragraphs 1-11 of this Counterclaim as if fully set forth herein.

13.     On December 30, 2014, Cassell and Edwards filed a pleading in the Federal Action titled "Jane Doe #3 and Jane Doe #4's Motion Pursuant to Rule 21 for Joinder in Action"

(DE #279) (the "Joinder Motion").  Edwards and Cassell filed the Joinder Motion on the public

docket in the Federal Action, without any accompanying motion to seal.

14.     In a section titled "Jane Doe #3's Circumstances," the Joinder Motion alleges that

Jane Doe #3 first met Epstein in 1999 and that Epstein "kept Jane Doe #3 as his sex slave from

about 1999 through 2002, when she managed to escape to a foreign country."

15.     Later in the section titled "Jane Doe #3's Circumstances," the Joinder Motion

alleges that "Epstein also sexually trafficked the then-minor Jane Doe [#3], making her available

for sex to politically-connected and financially-powerful people."  In several paragraphs that

have since been ordered stricken from the record, the Joinder Motion alleges that Epstein

required Jane Doe #3 to have sexual relations with Dershowitz in certain specific locations,

among other allegations of criminal conduct by Dershowitz.  The only other purportedly

"politically-connected and financially-powerful people" who Edwards and Cassell identified by

name in the Joinder Motion as having had sexual relations with Jane Doe #3 were Prince

Andrew, Duke of York ("Prince Andrew"); Ghislaine Maxwell ("Maxwell"); and Jean Luc

Brunel ("Brunel") – all of whom had previously been identified by name by Jane Doe #3 in

media interviews.  The Joinder Motion's allegations about Prince Andrew have also now been

stricken from the record because they should never have been included in the pleading.

16.     In the signature block of the Joinder Motion, Cassell self-identifies as being

affiliated with the "S.J. Quinney College of Law at the University of Utah" (the "Law School").

Unlike in other pleadings submitted in the Federal Action (*e.g.*, DE #251), Cassell did not

include a footnote with his signature on the Joinder Motion containing a disclaimer that "[t]he

daytime business address indicated above is for identification purposes and does not imply

institutional endorsement by the University of Utah of the legal positions advanced in this

pleading." By omitting the disclaimer from the Joinder Motion, Cassell by implication represented that the University of Utah somehow endorsed the positions advanced in that pleading.

17. In an email exchange after the filing of the Joinder Motion, Cassell asked a reporter not to identify him as being associated with the firm of Hatch, James and Dodge. Instead, he referred the reporter to the Joinder Motion for his "identification on this (last page – University of Utah law professor). This email address and Univ. of Utah identification is the proper one." In doing so, Cassell again attempted to cloak the Joinder Motion with the authority and approval of the University of Utah.

18. On information and belief, after the filing of the Joinder Motion, Edwards and Cassell alerted one or more media outlets that the pleading had been filed, with the intent to generate publicity about their sensational and gratuitous allegations. Edwards and Cassell also sent copies of the Joinder Motion to many reporters. Over the next several days, national and international media widely reported on the allegations asserted in the Joinder Motion and specifically focused on Dershowitz, who Edwards and Cassell chose to identify specifically by name in contrast to the generic references to other unnamed "politically-connected and financially-powerful people" with whom Jane Doe #3 allegedly had sexual relations.

19. On April 7, 2015, Judge Marra of the United States District Court for the Southern District of Florida issued an order ruling on Jane Doe #3's request to join the Federal Action. In addition to denying that request, Judge Marra held that the "lurid" allegations included in the Joinder Motion about Dershowitz were "unnecessary," "immaterial," and "impertinent" to the Federal Action. Judge Marra ordered the allegations stricken from the record. Although Judge Marra held that the remedy of striking was "sanction enough," he also

made a point of reminding Jane Doe # 3's attorneys (*i.e.*, Edwards and Cassell) of their obligations under Rule 11 of the Federal Rules of Civil Procedure, which prohibits filings made for an improper purpose. In a supplemental order also issued on April 7, 2015, Judge Marra limited public access to the stricken materials.

20.     The allegations asserted against Dershowitz in the Joinder Motion – which was drafted, signed and filed by Edwards and Cassell – were defamatory per se in that they accuse Dershowitz of committing numerous and heinous criminal offenses constituting felonies and of engaging in conduct that, if committed, would be incompatible with the proper exercise of his profession as an attorney and law professor.

21.     The allegations asserted against Dershowitz in the Joinder Motion – which was drafted, signed and filed by Edwards and Cassell – also were defamatory because they tended to expose Dershowitz to hatred, ridicule and contempt; tended to injure Dershowitz in his business and occupation as a lawyer and law professor; and tended to injure his sterling personal and professional reputations.

22.     The allegations about Dershowitz in the Joinder Motion are and were false, and Edwards and Cassell knew that there was no factual basis for these allegations at the time they drafted, signed and filed the Joinder Motion.

23.     Alternatively, at the time they drafted, signed and filed the Joinder Motion, Edwards and Cassell showed a reckless disregard for the falsity of the allegations levelled against Dershowitz. Prior to filing the Joinder Motion, neither Edwards nor Cassell ever contacted Dershowitz about the allegations asserted against Dershowitz in the Joinder Motion – *i.e.*, that Dershowitz had sexual contact with Jane Doe #3; that Dershowitz witnessed sexual abuse of minors by Epstein and Epstein's associates; and that Dershowitz negotiated the Non-

Prosecution Agreement for Epstein to include a provision that protected himself against criminal prosecution in Florida for sexually abusing Jane Doe #3. Nor did anyone acting on behalf of Edwards or Cassell contact Dershowitz about these allegations. Edwards and Cassell also knew or should have known that, prior to the filing of the Joinder Motion in December 2014 – and unlike the allegations included in the Joinder Motion about Prince Andrew, Maxwell and Brunel – Jane Doe #3 had never raised these allegations about Dershowitz to any governmental authority or in any court filing or media interview.

24.     As held by Judge Marra, the false and defamatory allegations about Dershowitz that Cassell and Edwards included in the Joinder Motion are wholly irrelevant to any of the legal issues that Jane Doe Nos. 1-4 contend are in dispute in the Federal Action or with respect to the Joinder Motion. More specifically, the false and defamatory allegations about Dershowitz have no bearing on (a) whether Jane Doe #3 was a "victim" of a federal crime perpetrated by Epstein, within the meaning of 18 U.S.C. § 3771(e); (b) whether Jane Doe #3 is properly joined as an additional plaintiff to the Federal Action; (c) whether Jane Doe #1 and Jane Doe #2 are entitled to the production of certain documents by the Government in the Federal Action; (d) whether the Government complied with its obligations under the CVRA in connection with the Non-Prosecution Agreement; (e) whether Epstein's alleged victims have rights under the CVRA or whether such rights were violated by the Government; or (f) the nature of the communications between and among Epstein, the Government and Epstein's alleged victims during the plea negotiations. Thus, the "lurid" allegations that Edwards and Cassell included in the Joinder Motion about Dershowitz were wholly "unnecessary," "immaterial," and "impertinent" to the Federal Action, as has been held by Judge Marra in an order striking the allegations from the record.

25.     By including the irrelevant, defamatory and false allegations about Dershowitz in the Joinder Motion and then alerting one or more media outlets that the pleading had been filed, Edwards and Cassell acted in bad faith and with an improper purpose – namely, to generate national and international media attention for the Federal Action and for themselves at the expense of injuring Dershowitz's sterling professional and personal reputations and also to the detriment of their own clients' best interests, which would have been better served by focusing on the relevant legal issues in the Federal Action.  This bad faith and improper purpose is further evidenced by (a) Edwards's and Cassell's gratuitous decision to identify Dershowitz by name in the Joinder Motion despite referring generically to other unnamed "politically-connected and financially-powerful people" with whom Jane Doe #3 has purportedly had sexual relations, which empowered media outlets also to name Dershowitz specifically in their coverage of the Joinder Motion even while Edwards and Cassell have attempted to hide behind the litigation privilege; and (b) Cassell's attempt to cloak the Joinder Motion with credibility by using the Law School's name in his signature block without his standard disclaimer language clarifying that the Law School was not endorsing the contents of the Joinder Motion.

26.     Alternatively, by including the irrelevant, defamatory and false allegations about Dershowitz in the Joinder Motion and then alerting one or more media outlets that the pleading had been filed, Edwards and Cassell acted with ill will and personal and professional animosity towards Dershowitz and with the intent of injuring his reputation.

27.     In these circumstances, neither the litigation privilege nor any other common law or constitutional privilege shields Edwards and Cassell from liability for including the irrelevant, false and defamatory allegations about Dershowitz in the Joinder Motion and then alerting one or more media outlets that the pleading had been filed.

28.     By including the irrelevant, defamatory and false allegations about Dershowitz in the Joinder Motion and then alerting one or more media outlets that the pleading had been filed, Edwards and Cassell caused injury in fact to Dershowitz, who has suffered and continues to suffer substantial damages in an amount to be determined at trial, including but not limited to monetary losses in the form of lost clients and lost speaking engagements, as well as long-term injury to his professional reputation among his peers, potential clients and the general public.

29.     By including the irrelevant, defamatory and false allegations about Dershowitz in the Joinder Motion and then alerting one or more media outlets that the pleading had been filed, Edwards and Cassell acted willfully, wantonly and recklessly and intentionally disregarded Dershowitz's rights, warranting the imposition of punitive damages.

**COUNT II – DEFAMATION**
**(EXTRA-JUDICIAL STATEMENTS)**

30.     Dershowitz re-alleges Paragraphs 1-29 of this Counterclaim as if fully set forth herein.

31.     Since the filing of the Joinder Motion on December 30, 2014, Cassell and Edwards have spoken and communicated both on and off on the record with numerous journalists and members of the media.   In doing so, Cassell and Edwards have committed independent acts of defamation and defamation-by-implication against Dershowitz, separate and apart from the outrageous, false and defamatory allegations included in the Joinder Motion that they drafted, signed and filed.   Most egregiously, Cassell and Edwards have stated to the media, without qualification, that Dershowitz committed the criminal conduct alleged in the Joinder Motion.

32.     On or about January 2, 2015, Edwards and Cassell issued the following statement to certain media outlets:

10

Out of respect for the court's desire to keep this case from being litigated in the press, we are not going to respond at this time to specific claims of indignation by anyone. As you may know, we are litigating a very important case, not only for our clients but crime victims in general. We have been informed of Mr. Dershowitz's threats based on the factual allegations we have made in our recent filing. *We carefully investigate all of the allegations in our pleadings before presenting them. We have also tried to depose Mr. Dershowitz on these subjects, although he has avoided those deposition requests.* Nevertheless, we would be pleased to consider any sworn testimony and documentary evidence Mr. Dershowitz would like to provide which he contends would refute any of our allegations.

The point of the pleading was only to join two of our clients in the case that is currently being litigated, and while we expected an agreement from the Government on that point, we did not get it. That disagreement compelled us to file our motion. We intend only to litigate the relevant issues in Court and not to play into any sideshow. We feel that is in our clients' best interest and consequently that is what we are doing.

We have every intention of addressing all of the relevant issues in the course of proper legal proceedings. Toward that end we have issued an invitation (a copy of which is attached below) to Alan Dershowitz to provide sworn testimony and any evidence he may choose to make available regarding the facts in our recent pleading that relate to him. The invitation has been extended by Jack Scarola, who is familiar with the issues. We would obviously welcome the same cooperation from Prince Andrew should he choose to avail himself of the same opportunity.

Paul Cassell and Brad Edwards, co-counsel for Jane Doe #3

(emphases added) ("invitation" omitted).  Various national and international media outlets re-published this extra-judicial statement by Cassell and Edwards, in whole or in part, including but not limited to *Business Insider*, *CNN*, *The Wall Street Journal*, *The Salt Lake Tribune*, *KSL Newsradio*, *The Huffington Post*, *DailyMail.com*, and *New York Daily News*.

33.     Certain media outlets accurately and fairly paraphrased the extra-judicial statement released by Cassell and Edwards on January 2, 2015 as stating that Cassell and Edwards had carefully investigated the specific allegations asserted against Dershowitz in the Joinder Motion.  For example, in an article first published on January 2, 2015 and available online at http://blogs.wsj.com/law/2015/01/02/dershowitz-im-an-innocent-victim-of-an-

extortion-conspiracy/, the *Wall Street Journal* wrote that, "[i]n a statement Friday, Mr. Cassell said the allegations in the motion were truthful, but declined to discuss what steps he and his co-counsel, Mr. Edwards, took to verify them."  Similarly, in an article first published on January 3, 2015 and available online at http://www.nytimes.com/2015/01/04/us/prince-andrew-and-alan-dershowitz-are-named-in-suit-alleging-sex-with-minor.html?referrer=&_r=0, the *New York Times* wrote that "Mr. Cassell said in a statement on Saturday that the lawyers carefully investigated all of the allegations in their pleadings before presenting them."  Thus, Edwards's and Cassell's extra-judicial statement of January 2, 2015 had exactly the impact that they intended of leading a reasonable reader to conclude that they were representing that they had carefully investigated the specific allegations asserted against Dershowitz in the Joinder Motion.

34.     Cassell also sent emails directly to journalists suggesting specific questions to ask Dershowitz in interviews about the irrelevant, false and defamatory allegations asserted against him in the Joinder Motion.  For example, in an email to Paul Blake of the BBC dated January 3, 2015, Cassell listed out fifteen questions for Blake to ask Dershowitz, including (a) "[h]ave you ever met a young girl, under the age of 18, in the presence of Jeffrey Epstein or on one of Jeffrey Epstein's properties?"; (b) "[d]idn't Jeffrey Epstein tell you that he repeatedly had sex with these underage girls?"; (c) in reference to the NPA, "[i]sn't it normal practice for federal prosecutors only to extend immunity to specifically named persons, not an open-ended group of 'any' co-conspirator[?]"; (d) "[d]id you ever see young girls present at Little St. John's [Epstein's private island]?"; and (e) [d]id you ever see young girls, potentially under the age of 18, on Epstein's private plane?"

35.     On January 4, 2015, Cassell sent a newly disclosed email to Jacqueline Jesko at ABC where he directly and without qualification accused Dershowitz of the criminal conduct

alleged in the Joinder Motion.  Specifically, Cassell stated that "I represent, along with Brad Edwards in Florida, *the young woman who was sexually abused by Prince Andrew and Alan Dershowitz*.  We are exploring options to tell her side of the story.  Could you call me quickly about Nightline or related possibilities?" (emphasis added).

36.   Also on January 4, 2015, Cassell sent an email to Santina Leuci of ABC and Rajini Vaidyanathan of the BBC stating in relevant part as follows:

> I have spoken to you both today, as a representative of a young woman I will call Jane Doe #3.  *She was trafficked to Prince Andrew and others as [a] young girl.*  My co-counsel is Brad Edwards, cc'd above, who is in direct contact with Jane Doe #3.  I am not in a position to make any commitments for my client, but we would like to explore a sympathetic environment for her to tell her side of the story *against the attacks from Alan Dershowitz and Prince Andrew and Jeffrey Epstein (and perhaps others)*.  We are meeting tomorrow (Monday) morning to explore possibilities with our New York legal counsel.

(emphasis added).  Here again, Cassell re-asserted the allegations of criminal conduct levelled against Dershowitz in the Joinder Motion in an extra-judicial statement made directly to the media.

37.   In another email date January 4, 2015, Cassell wrote to Brendan Pierson at Thomson Reuters on behalf of himself and Edwards that "[w]e look forward to reading any material that Mr. Dershowitz provides.  It is not unethical to provide legal representation to the victim of [an] international sex trafficking ring and to believe in the allegations such a victim makes – even when those allegations are made against powerful people."  This statement, made on behalf of both Edwards and Cassell, is yet another example of Edwards and Cassell making extra-judicial statements to the media whereby they independently re-asserted the allegations of criminal misconduct against Dershowitz outside of the context of the Federal Action.

38.   On January 5, 2015, Dershowitz filed a sworn declaration in the Federal Action denying the false and defamatory allegations levelled against him in the Joinder Motion.

39.     In an article that was first published on January 6, 2015 and that is available online at http://www.bbc.com/news/uk-30692699, BBC News quotes Cassell and Edwards as stating that "[w]e have requested an opportunity to meet with the US Attorney's Office for the Southern District of Florida so that we can seek their assistance in presenting evidence (including evidence possessed by the government) that will help Jane Doe #3 respond to these unfair attacks [by Dershowitz]."

40.     On January 7, 2015, Jack Scarola ("Scarola"), who is representing Edwards and Cassell in this action, issued a statement on behalf of Edwards and Cassell via PR Newswire that states, in relevant part, as follows:

> Mr. Dershowitz harshly attacks Mr. Edwards and Professor Cassell for not trying to talk to him before naming him in legal papers.
>
> But, in truth, and as supported by numerous documents, on at least three occasions since 2009, Mr. Dershowitz was informed that he was a key witness in the litigation against Jeffrey Epstein and was requested to testify. We advised him at that time as follows:
>
>> 'Multiple individuals have placed you in the presence of Jeffrey Epstein on multiple occasions and in various locations when Jeffrey Epstein was in the company of underage females subsequently identified as victims of Mr. Epstein's criminal molestations. This information is derived from both someone's testimony and private interviews. Your personal observations regarding such circumstances would clearly not involve any privileged communications, and it is those observations that will be the primary focus of our questioning.'
>
> Despite this notice to Mr. Dershowitz, he failed to respond or testify in any fashion. Mr. Dershowitz has not responded to multiple efforts to take his testimony beginning in 2009.

Upon information and belief, Edwards and Cassell authorized Scarola to make this statement and were involved in drafting the statement and/or approving its contents. Various national and international media outlets re-published portions of this extra-judicial statement made on behalf

14

Cassell and Edwards, including but not limited to the *Palm Beach Daily News* and *Business Insider*.

41.     In a report that first aired on January 16, 2015, and that is available online at http://www.local10.com/news/attorney-denies-involvement-in-palm-beach-sex-slave-allegations/30840398, reporter Bob Norman of Channel 10 News quotes Edwards as stating that "[t]he truth will come out" about Jane Doe #3 and her allegations against Dershowitz.  Upon information and belief, Edwards and Cassell also told Mr. Norman that the allegations asserted against Dershowitz in the Joinder Motion were "true"—marking another instance where Edwards re-asserted the allegations of criminal conduct against Dershowitz outside of the Joinder Motion in a direct and unqualified manner.

42.     In expressly stating in some statements and in implying in others that Dershowitz sexually abused Jane Doe #3, the extra-judicial statements made by or on behalf of Edwards and Cassell referenced in Paragraphs 31-41 of this Counterclaim—including but not limited to Cassell's email to Ms. Jesko stating that "I represent, along with Brad Edwards in Florida, *the young woman who was sexually abused by Prince Andrew and Alan Dershowitz*"—were and are false and created a false impression.  It is categorically false that Dershowitz had any sexual contact with Jane Doe #3.

43.     In stating and/or implying that the allegations asserted against Dershowitz in the Joinder Motion are, in fact, true, the extra-judicial statements made by or on behalf of Edwards and Cassell referenced in Paragraphs 31-41of this Counterclaim were and are false and created a false impression.  The allegations levelled against Dershowitz in the Joinder Motion – *i.e.*, that he had sexual contact with Jane Doe #3; that he witnessed sexual abuse of minors by Epstein and Epstein's associates; and that he negotiated the Non-Prosecution Agreement for Epstein to

include a provision that protected himself against criminal prosecution in Florida for sexually abusing Jane Doe #3 – are categorically false.

44.    In stating and/or implying that Edwards and Cassell carefully investigated the allegations asserted against Dershowitz in the Joinder Motion prior to the filing of that pleading, the extra-judicial statements made by or on behalf of Edwards and Cassell referenced in Paragraphs 31-41 of this Counterclaim were and are false and created a false impression. Neither Edwards nor Cassell ever contacted Dershowitz about the false and defamatory allegations levelled against Dershowitz in the Joinder Motion.  Nor did Scarola or anyone else acting on behalf of Edwards or Cassell ever contact Dershowitz about these allegations. Edwards and Cassell also failed to otherwise conduct any reasonable investigation before including the false, defamatory and irrelevant allegations about Dershowitz in the Joinder Motion for the improper purpose of generating publicity and benefiting themselves at Dershowitz's expense.

45.    In stating and/or implying that Edwards and Cassell or Scarola or anyone else acting on their behalves has attempted to depose Dershowitz about the allegations asserted against him in the Joinder Motion, the extra-judicial statements made by or on behalf of Edwards and Cassell referenced in Paragraphs 31-41of this Counterclaim were and are false and created a false impression.  Neither Edwards nor Cassell ever attempted to depose Dershowitz about the allegations asserted against him in the Joinder Motion– *i.e.*, that Dershowitz had sexual contact with Jane Doe #3; that Dershowitz witnessed sexual abuse of minors by Epstein and Epstein's associates; and that Dershowitz negotiated the Non-Prosecution Agreement for Epstein to include a provision that protected himself against criminal prosecution in Florida for sexually abusing Jane Doe #3.  Nor did Scarola or anyone else acting on behalf of Edwards or Cassell

ever attempt to depose Dershowitz about the allegations asserted against him in the Joinder Motion.

46.     In stating and/or implying that Dershowitz failed to respond in any way to Scarola's deposition requests, the extra-judicial statements made by or on behalf of Edwards and Cassell referenced in Paragraphs 31-41 of this Counterclaim were and are false and created a false impression.   Dershowitz responded to Scarola in two separate letters.   In the first letter, Dershowitz asked Scarola to specify "what non-privileged information" Scarola would seek from Dershowitz in a deposition.   In the second letter, Dershowitz stated that he "has never personally observed Jeffrey Epstein in the presence of underage females" and asked Scarola to provide him with any alleged basis for his unfounded belief to the contrary.

47.     In stating and/or implying that multiple individuals have placed Dershowitz at the scene of one or more crimes committed by Epstein, the extra-judicial statements made by or on behalf of Edwards and Cassell referenced in Paragraphs 31-41 of this Counterclaim were and are false and created a false impression.   Dershowitz has never been in the company of Epstein at a time when underage females were also present and has never witnessed Epstein sexually abuse any minors or otherwise engage in criminal activity.

48.     In stating and/or implying that the Government has information that substantiates the allegations asserted against Dershowitz in the Joinder Motion, the extra-judicial statements made by or on behalf of Edwards and Cassell referenced in Paragraphs 31-41 of this Counterclaim were and are false and created a false impression.   The Government cannot possibly have information that substantiates the allegations levelled against Dershowitz in the Joinder Motion because those allegations are categorically false.

17

49.     At the time the extra-judicial statements referenced in Paragraphs 31-41 of this Counterclaim were made by or on behalf of Edwards and Cassell, Edwards and Cassell knew those statements to be false and knew that those statements created false impressions.

50.     Alternatively, at the time the extra-judicial statements referenced in Paragraphs 29-36 of this Counterclaim were made by or on behalf of Edwards and Cassell, Edwards and Cassell showed a reckless disregard for the falsity of those statements as well as a reckless disregard for the false impressions created by those statements.

51.     The extra-judicial statements referenced in Paragraphs 31-41 of this Counterclaim were defamatory per se, in that they stated and/or implied that Dershowitz has committed numerous and heinous criminal offenses constituting felonies and of engaging in conduct that, if committed, would be incompatible with the proper exercise of his profession as an attorney and law professor.

52.     The extra-judicial statements referenced in Paragraphs 31-41 of this Counterclaim also were defamatory because they tended to expose Dershowitz to hatred, ridicule and contempt; tended to injure Dershowitz in his business and occupation as a lawyer and law professor; and tended to injure Dershowitz's sterling personal and professional reputations.

53.     In making and/or causing others to make the false and defamatory extra-judicial statements referenced in Paragraphs 31-41 of this Counterclaim, Edwards and Cassell acted in bad faith and with an improper purpose – namely, to generate national and international media attention for the Federal Action and for themselves at the expense of injuring Dershowitz's sterling professional and personal reputations and also to the detriment of their own clients' best interests, which would have been better served by focusing on the relevant legal issues in the Federal Action.

18

54.     Alternatively, in making and/or causing others to make the false and defamatory extra-judicial statements referenced in Paragraphs 31-41 of this Counterclaim, Edwards and Cassell acted with ill will and personal and professional animosity towards Dershowitz and with the intent of injuring Dershowitz's reputation.

55.     In these circumstances, neither the litigation privilege nor any other common law or constitutional privilege shields Edwards and Cassell from liability for making and/or causing others to make the false and defamatory extra-judicial statements referenced in Paragraphs 31-41 of this Counterclaim.

56.     By making and/or causing others to make the false and defamatory extra-judicial statements referenced in Paragraphs 31-41of this Counterclaim, Edwards and Cassell caused injury in fact to Dershowitz, who has suffered and continues to suffer substantial damages in an amount to be determined at trial, including but not limited to monetary losses in the form of lost clients and lost speaking engagements, as well as long-term injury to his professional reputation among his peers, potential clients and the general public.

57.     In making and/or causing others to make the false and defamatory extra-judicial statements referenced in Paragraphs 31-41 of this Counterclaim, Edwards and Cassell acted willfully, wantonly and recklessly and intentionally disregarded Dershowitz's rights, warranting the imposition of punitive damages.

WHEREFORE, Defendant / Counterclaim Plaintiff Alan M. Dershowitz demands judgment against Plaintiffs / Counterclaim Defendants Bradley J. Edwards and Paul G. Cassell for compensatory damages, costs, pre- and post-judgment interest, and such other and further relief as the Court may deem appropriate under the circumstances.

WHEREFORE, Dershowitz further reserves his right to assert a claim for punitive damages after meeting the relevant statutory prerequisites to such a claim.

WHEREFORE, Dershowitz further demands a jury trial on this Counterclaim.


Respectfully submitted,

s/ Thomas E. Scott
Thomas E. Scott
Florida Bar No. 149100
Thomas.scott@csklegal.com
Steven R. Safra
Florida Bar No. 057028
Steven.safra@csklegal.com
COLE, SCOTT & KISSANE, P.A.
Dadeland Centre II, 14th Floor
9150 South Dadeland Boulevard
Miami, Florida 33156
Phone: (305) 350-5300
Fax: (305) 373-2294

Richard A. Simpson
(*pro hac vice*)
rsimpson@wileyrein.com
Mary E. Borja
(*pro hac vice*)
mborja@wileyrein.com
Ashley E. Eiler
(*pro hac vice*)
aeiler@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Phone: (202) 719-7000
Fax: (202) 719-7049

*Counsel for Alan M. Dershowitz*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been furnished by electronic mail

(email)    at    email    address:    jsx@searcylaw.com,    mep@searcylaw.com,

scarolateam@searcylaw.com to: **Jack Scarola, Esq,** Searcy Denney Scarola Barnhart & Shipley,

P.A., Counsel for Plaintiff, 2139 Palm Beach Lakes Blvd., West Palm Beach, Florida 33409, and

I electronically filed the foregoing with the Clerk of Broward County by using the Florida Courts

eFiling Portal this 12th day of August, 2015 .


      COLE, SCOTT & KISSANE, P.A.
      Attorneys for Defendant/Counterclaim Plaintiff
      9150 S. Dadeland Blvd.
      Suite 1400
      Miami, Florida 33156
      thomas.scott@csklegal.com
      steven.safra@csklegal.com
      Phone: (305) 350-5381
      Fax:  (305) 373-2294


      By:    s/ Thomas E. Scott
               THOMAS E. SCOTT
               FBN: 149100

# **<u>EXHIBIT 3</u>**

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 51 of 148

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| DAVID BOIES,<br><br>          Plaintiff,<br><br>-against-<br><br>ALAN DERSHOWITZ,<br><br>          Defendant. | INDEX NO.: 160874/2019<br><br>**VERIFIED ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |

ALAN DERSHOWITZ,

          Counterclaim Plaintiff,

-against-

DAVID BOIES,

          Counterclaim Defendant.

Defendant Alan Dershowitz (hereinafter "Dershowitz") hereby answers the Complaint of Plaintiff David Boies (hereinafter "Boies") and asserts Affirmative Defenses and Counterclaims as follows:

## ANSWER

### NATURE OF THE ACTION

1.  Dershowitz lacks knowledge or information sufficient to admit or deny this paragraph in the form so alleged, except that it is denied that Dershowitz has leveled "false" accusations against Boies.

2.  Denied.

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 52 of 148

3.      Denied that Dershowitz's statements are false.

4.      Dershowitz lacks knowledge or information sufficient to admit or deny this paragraph in the form so alleged.

5.      Dershowitz lacks knowledge or information sufficient to admit or deny this paragraph in the form so alleged, in that this paragraph appears to be a recitation of Boies' opinion.

6.      Dershowitz lacks knowledge or information sufficient to admit or deny this paragraph in the form so alleged, except that it is denied that Boies has presented Dershowitz with evidence demonstrating that the allegations against him are false.

7.      Dershowitz lacks knowledge or information sufficient to admit or deny this paragraph in the form so alleged, in that this paragraph appears to be a recitation of Boies' opinion.

## THE PARTIES

8.      This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

9.      This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, denied in the form alleged.

## JURISDICTION AND VENUE

10.      This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, denied that Boies has suffered any damages.

11.      This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, denied that Dershowitz published "defamatory statements".

12.      This paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, denied that Dershowitz published "defamatory statements".

2

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 53 of 148

## FACTUAL ALLEGATIONS

13.     This paragraph refers to a document which speaks for itself, and thus no response is required. To the extent a response is required, Boies' client Giuffre made allegations against the Dershowitz in 2014, while represented by Boies, that were categorically false, and Dershowitz has vehemently denied those allegations since they were first made.

14.     This paragraph refers to a document which speaks for itself, and thus no response is required. To the extent a response is required, Boies' client Ransome made allegations against the Dershowitz in 2017, while represented by Boies, that were categorically false, and Dershowitz has vehemently denied those allegations since they were first made.

15.     This paragraph refers to a document which speaks for itself, and thus no response is required. To the extent a response is required, Dershowitz has interposed an answer to Giuffre's complaint and asserted affirmative defenses and counterclaims against Giuffre for the defamatory statements she and her agents have made against Dershowitz.

16.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

17.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

18.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

19.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

20.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

3

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 54 of 148

21.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

22.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

23.     Denied.

24.     Denied.

25.     Denied.

26.     This paragraph refers to a published article which speaks for itself, and thus no response is required. Ransome's accusation against Dershowitz referred to in this paragraph is vehemently denied.

27.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

28.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

29.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

30.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

31.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

32.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

33.     Denied

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 55 of 148

34. Denied.

35. Denied.

36. This paragraph refers to a published article which speaks for itself, and thus no response is required.

37. This paragraph refers to a published article which speaks for itself, and thus no response is required.

38. This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

39. This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

40. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

41. Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

42. Denied.

43. Denied.

44. Denied.

45. This paragraph refers to a published article which speaks for itself, and thus no response is required.

46. This paragraph refers to a published article which speaks for itself, and thus no response is required.

47. This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 56 of 148

48.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

49.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

50.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

51.     Denied.

52.     Denied.

53.     Denied.

54.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

55.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

56.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

57.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

58.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

59.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

60.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 57 of 148

61.     Denied.

62.     Denied.

63.     Denied.

64.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

65.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

66.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

67.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

68.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

69.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

70.     Denied.

71.     Denied.

72.     Denied.

73.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

74.     This paragraph refers to a published article which speaks for itself, and thus no response is required, to the extent a response is required, denied in the form alleged.

7

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 58 of 148

75.    This paragraph refers to a published article which speaks for itself, and thus no response is required, to the extent a response is required, denied in the form alleged.

76.    This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

77.    This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

78.    Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

79.    Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

80.    Denied.

81.    Denied.

82.    Denied.

83.    This paragraph refers to a published article which speaks for itself, and thus no response is required.

84.    This paragraph refers to a published article which speaks for itself, and thus no response is required.

85.    This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

86.    This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

87.    This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

8

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 59 of 148

88.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

89.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

90.     Denied.

91.     Denied.

92.     Denied.

93.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

94.     This paragraph refers to a published article which speaks for itself, and thus no response is required.

95.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

96.     This paragraph asserts a legal conclusion to which no response is required. To the extent a response is required, denied in the form alleged.

97.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph.

98.     Dershowitz lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, except denied as to the characterization "defamatory statements".

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

9

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 60 of 148

103.    Denied, in that Defendant's statements are factual.

104.    Denied.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Boies' Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Boies' claims are barred by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Boies' claims are barred by the single publication rule.

### FOURTH AFFIRMATIVE DEFENSE

Boies' claims are barred by the doctrines of laches, waiver, ratification and/or estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Boies' claims are barred because Dershowitz's allegedly defamatory statements concerning Giuffre are true or substantially true.

### SIXTH AFFIRMATIVE DEFENSE

Boies' claims are barred because Dershowitz's allegedly defamatory statements are all protected by the First Amendment and Article I, Section 8 of the New York State Constitution.

10

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 61 of 148

## SEVENTH AFFIRMATIVE DEFENSE

Boies' claims are barred because Dershowitz's allegedly defamatory statements are all protected by the self-defense privilege.

## EIGHTH AFFIRMATIVE DEFENSE

Boies' claims are barred because he is a public figure and Dershowitz did not act with actual malice.

## NINTH AFFIRMATIVE DEFENSE

Boies' claims are barred because the alleged defamatory statements at issue in the Complaint did not cause or contribute to any damages suffered by Giuffre.

## TENTH AFFIRMATIVE DEFENSE

Boies' claims are barred by the incremental harm doctrine.

## ELEVENTH AFFIRMATIVE DEFENSE

Boies' suffered no damages by reason of the acts complained of in the Complaint, or by any acts or omissions of Dershowitz and/or for which Dershowitz is legally responsible.

## TWELFTH AFFIRMATIVE DEFENSE

Boies' alleged damages, if any, are speculative, hypothetical, unsupported by any reasonable methodology, and are not cognizable as a matter of law.

## THIRTEENTH AFFIRMATIVE DEFENSE

Boies' alleged losses, if any, were caused by his own actions and/or inactions and/or the actions of third parties, and therefore, he is precluded from recovery from Dershowitz.

## FOURTEENTH AFFIRMATIVE DEFENSE

Boies' failed to mitigate his damages, if any.

## FIFTEENTH AFFIRMATIVE DEFENSE

11

Dershowitz is not liable to Boies in any amount because, at all times relevant herein, Dershowitz has not acted improperly or in bad faith with respect to Boies.

## SIXTEENTH AFFIRMATIVE DEFENSE

Dershowitz is not liable to Boies in any amount because, at all times relevant herein, Boies has failed to act properly and in good faith with respect to Dershowitz.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Boies and his partners, employees, co-counsel, agents and/or his clients are with unclean hands and have engaged in conduct consistent with intimidation, extortion, malicious prosecution and/or abuse of process.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Boies and his partners, employees, co-counsel, agents and/or his clients are with unclean hands, in filing the within lawsuit and other actions and are acting in a manner with intent, or reckless disregard, to harass, intimidate Dershowitz, and/or seek publicity and media attention, and financial gain, at the expense and detriment of Dershowitz.

## NINETEENTH AFFIRMATIVE DEFENSE

Boies' action is barred by the doctrines of res judicata and/or judicial estoppel and/or collateral estoppel.

## TWENTIETH AFFIRMATIVE DEFENSE

Boies' claims are barred, in whole or in part, by the doctrine of unclean hands.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

By virtue of the tortious conduct and defamatory statements of Boies and his partners, employees, agents, co-counsel and/or clients, made against Dershowitz, Boies is barred in whole or in part from recovering for the claims made in his Complaint.

12

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 63 of 148

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part, as Boies, and/or his partners, and/or his employees, and/or his agents, and/or hid co-counsel, and/or his clients, are with unclean hands as they have engaged in defamation, libel, and/or slander *per se* against Dershowitz.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part as Boies, and/or his partners, and/or his employees, and/or his agents, and/or his co-counsel, and/or his clients are with unclean hands in commencing a lawsuit in bad faith, engaging in tortious public banter, defamatory conduct and disparagement, in engaging in repeated harassing behavior and conduct directed Dershowitz, therein causing damages.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part as Boies, and/or his partners, and/or his employees, and/or his agents, and/or his clients are with unclean hands, in that they have engaged in abuse of process, suborned perjury, engaged in an extortive scheme, engaged in deceit and collusion, submitted false affidavits, pleadings and submissions to the court, have engaged in the filing of a lawsuit in bad faith, engaging the media and public sphere with defamatory and self-serving statements, solely in order to gain public notoriety, product and self-promotion, and recognition, and in order to seek financial gain at the expense and detriment of Dershowitz, and have violated New York Judiciary Law § 487, and/or 22 N.Y.C.R.R. 130-1.1.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

The acts alleged to have been committed in Boies' Complaint, if found to have been committed, were committed by third-parties over which Dershowitz had no control nor right of control.

13

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 64 of 148

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part as Boies, and/or his partners, and/or his employees, and/or his agents, and/or his co-counsel, and/or his clients are with unclean hands in commencing a lawsuit in bad faith, engaging in tortious public banter, defamatory conduct and disparagement, in engaging in repeated harassing behavior and conduct directed at Dershowitz, therein causing intentional, reckless and/or negligent infliction of emotional distress, and/or negligently and/or with reckless disregard causing Dershowitz pain and suffering.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Boies' Complaint is barred in whole or in part as Boies, and/or his partners, and/or his employees, and/or his co-counsel, and/or his agents, and/or his clients, are with unclean hands, and have engaged in tortious conduct by engaging in a campaign of disparagement and false accusations against Dershowitz and thereby damaging Dershowitz's business, professional and personal reputation and relationships and Giuffre and/or her attorneys and/or agents' actions made on her behalf constitute *prima facie* tort against Dershowitz.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Boies' Complaint contains redundant, immaterial, impertinent, and/or scandalous matter and allegations that should be stricken by this Court pursuant to CPLR § 3024(b). Boies' inclusion of this material is part of a design to disseminate knowingly false and defamatory material about Dershowitz to the media.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Dershowitz reserves the right to raise any and all other affirmative defenses he deems proper based on the discovery process or any future development of the case.

14

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 65 of 148

**WHEREFORE,** Defendant **ALAN DERSHOWITZ** respectfully requests judgment dismissing the Plaintiff's Complaint against him, together with the costs and disbursements of this action, and for any expenses incurred by him in the defense thereof, including attorneys' fees and costs, and such other and further relief as to this Court may seem just and proper.

## COUNTERCLAIMS

1.  Counterclaim Plaintiff Alan Dershowitz (hereinafter "Dershowitz") brings the within counterclaims against Counterclaim Defendant David Boies (hereinafter "Boies") for defamation, intentional infliction of emotional distress, and violations of New York Judiciary Law § 487.

2.  Since 2014, Boies, members of his law firm Boies Schiller Flexner LLP (hereinafter referred to collectively, including Boies, Sigrid McCawley, relevant firm attorneys, employees, and their agents and relevant co-counsel Bradley Edwards, Paul Cassell, and Stanley Pottinger, as "BSF") and their clients Virginia Giuffre, Sarah Ransome, and Maria Farmer (hereinafter referred to individually as "Giuffre", "Ransome" and "Farmer", and collectively as "BSF Clients") - motivated by money and other improper factors - have engaged in a sustained campaign to subvert the judicial process for the purposes of disseminating outrageous, knowingly false and defamatory claims accusing Dershowitz of sexual abuse. Boies' conduct has gone beyond that of a lawyer advocating for his client, and has crossed over into the sphere of animus and bitterness. Motivated by this animus, Boies, BSF and the BSF Clients have waged a war of defamation against Dershowitz. These actions have led to Dershowitz being vilified and strung up in the court of public opinion despite his efforts to clear his name in the public domain. In order to defend against these salacious claims, Dershowitz has exercised his First Amendment right and publically denounced these accusations as false and has sought to bring to light the nefarious purpose of Boies, BSF and the BSF Clients' scheme.

15

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 66 of 148

3.     Critically, the actions of Boies and BSF ago beyond the tort of defamation. These intentional actions have taken a tremendous emotional and physical toll on Dershowitz. And perhaps most troubling, is that Boies, BSF, and the BSF Clients have become active participants in a larger extortive scheme in order to extract settlements, and concessions from those in positions of power – with Dershowitz becoming the public exemplar of their false claims. Boies, BSF and their co-counsel, acting in a manner of an enterprise advancing an extortive scheme and pattern of improper conduct, have suborned this perjury, and have knowingly submitted the false claims and allegations within pleadings and submissions to courts within the State of New York, within the instant action, and within filings in federal court in the Southern District of New York, in causes of action premised on New York law. These actions are in violation of New York Judiciary Law § 487.

4.     Dershowitz brings the within counterclaims in order to rectify tortious conduct of Boies, BSF and the BSF Clients by establishing the truth and to hold Boies accountable for his own actions, and that BSF and the BSF Clients, for which he is libel for as both *respondeat superior*, partner and/or as agent, respectively. Dershowitz seeks to recover damages for the serious harm his reputation, his business, and his health, and importantly, seeks vindication, justice, and the restoration of his good name.

## PARTIES

5.     Dershowitz is a renowned criminal defense attorney and *Professor Emeritus* at Harvard Law School.  He has authored more than 40 books and is a frequent public speaker on issues of criminal defense, constitutional law, First Amendment freedoms, and the Middle East.

6.     Boies is likewise a renowned attorney, and is the managing partner at Boies Schiller Flexner LLP ("BSF") is a Limited Liability Partnership law firm registered in New York with its

16

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 67 of 148

principal place of business at 55 Hudson Yards, 20th Floor, New York, New York 10001, and

conducts business in the State of New York. Boies and BSF (including co-counsel, Edwards,

Cassell, and Pottinger) represent Virginia Giuffre, Sarah Ransome and Maria Farmer, and Boies

and BSF have taken the lead in bringing their false claims against Dershowitz to the public domain.

Boies is the authorized agent of Giuffre, Ransome and Farmer, and as such, he is liable for the

torts committed by Giuffre, Ransome, and Farmer, that he participated, condoned, facilitated

and/or encouraged. As managing partner of BSF, he is liable for the actions of his employees,

partners and/or agents, the co-counsel he has acted in concert with and/or aided and abetted in the

tortious and/or extortive scheme implemented against Dershowitz and others, and as *respondeat*

*superior*, and/or pursuant to the laws of partnership, and/or pursuant to the laws of agency.[1]

## JURISDICTION AND VENUE

7.      Jurisdiction in the Supreme Court of the State of New York, County of New York,

is proper, as this Court has jurisdiction over this action pursuant to Section 7 of Article VI of the

Constitution of the State of New York and pursuant to Judiciary Law § 140-b because this is a

civil action for, inter alia, monetary damages (exclusive of interest and costs) in excess of the

jurisdictional maximum of the Civil Court, and Plaintiff's claims exceed the jurisdictional

threshold of the Supreme Court of the State of New York, County of New York. Furthermore,

insofar as this Court has subject matter jurisdiction over Boies' Complaint, it has supplemental

jurisdiction over Dershowitz's Counterclaims made herein. Jurisdiction is further proper pursuant

to C.P.L.R. § 301 and/or § 302 because Boies is a New York domiciliary, Boies has voluntarily

---

[1] Boies has admitted in a proposed Amended Complaint in *Giuffre v. Dershowitz* that "Boies was
acting as Plaintiff's lawyer and agent". 1:19-cv-03377-LAP, Document 101,  filed 12/20/19

17

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 68 of 148

submitted to the jurisdiction of the State of New York, County of New York, by filing his complaint there, and Boies has committed tortious acts there.

8.      Venue is proper in New York County under C.P.L.R. § 503(a), where upon information and belief, a substantial part of the events giving rise to the claims occurred in New York County, including the defamatory acts.

## FACTUAL ALLEGATIONS

### *The Root of the False Accusations and Boies' Campaign of Defamation*

9.      In or about 1996, Dershowitz began to develop a professional and academic relationship with the now deceased financier Jeffrey Epstein ("Epstein"). Epstein was a patron of the arts and academia who would frequently invite academics, politicians, business leaders, and other influential individuals to his homes in New York, Florida, and elsewhere for discussion. Dershowitz was a guest at some of these events and an occasional visitor to Epstein's properties. He joined such distinguished guests as the President and Provost of Harvard, the Dean of the Kennedy School, and several distinguished professors, business leaders, and government officials from around the world, who at the time, simply viewed Epstein as a prominent figure with diverse intellectual and economic interests.

10.     However, Epstein's actions would soon come into question and under scrutiny by law enforcement and the public, and his reputation irreparably tarnished. In 2006, Epstein learned that prosecutors in Florida were investigating him for alleged sex crimes. Dershowitz being a preeminent criminal defense attorney, Epstein asked him to join his legal defense team, and Dershowitz accepted.  Ultimately, Epstein's legal team, comprised of Dershowitz, Roy Black, Kenneth Starr, Jay Lefkowitz, Gerald Lefcourt, and several other prominent lawyers, negotiated a

18

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 69 of 148

non-prosecution agreement with federal prosecutors and Epstein agreed to plead guilty to state charges for soliciting a minor for prostitution and to register as a sex offender.

11.     In 2008, two women whom the government had previously identified as victims of sexual abuse by Epstein filed an action pursuant to the Crime Victims' Rights Act ("CVRA"), alleging that the United States Attorney's Office for the Southern District of Florida had violated their rights under the CVRA, 18 U.S.C. § 3771, by failing to timely inform them that it had entered into the non-prosecution agreement with Epstein.  *See Doe v. United States*, 9:08-cv-80736, Dkt. No. 435 at pp. 22-23 (S.D. Fla. Feb. 21, 2019).

### ***Baseless Allegations made by Giuffre with the Support of Boies and BSF***

12.     On December 30, 2014, BSF's co-counsel for Plaintiffs in the CVRA Action, Edwards and Cassell, filed the Joinder Motion on behalf of Giuffre and another woman, seeking to have them added as Plaintiffs in the case.  Although it was not publicly known at the time, and though Boies has denied it, albeit falsely, BSF represented Giuffre in connection with the Joinder Motion.[2]

13.     Giuffre and her lawyers, including Boies and BSF, alleged in the CVRA Joinder Motion that in addition to sexually abusing her himself, Epstein had "required [Giuffre] to have sexual relations with Dershowitz on numerous occasions while she was a minor, not only in Florida but also on private planes, in New York, New Mexico and the U.S. Virgin Islands[,]" and that, "in addition to being a participant in the abuse of [Giuffre] and other minors, Dershowitz was an eye-witness to the sexual abuse of many other minors by Epstein and several of Epstein's co-conspirators." *See* CVRA Joinder Motion, annexed hereto as **EXHIBIT A.**

---

[2] Stanley Pottinger also serves as co-counsel for Giuffre.

14.     Giuffre had not previously accused Dershowitz of having sex with her. To the contrary, she has made statements - both orally and in writing - that <u>directly</u> contradicted her accusation. Despite these contradictions, Boies and BSF continued to advance and support the unfounded claims - and continue to this day.[3]

15.     Giuffre further alleged in the CVRA Joinder Motion that she had been sexually abused by British Royal Prince Andrew, and "many other powerful men, including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders," none of whom were publicly identified (other than Dershowitz, Prince Andrew, and a French modeling agency executive, Jean Luc Brunel). *Id.*

16.     In a sworn declaration filed under seal a few weeks after the Joinder Motion, Giuffre repeated and expanded upon her allegations against Dershowitz. *See* Giuffre Declaration annexed hereto as **EXHIBIT B**. She claimed in the declaration that she was 15 when she met Epstein, and that she had sex with Dershowitz at least six times between the ages of 16 and 19,

---

[3] *"One such powerful individual that Epstein forced then-minor Jane Doe #3 to have sexual relations with was former Harvard Law Professor Alan Dershowitz, a close friend of Epstein's and well-known criminal defense attorney. Epstein required Jane Doe #3 to have sexual relations with Dershowitz on numerous occasions while she was a minor, not only in Florida but also on private planes, in New York, New Mexico, and the U.S. Virgin Islands. In addition to being a participant in the abuse of Jane Doe #3 and other minors, Dershowitz was an eye-witness to the sexual abuse of many other minors by Epstein and several of Epstein's co-conspirators. Dershowitz would later play a significant role in negotiating the NPA on Epstein's behalf. Indeed, Dershowitz helped negotiate an agreement that provided immunity from federal prosecution in the Southern District of Florida not only to Epstein, but also to "any potential coconspirators of Epstein." NPA at 5. Thus, Dershowitz helped negotiate an agreement with a provision that provided protection for himself against criminal prosecution in Florida for sexually abusing Jane Doe #3. Because this broad immunity would have been controversial if disclosed, Dershowitz (along with other members of Epstein's defense team) and the Government tried to keep the immunity provision secret from all of Epstein's victims and the general public, even though such secrecy violated the Crime Victims' Rights Act."* (from Jane Doe #1 and Jane Doe #2 v. U.S., U.S. District Court of Southern District of Florida, "JANE DOE #3 AND JANE DOE #4'S MOTION PURSUANT TO RULE 21 FOR JOINDER IN ACTION" at 4)

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 71 of 148

and gave specific details of the alleged encounters, though no timeframes. However, her employment records prove that she did not even meet Epstein until she was 17 (or nearly 17). In submitting this sworn declaration, Giuffre committed perjury. Critically, her perjury was suborned by her lawyers at BSF, who knew that these allegations were false and unsupported by credible evidence.

17.     Giuffre's false accusations against Dershowitz in the CVRA Joinder Motion were stricken in a sanction by the Court pursuant to Fed. R. Civ. P. 12(f) as "impertinent" and "immaterial" because they were "unnecessary to the determination of whether [Giuffre] should permitted to join [the original Petitioners'] claim that the Government violated their rights under the CVRA." *See* Judge Marra's decision annexed hereto as **EXHIBIT C**.

18.     The circumstances of the CVRA Joinder Motion - from the timing of the filing, to the decision to publicly name Dershowitz but not the other prominent men, to the unusual amount of media coverage of the filing generated by Giuffre's lawyers - strongly suggest that the accusation against Dershowitz was part of a larger conspiracy undertaken by Giuffre and her lawyers to subvert the judicial process for the purposes of making false claims against Dershowitz in order to make a public example out of him, and extort private settlements from other, wealthier individuals associated with Epstein, whose alleged misconduct was well outside the statute of limitations. This evidenced an extortive scheme by Boies, BSF, and the BSF Clients, in order to extract large settlements from prominent figures, and Dershowitz fell victim to such plot.

19.     Giuffre and her lawyers deliberately made these false allegations against Dershowitz in a court pleading in an effort to shield Giuffre from liability for defamation under the litigation and fair report privileges. She and her lawyers intended that the allegations contained in the CVRA Joinder Motion would be continuously repeated and widely disseminated by the

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 72 of 148

media, which they were. The CVRA filing, and the lurid accusations against Dershowitz contained

therein, generated massive media coverage. Upon information and belief, Giuffre or her lawyers

either provided the media with copies of the CVRA Joinder Motion or directed them to the docket,

in order to stimulate media coverage at a time of year when most people were on vacation, and

long before the Epstein story was national news.

20.     Around the same time that she publicly accused Dershowitz, Giuffre, through her

lawyers at BSF, privately made an accusation against Leslie Wexner (hereinafter "Wexner"), the

billionaire founder and CEO of L Brands and owner of Victoria's Secret. Boies personally met

with Wexner's lawyer in what Wexner's lawyer and wife both described as a "shakedown".

Although the statute of limitations had long expired for any legal action against Wexner, Boies

and his partner described in detail the alleged sexual encounters between Giuffre and Wexner,

including an alleged demand by Wexner that Giuffre wear Victoria's Secret-type lingerie during

their encounters. Such an accusation, if made publicly, could have massively damaged Wexner

and his company. No public accusation against Wexner was ever made. This means that Wexner

either submitted to Giuffre and her lawyers' extortion conspiracy and paid the demanded hush

money, or that Boies came to disbelieve Giuffre's claims regarding Wexner (yet has continued to

advance her claims despite the knowledge of their falsity). If the latter, the Boies firm suborned

perjury when Giuffre later testified under oath in a sealed deposition that she was sexually

trafficked to Wexner. This accusation was confirmed by Boies and BSF co-counsel Stanley

Pottinger in an affidavit:

> 9. In the fall of 2014, I asked Mr. Boies if his firm represented, or if he knew, Mr. Leslie
> Wexner. I told him that in the course of investigating facts related to Mr. Epstein's sex
> trafficking, Mr. Wexner had been identified as a close business associate and personal friend
> of Mr. Epstein. I told Mr. Boies that there were assertions that Mr. Wexner had permitted Mr.
> Epstein to use, and entertain on, Mr. Wexner's Yacht, and that Mr. Wexner was alleged to
> have had sex with one or more of Mr. Epstein's girls, including Ms. Giuffre.

22

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 73 of 148

*See* Affidavit of Stanley Pottinger, annexed hereto as **EXHIBIT D.**

21.     Despite the allegations against Wexner by their own client Giuffre, Giuffre's attorneys inexplicably pivoted to the opposite, with Giuffre's attorney Edwards even saying Wexner did nothing wrong. Wexner was not alone, upon information and belief, Giuffre's lawyers also approached other wealthy individuals whose alleged misconduct was well beyond the statute of limitations, as part of an extortion and shake down conspiracy.

22.     Boies and BSF knew, and had reason to know, that Giuffre's claims regarding Dershowitz are totally false, and have been disseminated with a knowledge of their falsity or a reckless disregard for the truth, and out of ill-will and spite. Despite a prior history of monetary motivation and inconsistencies, Boies and BSF supported Giuffre's false allegations against Dershowitz. Giuffre gave the first public account of her experiences with Epstein in a series of interviews with British tabloid journalist Sharon Churcher in 2011, which Churcher published via a series of articles in the *Daily Mail*. *See*, articles annexed hereto as **EXHIBIT E**. Giuffre was paid $160,000 for her story. Giuffre gave Churcher the names of prominent men she allegedly had sex with. The *Daily Mail* articles make no mention of Dershowitz (except as an attorney for Epstein), because Dershowitz was not among the men with whom Giuffre claimed to have had sex. Churcher has confirmed that Giuffre never accused Dershowitz of having sex with her. At the same time she was speaking with Churcher, Giuffre was shopping the rights to a book she was writing about her time with Epstein. The manuscript of her book mentions Dershowitz, but only as a friend of Epstein's - not as someone with whom Giuffre had sex - and that Giuffre only saw Dershowitz discussing business with Epstein, but never met him.

23.     An email exchange between Giuffre and Churcher is evidence of Giuffre's knowing and intentional fabrication of her allegations against Dershowitz. Giuffre emailed Churcher in May

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 74 of 148

2011 to report that she was working towards a book deal and was "*[j]ust wondering if you have any information on you from when you and I were doing interviews about the J.E. story. I wanted to put the names of some of these assholes, oops, I meant to say, pedo's, that J.E. sent me to. With everything going on my brain feels like mush and it would be a great deal of help.*" Churcher replied: "*Don't forget Alan Dershowitz....JE's buddy and lawyer...good name for your pitch as he repped Claus Von Bulow and a movie was made about that case....title was Reversal of Fortune. We all suspect Alan is a pedo and tho no proof of that, you probably met him when he was hanging [out] with JE.*" *Id.* (ellipses in original; emphasis supplied).

---

— On Wed, 11/5/11, Sharon.Churcher@mailonsunday.co.uk <*Sharon.Churcher@mailonsunday.co.uk*> wrote:

From: Sharon.Churcher@mailonsunday.co.uk <Sharon.Churcher@mailonsunday.co.uk>
Subject: Re: Good News!!
To: "Virginia Giuffre" <████████████████████>
Received: Wednesday, 11 May, 2011, 4.17 PM

Don't forget Alan Dershowitz. JE's buddy and lawyer..good name for your pitch as he repped Claus von Bulow and a movie was made about that case...title was Reversal of Fortune. We all suspect Alan is a pedo and tho no proof of that, you probably met him when he was hanging put w JE

---

24. Giuffre wrote back but did not inform Churcher that she was mistaken that there was "no proof" of sexual misconduct by Dershowitz. She did not do so because Churcher was correct, and Giuffre had not reported having sex with Dershowitz. Instead, she replied only: "Thanks again [Sharon], I'm bringing down the house with this book!!!" *See*, Giuffre-Churcher email exchange annexed hereto as **EXHIBIT F**.

25. In the spring of 2011, Giuffre was interviewed by the FBI regarding her experiences with Epstein. She described in detail her time with Epstein and her allegations of being "lent out" to Epstein's friends, who she named, but never accused Dershowitz. Under the threat of criminal prosecution for providing a false statement to a federal agent, Giuffre, despite the aforementioned

24

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 75 of 148

conspiracy, did not state her false claims regarding Dershowitz to the FBI. This is corroborated by the account of Giuffre's close friend, who confirmed that Giuffre only accused Dershowitz after she was pressured by her lawyers, including Boies, those at BSF and their co-counsel, to do so.

26.     Churcher has confirmed that Giuffre never accused Dershowitz of having sex with her.  This evidence proves that Giuffre's claim that she had sex with Dershowitz is a recent fabrication, concocted only after she met with her lawyers and was pressured by them to falsely accuse Dershowitz. Regardless, Giuffre, Boies, BSF and their co-counsel, have disseminated the accusation while knowing it was false.  Indeed, Giuffre has lied about these emails by falsely testifying under oath that no such emails between her and Churcher about Dershowitz existed. Her counsel at BSF, including Boies and partner McCawley, upon becoming aware of Giuffre's false testimony, took no steps to correct the record. Boies, BSF and co-counsel, suborned Giuffre's perjury, and as such, they are likewise responsible for the defamatory acts against Dershowitz, and are liable for the damages caused by the scheme as described herein.

27.     Despite Giuffre's credibility having been completely destroyed, Boies, BSF and co-counsel, continue to advance her false allegations against Dershowitz in a course of defamation under the guise litigation. She has repeatedly and deliberately lied and committed perjury for money – and this has been suborned by her attorneys including Boies and those at BSF. The false allegations made by Giuffre against Dershowitz have been made after she met her attorneys, who have pressured her and suborned her perjury for their own and Giuffre's profit. Her attorneys, being fully aware of her penchant to lie and the falsity of her claims, have submitted perjured affidavits, and vouched for her false testimony.

28.     In addition to the false allegations against Dershowitz, she has fabricated allegations and far-fetched stories against a number of high-profile individuals. For example, she

25

NYSCEF DOC. NO. 2
Case 0:20-cv-61872-AHS  Document 115  Entered on FLSD Docket 05/09/2022  Page 76 of 148

has described in great detail having dinner with and closely observing former Vice President Al Gore and his wife Tipper on Epstein's Caribbean island and claims she saw Vice President Gore and Epstein walk on the beach of the island together. The Gores did not know Epstein and have never set foot on his island. When Dershowitz directly asked Boies to call Al Gore, his former client, to confirm that Giuffre had lied when she claimed to have met the Gores on Epstein's Caribbean island, Boies responded: "I'm not vouching for her general credibility."

29.     Giuffre has also alleged that she was forced to have sex with former Israeli Prime minister Ehud Barack, former New Mexico Governor Bill Richardson, former Democratic Senate Majority Leader Sen. George Mitchell, the late MIT computer scientist Marvin Minsky, billionaire Thomas Pritzker of Hyatt Hotels, hedge fund manager Glenn Dubin, MC2 model agency cofounder Jean Luc Brunel, England's Prince Andrew, and also an unnamed "prince," "foreign president," and owner of "a French hotel chain." Many of these accused men have issued denials and disclaimers stating that they have never even met Giuffre. While Dershowitz has no knowledge of the truth or falsity of any or all of these accusations, Giuffre has offered no proof other than her own uncorroborated word, which has been thoroughly discredited by her proven lies about the Gores, President Clinton, her age, the absence of emails naming Dershowitz, and other matters.

30.     Perhaps one of the most prominent denials to Giuffre's fabrications is from President Bill Clinton. Giuffre's statements – some under oath, and others made in a 2011 *Daily Mail* article – claimed that she was on Little St. James Island with former President Clinton:

> Clinton was present on the island at a time when I was also present on the island . . . . Maxwell went to pick up Bill in a huge black helicopter … Bill had the Secret Service with him and I remember him talking about what a good job she did… We all dined together that night. Jeffrey was at the head of the table. Bill was at his left.

26

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 77 of 148

I sat across from him. Emmy Tayler, Ghislaine's blonde British assistant sat at my right. Ghislaine was at Bill's left and at the left of Ghislaine there were two olive-skinned brunettes who'd flown in with us from New York.... Maybe Jeffrey thought they would entertain Bill, but I saw no evidence that he was interested in them. He and Jeffrey and Ghislaine seemed to have a very good relationship. Bill was very funny.

*See*, **EXHIBIT E**.

31.     An investigation, and records obtained pursuant to the Freedom of Information Act, concluded that President Clinton, and Al Gore and his wife Tipper Gore, were never on Epstein's island, in direct contradiction of the incredulous story by Giuffre. A statement released by President Clinton on July 8, 2019 directly refutes Giuffre's claims and reads:

In 2002 and 2003, President Clinton took a total of four trips on Jeffrey Epstein's airplane: one to Europe, one to Asia, and two to Africa, which included stops in connection with the work of the Clinton Foundation. Staff, supporters of the foundation, and his Secret Service detail traveled on every leg of every trip. He had one meeting with Epstein in his Harlem office in 2002, and around the same time made one brief visit to Epstein's New York apartment with a staff member and his security detail. He's not spoken to Epstein in well over a decade, **and he has never been to Little St. James Island**, Epstein's ranch in New Mexico, or his residence in Florida.

*See*, Statement from President Clinton's spokesperson, Angel Ureña, annexed hereto as **EXHIBIT G**.

32.     After being falsely accused, Dershowitz assembled travel records, credit card statements, phone records, and other documentation which prove that Dershowitz could not have been in the places during the time period when Giuffre claims to have had sex with him. These documents were inspected for authenticity by former FBI Director Louis Freeh. When Dershowitz presented this documentation to Boies, he concluded that it was "impossible" for Dershowitz to have been where Giuffre claims they had sex, and that her claims were "wrong," "simply wrong." Nevertheless, Boies and his firm continued to persist in advancing Giuffre's false claims, and in submitting perjurious affidavits.

33.     Giuffre has never retracted any part of her accusations against Dershowitz, even the central claim that she was a minor at the time she allegedly had sex with Dershowitz, a claim which has since been conclusively proven to be false by Giuffre's own admissions and employment records. Giuffre continues to call Dershowitz a "pedophile" and "child rapist" and "child molester" despite her own admissions and her own records that prove she was an adult at the time she falsely claims to have had sex with him.

***Boies, BSF and the BSF's Relentless Defamation, Disparagement and Tortious Conduct***

34.     Since accusing Dershowitz in the CVRA Joinder Motion in December 2014, Giuffre and her lawyers at BSF, along with Ransome and Farmer, have repeatedly and publicly outside of court reaffirmed the false claims against Dershowitz, directing the media and the public to the allegations in the CVRA Joinder Motion and making clear that they stand by those accusations against Dershowitz.  The full scope of Boies, BSF, and their clients' efforts to promote media coverage of false accusations against Dershowitz through confirming and repeating those false accusations to members of the media, with the intention that they publish those claims to mass audiences, is not yet known and will be the subject of discovery in this case. Boies and BSF have been a driving force, appearing alongside Giuffre, Farmer and Ransome at press conferences, and providing their defamatory statements to the media.

35.     Clearly, Boies, members of BSF, Giuffre, Ransome and Farmer have engaged in a campaign to maliciously disparage and attack Dershowitz, and over the years, have made a number of defamatory statements about Dershowitz, either on their own accord, or speaking as one another's agent. For example:

   a.  In response to Judge Loretta Preska's ruling disqualifying Giuffre's lawyers at BSF from representing her in this action, Giuffre issued a statement which referred to

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 79 of 148

Dershowitz as a "co-conspirator" of Epstein. *See*, New York Daily News article containing this statement annexed hereto as **EXHIBIT H.** Giuffre went on to state "It is no surprise that Alan Dershowitz, who was part of Epstein's ecosystem of power and privilege, is attempting to manipulate the legal system in the face of the serious charges I have brought against him. The reckoning of accountability has begun and today's decision will be appealed." ("Judge boots powerhouse lawyer David Boies from case pitting Jeffrey Epstein victim Virginia Giuffre against acclaimed attorney Alan Dershowitz," *New York Daily News*, 10/16/2019) *Id.* As Giuffre's authorized agent, Boies is liable for these false and defamatory statements, which they either drafted, edited, or approved.

b.  Giuffre and her lawyers at BSF also served as a source for a lengthy *New Yorker* profile of Dershowitz published on August 5, 2019, and upon information and belief, falsely confirmed to the article's author, Connie Bruck, that Giuffre had sex with Dershowitz, intending that the *New Yorker* publish the accusation, which it did. *See*, New Yorker's profile of Dershowitz containing Giuffre's false allegations against Dershowitz annexed hereto **EXHIBIT I.**

c.  On or about July 31, 2019, in *The American Lawyer*, Boies stated: "[T]he problem is that [Dershowitz] believes that if he quacks loudly enough and outrageously enough, people will focus on what he's saying and not the underlying conduct… [H]e's desperate to detract attention from the underlying accusation. People who have good defenses present those defenses. Those who don't engage in ad hominem attacks." and "He's attacked everyone who's tried to help victims… detectives and

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 80 of 148

state law enforcement people." *See,* The American Lawyer piece containing these statements from Boies annexed hereto as **EXHIBIT J.**

d.   On or about July 19, 2019, in *New York Magazine,* Boies stated: "This is simply more evidence of how desperate Mr. Dershowitz is to distract attention from the evidence of his misconduct . . . Mr. Dershowitz's misconduct, and his lies about it, are documented in sworn affidavits, sworn depositions, and contemporaneous documents… I can understand why Mr. Dershowitz wants to distract attention from the facts…" The article also went on to state a false and inflammatory comment by Boies as follows: "'When I informed Mr. Boies,' Pottinger says in his affidavit, 'he told me that while he was aware of Mr. Dershowitz's reputation for running naked on beaches in Martha's Vineyard and hitting on students and girlfriends of students, he was disappointed to learn of his involvement with someone as young as Virginia.'" ("Alan Dershowitz Cannot Stop Talking," *New York Magazine,* 7/19/2019) *See,* New York Magazine piece containing these statements from Boies annexed hereto as **EXHIBIT K.**

e.   On or about July 17, 2019, in *Vanity Fair,* Boies stated: "Epstein's former employees said in sworn depositions that they saw Dershowitz at the house multiple times without his wife. 'This Olga woman doesn't exist. Epstein's barely kept women around who were over 25. It's a figment of Alan's imagination'". ("As the Jeffrey Epstein Case Grows, Manhattan and DC Brace for Impact," *Vanity Fair,* 7/17/19) *See,* Vanity Fair piece containing these statements from Boies annexed hereto as **EXHIBIT L.**

Case 0:20-cv-61872-AHS  Document 115  Entered on FLSD Docket 05/09/2022  Page 81 of 148

f.  On or about July 7, 2019, outside the Manhattan federal courthouse, Boies stated: "Virginia sued Ms. Maxwell in the Southern District of New York for her participation in the sex trafficking. She is currently suing Alan Dershowitz for his participation in the sex trafficking." (available at: https://globalnews.ca/video/5472236/attorney-for-alleged-epstein-victims-comments-on-prince-andrew).

g.  On or about July 5, 2019, in the *Miami Herald*, Boies stated: "It's very dangerous to take one position publicly and another position in court.  Eventually, both the public and the court figure out that you're lying and you lose your credibility in both forums and that's what he has been doing - trying to take one position publicly and another in court - and they are now clashing."  ("Dershowitz v. Boies: Jeffrey Epstein case unleashes war between two legal Goliaths," *Miami Herald*, 7/5/19) *See,* Miami Herald piece containing these statements from Boies annexed hereto as **EXHIBIT M.**

h.  On or about April 16, 2019, Giuffre was quoted in the *Miami Herald* as saying: "I know that standing up for myself and others will cause Mr. Dershowitz and Mr. Epstein to redouble their efforts to destroy me and my reputation. But I can no longer sit by and not respond. As my complaint shows, my abusers have sought to conceal their guilt behind a curtain of lies." As Giuffre's authorized agent, Boies is liable for these false and defamatory statements. ("New Jeffrey Epstein accuser goes public; defamation lawsuit targets Dershowitz," *Miami Herald*, 4/16/2019). *See*, Miami Herald piece containing this statement from Giuffre annexed hereto as **EXHIBIT N.**

31

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 82 of 148

i.   On or about December 22, 2018, Boies was quoted in *The Harvard Crimson* as saying: "'Mr. Dershowitz should be ashamed of himself,' Boies wrote. 'I am ashamed he is a member of my profession… Harvard should be ashamed of his association with it,' he added." ("Epstein Allegedly Directed Second Woman to Have Sex with Harvard Prof. Dershowitz, Court Documents State," *The Harvard Crimson*, 12/22/18) *See,* Harvard Crimson piece containing this statement from Boise annexed hereto as **EXHIBIT O.**

j.   On or about December 18, 2018, in the *New York Daily News*, Boies stated: "Alan Dershowitz's absurd attacks… are consistent with his pattern of attacking every lawyer who has represented women who have accused him of sexual abuse… This is simply a pattern where he thinks if he is loud enough and crazy enough it will distract attention from what he's done." ("Second woman claims billionaire perv Jeffrey Epstein 'directed' her to have sex with Alan Dershowitz," *New York Daily News*, 12/18/2018) *See*, New York Daily News piece containing these statements from Boies annexed hereto as **EXHIBIT P.**

k.   On November 28, 2018, the *Miami Herald* published an interview with Giuffre as part of lengthy article discussing the preferential treatment Epstein allegedly received from the criminal justice system. *See,* Miami Herald piece re: Epstein's alleged preferential treatment annexed hereto as **EXHIBIT Q.** Giuffre and her lawyers provided the reporter, Julie Brown, with a copy of her sworn declaration in the CVRA action, which, unlike the CVRA Joinder Motion, remained under seal. The article quoted at length from Giuffre's declaration, including publishing, in particular, the details of her accusations against Dershowitz. This was not the only

32

Case 0:20-cv-61872-AHS  Document 115  Entered on FLSD Docket 05/09/2022  Page 83 of 148

time that Giuffre and her lawyers provided sealed court records to the media. Later, in July 2019, in anticipation of an order by the Second Circuit unsealing documents in the related *Giuffre v. Maxwell* case – including the smoking gun Churcher emails referenced above – Giuffre's lawyers at BSF supplied Brown and *New Yorker* reporter Connie Bruck with selected documents, still under seal, which they perceived as favorable to Giuffre. Dershowitz was thereafter pressured by reporters to provide emails and other evidence establishing his innocence even though they remained under seal, which Dershowitz refused to do. For example, Brown in a series of emails sent on September 5, 2019, pressured Dershowitz to release sealed material regarding emails from Ransome in which she made fantastical and outrageous claims of having sex tapes of Hillary Clinton, Donald Trump, Bill Clinton, and Richard Branson, stating in sum and substance *"Alan, you can send them. There are many documents floating around in this case, so I'm sure no one will go after you."* Dershowitz refused to fall into this trap and declined to send the emails. In these emails, Brown admits that *"They've [Boies, BSF, Ransome et al] acknowledged that she sent them and that they contained information that was false." See*, Brown and Dershowitz emails re: Ransome annexed hereto as **EXHIBIT R.** Brown has confirmed that Giuffre told her in their interview which led to the publication of the November 28, 2018 *Miami Herald* article that she (Giuffre) had sex with Dershowitz. In a videotaped interview that the *Herald* posted to its website as part of the story, "Giuffre described how Epstein and [Ghislaine] Maxwell began grooming her – not just to perform massages, but to sexually pleasure them and others[,]" including "politicians and academics and royalty."

33

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 84 of 148

When she mentioned "academics," the video showed a picture of Dershowitz. Giuffre and her lawyers at BSF, and their co-counsel working with Boies and BSF, were the sources of this publication. Upon information and belief, before filing her Complaint against Dershowitz in this action, Giuffre, Boies and her lawyers at BSF and/or their co-counsel, provided an advance copy to Brown to induce Brown to publish a story about the lawsuit on the same day it was filed, April 16, 2019. *See,* **EXHIBIT N.** In a statement issued that same day outside of any legal proceeding and published in the *Miami Herald* and other news outlets, Giuffre stated: "As my complaint shows, my abusers have sought to conceal their guilt behind a curtain of lies. My complaint calls for the accounting to which I, and their other victims, are entitled." *Id.* This statement was later provided to the television program The View, which read it on air during an appearance by Dershowitz on that show on May 2, 2019. *See,* screenshot of YouTube video showing Alan Dershowitz's May 2, 2019 appearance on The View annexed hereto **EXHIBIT S.** Giuffre accusing Dershowitz out of court of being one of her abusers is false and defamatory, and Boies and BSF, as agents for Giuffre, and who drafted, edited, and/or approved the defamatory statements, are liable.

36.  Upon information and belief Boies, BSF, Giuffre, and possibly Ransome and Farmer, have made other defamatory statements and engaged in further tortious conduct -within the statute of limitations- that Dershowitz intends to uncover during discovery and through the unsealing of documents in collateral matters.

37.  In any event, the accusations against Dershowitz are patently false. Dershowitz never met Giuffre or Ransome and never had sex with them, nor has he ever met Farmer. As to

34

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 85 of 148

Giuffre, whose allegations against Dershowitz seemingly have propelled other false allegations from BSF clients: prior to meeting lawyers at BSF, Giuffre – in accounts she gave to the FBI, her best friend, her boyfriend, and a journalist with whom she had a close relationship – had never included Dershowitz among the individuals she was allegedly trafficked to by Jeffrey Epstein. To the contrary, she wrote emails, a manuscript, and other material that made it clear that she *did not* have sex with Dershowitz. She has told numerous provable lies about her age, who she has met, whether she had emails concerning Dershowitz, and other fabrications, in addition to her false accusations about sex with Dershowitz. In the years since Giuffre's original accusation against Dershowitz in the CVRA Joinder Motion, BSF and their clients have repeatedly reaffirmed, incorporated by reference, and otherwise affirmatively republished to new audiences the false and defamatory claims made in that filing, which, in turn, have been republished in the media on countless occasions, and in particular over the past year as public interest over the Epstein saga has intensified.

38.     In addition, upon information and belief, Boies, BSF, Giuffre and others, have spoken to reporters, repeating the substance of the defamatory allegations on an off-the-record basis, in order to promote the further dissemination of a false narrative regarding Dershowitz. Boies, BSF, their agents, Giuffre and their other clients, have undertaken these actions to enrich themselves financially. Their lies concerning Dershowitz have caused tremendous damage to his personal and professional reputation, his business, his health and caused him emotional and physical pain and suffering.  Through these counterclaims, he seeks to hold Boies, BSF, and their clients, accountable for that damage.

35

### *Boies and BSF Have Violated New York Judiciary Law § 487*

39.    Dershowitz is one of several individuals injured by a scheme employed by Boies, BSF (and their co-counsel, including Edwards, Cassell, and Pottinger, and agents as defined above), and the BSF Clients in which they have targeted prominent individuals with extortionate settlement demands premised on wrongful bad-faith threats of salacious legal allegations. In this regard they have acted in a manner akin to an enterprise, and have conspired together in furtherance of an extortive scheme that has claimed Dershowitz as a victim and caused him irreparable harm and damages. Furthermore, by these actions, and by advancing the false claims against Dershowitz, and suborning the perjury of Giuffre and others, and by the very virtue of the filing of actions, both the within complaint to which Dershowitz is answering herein, and the *Giuffre v. Dershowitz* matter based upon causes of action under New York law, and the suborning perjurious allegations made therein, Boies and BSF and their co-counsel have violated New York Judiciary Law § 487, which reads in pertinent part as follows:

> An attorney or counselor who: (1) is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

40.    Specifically, BSF and their co-counsel and agents, deliberately advised their client, Giuffre, a woman who has alleged that deceased billionaire Epstein sexually trafficked her while she was underage to several high-profile men, to falsely identify Dershowitz as one of the men to whom she was sexually trafficked by Epstein. Evidence consisting of written correspondence to which Giuffre was a party; recorded phone calls between Dershowitz and Giuffre's close friend Rebecca Boylan (hereinafter "Boylan"); and a sworn affidavit of Anthony Figueroa (hereinafter "Figueroa"), Giuffre's boyfriend for the time period during which she alleges she was sexually trafficked by Epstein, show that Giuffre did <u>not</u> identify Dershowitz as one of the men to whom

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 87 of 148

she was allegedly sexually trafficked by Epstein prior to retaining Boies and that she ultimately

named Dershowitz in court filings (CVRA motion) on December 30, 2014 at the behest of her

attorneys, including Boies and BSF. As discussed *supra*, Giuffre communicated with reporter

Sharon Churcher, who suggested that she name Dershowitz in her book manuscript, yet still, she

did not make any allegations regarding sex with Dershowitz. Likewise, Giuffre did not name

Dershowitz as someone she allegedly had sex with when interviewed by the FBI. Despite this

evidence, Boies, BSF and their co-counsel, have filed court proceedings and documents, including

in New York as against Dershowitz, that are based on these false allegations.

    41.    Boies and his co-counsel, have used BSF in order to advance a pattern of extortive

conduct, of which Dershowitz complains of herein. BSF continues to act as a conduit for Boies

and the aforementioned co-counsel, agents, and clients, to advance their scheme and conspiracy,

in a manner akin to an enterprise. Although BSF is a Limited Liability Partnership law firm

registered in New York with its principal place of business at 55 Hudson Yards, 20th Floor, New

York, New York 10001, it maintains and operates offices across State lines and internationally,

maintaining offices in Albany, New York; Armonk, New York; Fort Lauderdale, Florida;

Hanover, New Hampshire; Hollywood, Florida; Las Vegas, Nevada; London, England; Los

Angeles, California; Miami, Florida; Orlando, Florida; Palo Alto; California; San Francisco,

California; and Washington DC. BSF conducts substantial business through the State of New

York, including: marketing and advertising its legal services in the State of New York; maintaining

three separate offices out of which it did business in the State of New York; negotiating and

entering contractual relationships to advocate for clients in the State of New York; and advocating

for clients in the State of New York. BSF has engaged in, and its activities have affected, interstate

commerce because, as a multi-state and international law firm, its activities involve commercial

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 88 of 148

activity across state lines and the use of interstate wires for, among many other purposes, making court filings in the various federal and state cases in which it serves as counsel. At all times relevant hereto, BSF acted for or on behalf of Boies, BSF co-counsel and BSF Clients in undertaking the acts and/or omissions alleged herein. BSF has availed itself of courts located in the State of New York to file actions in which the false allegations against Dershowitz have been made (including but not necessarily limited to, the instant action *Boies v. Dershowitz, Giuffre v. Dershowitz, Giuffre v. Maxwell, Farmer v. Estate of Epstein*).

42.     The root of the allegations against Dershowitz evidence a rot that continues to fester. On information and belief, the inclusion of the accusations against Dershowitz in the CVRA motion was part of a broader conspiracy by Boies, BSF, their co-counsel, agents and their clients, to subvert the judicial process for the purpose of making false claims against Dershowitz so as to make a public example out of him, and extort private settlements from other, wealthier individuals associated with Epstein. Giuffre asserted in her CVRA motion that she had been sexually abused by "many other powerful men, including numerous prominent American politicians, powerful business executives, foreign presidents, a well-known Prime Minister, and other world leaders," but publicly identified none of them, with the exception of Dershowitz, British Royal Prince Andrew, and a French modeling agency executive, Jean Luc Brunel.[4] It was only after she met her lawyers at BSF, and co-counsel, who "pressured" her to falsely accuse Dershowitz, suggesting to her that she could make money by doing so. This is part of the scheme by Boies, BSF, their co-counsel, and their clients, to accuse Dershowitz as part of a larger conspiracy to extort monetary settlements from Dershowitz and others in positions of wealth as described herein.

---

[4] She privately named these "powerful men" to her lawyers and in sealed depositions, but not publicly.

38

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 89 of 148

43.     Subsequent to Giuffre naming Dershowitz as one of the men to whom she was sexually trafficked, an independent investigation with respect to her claims undertaken by former FBI Director Louis Freeh concluded that "… the totality of the evidence found during the investigation refutes the allegations made against Professor Dershowitz." *See,* Freeh Report annexed hereto as **EXHIBIT T**. Dershowitz also went to the United States Attorney's Office and the District Attorney's Office in Manhattan in order to stress the falsity of the allegations, invite investigation into the false allegations perpetuated by Giuffre and her attorneys, and to affirm lack of culpability in light of the false allegations made against him.

44.     Boies, who in recorded conversations with Dershowitz explicitly acknowledged, based on Boies's review of Dershowitz's travel records, that Giuffre could not possibly have been sexually trafficked to Dershowitz at the times and places she has alleged, nonetheless pressured Giuffre to continue to publicly name Dershowitz in order to create leverage with which Boies could extort settlement demands from other high-profile men under the threat of Giuffre publicly naming them also. In doing so, Boies, BSF, and their co-counsel, knowingly suborned perjury on the part of Giuffre, and did so with the purpose of rendering Dershowitz an example of the potential damage that Boies, BSF, and their co-counsel and aforementioned clients, could do to the businesses and reputations of targets of his extortionate scheme.

45.     In response to Boies' and BSF's bad-faith and wrongful inducement of Giuffre's false claims against Dershowitz, Dershowitz commenced an ethics complaint against Boies with the hope that doing so would result in an investigation into Boies' and BSF's misconduct with respect to Giuffre's allegations against Dershowitz. Boies and BSF sought to pressure Dershowitz to withdraw his ethics complaint and the corresponding investigation into his ongoing scheme via threat: upon information and belief, that he would find another woman to accuse Dershowitz as a

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 90 of 148

participant in Epstein's alleged sex trafficking activities if Dershowitz did not drop the ethics complaint. After Dershowitz refused to yield to Boies' and BSF's threat by dropping his ethics complaint, Boies and BSF followed through on the threat by filing dubious affidavits of two women alleging Dershowitz's participation in Epstein's sex trafficking.

46.     The first of these affidavits was that of Maria Farmer whom Epstein had employed as security personnel at his Manhattan residence. In her affidavit, Farmer claimed she had observed Dershowitz frequenting Epstein's Manhattan residence and, more specifically, that she had seen Dershowitz entering an area of the residence where she knew several underage girls were located. As had been well-established at that point by the record in previous cases arising out of Giuffre's claims regarding Epstein's sex trafficking, the times at which Farmer claimed to have observed Dershowitz and the entire time period for which she was employed by Epstein both predated the time Dershowitz even met Epstein. Boies, BSF and their co-counsel and agents, were aware of this fact, and filed Farmer's affidavit. To date, Boies, BSF and their co-counsel, continue to advance the false claims of Farmer despite having the aforementioned knowledge regarding her perjury.

47.     Significantly, allegations gratuitously and maliciously made against Dershowitz by Boies, BSF and Farmer were recently stricken from the complaint filed by Farmer in the Southern District of New York, where Judge Naomi Reice Buchwald, in her December 23, 2019 decision wrote, "*Having considered the several letters on this issue… the Court exercises its authority pursuant to Federal Rule of Civil Procedure Rule 12(f)(1), to strike sua sponte the aforementioned language… the allegation is neither material nor directly pertinent to any claim or defense in this action.*" *See,* Judge Buchwald's decision annexed hereto as **EXHIBIT U.**

48.     The second of these affidavits was that of Sarah Ransome who claimed that she had engaged in sexual activity with Dershowitz. At the time of her affidavit, Ransome had an

40

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 91 of 148

established record of fantastical lying: (a) she had previously contacted the New York Post falsely claiming that she had sex tapes of Hillary Clinton, Bill Clinton, Donald Trump, and Richard Branson which she later admitted she had invented; (b) she claimed she was targeted for assassination by Hillary Clinton and the CIA and that she was working with the KBG to prevent the election of two "pedophiles" who were running for president; and (c) she had also previously falsely represented to the New York Post that Dershowitz was her lawyer in a fictitious pending lawsuit against a man she met on a dating website for wealthy older men seeking younger women who were willing to exchange intimacy for payment. Upon information and belief, Boies and BSF were aware of Ransome's admitted history of fabricating sexual encounters with prominent men, and of her history of fabricating her relationship to Dershowitz, and filed Ransome's affidavit. In fact, Miami Herald reporter Julie Brown in an email to Dershowitz stated in regard to the emails from Ransome to the New York Post: **"They've [Boies, BSF, Ransome et al] acknowledged that she sent them and that they contained information that was false."** *See,* __EXHIBIT R.__ To date Boies and BSF continues to advance the false claims of Ransome despite having the aforementioned knowledge regarding her perjury.

49.     The perjurious affidavits and false allegations regarding Giuffre, Farmer and Ransome were contained in filings made within the State of New York, and/or within filings premised upon the law of the State of New York, and filed by Boies and BSF. The common thread between the three: all three of the false accusers, Giuffre, Ransome and Farmer, make their accusation against Dershowitz only *after* they meet their attorneys at BSF – who have suborned perjury and have submitted these false allegations and statements in the State of New York and elsewhere.

41

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 92 of 148

50.     As discussed *supra*, Boies, BSF, their co-counsel, and/or their clients engaged in
extortionate conduct with respect to billionaire owner of Victoria's Secret and former Epstein
associate, Leslie Wexner. Indeed, on or about December 2014, soon after Boies, BSF and their co-
counsel, suborned Giuffre to falsely make a public example out of Dershowitz by falsely naming
him as one of the men to whom she was trafficked by Epstein, they reached out to Wexner with a
"shakedown", according both Wexner's wife and his counsel, John Zeiger (hereinafter "Zeiger").
The shakedown was premised on allegations by Giuffre against Wexner that were similar in
substance to those false allegations she had just publicly made against Dershowitz at the behest of
Boies, BSF and their co-counsel: the clear implication was that if Wexner did not pay a settlement,
Boies, BSF and their co-counsel, would also name him publicly in court filings alleging that he,
too, was one of the men to whom Giuffre was sexually trafficked by Epstein while she was
underage. Boies, BSF and their co-counsel, made this settlement demand despite that, as seasoned
and well-regarded attorneys, they had reason to know that the claims they were threatening that
Giuffre could make against Wexner were barred at the time by the Statute of Limitations.

51.     Beyond implicitly threatening that Giuffre could make time-barred claims against
Wexner alleging that he had sexual intercourse with Giuffre on multiple occasions while she was
underage, Boies, BSF and their co-counsel, further suggested to Zeiger that Giuffre would include
a specific detail in her public allegations that Wexner had deliberately instructed her to wear
Victoria's Secret products during the sexual encounters she would allege took place between her
and Wexner. Both Wexner's wife and Zeiger characterized these overtures for a settlement by
Boies, BSF and their co-counsel, as a "shakedown" when they separately recounted same to
Dershowitz. Subsequent to shaking down Wexner on time-barred allegations, for reasons
unknown, Boies, BSF and their co-counsel, ultimately never made public filings naming Wexner

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 93 of 148

as one of the men to whom Giuffre was sexually trafficked. Boies and BSF's co-counsel Edwards also stated that Wexner did nothing wrong, despite Giuffre's testimony that he did. One can draw a reasonable inference that a settlement was paid under threat of exposure, or, that BSF recognized that Giuffre's allegations were false and lacked credibility, yet continued to press forward with her salacious claims against other prominent men, including Dershowitz.

52.     The lengths that Boies, BSF and their co-counsel will go to in order to perpetuate a false narrative of accusations in furtherance of their extortive scheme, of which Dershowitz is a victim, has been exemplified by recent reporting regarding the actions of Boies, BSF and co-counsel Stanley Pottinger. Boies, BSF and their co-counsel have engaged in a plot to procure illicitly-obtained data, images and/or video purporting to show other prominent individuals engaging in sexual activity with alleged underage victims of Epstein's sexual trafficking from a self-avowed hacker known only pseudonymously as Patrick Kessler (hereinafter "Kessler") for the purpose of extracting lucrative settlements from the individuals portrayed therein.

53.     As has been widely reported in the media, including extensively by the New York Times in an article published on November 30, 2019 entitled "*Jeffrey Epstein, Blackmail and a Lucrative 'Hot List,'*" Boies collaborated with Pottinger[5], to acquire a large archive containing Epstein's personal communications, financial records, and thousands of hours of footage from secret surveillance cameras set up in the bedrooms of Epstein's various properties where he entertained high-profile guests. Annexed hereto as **EXHIBIT V** is the New York Times article re: Kessler, Boies and Pottinger. This archive would come from Kessler, who represented to Boies and Pottinger that he had obtained the data contained therein by hacking into Epstein's overseas

[5] Pottinger has acted as co-counsel to BSF for the Epstein Accusers, and as discussed previously, was the attorney who brought BSF on as co-counsel to Giuffre in 2014.

43

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 94 of 148

servers, and that the surveillance footage within contained explosive images of prominent men engaged in sexual acts with alleged victims of Epstein's sex trafficking. Supposedly included amongst several other prominent individuals displayed in this surveillance footage was Dershowitz. The photograph Kessler provided to the New York Times that he purported to be of Dershowitz was of an elderly person other than Dershowitz.

54.     Boies and Pottinger met and corresponded with Kessler extensively with regard to the hacked Epstein archive, and reporting on the subject has exposed that it had been Boies and Pottinger's stated primary intention to use the hacked images and/or data they obtained from Kessler to leverage substantial settlements from the individuals portrayed therein, rather than for the purposes of advocating for alleged victims of Epstein's sex trafficking. Boies and Pottinger anticipated that they could reap up to forty percent of profits on settlements they extracted from the individuals portrayed in the hacked Epstein archive, and could possibly even leverage the settlement negotiations to represent those same individuals in subsequent legal matters. Boies and Pottinger's plot to extort settlements using the hacked Epstein archive was ultimately foiled when it became apparent that Kessler was a fraudster who did not possess the archive and that his photographs were fake.

55.     Boies and BSF's use of improper tactics to extract settlements from high-profile individuals has not been limited to the domain of allegations arising out of Epstein's alleged sex trafficking. Boies and BSF used similar tactics in his dealings with celebrated novelist Emma Cline (hereinafter "Cline"), whose ex-boyfriend, Chaz Reetz-Laiolo (hereinafter "Reetz-Laiolo"), was represented by Boies and BSF in a claim by Reetz-Laiolo alleging Cline plagiarized his writings for her acclaimed novel *Girls* and wrongfully invaded his privacy via a spyware program installed on her laptop, which he claimed to have used frequently during their relationship. Annexed hereto

44

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 95 of 148

as **EXHIBIT W** is the December 1, 2017 New Yorker article *"How the Lawyer David Boies Turned a Young Novelist's Sexual Past Against Her."* by Sheelah Kolhatkar, that discusses the Boies-Cline scandal.

56.       Specifically, as part of his settlement overture to Cline, Boies and BSF sent Cline a draft complaint on behalf of Reetz-Laiolo that included, among other inapposite content: nude photos Cline had taken of herself that had evidently remained on the laptop, which Reetz-Laiolo had purchased from Cline after their relationship ceased; a section dedicated to detailing Cline's sexual history; sexually explicit communications between Cline and individuals she met online (also from the laptop); and passages of graphic erotica that the draft complaint gratuitously included and alleged that Cline plagiarized but without any factual support. Per Cline's counsel in the matter, Boies and BSF additionally represented in negotiations that the damages to which Cline faced exposure in the case could total billions of dollars. Once again, as Boies and BSF had reason to know, Reetz-Laiolo's claims were at that point time-barred, and therefore the action through which Boies and BSF was threatening to egregiously and needlessly expose Cline's deeply-sensitive data was not legally cognizable. [6]

---

[6]  There have been a number of ethical issues involving Boies and BSF in recent history, for example: In 2012, the Boies Schiller Firm was cited for a blatant conflict of interest in *Madison 92nd Street Associates LLC. v. Marriott International, Inc. et. al.*, Case No. 1:13-cv-00219, 2013 WL 5913382 (S.D.N.Y 2013). Judge Colleen McMahon of the United States District Court for the Southern District of New York wrote: *"A clearer conflict of interest cannot be imagined. A first year law student on day one of an ethics course should be able to spot it. BSF [Boies Schiller Flexner], which holds itself out as one of the country's preeminent law firms, did not... Not when the firm, after being warned about the conflict, filed a lawsuit containing allegations as to which its own attorneys (including quite possibly name partner David Boies, who billed time to both representations) were important – indeed virtually necessary – rebuttal witnesses."* In 2003, Boies' co-counsel in a case was disciplined by the Florida Bar for misconduct he committed jointly with Boies while representing Bruce Winston. Boies was not admitted in Florida therefore not subject to discipline by the Florida Bar, his co-counsel however was.  In 2003, Boies was the subject of an ethics complaint based on his financial support of a lawsuit involving a lawn care company owned by a Boies Schiller Firm's financial officer, Amy Habie. The trial judge in the

45

57. Boies exercised, and continues to exercise, substantial control over the affairs of the BSF as one BSF's founding and managing partners. Boies participated in the operation and management of BSF by directing its affairs, as described above. BSF, in conjunction with the individuals and co-counsel law firms discussed herein, have acted in a manner akin to an enterprise in furtherance of the extortionate conspiracy Dershowitz alleges herein, Boies was a knowing and willing participant in the schemes set forth herein, and reaped revenues and/or profits therefrom. Boies, who is a person associated-in-fact with the BSF, knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the extortionate scheme as described herein, and has acted in concert, conspired, aided and abetted, and utilized, BSF attorneys, employees,

---

case was disturbed by Boies having provided $4.5 million in free legal services to Habie's lawn care company that he filed a complaint with the Florida Bar alleging a violation of Rule 4-1.8(c), which prohibits certain financial assistance by lawyers to clients. In 2005, in a conflict of interest matter dealing with Adelphia, Tyco International, and Qwest Communications, it was revealed in the course of a bankruptcy proceeding that Boies had failed to disclose a direct conflict of interest to clients when he recommended that they engage the services of three data and document management services owned in part by his children. One client, Adelphia Cable, objected to being billed $7 million by companies owned by the Boies children without being informed of the children's ownership interests. As a consequence of Boies' non-disclosure, he was required to step down from his position as Adelphia's special counsel. Boies and his firm have long-standing ties with Theranos, a blood testing start-up. In early 2016, questions were raised in the media and by federal regulators about Theranos' technology that have caused its value to plummet. In the wake of these allegations, Boies joined Theranos as a director while at the same time acting as its lawyer in fighting these recent allegations about its technology, raising serious conflict of interest concerns. Upon information and belief, Boies and BSF engaged in litigious intimidation of Tyler Shultz for his role as whistleblower in the Theranos scandal. (*See* Steven Davidoff Solomon, "*Boies Dual Roles at Theranos Set Up Conflict*", New York Times, February 2nd, 2016) Boies and his firm eventually severed all ties with Theranos, reportedly over disagreements about legal strategies regarding its technology (*See* John Carreyrou, "*Theranos and David Boies Cut Legal Ties*," The Wall Street Journal, November 20th, 2016) Boies was also criticized for conflicts of interest and conduct relating to his simultaneous representation of Harvey Weinstein and the New York Times. *See*, Deborah L. Rhode "*David Boies's Egregious Involvement with Harvey Weinstein*", New York Times, November 9, 2017, stating: "*It is also that Mr. Boies's representation posed a conflict of interest, because his firm, Boies Schiller Flexner, was representing The New York Times, the "leading NY Newspaper," in libel litigation at the same time [as representing Harvey Weinstein]*."

resources, agents, co-counsel and the BSF Clients in advancing false claims against Dershowitz.
The filings made within the State of New York, evidencing the false allegations against
Dershowitz, are in furtherance of the scheme. These acts are not isolated, but instead were related
in that they had the same or similar purposes and results, participants, victims, and methods of
commission. In devising and executing the scheme, Boise, BSF personnel, their co-counsel, and/or
the BSF Clients committed acts in that they deliberately, including through the use of interstate
wire, executed a scheme whereby they employed wrongful threats of publicly
exposing/publicizing patently-salacious allegations designed to cause in those fear of extensive
public ridicule and embarrassment. Boies, BSF, their co-counsel and/or the BSF Clients employed
this scheme in order to: (a) induce those into engaging in conduct from which they had a legal
right to abstain; or (b) induce those into abstaining from conduct in which they had a legal right to
engage. For the purpose of executing the scheme, Boies, BSF, their co-counsel, and/or the BSF
Clients, committed these acts intentionally and knowingly, with the specific intent to advance the
scheme. Boies, BSF, their co-counsel, and/or the BSF Clients, employed a scheme in which the
specter of publicly disseminating sensitive information that would cause extensive damage to
reputation of others, in order to induce settlements or forbearance. These actions were of a
substantially-uniform nature in that, in all cases, Boies, BSF, their co-counsel, and/or the BSF
Clients, explicitly raised the specter of damaging individuals via the dissemination of sordid
allegations pertaining specifically to their sexual history. The aforementioned have improperly
used the courts in the State of New York in furtherance of this scheme, and have deceived and
colluded, by filing false allegations, with the court, and against Dershowitz.

47

Case 0:20-cv-61872-AHS  Document 115  Entered on FLSD Docket 05/09/2022  Page 98 of 148

58. The aforementioned pattern of conduct by Boies, BSF and their co-counsel, violates New York Judiciary Law § 487, and therefore, Dershowitz is entitled to treble damages, based on the statute's civil right of action.

**AS AND FOR A FIRST CAUSE OF ACTION**
**DEFAMATION**

59. Dershowitz realleges and incorporates herein by reference each of the prior paragraphs.

60. Boies, BSF, their co-counsel, and the BSF Clients, have conspired to publish false and defamatory claims of and concerning Dershowitz with a knowing or reckless disregard of their falsity. They have done so with the specific intent and design that the statements be a source for the media so that the media will publish the false allegations of and concerning Dershowitz, specifically that he had sex with Giuffre while she was underage as part of Epstein's criminal sex trafficking of minors, and other sexual conduct as alleged and/or inferred by the statements of and/or concerning Giuffre, Ransome and Farmer The aforementioned have falsely and with a knowing and reckless disregard of falsity and acting out of ill-will and spite publicly labelled Dershowitz as a child rapist and molester.

61. Boies, BSF, their co-counsel, and the BSF Clients have engaged in a campaign of defamation against Dershowitz, assisted and promoted by one another and by Boies, BSF lawyers, their co-counsel, and the BSF Clients, consisting of a combination of out-of-court statements and statements made in pleadings. These statements were knowingly false and instituted with malice of the constitutional and common law varieties, for the purposes of publicly disseminating libelous statements about Dershowitz via media statements which refer to those pleadings, causing the repeated republication of the false allegations.

48

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 99 of 148

62.     Boies is liable for his own defamatory statements, and those defamatory statements made by other BSF attorneys and/or co-counsel, and by the BSF Clients, including Giuffre, Ransome and Farmer, of whom he is an authorized agent, and which he condoned and encouraged, pursuant to the laws of agency, partnership and/or *respondeat superior*.

63.     Boies, BSF, their co-counsel, and the BSF Clients' false allegations constitute defamation.

64.     Boies, BSF, their co-counsel, and the BSF Clients' false allegations constitute defamation *per se*, including that they: (i) accused Dershowitz of a crime; (ii) exposed him to public contempt, ridicule, aversion and disgrace, and induced an evil opinion of him in the minds of right-thinking persons; and (iii) tended to injure him in his professional capacity as a legal scholar and civil libertarian.

65.     Boies, BSF, their co-counsel, and the BSF Clients intended their false statements to be widely published and disseminated on television, through newspapers, by word of mouth, and on the internet. As they intended, the statements were published and disseminated around the world.

66.     As a result of Boies, BSF, their co-counsel, and the BSF Clients' campaign to spread malicious lies accusing Dershowitz of being a sexual predator, pedophile, abuser, child molester and other negative epithets, Dershowitz has suffered substantial damages in the form of personal and professional reputational harm, lost business opportunities, emotional harm, embarrassment, humiliation, and pain and suffering in an amount to be proven at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67.     Dershowitz realleges and incorporates herein by reference each of the prior paragraphs.

49

68.     Boies, BSF, their co-counsel, and the BSF Clients have engaged in extreme and outrageous conduct in engaging in a campaign of lies, disparagement, defamation, harassment, intimidation, and maliciousness directed at Dershowitz that is beyond the bounds of decency and not tolerated in civilized society.

69.     By engaging in the aforementioned conduct, Boies, BSF, their co-counsel, and the BSF Clients intended to cause, or disregarded a substantial probability of causing, severe emotional distress to Dershowitz, and did in fact cause severe emotional distress to Dershowitz.

70.     There exists a causal connection between the aforementioned conduct and the injury and damages suffered by Dershowitz.

71.     As a result of said conduct, Dershowitz has suffered and continues to suffer from severe emotional distress including anxiety, stress, mental anguish, and the physical effects therefrom, medical conditions including but not limited to cardiac conditions, and other ailments, precipitated by the harassment, disparagement, and other tortious conduct by Boies, BSF, their co-counsel, and the BSF Clients.

### AS AND FOR A THIRD CAUSE OF ACTION
### VIOLATION OF NEW YORK JUDICIARY LAW § 487

72.     Dershowitz realleges and incorporates herein by reference each of the prior paragraphs.

73.     As stated *supra* and herein, Boies, BSF and their co-counsel, have intentionally, deceitfully and/or willfully submitted false information, allegations, pleadings, and therein suborned perjury, to courts within the State of New York, both state and federal, with malintent and/or in furtherance of an extortive scheme by which Dershowitz has been damaged.

74.     As stated *supra* and herein, Boies, BSF, and their co-counsel are guilty of deceit and/or collusion in suborning perjury and preparing and submitting pleadings, affidavits, and

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 101 of
148

submissions with allegations with the knowledge or reckless disregard to their veracity, and/or have consented to the deceit and/or collusion of the BSF Clients, including Giuffre, Ransome and Farmer, in making false allegations, statements, submissions and/or filings against Dershowitz, and conspiring and assisting those others in making false allegations and preparing filings, statements, submissions and/or documents to that effect, and have done so with intent to deceive the court(s) by way of the false submissions, statements and/or filings, or any party, to wit, Dershowitz.

75. As stated *supra* and herein, Boies, BSF, their co-counsel, willfully, deceitfully and with the intent of misleading the court and/or the party, to wit, Dershowitz, intentionally failed to disclose the perjurious nature of the allegations, statements, submissions, and/or filings, prepared and/or submitted on behalf of the BSF Clients, including Giuffre, Ransome, and Farmer, and therein suborned said perjury, and in furtherance of an ill-conceived, extortive and/or nefarious scheme, advanced those allegations, statements, filings, submissions, and/or pleadings on their behalf.

76. Boies, BSF, and their co-counsel, as a result of their deceitful, willful and intentional acts as stated *supra* and herein, are responsible for treble damages to Dershowitz for violation of New York Judiciary Law § 487, and furthermore, Boies, BSF, and their co-counsels' intentional and willful distortion and omission of the facts within the submissions, statements, filings, pleadings, and/or documents filed with the courts in the State of New York, with the purpose of harassing, to harm or maliciously injure Dershowitz, and to obtain a monetary benefit by virtue of said claims, are in violation of 22 N.Y.C.R.R. 130-1.1, and therefore, they are liable to Dershowitz for damages for said violations.

Case 0:20-cv-61872-AHS Document 115 Entered on FLSD Docket 05/09/2022 Page 102 of 148

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaim Plaintiff **ALAN DERSHOWITZ** respectfully requests this Court enter judgment against the Counterclaim Defendant and award: (a) compensatory damages; (b) punitive damages; (c) treble damages; (d) attorney's fees; (e) costs; (f) such other and further relief as to this Court may seem just and proper.

## JURY DEMAND

Dershowitz demands a jury trial on all issues so triable in this action.

Dated: New York, New York
January 27, 2020

**AIDALA, BERTUNA & KAMINS, P.C.**
*Attorneys for Alan Dershowitz*
546 Fifth Avenue
New York, NY 10036
(212) 486-0011

By: _____
Imran H. Ansari, Esq.

Case 0:20-cv-61872-AHS   Document 115   Entered on FLSD Docket 05/09/2022   Page 103 of
148
INDEX NO. 160874/2019

RECEIVED NYSCEF: 01/27/2020

# VERIFICATION

STATE OF NEW YORK    )
                         ) :ss

COUNTY OF NEW YORK   )

    I, ALAN DERSHOWITZ, an attorney-at-law, hereby affirm, under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge: I am the Defendant and Counterclaim Plaintiff in the within action; I have read the foregoing Answer with Affirmative Defenses and Counterclaims and know the contents thereof, and I personally assert the defenses and counterclaims therein, and the same is true to my own knowledge, except as to the matters therein stated be alleged upon information and belief, and as to those matters I believe it to be true. The grounds of my belief as to all matters not stated upon my own knowledge are as follows: records, communications, and documents relevant to this matter.

Dated: January 26, 2020

ALAN DERSHOWITZ

# **EXHIBIT 4**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-21961-CIV-ALTONAGA/Torres

**ALAN DERSHOWITZ,**

      Plaintiff,

v.

**NETFLIX, INC., LEROY & MORTON
PRODUCTIONS LLC, RADICALMEDIA LLC,
LISA BRYANT and JOSEPH BERLINGER**,

      Defendants.

_____/

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Alan Dershowitz (hereinafter, "Professor Dershowitz"), by his attorneys NESENOFF & MILTENBERG LLP, BURSTYN LAW PLLC and JESSE DEAN-KLUGER, P.A., as and for his Complaint against Defendants Netflix, Inc., Leroy & Morton Productions LLC, RadicalMedia LLC, Lisa Bryant and Joseph Berlinger, respectfully alleges as follows:

### THE NATURE OF THIS ACTION

1.     This is an action for defamation, breach of contract, promissory estoppel and fraudulent inducement brought by Professor Dershowitz, arising out of the four-part documentary series on Jeffrey Epstein entitled *Filthy Rich*, which first became available on May 27, 2020, to viewers on the streaming service known as "Netflix" (the "Netflix Epstein series").

[1]

2.      Defendants knowingly and deliberately misled Professor Dershowitz as to their intentions for his participation in the series, and maliciously and intentionally portrayed Professor Dershowitz in a defamatory manner by (i) promoting and bolstering false allegations of sexual misconduct against Professor Dershowitz, and (ii) not presenting evidence in the Netflix Epstein series that they received and agreed to present, which showed that alleged Epstein victim Virginia Giuffre, nee Roberts ("Giuffre") was "wrong, simply, wrong" (in the words of her own lawyer) to have accused Professor Dershowitz of sexual impropriety and that Professor Dershowitz did not have sex with her as she has falsely alleged. Indeed, Dershowitz never even met her. She made up the entire story.  The portion of *Filthy Rich* concerning Giuffre's false allegations against Professor Dershowitz presented anew those allegations and was not a report of proceedings in any litigation. The Defendants leveraged Professor Dershowitz's name to drive views of their mini-series and then proceeded to defame him with clever manipulation of facts. This makes a mockery of our First Amendment, victims' rights, and the truth itself.

**THE PARTIES**

3.      Professor Dershowitz is a citizen and resident of the State of Florida.  Professor Dershowitz is a distinguished Emeritus Professor of Law and constitutional scholar at the Harvard Law School and is now largely retired and domiciled in South Florida.

4.      Defendant Netflix, Inc. (hereinafter, "Netflix, Inc.") is an American technology and media services provider and production company that has its main headquarters in Los Gatos, California.  Netflix, Inc. is incorporated under the laws of Delaware and is a citizen of Delaware. Netflix, Inc. is also a citizen of California because Netflix Inc.'s headquarters and principal place of business is located at 100 Winchester Circle, Los Gatos, California 90523. Netflix, Inc. is

[2]

registered to do business in Florida as a foreign corporation and intentionally markets and advertises its services to customers nationwide that include Florida customers. As of February 2021, Netflix, Inc. has over 200 million paid subscriptions worldwide, including in the United States, and is available worldwide except in mainland China, Syria, North Korea, and Crimea. Netflix, Inc. has as the company's primary business a subscription-based streaming service which is commonly referred to as "Netflix" and which offers online streaming of a library of films, documentaries and television series, including those produced in-house or by a production company in contract with Netflix, Inc.  As part of its services, Netflix, Inc. creates, develops and produces original content in collaboration with outside writers, directors and production companies.

5.     Defendant Leroy & Morton Productions LLC (hereinafter, "Leroy &  Morton Productions") is a media and communications limited liability company that was founded by Jon Kamen, Frank Scherma and David Ellender, and produces films, television shows, documentaries and commercials.  The members of Leroy & Morton Productions are: Jon Kamen, Frank Scherma and David Ellender.  Jon Kamen is a citizen of New York, having a residence in Westchester County, New York, and a business address at Leroy & Morton Productions is 435 Hudson Street – 6th Floor, New York, New York 10014.  Frank Scherma is a citizen of California, having a residence in Beverly Hills, California, and a business address at Leroy & Morton Productions is 1630 12th Street Santa Monica, California 90404.  David Ellender is a citizen of California, having a residence in Los Angeles, California, and a business address at Leroy & Morton Productions is 1630 12th Street Santa Monica, California 90404.  Accordingly, for diversity jurisdiction

[3]

purposes, Leroy & Morton Productions is a citizen of New York and California. Leroy & Morton Productions is incorporated in Delaware, registered as a foreign corporation in New York and California, and headquartered at 435 Hudson Street – 6th Floor, New York, New York 10014 and at 1630 12th Street Santa Monica, California 90404.

6.    Defendant RadicalMedia LLC (hereinafter, "Radical Media") is a media and communications limited liability company that was founded by Jonathan Kamen and Frank Scherma and creates and produces films, television shows, documentaries and commercials. The members of Radical Media are: Jon Kamen, Frank Scherma and David Ellender. Jon Kamen is a citizen of New York, having a residence in Westchester County, New York, and a business address at Radical Media at 435 Hudson Street – 6th Floor, New York, New York 10014. Frank Scherma is a citizen of California, having a residence in Beverly Hills, California, and a business address at Radical Media at 1630 12th Street Santa Monica, California 90404. David Ellender is a citizen of California, having a residence in Los Angeles, California, and a business address at Radical Media at 1630 12th Street Santa Monica, California 90404. Accordingly, for diversity jurisdiction purposes, Radical Media is a citizen of New York and California. Radical Media is incorporated in Delaware, registered as a foreign corporation in New York and in California, and headquartered at 435 Hudson Street – 6th Floor, New York, New York 10014 with a secondary address at 1630 12th Street Santa Monica, California 90404. Radical Media has business offices in New York City (Manhattan), Los Angeles (Santa Monica), London, Berlin and Shanghai.

7.    Defendant Lisa Bryant (hereinafter, "Bryant") is an individual who is a show director, showrunner and producer for Radical Media and who was the Executive Producer of the

[4]

four-part Netflix Epstein series done through Leroy & Morton Productions and for Netflix, Inc. Bryant is a citizen of New York, having a residence in New York and a business address at Radical Media at 435 Hudson Street – 6th Floor, New York, New York 10014. Bryant made explicit promises to Professor Dershowitz in Florida and elsewhere that she deliberately broke.

8.      Defendant Joseph Berlinger (hereinafter, "Berlinger") is an individual who is a producer for Radical Media, who resides in Katonah, New York and who was an Associate Producer of the four-part Epstein Netflix series done through Leroy & Morton Productions and for Netflix, Inc. Berlinger is a citizen of New York, having a residence in New York and a business address at Radical Media at 435 Hudson Street – 6th Floor, New York, New York 10014. Berlinger has a close relative who was friendly with Professor Dershowitz, which relationship Berlinger and Bryant exploited in order to lull Professor Dershowitz into accepting and believing in their false promises.

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. There is complete diversity. The plaintiff, Professor Dershowitz, is a citizen of Florida. Defendant Netflix, Inc. is a citizen of California and Delaware. Defendant Leroy & Morton Productions through its members is a citizen of New York and California. Defendant Radical Media through its members is a citizen of New York and California. Defendant Bryant is a citizen of New York. Defendant Berlinger is a citizen of New York.

[5]

10.     This Court has personal jurisdiction over Netflix, Inc., Leroy & Morton Productions, Radical Media, Bryant and Berlinger on the grounds that these defendants conducted business within the State of Florida and their actions that are the subject of this action took place in the State of Florida.

11.     The Court also has personal jurisdiction over Netflix pursuant to Section 48.193(1)(a)(1), Florida Statutes, because the causes of action arise from Netflix "operating, conducting, engaging in, or carrying on a business venture in this state." Netflix continuously and systematically does business in Florida by streaming its content to subscribers residing in Florida, offering subscriptions to Florida residents via its website and engaging in film production activities in Florida with respect to *Filthy Rich* and other features. This Court also has personal jurisdiction over Netflix pursuant to Section 48.193(1)(a)(2), Florida Statutes, because the causes of action arise from Netflix "committing a tortious act within this state" by releasing *Filthy Rich* for viewing on its website, which contains false and defamatory statements about Professor Dershowitz, and was, and continues to be, accessed by Netflix's Florida subscribers. This Court also has personal jurisdiction over Netflix pursuant to Section 48.193(1)(a)(6), Florida Statutes, because the causes of action arise from Netflix "causing injury to persons…within this state arising out of an act or omission by [Netflix] outside this state" and "at or about the time of the injury" Netflix was "engaged in solicitation or service activities within the state," and "products…processed, serviced, or manufactured anywhere" by Netflix "were used or consumed within this state in the ordinary course of commerce, trade, or use."

[6]

12.      The Court also has personal jurisdiction over Leroy & Morton Productions, Radical Media, Bryant and Berlinger because the causes of action alleged against them arise from their commission of a tortious act within Florida by participating in, facilitating and causing the publication of defamatory content on Netflix Inc.'s website, namely *Filthy Rich*, for which they served in various capacities, and which contains false and defamatory statements about Professor Dershowitz and was, and continues to be, accessed in Florida by Netflix subscribers. Section 48.193 (1)(a)(2), Florida Statutes.

13.      Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  South Florida has a population of approximately 10 million people, thus making the alleged defamatory statements in this venue significant.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.      Professor Dershowitz's Acquaintance With and Representation of Epstein.**

14.      In August 1996, Professor Dershowitz met wealth manager Jeffrey Epstein ("Epstein") through an eminent mutual acquaintance, Lady Lynn Forester de Rothschild (then Lynn Forester), and Professor Dershowitz and Epstein thereafter maintained an academic relationship, along with many other academics, especially from Harvard University, where Epstein maintained an office and conducted seminars attended by distinguished professors in connection with a program he funded.

15.      In 2005, Epstein was investigated for sex crimes involving underage girls.  Epstein retained Professor Dershowitz to be a part of Epstein's defense team to defend against the criminal

[7]

charges.  Along with other prominent attorneys such as Kenneth Starr, Roy Black, Jay Lefkowitz and Gerald Lefcourt, Professor Dershowitz helped negotiate a plea bargain in which Epstein agreed to plead guilty to a charge of soliciting prostitution under Florida state law. Epstein was sentenced to eighteen months in prison, and upon release, had to register as a sex offender.  Epstein also agreed to settle all future civil lawsuits filed against him by alleged victims.

16.     Although Professor Dershowitz was involved in the negotiation of Epstein's criminal plea bargain, Professor Dershowitz was not involved in drafting a formal non-prosecution agreement that was executed with respect to the criminal case and never negotiated any provision in the non-prosecution agreement that would have protected him from future prosecution (since he had done nothing that would warrant prosecution).

17.     Nor at the time was Professor Dershowitz accused or even suspected of any misconduct or anything remotely questionable, relating to Epstein or otherwise.  Had there been any such suspicion, Professor Dershowitz would not have been allowed to represent Epstein. All Professor Dershowitz did was fulfill his professional obligations as a lawyer representing Epstein.

**B.     The CVRA Lawsuit and Giuffre's Joinder and Accusations.**

18.     In 2008, shortly after Epstein's plea agreement became public, several of Epstein's alleged victims brought a lawsuit against the U.S. Government under the Crime Victims' Rights Act alleging that prosecutors had failed to inform them of the plea. *Doe v. United States*, Docket No. 08-cv-80736 (KAM) (S.D. Fl. July 7, 2008) (hereinafter, "the CVRA lawsuit").  At the time of filing, Giuffre was not one of the alleged Epstein victims in the suit.

[8]

19.    <u>Six years</u> later, on December 30, 2014, Giuffre's attorneys, Bradley Edwards and Paul Casell, moved, in a public filing, to join Giuffre as a plaintiff in the CVRA lawsuit.  Giuffre's motion alleged that: (i) Giuffre had sex with several of Epstein's acquaintances, including Professor Dershowitz, (ii) Epstein required Giuffre to have sex six  times with Professor Dershowitz, and (iii) Epstein trafficked Giuffre to other powerful men, including American politicians, business executives and foreign presidents.

20.    Giuffre's allegations against Professor Dershowitz were particularly suspect, given she had discussed Epstein numerous times over the previous years, and had *never* mentioned her alleged sexual interactions with Professor Dershowitz before she met her lawyers.

21.    By way of example:

a.    In 2011, Giuffre gave an interview concerning her experiences with Epstein to the *U.K. Daily Mail*, for $160,000, and in that interview, Giuffre did *not* name Professor Dershowitz as one of her alleged abusers.  She identified several other men, but *not* Professor Dershowitz.

b.    In 2011, Giuffre was interviewed by journalist Sharon Churcher. On information and belief, in that interview, Giuffre mentioned several men as alleged abusers, but *not* Professor Dershowitz.  She was shown pictures of prominent men who knew Epstein.

c.    In 2012, Giuffre wrote a book manuscript detailing her sexual encounters with Epstein and his associates, in which she said she once saw Professor Dershowitz *discussing business* with Epstein, but did not say she met Professor Dershowitz and certainly never said that she had sex with him or was trafficked to him.

[9]

d.   In 2011, Giuffre was interviewed by federal agents concerning Epstein. On information and belief, in that interview, she accused others of sexual misconduct but again, did *not* identify Professor Dershowitz as one of her alleged abusers.

22.    In sum, Giuffre *never* accused Professor Dershowitz of having sex with her until after Giuffre met her attorneys in 2014 and sought to be included in the CVRA lawsuit. According to her best friend, Giuffre told her she did not want to include Professor Dershowitz but was "pressured" to do so by her lawyers.

23.    On information and belief, Giuffre told her friend, Rebecca Boylan, that her attorneys pressured her to include Professor Dershowitz among the men with whom she alleged to have had sex, in order to help her get a multi-million dollar settlement from the owner of Victoria's Secret and friend to Epstein, Les Wexner.

24.    Notably, in her motion to be included in the CVRA lawsuit, Giuffre's false accusations against Professor Dershowitz were filed in a public document, even though other pleadings and documents in the CVRA lawsuit were filed under seal. On information and belief, at the same time she publicly (and falsely) accused Professor Dershowitz, she privately accused Wexner and had her lawyers privately approach him.

25.    Because Giuffre's false accusations against Professor Dershowitz were filed in a public document, media outlets around the world began reporting on Giuffre's accusations that Professor Dershowitz had sexually abused her as a minor – a terribly damaging false accusation against a law professor and scholar.

[10]

26.     Undoubtedly, Giuffre's attorneys were aware that statements made in a judicial proceeding are generally immunized from tort liability – including defamation claims – and that, by publicly filing Giuffre's false allegations against Professor Dershowitz, they created a one-sided situation in which Giuffre was free to sling mud at Professor Dershowitz essentially without repercussions.

27.     In response to the filing and the media attention on Giuffre's allegations, Professor Dershowitz vehemently denied the allegations in public statements and interviews, and accused Giuffre's attorneys of professional misconduct by knowingly filing a lawsuit containing falsehoods about him (or at least, failing to properly investigate their client's allegations).

28.     Giuffre's attorneys then filed a defamation claim against Professor Dershowitz; Professor Dershowitz filed a counterclaim. *Edwards v. Dershowitz*, Docket No. CACE-15-000072 (Fla. Broward County Ct. 2015).

29.     On April 7, 2015, U.S. District Judge Kenneth A. Marra, for the Southern District of Florida, under Rule 12(f) of the Federal Rules of Civil Procedure, struck Giuffre's allegations that she had sex with Professor Dershowitz from the CVRA lawsuit and noted that such action could be considered as a "sanction" against the lawyers. In doing so, the Court also reminded Giuffre's attorneys of their Rule 11 obligations in federal court "that all submissions be presented for a proper purpose and factual contentions have evidentiary support." *Doe v. United States*, Docket No. 08-cv-80736 (KAM) (S.D. Fl. Apr. 7, 2015) (ECF No. 324 in that action).

30.     Giuffre's accusations that she had sex with Professor Dershowitz are categorically false, and Professor Dershowitz has denied and disproved the accusations - including under oath

[11]

subject to the penalties of perjury. Specifically, Professor Dershowitz has sworn under oath in affidavits and a deposition that he had never met Giuffre at the time she alleged their encounters occurred, and that he never had any sexual contact with Giuffre. Indeed, the only time that Professor Dershowitz ever met Giuffre was later in 2016 when Giuffre was deposed in the *Edwards/Dershowitz* Florida action.

31.    Professor Dershowitz has repeatedly pointed out that documentary evidence established that he could not have been and was not at the locations that Giuffre claimed to have had sex with Professor Dershowitz and that Giuffre was not a minor during the time period in which she claimed to have had sex with Professor Dershowitz, and that she has repeatedly lied about her age variously claiming she was 14, 15 and 16 when she met Epstein. Records prove she was 17 when she met Epstein in late 2000.

32.    As an investigation headed by former FBI Director Louis Freeh concluded, in a report dated April 8, 2016:

> Over the past several months, an independent investigation was conducted, under my supervision, by former senior federal law enforcement officials. We interviewed many witnesses and reviewed thousands of pages of documentary evidence. Our investigation found no evidence to support the accusations of sexual misconduct against Professor Dershowitz. In fact, in several instances, the evidence directly contradicted the accusations made against him. In my opinion, the totality of the evidence found during the investigation refutes the allegations made against Professor Dershowitz.

## C.    **The Boies Communications.**

33.    On May 19, 2015, Professor Dershowitz met with David Boies ("Boies") of the law firm Boies Schiller Flexner LLP ("Boies Schiller") at the Sherry Netherland Hotel in New York City.

[12]

34.     Starting back in January 2015, after an interview that Professor Dershowitz gave on *The Today Show*, Professor Dershowitz had communications with Carlos Sires, an attorney in the Boies Schiller Florida office, initiated by Sires (whom Professor Dershowitz knew), about representing Professor Dershowitz in the *Edwards v. Dershowitz* lawsuit.

35.     Professor Dershowitz continued to have those communications with Sires until Professor Dershowitz, on February 10, 2015, received a letter from Nicholas Gravante, the General Counsel of the Boies Schiller firm, advising Professor Dershowitz of a conflict of interest in representing Professor Dershowitz against Giuffre' lawyers.  The Gravante letter did not describe the nature of the conflict that precluded the firm, but Professor Dershowitz subsequently learned that Sigrid McCawley and David Boies had been representing Giuffre on an ongoing basis and that Boies Schiller had a common interest agreement with Casell and Edwards.  With that background, Professor Dershowitz met with Boies.

36.     At the May 19, 2015 meeting, Boies described the decision to name Professor Dershowitz in the CVRA lawsuit by Casell and Edwards as a self-inflicted wound, and that had he (Boies) been asked, he would have opposed inclusion of Professor Dershowitz in the Casell and Edwards filing for Giuffre in the CVRA lawsuit.  Boies further said he was not authorized to negotiate a settlement in *Edwards v. Dershowitz* on behalf of Casell and Edwards.

37.     In the same meeting, Boies told Professor Dershowitz that: (i) he (Boies) did not believe Giuffre's accusations against Professor Dershowitz were true; (ii) that he (Boies) believed Giuffre was mistaken in naming Professor Dershowitz as someone with whom she had sex; (iii) that it was Boies's obligation to persuade Giuffre to acknowledge that Professor Dershowitz could

[13]

not have been among the people with whom she had sex; (iv) that if he (Boies) could not persuade her, he would leave her representation to Edwards and Casell and no longer represent Giuffre; and (v) that he (Boies) was convinced that Professor Dershowitz did not and could not have had sex with Giuffre. Right after that meeting, Professor Dershowitz dictated a memorandum of the meeting.

38. Both before and after the May 19, 2015 meeting with Boies, Professor Dershowitz spent several weeks putting together a comprehensive timeline of his whereabouts between August 2000 and September 2002, the time period in which Giuffre claimed to have been associated with Epstein. Professor Dershowitz put together the timeline based on credit card records, medical records, various TV appearances, phone records, contemporaneous journal entries and other documentary evidence.

39. On June 1, 2015, Professor Dershowitz presented his timeline information to Boies and McCawley at a meeting at the Boies Schiller offices in New York City. Professor Dershowitz said at the meeting that he was still collecting documentation. Boies said the more complete the records were, the better he would be able to persuade Giuffre that it was impossible that Professor Dershowitz was the person with whom she allegedly had six or more sexual encounters.

40. At the end of the meeting, Boies said that he found the evidence compelling but that he wanted the evidence to be as complete as possible, that the attorneys for Giuffre who had put Professor Dershowitz's name in their pleading in the CVRA lawsuit had done a stupid and wrong thing and that Professor Dershowitz and he (Boies) should meet again when Professor

[14]

Dershowitz had assembled more records. Right after that meeting, Professor Dershowitz sent an e-mail to his secretary describing the June 1, 2015 meeting.

41. On July 6, 2015, Professor Dershowitz had another meeting with Boies and McCawley, with Professor Dershowitz's research assistant present in person, and Professor Dershowitz appearing by phone, to show them the documentary evidence against Giuffre's claims. Boies conducted a detailed examination of the timeline that was put together and repeatedly asked to look at phone records and financial documentation.

42. The timeline disproved Giuffre's allegations against Professor Dershowitz. During the period of time in which Giuffre was in contact with Epstein, Professor Dershowitz did not visit Epstein's private island in the Caribbean, did not visit Epstein's ranch in New Mexico, did not stay at Epstein's house in Palm Beach and did not fly on Epstein's private jet. These were the places where Giuffre claimed to have had sex with Professor Dershowitz.

43. At the conclusion of the meeting, Boies (who was knowledgeable about the chronology of events) told Professor Dershowitz that he (Boies) and McCawley would meet with Giuffre in the near future and try to convince her that she had made a mistake in identifying Professor Dershowitz as someone with whom she had sex. Boies asked for a memorandum detailing Professor Dershowitz's trips to South Florida, which was provided on condition that it not be shared with Casell and Edwards.

44. After the July 6, 2015 meeting, Professor Dershowitz spoke with Boies, who acknowledged that it would have been impossible for Professor Dershowitz to be at the locations where Giuffre had alleged she had sex with Professor Dershowitz and that Giuffre was "wrong,

[15]

simply wrong." Professor Dershowitz tape recorded conversations with Boies in which Boies stated that Giuffre was wrong and *could not have had sex with Professor Dershowitz as she claimed*.

45.     In April 2016, *Edwards v. Dershowitz* was settled, with Cassel and Edwards acknowledging that their public filing of Giuffre's accusations against Professor Dershowitz in the CVRA lawsuit was a mistake.

46.     After the settlement of Professor Dershowitz and Cassell and Edwards' cross-claims, Boies continued to express to Professor Dershowitz a belief that Giuffre's accusations against Professor Dershowitz were untrue.  Throughout that same time, Boies and the Boies Schiller firm continued to represent Giuffre and, on information and belief, shared Professor Dershowitz's information with Casell and Edwards.  Upon information and belief, Boies told one of Giuffre's attorneys that Professor Dershowitz was a fool for giving him (Boies) so much information.

47.     On April 16, 2019, Boies Schiller brought a defamation Complaint on behalf of Giuffre against Professor Dershowitz in the Southern District of New York. *Giuffre v. Dershowitz*, Docket No. 19-cv-03377 (LAP) (S.D.N.Y. Apr. 16, 2019).  In her Complaint, Giuffre essentially claimed that Professor Dershowitz had defamed her by denying her false accusations against him.

48.     On June 7, 2019, Professor Dershowitz moved to disqualify Boies and the Boies Schiller firm from representing Giuffre, submitting, among other things, the tape recording in which Boies acknowledged that Giuffre was wrong to accuse Professor Dershowitz and that Professor Dershowitz could not possibly have had sex with Giuffre as she had alleged.

[16]

49.     On October 16, 2019, U.S. District Judge Loretta A. Preska of the Southern District of New York ordered the Boies Schiller firm disqualified from representing Giuffre based on the witness advocate rule.  On November 19, 2019, Professor Dershowitz interposed an Answer and defamation Counterclaim against Giuffre.  That litigation is still ongoing.

**D.     The Bryant Communications, the Evidence Provided to Defendants, and the Release.**

50.     On February 25, 2019, Bryant, using a Radical Media e-mail address, e-mailed Professor Dershowitz, identifying herself as a director and executive producer of an upcoming Netflix documentary series on Epstein and the role of wealth and power in the U.S. justice system. Bryant asked that Professor Dershowitz be interviewed for the Netflix Epstein series and explained there were two reasons: (i) Professor Dershowitz has known Epstein for years and represented him in criminal and civil matter, and Professor Dershowitz has been "dragged into the fray with accusations against you personally"; and (ii) Professor Dershowitz had represented may wealthy clients who were targeted, both fairly and unfairly, by the justice system.  Bryant stated in her e-mail that "[w]e plan to tackle both sides of the issue."  Bryant added "While many wealthy individuals can afford excellent representation -- they can also find themselves the victims of over-zealous prosecution and over-reaching civil suits which 'normal' people would never have to face. You are uniquely experienced in such cases and we believe you could give much needed clarity and perspective to the series."  Bryant included at the end of her e-mail a description of Radical Media.

51.     Professor Dershowitz, who was in Florida, responded the same day, February 25, 2019, by e-mail that he was "Happy to do it."  Professor Dershowitz added that he had "only

[17]

represented Epstein in the one criminal case in Florida." Bryant in turn that same day sent an e-mail to Professor Dershowitz asking what his schedule looked like over the next several weeks. Professor Dershowitz promptly responded with his schedule into April that had him in Miami Beach, Florida except for identified dates in March. Bryant e-mail back that March 4 and the morning of March 5 were available to do an interview of Professor Dershowitz, who e-mailed that those dates worked. Bryant concluded the e-mail exchange of February 25, 2019, by setting March 5, 2019, as the date for the interview and accepted Professor Dershowitz's site. On February 28, 2019, Bryant confirmed with Professor Dershowitz the interview date of March 5, 2019, and promised to send to him Radical Media's standard appearance and location releases so that Professor Dershowitz could look at them in advance of the interview. Professor Dershowitz gave Bryant his address and cell.

52.     Bryant and Professor Dershowitz proceeded to have many conversations with regard to Professor Dershowitz's being interviewed for the Netflix Epstein series. In these conversations, Bryant repeatedly and expressly promised to put in the Netflix Epstein series all the evidence that Professor Dershowitz presented to her disproving Giuffre's allegations against Professor Dershowitz.

53.     By way of example, Bryant *expressly* promised to include in the Netflix Epstein series: (i) the email correspondence between Giuffre and Churcher that clearly established that Giuffre and Professor Dershowitz had not had sex or even met; (ii) Giuffre's book manuscript, which discussed giving massages and having sex with Epstein and certain other individuals, but did not identify Professor Dershowitz as someone with whom she had sex; (iii) the tape recording

[18]

in which Boies acknowledged that Giuffre was wrong to accuse Professor Dershowitz and that Professor Dershowitz could not possibly have had sex with Giuffre; (iv) the tape recording by Rebecca Boylan of an interview with Giuffre, in which Giuffre never mentioned having sex with Professor Dershowitz but rather, explained that she (Giuffre) was being pressured to accuse Professor Dershowitz of having sex with her; and (v) the investigation by Louis Freeh that concluded there was no evidence supporting the accusation that Professor Dershowitz had sex with Giuffre.

54.    Relying on Bryant's express agreement that all of Professor Dershowitz's evidence would be included in the Netflix Epstein series, Professor Dershowitz provided the evidence described above to Bryant.

55.    In connection with his appearance on the Netflix Epstein series, Professor Dershowitz was presented with an "Appearance Release." The Release, with a handwritten 3/5, stated, inter alia, that:

a.    "Leroy & Morton Productions LLC ("Company"), with an address of 435 Hudson Street, 6th Floor, New York, New York 10014, may photograph and film/tape [Professor Dershowitz] and may record [Professor Dershowitz's] voice, conversation and sounds" and that Leroy & Morton Productions LLC would own the results and proceeds of such recordings;

b.    "Company agrees that Company shall not intentionally portray [Professor Dershowitz] in a defamatory manner in the Program";

[19]

     c.   "[Professor Dershowitz's] sole remedy under this Release shall be an action at law for money damages"; and

     d.   The Release "shall be governed by the laws of the State of New York".

56.    During the interview of Professor Dershowitz for the Netflix Epstein series, Bryant suggested that Professor Dershowitz directly challenge Giuffre to accuse him of misconduct on camera (as she had previously only done so through liability-insulated judicial proceedings).

57.    Professor Dershowitz said he would do so on three conditions. First, Bryant would expressly include the fact that Professor Dershowitz issued this challenge in order to be able to sue her outside the litigation privilege. Second, Bryant would tell Professor Dershowitz if Giuffre accepted Professor Dershowitz's challenge. Third, Bryant would give Professor Dershowitz an opportunity to respond directly to Giuffre, on camera, if Giuffre accepted Professor Dershowitz's challenge and accused Professor Dershowitz on camera. Bryant expressly agreed to these conditions, but, as will be explained *infra*, subsequently broke her agreement as to all of these conditions.

58.    An interview was held on March 5, 2019, at Professor Dershowitz's apartment in Miami Beach, Florida. At that time, Professor Dershowitz introduced Bryant to Professor Dershowitz's wife Carolyn and showed Bryant, among other things, pictures of Professor Dershowitz's famous clients and Professor Dershowitz's wife.

59.    In subsequent discussions about the series, Bryant said she was on Professor Dershowitz's side and that an associate producer, Berlinger, would also be supportive of Professor Dershowitz, as Berlinger was related to a friend of Professor Dershowitz. Bryant said that she

[20]

believed Professor Dershowitz's denial of Giuffre's accusations of sexual misconduct and that the

Netflix Epstein series would fully present Professor Dershowitz's side of the story.

60.    On March 7, 2019, after the interview, Bryant, using a Radical Media e-mail

address, e-mailed Professor Dershowitz:

> Thank you very much for your time earlier this week and please extend our thanks
> to your lovely wife Carolyn.   It was an honor interviewing you - I thoroughly
> enjoyed it and appreciate your candor and perspective and do think it has not been
> explored at all.  We have the time and the forum to tell both full sides of the story
> and will do so.   It would be great if in the coming days or weeks you can email or
> send me some personal photos of you growing up, from law school, with your
> lovely wife (I loved the story of how you met!) and any special ones over the years
> of you with some of the famous clients you've represented (O.J., Leona Helmsley,
> Mike Tyson, etc. and of course Mr Epstein).  If you have any photos of him or you
> and he together or your defense team for Epstein, all of those would help tell your
> story more fully.
>
> And of course, if you would be so kind as to ask Mr. Epstein if he would do an
> interview with us, it would be greatly appreciated.  I know he hasn't spoken out
> before but we would give him the proper platform to tell his story and treat him
> fairly on our 4 hour documentary series.
>
> Thank you again for letting us into your home.

61.    On March 27, 2019, Bryant using a Radical Media e-mail address, e-mailed

Professor Dershowitz:

> I hope you are well.  I've enjoyed reading the copy of your new book that you gave
> me after our interview...and in reading Chapter 20, I read that you recorded your
> interview with Rebecca.  Can I obtain a copy of that to use in the show?  I do have
> a copy of portions of the transcript of Rebecca's interview, but the audio would be
> much better and help tell your side of the story far better than just the transcript.
>
> I believe you said you were in New York this week so if you have time, I'm
> reminding you to have someone send or email the personal photos we spoke about
> - of you growing up, from law school, with your lovely wife Carolyn and family,
> and any special photos you have over the years of you with some of the famous
> clients you've represented - (O.J., Leona Helmsley, Mike Tyson, etc. and of course

[21]

Mr. Epstein). If you have any photos of your Epstein defense team, Jeffrey or the two of you together anywhere, all of those would help tell your story as well.

62.     Professor Dershowitz, who was in Miami Beach, Florida, replied that same day:

Back in ny on April 10. Happy to give you Rebecca tape and play Boies tape in which he admits his client is "wrong", "simply wrong".

Bryant, using a Radical Media e-mail address, in turn quickly responded:

Fantastic. Is there a file you can email or I can meet you somewhere the week of April 10th and pick it up along with the photos? Also might be interesting to have you play it for our cameras and explain.

Let me know your thoughts.

Professor Dershowitz replied in an e-mail proposing that he and Bryant meet after April 10, 2019.

63.     On April 11. 2019, Bryant, using a Radical Media e-mail address, e-mailed Professor Dershowitz:

You asked me to reach out after April 10th regarding the audio of your interview with Rebecca and the photos of your family, life, etc. So I'm reaching out! Are you in NY currently and do you have time to drudge up those photos and the audiotape while you're here? Please let me know your schedule.

Professor Dershowitz responded within the minute that he was in New York and could meet the following week.

64.     On May 8, 2019, Bryant, using a Radical Media e-mail address, e-mailed Professor Dershowitz:

I hope you are well. I've been meaning to check back in with you regarding the personal photos you said you'd provide to us for the documentary. Ones from your storied history in the legal field and of your family, plus the Rebecca tapes when you have time. Are you still in New York? If so, would be great to get this week as we are starting to edit soon.

We were hoping to get candid photos of (not professionally taken ones):

[22]

-you and wife Carolyn, any other family photos
-you in early legal days such as courtroom shots, graduation, at Harvard, with
famous clients like oJ, Leona, Claus, etc.
-any photos of you with Epstein, or ones taken at that one holiday spent at his
home
-the tape recording of Rebecca re: Virginia Roberts

Please let me know if there's a good day and a convenient way to get these items
from you.

Professor Dershowitz replied by e-mail that same day he was in Israel but would be back on the

following Monday (May 13) and would look for what Bryant requested as soon as he got back.

65.    On May 28, 2019, Bryant, using a Radical Media e-mail address, e-mailed

Professor Dershowitz:

I was out of town to follow up a couple of weeks ago when you got back from
Israel.  Any chance this week is good to get these photos and audio from you?

Professor Dershowitz replied by e-mail within the half-hour that he was travelling, but would be

in New York the following week.

66.    On June 5, 2019, Bryant, using a Radical Media e-mail address, e-mailed Professor

Dershowitz:

Hope you are well.  You mentioned you'd be back in NY this week.  Is it possible
to get your old photos and the audio requested earlier this week?  We are in edit
now on the project so it would be great to have them and be able to show a more
personal side and tout your prestigious career.

Here's a reminder of the personal photos, etc. we spoke about:
- you growing up,
-from law school
- with your lovely wife Carolyn and family,
- any special photos you have over the years of you with some of the famous clients
you've represented - (O.J., Leona Helmsley, Mike Tyson, etc. ).
-If you have any photos of you with any members of the Epstein defense team,
-Jeffrey or the two of you together anywhere

[23]

-taped recording with Rebecca,

Please let me know when and how we can get these from you.  I also wanted to remind you that Joe Berlinger is an Executive Producer on this project and we of course will be fair and balanced in our storytelling.

Professor Dershowitz replied by e-mail within the hour asking Bryant if she could come over to the apartment of his wife and him; Bryant, using a Radical Media e-mail address, e-mailed Professor Dershowitz they could meet either that day or Friday (June 7, 2019); and Professor Dershowitz replied by e-mail that Friday (June 7, 2019) would work.

67.     On June 6, 2019, Bryant, using a Radical Media e-mail address, e-mailed Professor Dershowitz, agreeing to Friday and asking to bring a cameraman.  Professor Dershowitz asked why the cameraman, and Bryant, using a Radical Media e-mail address, e-mailed Professor Dershowitz:

You just mentioned it would take a couple of hours so I wasn't sure if you wanted me to tell me something new or capture anything on camera.  You can tell me about the photos and other things on camera if you want.  It's up to you.

Professor Dershowitz e-mailed back: "Ok.  Bring camera."  Bryant, using a Radical Media e-mail address, e-mailed Professor Dershowitz "See you at 2."

68.     On June 7, 2019, Bryant went to Professor Dershowitz's apartment with a cameraman. Professor Dershowitz answered Bryant's question and reviewed with Bryant pictures in which Bryant was interested, and Professor Dershowitz gave the Rebecca tape to Bryant.

69.     Professor Dershowitz's book *Guilt By Association* concerns and discusses the evidence that established Professor's Dershowitz's innocence as to Ms. Giuffre's accusations. That book thus reviews much of the same evidence that Professor Dershowitz provided Ms. Bryant

[24]

concerning Ms. Giuffre's false accusations. Professor Dershowitz told Ms. Bryant about the book *Guilt By Association*, and Ms. Bryant said she looked forward to reading the book. Professor Dershowitz's book *Guilt By Association* was published November 19, 2019 and was available on Kindle on that date; pre-order purchases began at least by October 3, 2019. *Filthy Rich* was first aired on or about May 29, 2020. There was ample opportunity for Netflix, Inc., Radical Media and filmmakers Leroy & Morton Productions, Bryant and Berlinger to review the evidence and information presented in *Guilt By Association* and edit *Filthy Rich* not to defame Professor Dershowitz.

### E.     The Netflix Epstein Series *Filthy Rich*.

70.     On or about May 27, 2020, the four-part Netflix Epstein series entitled *Filthy Rich*, produced by Bryant and Berlinger, first became available to viewers on the Netflix streaming service.

71.     *Filthy Rich* primarily portrays Epstein as a bad person, a pedophile without remorse who deserved to be locked up for a long time, and his "victims" as emotionally damaged young women whose Crime Victims' Rights Act ("CVRA") lawsuit brought about an overturning of the 2008 federal plea deal that Professor Dershowitz, with some other reputable lawyers, had negotiated with the Department of Justice for Epstein (and that the "victims" had viewed as outrageously lenient in resulting in less than 18 months jail time that included work release hours). While other aspects of Epstein's life were portrayed (*e.g.*, Epstein, the philanthropist), the dominant theme is Epstein's sex life and the young women whom he damaged, ending with the "triumph" of the 2019 prosecution of Epstein -- complete with showing the women walking with

[25]

Brad Edwards and David Boies toward and into the U.S. Courthouse for the Southern District of New York.

72.   *Filthy Rich* is told largely through the interviews of the former Palm Beach Police Chief Michael Reiter, CVRA attorney Brad Edwards, Boies Schiller and victims' attorney Sigrid McCawley and a number of the "victims," including Giuffre.  Numerous times in *Filthy Rich*, Giuffre is shown in interviewed comments.  Professor Dershowitz is interviewed to defend the 2008 plea bargain and to deny Giuffre's accusation that by arrangement through Epstein, Giuffre had sex with Professor Dershowitz six times.

73.   In the Netflix Epstein series *Filthy Rich*, Professor Dershowitz's denial and Giuffre's accusation, which accusation is included in the Brad Edwards CVRA lawsuit, come off as a "he said/she said" conflict with the misleading written statement shown that Professor Dershowitz and Giuffre have sued each other for defamation (with no elaboration).

74.   It wasn't a "he said/she said" situation, however, given Professor Dershowitz's totality of the evidence establishing he never had sex with Giuffre.  To have presented that evidence in *Filthy Rich*, as had been promised, would have undercut the credibility of Brad Edwards, Sigrid McCawley and Giuffre -- the very people whose interviewed comments *Filthy Rich* depended upon.

75.   Giuffre's accusations against Professor Dershowitz appear to carry some credibility in *Filthy Rich* in part because of a particular feature of *Filthy Rich*: the story jumps around chronologically.  A year dating of events appears on the screen before segments, but the segments themselves do not occur in chronological order.  Had the story been told in a strict chronological

[26]

sequence, it would have been evident that Giuffre's years with Epstein, 1999-2002, occurred about five years <u>before</u> Professor Dershowitz started working on defending Epstein for what would be the 2008 federal plea deal.

76.     Before Giuffre made her accusation against Professor Dershowitz, Professor Dershowitz never had met Giuffre or even heard of Giuffre, much less had sex with her.  Indeed, for years when discussing her time with Epstein, Giuffre never made any allegations against Professor Dershowitz, only doing so for the first time after her attorneys apparently pressured her to do so for the CVRA lawsuit (and, on information and belief, to serve as a "warning shot" to Les Wexner for the purpose of quietly extracting a monetary settlement).

77.     Had the story been presented chronologically, it would have been much more evident that Giuffre's short time with Epstein long pre-dated Professor's Dershowitz's representation of Epstein, meaning the two <u>never</u> overlapped in their employment with Epstein (or even came close to such), and that Giuffre's allegations against Professor Dershowitz were apparently invented over a decade <u>after</u> Giuffre left Epstein.

78.     But, with the chronology jumbled, Giuffre's lack of credibility as to her claims against Professor Dershowitz is cleverly obscured.  To present the facts in a more straightforward manner would have undercut the credibility of people whose interviewed comments *Filthy Rich* depended upon in order to make out its intended narrative.

79.     Obscuring the timeline is not the only editorial trick Defendants employed to bolster Giuffre's false claims against Professor Dershowitz.  Defendants also "sandwiched" Giuffre's entirely unsubstantiated and unsupported claims against Professor Dershowitz in

[27]

between segments addressing her claims against <u>other</u> individuals for whom the documentary purports there was at least some supporting evidence.

80.     By way of further explanation, Giuffre's accusation against Professor Dershowitz appears in the middle of *Filthy Rich*.  Before the exchange, *Filthy Rich* discusses whether Epstein had sex with Giuffre (then Roberts) on her 16th birthday, using one of the Brad Edwards video deposition clips of Epstein.  (Epstein's reaction, when asked, was to say "are you kidding me?")  The clip showing Epstein being asked about having sex with Giuffre (then Roberts) on her 16th birthday is followed by a sequence about Prince Andrew allegedly having sex with Giuffre (then Roberts) when she was 17, at the time she was associating with Epstein and Maxwell.  Prince Andrew is shown as denying having sex with Giuffre (then Roberts), but then the picture of a younger Prince Andrew, younger Giuffre (then Roberts) and younger Maxwell is shown with Giuffre saying how Maxwell told her that she (Giuffre) would have to do with Prince Andrew what she had done with Jeffrey.  The obvious implication by showing the picture is that Giuffre's claims are credible and those who deny her claims are not.

81.     It is then, <u>after</u> showing Giuffre's accusation, Prince Andrew's denial, and Giuffre's purported evidence in support, that Giuffre's accusation against Professor Dershowitz is presented.

82.     Professor Dershowitz speaks unequivocally and forcefully in denying the accusation, denying even meeting Giuffre and in challenging Giuffre to directly accuse him, rather than making the claims indirectly in other litigation.  Giuffre is then shown as making her accusation of having sex with Professor Dershowitz at Epstein's arrangement, saying she had sex with Professor Dershowitz approximately six times.

[28]

83.     Unlike in Prince Andrew's case, no photograph was shown depicting Professor Dershowitz with Giuffre, and no such photograph exists because Giuffre had stopped being with Epstein in 2002 and Professor Dershowitz did not start representing Epstein until about five years later.  But *Filthy Rich* skips over this inconvenient fact and quickly moves on to such subjects as Epstein's apartment being full of framed pictures and paintings of nude women, Giuffre's assertion that she saw Bill Clinton at Epstein's island in the U.S. Virgin Islands (which is apparently backed up with shots of the plane logs showing Bill Clinton going to Epstein's island) and then back to the allegations of Prince Andrew having sex with Giuffre (then Roberts).

84.     The segment about Giuffre's accusation against Professor Dershowitz was sandwiched between segments that lent credibility to Giuffre despite Defendants' actual knowledge that Giuffre did not have a shred of supporting evidence for her claims against Professor Dershowitz, and, to the contrary, Professor Dershowitz had extensive support disproving Giuffre's allegations against him.

85.     Giuffre is shown expressing joy about Epstein's 2019 prosecution; and twice during the Netflix Epstein series *Filthy Rich*, Giuffre talks about "getting" others associated with Epstein.  Relatedly, a certain amount of anger/disdain is directed at Professor Dershowitz for having been a principal negotiator of the 2008 federal plea deal, which the Netflix Epstein series uses in order to convey a broader impression of Dershowitz as someone materially involved in Epstein's alleged sex trafficking, rather than simply a defense attorney doing his job.

86.     The Netflix Epstein series *Filthy Rich* thus provided a one-sided narrative deliberately supportive of Giuffre, and in that context, published Giuffre's defamatory accusation

that Professor Dershowitz had sex with her, and deliberately, knowingly, and intentionally presented such allegation (and Giuffre herself) as credible and well-supported. While the Netflix Epstein series *Filthy Rich* did show Professor Dershowitz denying Giuffre's accusations, the series did *not*, as promised, discuss, reference, or even acknowledge the substantial evidence supplied by Professor Dershowitz showing that Giuffre's accusations were false and that she was not a credible accuser.

87.     The portion of *Filthy Rich* concerning Giuffre's false allegations against Professor Dershowitz presented anew those allegations and was not a report of proceedings in any litigation. There was, after the presentation of Giuffre's accusation against Professor Dershowitz and Professor Dershowitz's denial, a reference to the litigation between the two. But *Filthy Rich* did not package the Giuffre's accusation against Professor Dershowitz and Professor Dershowitz's denial as a report on the litigation. Giuffre defamed Professor Dershowitz directly in *Filthy Rich*.

88.     Contrary to Defendants' express promises, the Netflix Epstein series *Filthy Rich* did not include any of the material that Professor Dershowitz had provided Bryant for inclusion with respect to Giuffre, to wit: the email correspondence between Giuffre and Churcher; Giuffre's book manuscript; the tape recording in which Boies acknowledged that Giuffre was wrong to accuse Professor Dershowitz and that Giuffre could not possibly have had sex with Professor Dershowitz; the tape recording by Rebecca Boylan; and the investigation by Louis Freeh that concluded there was no evidence supporting Giuffre's accusations. Moreover, Defendants purposefully excluded all portions of Professor Dershowitz's interviews wherein this evidence was discussed/referenced.

[30]

89.     The Netflix Epstein series *Filthy Rich*, in setting forth a deliberately one-sided narrative, relied upon stories of three alleged Epstein victims: Giuffre, Sarah Ransome and Maria Farmer.  All three were clients of Boies, who appears briefly in the Netflix Epstein series *Filthy Rich*.

90.     These women were all portrayed in the Netflix Epstein series *Filthy Rich* as solemn and fully credible accusers.  Not presented was anything that called into question the credibility of any of these individuals, even though Professor Dershowitz had provided to Bryant evidence that not only eviscerated the credibility of Giuffre as to her accusations against Professor Dershowitz, but also undermined the credibility of Sarah Ransome and Maria Farmer.

91.     By way of example, the Netflix Epstein series *Filthy Rich* did not include reference to the fact that Sarah Ransome had, in a series of e-mails to a *New York Post* reporter, accused Hillary Clinton, Donald Trump, Bill Clinton, Richard Branson and others of pedophilia, rape and other crimes, and claimed to have video evidence (sex tapes) of such alleged crimes, but then ultimately admitted to Connie Bruck of *The New Yorker* that she (Ransome) had made up these claims.

92.     Professor Dershowitz showed to Bryant his memorandum of his conversation with investigative reporter and *New York Post* columnist Maureen Callahan about Ransome's debunked false accusations and suggested she contact Callahan. Bryant told Professor Dershowitz that she already knew about the false accusations and that Sarah Ransome had no credibility.  She promised to include this evidence in the series.

[31]

93.     Yet, Sarah Ransome was presented in the Netflix Epstein series *Filthy Rich* as a credible witness, and the parts of Professor Dershowitz's interview(s) that mentioned the evidence against Sarah Ransome's credibility were excluded (nor was any reference made to Ransome's history and admission of falsely accusing others).

94.     Similarly, the Netflix Epstein series *Filthy Rich* did not include reference to the fact Maria Farmer could not have seen Professor Dershowitz in Epstein's house because Maria Farmer had stopped working for Epstein before Professor Dershowitz even met Epstein. Professor Dershowitz had informed Bryant of that fact, too. Yet, Maria Farmer was presented in the Netflix Epstein series *Filthy Rich* as a credible witness.

95.     Professor Dershowitz's travel records proved that he could not have been on Jeffrey Epstein's Caribbean Island and New Mexico ranch where and when Ms. Giuffre said the sex occurred.  That was the conclusion of former FBI Director Louis Freeh, and that was also why David Boies said his client Giuffre's accusations against Professor Dershowitz were "wrong, wrong, wrong."  Instead, the Defendants Netflix, Inc., Leroy & Morton Productions, Radical Media, Bryant and Berlinger intentionally, knowingly and deliberately presented a false and defamatory narrative in order to better fit with the intended theme of the series: presenting Jeffrey Epstein and anyone in his orbit as a monster and presenting Ms. Giuffre and Ms. Ransome as innocent and credible.  Millions watched *Filthy Rich* and were presented with a "she said/he said" dispute between Professor Dershowitz and Ms. Giuffre, which was false and materially misleading and certainly not "fair and balanced," and which resulted in many of those viewers believing Ms. Giuffre's completely baseless defamatory accusations against Professor Dershowitz.

[32]

96.    The foregoing omissions were not a simple reflection of editorial judgment, but rather, indicate a malicious, deliberate, knowing, conscious publication of defamatory accusations, by witnesses known by Defendants to be non-credible, edited and presented in such a manner to bolster the credibility of the accusers and preclude any consideration of relevant, material, exculpatory evidence, thus constituting defamation as well as defamation by implication.

97.    Netflix, Inc. at some point in time after the initial presentation of the Epstein series *Filthy Rich* began to advertise the series with Professor Dershowitz's picture in the place of Jeffery Epstein's on some of its screens. The use of Professor Dershowitz's picture in this manner serves to conflate subconsciously the images of Jeffrey Epstein and Professor Dershowitz in people's minds.  Defendants knew they were publishing a direct defamation by Giuffre of Professor Dershowitz, not a report of a judicial proceeding.

98.    The Netflix Epstein series *Filthy Rich* imparted, supported, and co-signed the defamatory, false accusations that Giuffre has made against Professor Dershowitz, and the Netflix Epstein series *Filthy Rich* was intended to endorse those accusations even though the Defendants knew that Giuffre's accusations against Professor Dershowitz were false.  As a direct result of the false and defamatory portrayal of Professor Dershowitz in the four-part Netflix Epstein series *Filthy Rich*, a majority of viewers and others came to believe that Professor Dershowitz had sex with Giuffre.

[33]

## COUNT I
### (Defamation)

99.     Professor Dershowitz repeats and re-alleges each and every allegation above in paragraphs 1 through 98 as if fully set forth herein.

100.    Each of the Defendants played a role in the production and publication of the four-part Netflix Epstein series *Filthy Rich*.  Bryant is a director, showrunner and producer for Radical Media and was the Executive Producer of the four-part Netflix Epstein series *Filthy Rich* which was done through Leroy & Morton Productions and for Netflix, Inc..  Berlinger is a producer for Radical Media and was an Associate Producer of the four-part Epstein Netflix series *Filthy Rich* which was done through Leroy & Morton Productions and for Netflix, Inc.

101.    Under New York law, false statements of fact which impugn one's reputation, and which are made without privilege, are defamatory.  False imputations of a crime are defamatory per se.

102.    Under New York law, defamation by implication occurs when the language of the communication, as a whole, can be reasonably read to impart a defamatory inference, and the author/creator intended or endorsed that inference.

103.    Defendants defamed Professor Dershowitz in the Netflix Epstein series with a non-privileged defamatory implication of fact that was culpably published ("actual malice"), and which damaged Professor Dershowitz's reputation.

104.    The Netflix Epstein series presents Giuffre as an honest and credible survivor of sexual assault, and provided a platform for Giuffre to, *inter alia*, falsely accuse Professor Dershowitz of egregious sexual misconduct, including sex with a minor.

[34]

105.    The portion of *Filthy Rich* concerning Giuffre's false allegations against Professor Dershowitz presented anew those allegations and was not a report of proceedings in any litigation.

106.    The Netflix Epstein series was intended to, and did, affirm and bolster the claims and credibility of the accusers by knowingly and deliberately failing to present evidence in Defendants' possession which, at the very least, cast serious doubt on, if not affirmatively disproved, Giuffre's allegations against Professor Dershowitz, as well as evidence of patent credibility issues with the other accusers, such as Ransome's *admitted* prior false allegations of sex abuse against high-profile individuals.

107.    By declining to  present  any evidence that would in any way call into question Giuffre's credibility, and in particular, the credibility of her accusations against Professor Dershowitz, despite having actual knowledge and possession of the evidence that demonstrates the falsity of the allegations and knowing the chronology that Giuffre stopped working in 2002 with Epstein and went with her husband to live in Australia years before Professor Dershowitz was employed by Epstein in connection with what would be the 2008 federal plea deal, the Netflix Epstein series, as a whole, effectively presented as a purported fact that Professor Dershowitz engaged in criminal sexual misconduct including sexual activity with a minor.

108.    The aforesaid defamatory factual implication is false.  Professor Dershowitz did not have sex with Giuffre *ever*, let alone when she was a minor.  Many viewers have written on Twitter and other social media platforms that after viewing the Netflix series they now believe Professor Dershowitz had sex with Giuffre when she was a minor.

[35]

109.   The aforesaid defamatory, false factual implication is defamatory *per se* against Professor Dershowitz because Professor Dershowitz is accused of a crime of a salacious nature, subjecting Professor Dershowitz to public contempt, aversion, disgrace, induce an evil opinion in the minds of right-thinking persons and deprive him of friendly interaction in society.   Among other things, Professor Dershowitz has been taunted on Twitter about liking sex with underage girls.

110.   The aforesaid defamatory, false factual implication is not privileged, as the fair report privilege does not apply here.

111.   First, the Netflix Epstein series was entitled *Filthy Rich*, which was the title of a well-known book on the same topic by author James Patterson; however, Patterson's book does not imply that Professor Dershowitz is guilty of having sex with Giuffre but rather, affirmatively states there is *no evidence that Professor Dershowitz ever had sex with Giuffre*.

112.   Nor is the Netflix Epstein series a fair report of *Giuffre v. Dershowitz*, as a fair report would include the fact that Giuffre's lawyer who brought the case, Boies, was disqualified based on the witness advocate rule and a record that included a tape recording in which Boies acknowledged that Giuffre was wrong to accuse Professor Dershowitz and that Dershowitz could not possibly have had sex with Giuffre.

113.   The aforesaid defamatory, false factual implication was culpably uttered ("actual malice"). Defendants, through Bryant, possessed and were well-aware of the evidence that established that Giuffre's accusation that Professor Dershowitz had sex with her when she was a minor was false.  Specifically, Defendants, through Bryant, knew about:

[36]

a.  The email correspondence between Giuffre and Churcher that demonstrates that Professor Dershowitz did not have sex with Giuffre;

b.  Giuffre's book manuscript that discussed giving massages and having sex with Epstein and certain other individuals but never identified Professor Dershowitz as someone with whom she had sex;

c.  The tape recording in which Boies acknowledged that Giuffre was wrong to accuse Professor Dershowitz and that Professor Dershowitz could not possibly have had sex with Giuffre;

d.  The tape recording by Rebecca Boylan of an interview with Giuffre in which Giuffre never mentioned having sex with Professor Dershowitz, but rather, said that she (Giuffre) was being pressured to accuse Professor Dershowitz of having sex with her;

e.  The investigation and report by Louis Freeh that concluded there was no evidence supporting the accusation that Professor Dershowitz had sex with Giuffre.

114.  Moreover, in discussions with Professor Dershowitz, Bryant acknowledged that she did not believe the accusations against him and wanted to give Professor Dershowitz the opportunity to disprove them in the series.  She also expressly acknowledged that merely having to "deny" the allegations would not be persuasive, but that the evidence Professor Dershowitz gave her would be persuasive.

115.  Defendants thus had actual knowledge that Giuffre's accusations against Professor Dershowitz were false and/or entertained serious doubts about the veracity of the claims, yet maliciously, deliberately and knowingly presented Giuffre as a credible witness, and knowingly

[37]

and intentionally excluded information showing that Giuffre, and specifically her accusation against Professor Dershowitz, was not credible.

116.    Accordingly, Defendants acted with "actual malice" when publishing the four-part Netflix Epstein series *Filthy Rich*.

117.    The aforesaid non-privileged defamatory, false factual implication culpably and with actual malice published was damaging to Professor Dershowitz's standing as a law professor and scholar, effecting personal and professional reputational harm, lost business opportunities, emotional harm, embarrassment, humiliation and pain and suffering.

118.    This defamation claim is not barred by the Appearance Release dated March 5, 2019, as that Release expressly stated that "Company [Leroy & Morton Productions] agrees that Company s*hall not intentionally portray [Professor Dershowitz] in a defamatory manner in the Program*."  Bryant made additional representations and assurances both before and after the release was signed.

119.    By refusing to show, discuss, address, or even acknowledge the extensive evidence disproving Giuffre's claims that Professor Dershowitz had sex with her as a minor, and by presenting Giuffre as an honest and credible witness, the Netflix Epstein series intentionally, knowingly, maliciously and deliberately defamed Professor Dershowitz.

120.    As a direct and proximate result of the above conduct, Professor Dershowitz has suffered substantial damages in the form of personal and professional reputational harm, lost business opportunities, emotional harm, embarrassment, humiliation and pain and suffering.  Such damages are reflected in, among other things, social media posts taunting Professor Dershowitz over liking having sex with underage girls.

[38]

121.    Thus, Defendants are liable to Professor Dershowitz for damages in an amount to be determined at trial, as well as punitive damages due to Defendants' actions as willful, wanton and malicious.

## COUNT II
## (Breach of Contract)

122.    Professor Dershowitz repeats and re-alleges each and every allegation above in paragraphs 1 through 98 and paragraphs 100 through 120 as if fully set forth herein.

123.    The Appearance Release, dated March 5, 2019, was an enforceable agreement in which, among other things, "Company [Leroy & Morton Productions] agrees that Company shall not intentionally portray [Professor Dershowitz] in a defamatory manner in the Program" and Professor Dershowitz is entitled to a remedy of "an action at law for money damages."

124.    Professor Dershowitz performed under the Agreement by sitting for interviews for the Netflix Epstein series *Filthy Rich*; however, Leroy & Morton Productions, through its agents Bryant, Berlinger and Radical Media for the Netflix Epstein series *Filthy Rich*, breached the Appearance Release by intentionally portraying Professor Dershowitz in the defamatory manner in the Netflix Epstein series *Filthy Rich* as described at length above.

125.    As a direct and proximate result of the above stated breach of contract, Professor Dershowitz has suffered substantial damages in the form of lost business opportunities, economic injuries and other direct and consequential damages.

126.    Thus, Defendants are liable to Professor Dershowitz for the foreseeable and proximate harm resulting from their breach, including for the lost business opportunities, economic injuries and other direct and consequential damages.

[39]

## COUNT III
## (Promissory Estoppel)

127.    Professor Dershowitz repeats and re-alleges each and every allegation above in paragraphs 1 through 98 as if fully set forth herein.

128.    Bryant, on behalf of and as agent for Leroy & Morton, Radical Media and Berlinger, made certain promises to Professor Dershowitz to induce him to participate in the Netflix Epstein series, and to issue a challenge to Ms. Giuffre as part of said participation, that if Professor Dershowitz did as they asked, they would present his side of the story fully, and would present evidence in support of his innocence within the series.  These promises were made both before and after the release was signed.

129.    Defendants should have expected Professor Dershowitz to rely on said promises when accepting their request for an interview and participating in the interview as they suggested.

130.    Professor Dershowitz reasonably relied, to his detriment, on these express promises and representations made by Defendants through Bryant.  On the basis of an express agreement that included in the Netflix Epstein series *Filthy Rich* would be all the evidence that Professor Dershowitz presented to Defendants showing that Giuffre's accusation that Professor Dershowitz had sex with her as a minor was false, Professor Dershowitz participated in interviews and provided to Bryant the email correspondence between Giuffre and Churcher, the Giuffre book manuscript, the tape recording in which Boies acknowledged Giuffre was wrong, the tape recording by Rebecca Boylan and the investigation by Louis Freeh.

[40]

131.    Defendants broke their promises to put in the Netflix Epstein series all the evidence that Professor Dershowitz presented to Defendants showing that Professor Dershowitz did not have sex with Giuffre.  Defendants are therefore estopped from denying those promises.

132.    As a direct and proximate result of the above conduct, Defendants are liable to Professor Dershowitz for substantial damages in the form of personal and professional reputational harm, lost business opportunities, economic injuries and other direct and consequential damages.

## COUNT IV
## (Fraudulent Inducement)

133.     Professor Dershowitz repeats and re-alleges each and every allegation above in paragraphs 1 through 98 as if fully set forth herein.

134.    Bryant, on behalf of and as agent for Leroy & Morton, Radical Media and Berlinger, made certain false representations to Professor Dershowitz regarding their intentions for asking Professor Dershowitz to do a series of interviews for the Netflix Epstein series *Filthy Rich*.  Defendants made and are responsible for false statements to Professor Dershowitz that they were on Professor Dershowitz's side, that they wanted to present his side of the story, and that Defendants would put in the Netflix Epstein series *Filthy Rich* all the evidence that Professor Dershowitz presented to them showing that Giuffre's accusation that Professor Dershowitz had sex with her as a minor was false.  Professor Dershowitz sat for three interviews and held a number of telephone calls in reliance on Defendants' false promises.

135.    Defendants knew or should have known this representation was false at the time it was made, as Defendants had intended from the start to base the series on the claims of alleged Epstein victims, and to present these women as credible, and to bolster and strengthen their

[41]

credibility and their claims, and that as such, Defendants were not interested in Professor Dershowitz's innocence and would not present evidence or information that undercut the accusers' credibility or cut against the whole theme and purpose of the project.

136.    Defendants intended Professor Dershowitz to rely on these false representations in agreeing to participate in the Netflix Epstein series and provide relevant information and evidence, and Professor Dershowitz did rely on such false representations in doing these things, to his detriment.

137.    As a direct and proximate result of the above conduct, Professor Dershowitz, in justifiable reliance on Defendants' inducement, has suffered substantial damages in the form of personal and professional reputational harm, lost business opportunities, economic injuries and other direct and consequential damages.

138.    Defendants are therefore liable to Professor Dershowitz in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** for the foregoing reasons, Professor Dershowitz demands judgment against Defendants as follows:

(i)     on Count I, for defamation, a judgment against the Defendants awarding to Professor Dershowitz compensatory damages in an amount to be determined at trial, but in any event, no less than $20,000,000, as well as punitive damages, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

[42]

(ii)     on Count II, for breach of contract, a judgment against the Defendants awarding to Professor Dershowitz damages in an amount to be determined at trial, but in any event, no less than $20,000,000, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iii)     on Count III, for promissory estoppel, a judgment against the Defendants awarding to Professor Dershowitz damages in an amount to be determined at trial, but in any event, no less than $20,000,000, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iv)     on Count IV, for fraudulent inducement, a judgment against the Defendants awarding to Professor Dershowitz damages in an amount to be determined at trial, but in any event, no less than $20,000,000, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and

(v)     such other and further relief as the Court deems just, equitable and proper.

## **JURY DEMAND**

Professor Dershowitz demands a trial by jury of all issues presented herein that are triable by a jury.

**Dated:  New York, New York**
       **June 1, 2021**

Respectfully submitted,
**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

*/s/ Philip A. Byler*

**PHILIP A. BYLER, ESQ. (seeking pro hac**
      **vice admission)**
pbyler@nmllplaw.com

[43]

**BURSTYN LAW PLLC**

Sean A. Burstyn (seeking pro hac vice admission)
Florida Bar No. 1028778
1111 Brickell Avenue
Suite 1550
Miami, Florida 33131
Phone No: (917) 810-8450
Sean.Burstyn@BurstynLaw.com

**JESSE DEAN-KLUGER, P.A.**

/s/ *Jesse Dean-Kluger*

Jesse Dean-Kluger
Florida Bar No. 62201
1550 Biscayne Boulevard, 2nd Floor
Miami, Florida 33132
Phone No. (305) 534-3460
Fax No. (786) 206-3075
jdk@jdkpa.com

**Attorneys for Plaintiff Alan Dershowitz**

[44]