**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:20-CV-61872-AHS**

ALAN DERSHOWITZ,

Plaintiff,

v.

CABLE NEWS NETWORK, INC.,

Defendant.
_________________________________/

# CNN'S MOTION TO PRECLUDE EXPERT TESTIMONY OF ALAN DERSHOWITZ, AND INCORPORATED MEMORANDUM OF LAW

GUNSTER, YOAKLEY & STEWART, P.A.
George S. LeMieux, Esq.
Florida Bar No. 16403
Email: glemieux@gunster.com
Eric C. Edison, Esq.
Florida Bar No. 010379
Email: eedison@gunster.com
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger, Esq.
(*pro hac vice admitted)*
Email: katebolger@dwt.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 489-8230

*Counsel for Defendant Cable News Network, Inc.*

# TABLE OF CONTENTS

**Page**

I. Preliminary Statement ........ 1
II. Factual Background ........ 1
A. CNN's Expert, Professor Frank Bowman ........ 1
B. Plaintiff's Rebuttal Expert Disclosure ........ 4
III. This Court Should Exclude Expert Testimony from Plaintiff ........ 4
A. Plaintiff's Barebones Expert Disclosure Is Inadequate ........ 4
B. Courts Routinely Forbid Parties from Offering Themselves as Experts ........ 5
C. Plaintiff Cannot Satisfy the Requirements of *Daubert* ........ 6
1. Plaintiff Is Not Qualified to Give Expert Testimony in This Case ........ 7
2. Plaintiff's Proffered Expert Testimony Is Not Reliable ........ 8
3. Plaintiff's Expert Testimony Would Not Be Helpful to the Jury, and Would Be Highly Prejudicial ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*,
2020 WL 5848317 (M.D. Fla. Oct. 1, 2020) ....................4, 5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).................... *passim*

*Doe v. Colgate Univ.*,
2017 WL 4990629 (N.D.N.Y. Oct. 31, 2017), *aff'd*, 760 F. App'x 22 (2d Cir. 2019) ....................7, 8

*Hall v. CIA*,
538 F. Supp. 2d 64 (D.D.C. 2008)....................5, 6, 10

*Harris v. Gourley*,
2013 WL 1294444 (M.D. Ga. Mar. 27, 2013)....................5

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.*,
2011 WL 13228320 (D. Conn. Feb. 3, 2011) ....................6

*Kranis v. Scott*,
178 F. Supp. 2d 330 (E.D.N.Y. 2002) ....................6, 10

*Lowery v. Sanofi-Aventis LLC*,
2021 WL 872620 (N.D. Ala. Mar. 9, 2021) ....................7

*Michigan v. Summers*,
452 U.S. 692 (1981)....................3

*Ordon v. Karpie*,
273 F. App'x 27 (2d Cir. 2008) ....................6, 10

*Phoenix Restoration Grp., Inc. v. Liberty Mut. Grp. Inc.*,
2020 WL 622152 (D.D.C. Feb. 10, 2020) ....................8, 10

*Proteus Books Ltd. v. Cherry Lane Music Co.*,
873 F.2d 502 (2d Cir. 1989)....................6

*Rink v. Cheminova, Inc.*,
400 F.3d 1286 (11th Cir. 2005) ....................7

*Sabal Trail Transmission, LLC v. +/- 1.823 Acres of Land in Hamilton Cnty.*,
2018 WL 2426364 (M.D. Fla. May 30, 2018)....................9

*United States v. Brown*,
415 F.3d 1257 (11th Cir. 2005) ....................................................................................8

*United States v. Truitt*,
938 F.3d 885 (7th Cir. 2019) ........................................................................................9

**Rules**

Federal Rules of Civil Procedure, Rule 26 ...................................................................4, 5

Federal Rules of Evidence, Rule 403.................................................................................1

Federal Rules of Evidence, Rule 702.................................................................................1

**Constitutional Provisions**

United States Constitution, Fourth Amendment..................................................................3

**Other Authorities**

Black's Law Dictionary (11th ed. 2019).............................................................................3

https://youtu.be/mRlgvJmTFBE?t=111 ..............................................................................3

Defendant Cable News Network, Inc. ("CNN") respectfully moves, pursuant to Federal Rules of Evidence 702 and 403, to preclude the expert testimony of Plaintiff Alan Dershowitz.

## I. PRELIMINARY STATEMENT

Plaintiff has proclaimed himself an expert on his own impeachment argument, which sits at the very heart of this case. The notion that Plaintiff could provide objective, reliable expert testimony on his own words and conduct defies the requirements of *Daubert* and common sense. This truth is underscored as an initial matter by his barebones expert disclosure, which comprises a single paragraph, lists no source materials, and does not satisfy *Daubert*. Allowing Plaintiff to be his own expert would lend him undue credibility and mislead the jury, all to the prejudice of CNN. Plaintiff should be precluded from giving expert testimony in this case.

## II. FACTUAL BACKGROUND

This case pertains to CNN's reporting on statements made by Plaintiff in response to a question posed by Senator Ted Cruz (the "Response") during President Trump's first impeachment trial in January 2020. Plaintiff contends that CNN misinterpreted the Response and defamed him.

### A. CNN's Expert, Professor Frank Bowman

CNN retained Frank O. Bowman III, the University of Missouri Curators' Distinguished Professor and Floyd R. Gibson Missouri Endowed Professor of Law, to analyze Plaintiff's views on impeachment and the Response. He is one of the foremost experts on impeachment, having authored over forty books and law journal articles, including four focused on impeachment, and his work has been submitted to Congress in connection with two presidential impeachments. Ex. B, at 3–7; Ex. A, at 12 n.19. He has also written extensively for news publications and delivered numerous presentations on impeachment, is regularly sought out by media for his expertise on the topic, and maintains a website titled "Impeachable Offenses." Ex. B, at 9–25.

Professor Bowman analyzed: (1) Plaintiff's shifting views on impeachment, (2) how his

views are outside the mainstream academic consensus, (3) ambiguities in his Response, and (4) the academic reaction to his impeachment argument, particularly the Response.

First, in 1998, Plaintiff, by his own admission, "accepted the academic consensus" among constitutional scholars that impeachment does not require an actual crime and, for example, "abuse of trust" can be impeachable. Ex. A, at 3–4. In 2018, however, Plaintiff reversed his position and publicly stated that an actual crime is required for impeachment. *Id.* at 4. In 2020 , Plaintiff shifted his position again, stating that either a crime or "crime-like" conduct can be impeachable. *Id.* at 5–6. Plaintiff also took the position that "abuse of power" is not an impeachable offense. *Id.* at 6.

Second, Professor Bowman demonstrated that Plaintiff's newfound views are "contrary to the overwhelming consensus of modern constitutional scholars of impeachment." *Id.* at 1. He cited the "legion" of authorities from constitutional scholars and historians demonstrating the "near-universal consensus" that impeachment requires "grave presidential misconduct, but not a criminal act." *Id.* at 2–3 & nn.1–3. Further, the "consensus" among scholars is that impeachable conduct "*does* include abuses of presidential power, including abuses that violate no criminal law," a principle on which "there is no disagreement" among serious impeachment scholars. *Id.* at 3 & n.4. Plaintiff's contrary views are thus well outside the mainstream consensus.

Third, Professor Bowman analyzed Plaintiff's allegation that CNN deliberately misinterpreted his Response. Plaintiff alleges that CNN's omission of one sentence—"*the only thing that would make a quid pro quo unlawful is if the quo were somehow illegal*"—from a clip of the Response changed its meaning. First Am. Compl. ¶ 8. On the contrary, in a thorough analysis, Professor Bowman determined that, "[f]ar from being a plain statement of unmistakable clarity, the omitted sentence is at best opaque, either standing alone, or even in the context of Professor Dershowitz's entire response to Senator Cruz." Ex. A, at 7. Professor Bowman explained

how the omitted sentence is confusing and conveys very little information because, among other things, (a) the sentence is a tautology because "unlawful" and "illegal" are synonyms,[1] and (b) the sentence suggests that unlawfulness depends on the "quo," but does not specify which side of a quid pro quo transaction constitutes the quo.[2] *Id.* at 7–10. In addition, Professor Bowman concluded that the entire Response "is not clear." *Id.* at 11. He analyzed Plaintiff's declaration that, "without qualification," "*if a president does something which he believes will help him get elected in the public interest, that cannot be the kind of quid pro quo that results in impeachment*." *Id.* Professor Bowman observed that Plaintiff's Response "does not by its actual terms exclude any crime" and "[n]owhere in his answer does the word 'crime' appear." *Id.* at 12. The absence of that qualification led many, including highly respected professors and CNN commentators, to conclude that Plaintiff's argument would allow a president to engage in any misconduct, including crimes, to help his reelection. *Id.* at 13–14 & nn.21–22.

Finally, Professor Bowman explained that "the national community of constitutional and presidential scholars and legal commentators who heard or read Professor Dershowitz's argument interpreted it to be an extreme position, inconsistent with the consensus of opinion on the meaning of the Constitution's impeachment clauses." *Id.* at 14. In fact, "[h]is views were considered sufficiently out of the mainstream" that "more than 200 legal scholars, including some of the most eminent names in the American legal academy submitted a letter to the Senate repudiating Professor Dershowitz's arguments," concluding, among other things, that his Response would

[1] At his deposition, Plaintiff asserted that "unlawful" and "illegal" actually mean different things, and suggested that "[s]omething could be unconstitutional but not illegal." Ex. C, at 406:10–19. But that contorted view is contrary to ordinary meaning and legal practice. *See, e.g.*, *Unlawful*, *Illegal*, Black's Law Dictionary (11th ed. 2019) (defining "unlawful" as "illegal," and vice versa); *Michigan v. Summers*, 452 U.S. 692, 694 (1981) ("illegal search in violation of the Fourth Amendment"). Plaintiff's peculiar definitions only further cloud the meaning of the omitted sentence.

[2] At his deposition, Plaintiff conceded that he misspoke and meant to say "quid or quo," not "quo." Ex. C, at 396:19–397:21. Again, Plaintiff's concession only deepens the mystery of what this sentence means. (Alternatively, Plaintiff speculated whether the congressional record may have mistranscribed that sentence, *id.* at 397:8–9, but that hypothesis is belied by the video of the proceeding, which shows he only said "quo." *See* https://youtu.be/mRlgvJmTFBE?t=111.)

"give the president carte blanche to corrupt American electoral democracy." *Id.* at 12–13.

### B. Plaintiff's Rebuttal Expert Disclosure

Plaintiff proffered himself as an expert witness to rebut Professor Bowman's testimony. In contrast to Professor Bowman's thorough report supported by citations to numerous authorities, Plaintiff's disclosure consisted of a single paragraph, without any supporting authorities.

Simply paraphrasing Professor Bowman, Plaintiff stated that he may offer testimony "to rebut the purported expert opinions disclosed in Mr. Bowman's Expert Witness Report, which are 'confine[d] . . . to explaining the constitutional issues addressed in [Plaintiff]'s argument, how [Plaintiff's] positions on those issues [allegedly] changed over time, how his argument in the Senate [allegedly] differed from the contemporary scholarly consensus, and how [Mr. Bowman] and other constitutional scholars [purportedly] understood his Senate argument, in particular his response to a question from Senator Ted Cruz.'" Ex. D, at 1 (alterations in original). Plaintiff stated that a summary of his rebuttal testimony is "set forth in the congressional record of the relevant impeachment proceedings, as well as Plaintiff's writings and publications on the topic of presidential impeachment, which are expressly incorporated by reference herein." *Id.* at 1–2.

## III. THIS COURT SHOULD EXCLUDE EXPERT TESTIMONY FROM PLAINTIFF

### A. Plaintiff's Barebones Expert Disclosure Is Inadequate

Plaintiff's expert disclosure cannot satisfy his burden under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). While a non-retained expert (i.e., a witness not specifically retained to give expert testimony) need only provide the subject matter and a summary of his testimony under Rule 26(a)(2)(C) rather than a full report, "he must still be deemed admissible under *Daubert*." *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, 2020 WL 5848317, at *5 (M.D. Fla. Oct. 1, 2020). A "single paragraph of facts and opinions falls 'brutally short of satisfying Rule 26(a)(2)(C)(ii),'" let alone the more demanding strictures of *Daubert*. *Id.* at *4 (quoting *Ruckh v.*

*CMC II LLC*, 2016 WL 7665191, at *3 (M.D. Fla. Dec. 21, 2016)). Rather, Plaintiff "must lay the foundation for the testimony's admissibility" under *Daubert* and "satisfy admissibility requirements by a preponderance of the evidence." *Id.* at *5.

Here, "although Plaintiff has 'technically' proffered himself as an expert, he has taken no steps to show that his expert testimony meets the requirement of *Daubert*." *Harris v. Gourley*, 2013 WL 1294444, at *6 (M.D. Ga. Mar. 27, 2013); *see also Arch*, 2020 WL 5848317, at *6–7 (excluding non-retained experts whose disclosures "fail[] to state his qualifications or the facts and methods used to reach his conclusions"). Instead, Plaintiff has provided a *single paragraph*, which only states that he intends to rebut Professor Bowman's opinions and that a "summary" of Plaintiff's rebuttal testimony is "set forth in the congressional record of the relevant impeachment proceedings, as well as Plaintiff's writings and publications on the topic of presidential impeachment." Ex. D. Plaintiff does not even list his "writings and publications" on impeachment, let alone provide a "summary" of them as required by Rule 26(a)(2)(C)(ii).

In sum, Plaintiff has provided *no* information concerning his qualifications, the reliability of his methodology, the helpfulness of his testimony, or even what exactly his testimony is. Plaintiff's expert testimony can be excluded on that basis alone.

**B. Courts Routinely Forbid Parties from Offering Themselves as Experts**

Next, Plaintiff's "expert" testimony should be excluded because he cannot designate himself as an expert. "The reason is self-evident": central to the purpose of expert testimony "is the presumed objectivity of the expert; an expert with a partisan axe to grind is of no use to the finder of fact and becomes just another advocate for a party." *Hall v. CIA*, 538 F. Supp. 2d 64, 73 (D.D.C. 2008). Indeed, "[o]ne would be hard pressed to imagine a case where a court, confronted with a partisan disguised as an expert, would not preclude the so-called-expert's testimony on the grounds that what little probative value it has is outweighed by its hopelessly partisan nature,"

particularly where the expert is the *plaintiff himself*. *Id.* (holding that plaintiff's attempt to introduce his own expert testimony "offends both law and science").

For that reason, courts routinely bar parties from offering themselves as experts. *See Ordon v. Karpie*, 273 F. App'x 27, 30 (2d Cir. 2008) (precluding plaintiff from serving as expert because he is "too intertwined with the facts of this case" to "assist the trier of fact" and "would be more prejudicial than probative"); *Proteus Books Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 515 (2d Cir. 1989) (precluding plaintiff from testifying as expert because he was an "interested party" and could be "unduly prejudicial"); *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 2011 WL 13228320, at *2 (D. Conn. Feb. 3, 2011) ("It is well settled that a district court, acting under its broad discretion as a gatekeeper, may exclude an 'interested party' from testifying as an expert witness at trial due to its 'unduly prejudicial' effect on the fact finder."); *Kranis v. Scott*, 178 F. Supp. 2d 330, 333–34 (E.D.N.Y. 2002) (precluding plaintiff, a former attorney, from testifying as expert because he "has been personally involved at every level of the instant action and . . . would be unfairly prejudicial, misleading and confusing to the jury").

The same reasoning compels that Plaintiff cannot serve as an expert here. Anointing Plaintiff as an expert on impeachment would bestow on him undue credibility on how to interpret his Response, the very issue at the heart of this case. As explained in detail below, Plaintiff's expert testimony cannot satisfy *Daubert* and would only serve to mislead the jury and prejudice CNN.

### C. Plaintiff Cannot Satisfy the Requirements of *Daubert*

Even if a party could be an expert, Plaintiff must still be excluded because he cannot satisfy the *Daubert* requirements. Under *Daubert*, the party offering an expert must prove that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the

application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). These requirements are "rigorous," and Plaintiff plainly cannot meet them. *Id.*

**1. Plaintiff Is Not Qualified to Give Expert Testimony in This Case**

First, Plaintiff is unqualified to offer expert testimony in this case. Under the first *Daubert* prong, Plaintiff must show that he has specialized "knowledge, skill, experience, training, or education" qualifying him to testify on a "particular . . . issue" that is before the Court. *Lowery v. Sanofi-Aventis LLC*, 2021 WL 872620, at *7 (N.D. Ala. Mar. 9, 2021). "Often the issue raised under the qualification prong is not whether the proffered expert is qualified in a general field but whether his training, education, or experience qualify him to render an opinion on a *specific* 'issue before the court.'" *Id.* (quoting *Jones v. Novartis Pharms. Corp.*, 235 F. Supp. 3d 1244, 1251 (N.D. Ala. 2017), *aff'd*, 720 F. App'x 1006 (11th Cir. 2018)).

Here, Plaintiff intends to give expert testimony on his impeachment argument and impeachment scholarship. Ex. D. But just this year Plaintiff testified that he "think[s] of [him]self as an expert in criminal law," but did *not* mention impeachment as an area of expertise. Ex. E, at 769:2–4, 916:20–917:3. Likewise, his Harvard Law School biography describes him as a "civil liberties lawyer" and "criminal lawyer"—*not* a lawyer or scholar on impeachment. Ex. F, at 1.

A "lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law." *Lowery*, 2021 WL 872620, at *8 (citation omitted); *see Doe v. Colgate Univ.*, 2017 WL 4990629, at *10–11 (N.D.N.Y. Oct. 31, 2017) (finding that "an accomplished legal scholar with respect to criminal procedure" was nonetheless unqualified to opine on the distinct topic of Title IX investigations), *aff'd*, 760 F. App'x 22 (2d Cir. 2019). Impeachment differs dramatically from an ordinary criminal trial in both substance and procedure,

and expertise in one does not transfer to the other. *See Colgate*, 2017 WL 4990629, at *11 (precluding testimony of criminal procedure scholar because "what constitutes appropriate conduct can vary dramatically between criminal and Title IX investigations"). Plaintiff's expertise in criminal law, therefore, does not make him an expert in impeachment.

Finally, even though Plaintiff participated in and wrote about President Trump's first impeachment trial, this work "on isolated projects" does not qualify him as an expert on impeachment. *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005). Indeed, Plaintiff has admitted that he only recently began researching impeachment. *See* Ex. G, at 20–21 ("I didn't do research back then" regarding Clinton impeachment); Ex. C, at 347:23–24. And he did so as an advocate in the trial, Ex. C, at 290:7–8, 318:17–19, 377:7–14, 383:18–20, often speaking off the cuff in response to questions, *id.* at 380:19–381:25; 402:7–9, and not as an objective or methodical scholar. Moreover, his argument was repudiated by the legal community. Ex. A, at 12–14; *see supra* pp.3–4. This is not the kind of sustained, objective, or acclaimed research focused on impeachment that might establish the requisite qualifications for the topic at issue here.

**2. Plaintiff's Proffered Expert Testimony Is Not Reliable**

"The reliability of expert testimony may be critically undermined if the expert witness has a clear interest in the outcome of the proceeding." *Phoenix Restoration Grp., Inc. v. Liberty Mut. Grp. Inc.*, 2020 WL 622152, at *4 (D.D.C. Feb. 10, 2020). This is particularly true here, where Plaintiff "may harbor concern that the outcome of this proceeding will affect his professional reputation or feel that [Defendant] attack[ed] him personally, prompting him to defend his actions to a degree that, while understandable, is inconsistent with the objectivity and reliability required of an expert witness." *Id.* at *5. Given his obvious incentive to favorably color his expert testimony, it is impossible to conclude that such testimony would be reliable.

Furthermore, Plaintiff's theory of impeachment is concededly outside the mainstream,

which is another reason that his testimony on the subject is not reliable. "[T]he lack of widespread acceptance of [an expert's] method is an 'important factor' in ruling it inadmissible, because 'a known technique which has been able to attract only minimal support within the community may properly be viewed with skepticism.'" *Sabal Trail Transmission, LLC v. +/- 1.823 Acres of Land in Hamilton Cnty.*, 2018 WL 2426364, at *2 (M.D. Fla. May 30, 2018) (citation, footnote, and internal quotes omitted) (quoting *Daubert*, 509 U.S. at 594). Here, Plaintiff has admitted that there is an "academic consensus" that impeachment does not require an actual crime and, for example, "abuse of trust" can be impeachable. Ex. A, at 3–4. But beginning in 2018 and continuing through President Trump's impeachment trial, Plaintiff took the opposite position, contending that a crime is required and that abuse of power is not impeachable. *Id.* at 4–6. And that, along with his Response, prompted "more than 200 legal scholars" to publicly repudiate Plaintiff's argument. *Id.* at 12–13. In fact, "no group of legal scholars or scholars of the presidency came forward to support Professor Dershowitz's view in the Senate."[3] *Id.* at 14. Indeed, it is telling that Plaintiff's expert disclosure refers only to his own publications. Ex. D, at 2.[4]

Given the overwhelming academic rejection of Plaintiff's views on impeachment, it is clear that Plaintiff's views have attracted "minimal," if any, support within the legal scholarly community. *Daubert*, 509 U.S. at 594. His expert testimony on impeachment is thus unreliable.

### 3. Plaintiff's Expert Testimony Would Not Be Helpful to the Jury, and Would Be Highly Prejudicial

Courts have repeatedly recognized that a party cannot serve as an expert because he is "too

[3] "[E]ven Professor Jonathan Turley, the only witness called by Republicans during the Judiciary Committee hearing on the scope of impeachable conduct," publicly repudiated Plaintiff's argument. Ex. A, at 14.

[4] Plaintiff's views "deviate[] dramatically from the methods of other experts in the field—indeed, of the very expert whose work he used to educate himself." *United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019). In fact, his argument was repeatedly repudiated by the very scholar he purported to cite. Plaintiff claimed that Professor Nikolas Bowie "takes my view" and is "completely on my side." Ex. G, at 18. That prompted Professor Bowie to publish an op-ed disavowing Plaintiff's position. Ex. H. When Plaintiff persisted in citing him, Professor Bowie stated that Plaintiff's argument was "a joke" and his Response was "irresponsible and ludicrous." Ex. I, at 2–3.

intertwined with the facts of th[e] case" to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ordon*, 273 F. App'x at 30. Plaintiff's involvement in the case would render his expert testimony "unfairly prejudicial, misleading and confusing to the jury." *Kranis*, 178 F. Supp. 2d at 334 (precluding plaintiff, a former attorney, from testifying as an expert). Plaintiff's proposed expert testimony would not help the jury and would only prejudice CNN.

First, as discussed *supra* pp.5–6, allowing a party to opine as an expert "would improperly bolster his factual testimony by imbuing it with undue weight." *Phoenix*, 2020 WL 622152, at *5. "It is to permit advocacy to wear the clothes of objective scientific analysis." *Hall*, 538 F. Supp. 2d at 73. It would be highly prejudicial to allow a litigant such as Plaintiff to reap the additional credibility that comes with being designated an expert possessing specialized knowledge.

Second, Plaintiff "has been personally involved at every level of the instant action." *Kranis*, 178 F. Supp. 2d at 334. Plaintiff was an attorney in the impeachment trial that gave rise to his argument and CNN's statements at issue, statements for which he seeks to both recover damages and address in an expert capacity. Given his close involvement in all the aspects of this case, he is ill suited to provide objective expert testimony on the law and scholarship on impeachment.

Finally, Plaintiff's expert testimony "would be more prejudicial than probative because of the difficulty of separating [his] lay testimony . . . from his expert testimony." *Ordon*, 273 F. App'x at 30. Plaintiff may give factual testimony regarding the 2020 impeachment trial. But if Plaintiff goes further and testifies as an expert on impeachment generally, the jury will be confused as to what is his personal knowledge of those events as opposed to independent research. Further, Plaintiff should not be permitted to bolster what he did in January 2020 with post-hoc research.

In sum, "the simple fact is that his testimony as an expert would be far more prejudicial than probative." *Kranis*, 178 F. Supp. 2d at 333–34. Plaintiff's expert testimony must be excluded.

**CERTIFICATE OF CONFERRAL**

Pursuant to S.D. Fla. L.R. 7.1(a)(3), the undersigned hereby certifies that counsel for CNN has conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in this motion, and counsel were unable to reach agreement.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and served via the Court's CM/ECF portal on this 11th day of October 2022 to Mark Schweickert, Esq., mark@schweikertlaw.com, Schweickert Law, 1111 Brickell Avenue, Suite 1550, Miami, Florida 33131, and John B. Williams, Esq., jbwilliams@williamslopatto.com, Williams Lopatto PLLC, 1629 K Street, NW, Suite 300, Washington, DC 20006, *Counsel for Plaintiff*.

**GUNSTER, YOAKLEY & STEWART, P.A.**
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000

By: /s/ George S. LeMieux, Esq.
George S. LeMieux, Esq.
Florida Bar No. 16403
Email: glemieux@gunster.com
Eric C. Edison, Esq.
Florida Bar No. 010379
Email: eedison@gunster.com

**DAVIS WRIGHT TREMAINE LLP**
Katherine M. Bolger, Esq.
(*pro hac vice admitted)*
Email: katebolger@dwt.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 489-8230

*Counsel for Defendant Cable News Network, Inc.*