**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0-20-CV-61872-AHS**

ALAN DERSHOWITZ,

                          Plaintiff,

vs.

CABLE NEWS NETWORK,

                          Defendant.

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT CABLE**
**NEWS NETWORK, INC.'S MOTION FOR SUMMARY JUDGMENT**

John B. Williams (*pro hac vice*)
**WILLIAMS LOPATTO PLLC**
1629 K Street, N.W., Suite 300
Washington D.C. 20006
Tel: (202) 296-1665
jbwilliams@williamslopatto.com
fnkitton@williamslopatto.com

and

Mark A. Schweikert (FBN 70555)
**SCHWEIKERT LAW PLLC**
1111 Brickell Avenue, Suite 1550
Miami, FL 33131
Tel. (305) 999-1906
mark@schweikertlaw.com

*Counsel for Plaintiff Alan Dershowitz*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION AND SUMMARY ............................................................... 1

II.     ARGUMENT ................................................................................................... 6

    A.      The Legal Standard ............................................................................... 6

    B.      A Reasonable Jury Could Find That CNN Acted With Actual Malice ................. 9

    C.      CNN Is Not Shielded By *Pape* From A Finding Of Actual Malice ................... 15

    D.      CNN's Defamatory Statements Are Not Protected "Pure" Opinion .................... 17

    E.      The Actual Malice of CNN Commentators Can Be Imputed To CNN ............... 22

    F.      Dershowitz Is Entitled To Prove His Damages .................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*100PlusAnimal Rescue, Inc. v. Butkus*,
 Case No. 17-61893-Civ-COOKE/HUNT, 2020 WL 13517903 (Sept. 30,
 2020) ...........................................................................................................................8

*Adams v. News-Journal Corp.,*
 84 So.2d 549 (Fla. 1955)............................................................................................25

*Adickes v. S.H. Kress & Co.*,
 398 U.S. 144 (1970) .....................................................................................................7

*Aflalo v. Weiner*,
 2018 WL 3235529 (S.D. Fla. July 2, 2018)...............................................................26

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)..................................................................................................5, 7

*Anderson v. Smith*,
 2020 WL 10058207 (M.D. Fla. Mar. 24, 2020) .......................................................27

*Buratt v. Capital City Press*,
 459 So.2d 1268 (La. Ct. App. 1985) .........................................................................12

*Corsi v. Newsmax Media, Inc.,*
 519 F. Supp. 3d 1110 (S.D. Fla. 2021), *appeal dismissed in part,* No. 21-
 10480, 2022 WL 3353776 (11th Cir. July 1, 2022), *appeal dismissed in part*,
 No. 21-10480, 2022 WL 3350519 (11th Cir. July 7, 2022)..............................22, 27

*Eramo v. Rolling Stone, LLC*,
 209 F.Supp.3d 862 (W.D. Va. 2016) ........................................................................13

*From v. Tallahassee Democrat, Inc.*,
 400 So.2d 52 (Fla. 1st DCA 1981) ...........................................................................20

*Gertz v. Robert Welch*,
 418 U.S. 323 (1974)..............................................................................................27, 28

*Goldwater v. Ginzburg*,
 414 F.2d 324 (2d Cir. 1969)................................................................................12, 13

*Hammer v. Slater*,
 20 F.3d 1137 (11th Cir. 1994) ....................................................................................8

ii

*Harper ex rel. Daley v. Toler*,
    884 So. 2d 1124 (Fla. Dist. Ct. App. 2004) ........................................................22, 23

*Harte-Hanks Commc'ns, Inc., v. Connaughton*,
    491 U.S. 657 (1989).................................................................................3, 5, 8, 13

*Hay v. Independent Newspapers, Inc.*,
    450 So.2d 293 (Fla. 2d DCA 1984) ...............................................................18, 19

*Healey v. New England Newspapers, Inc.*,
    555 A.2s 321 (R.I. 1989) ......................................................................................12

*Herbert v. Lando*,
    441 U.S. 153 (1979)................................................................................5, 8, 14

*Hunt v. Liberty Lobby*,
    720 F.2d 631 (11th Cir. 1983) ......................................................................22, 24

*Jankovic v. Int'l Crisis Group*,
    593 F.3d 22 (D.C. Cir. 2010) ......................................................................20, 21

*Jankovic v. Int'l Crisis Group*,
    822 F.3d 576 (D.C. Cir. 2016).............................................................................21

*Liberty Lobby, Inc. v. Anderson*,
    746 F.2d 1563 (D.C. Cir 1984) ...........................................................................25

*Mahnke v. Northwest Publications, Inc.*,
    160 N.W.2d 1 (Minn. 1968) .................................................................................12

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991).............................................................................15, 16, 25

*McKee v. Crosby*,
    139 S. Ct. 675 (2019)............................................................................................3

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ..........................................................................8, 9

*Mid-Florida Television Corp. v. Boyles*,
    467 So.2d 282 (Fla. 1985)....................................................................................27

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ................................................................................................19

*Miranda v. B&B Cash Grocery Store, Inc.*,
    975 F.2d 1518 (11th Cir. 1992) .............................................................................7

*Moldea v. New York Times Co.,*
    22 F.3d 310 (D.C. Cir. 1994) ......................................................................21, 22

*Montandon v. Triangle Publications,*
    45 Cal. App. 3d 938 (Cal. Ct. App. 1975) .............................................................12

*Murphy v. Boston Herald, Inc.,*
    865 N.E. 2d 746 (Mass. 2017) ...........................................................................13

*Musacchio v. United States,*
    577 U.S. 244 (2016) ..................................................................................1, 17

*Mzamane v. Winfrey,*
    693 F.Supp.2d 442 (E.D. Pa. 2010) ......................................................................12

*Nader v. de Toledano,*
    408 A.2d 31 (D.C. 1979) .........................................................................4, 12, 17

*New York Times v. Sullivan,*
    376 U.S. 254 (1964) ...........................................................................3, 4, 7, 8

*Rasmussen v. Collier County Publishing Co.,*
    946 So.2d 567 (Fla. 2d DCA 2006) .......................................................................20

*Rebozo v. Washington Post Co.,*
    637 F.2d 375 (5th Cir. 1981) .......................................................................12, 16

*Reid v. Viacom Int'l Inc.,*
    No. 1:14-cv-1252-MHC, 2017 WL 11634619 (N.D. Ga. Sept. 22, 2017) ...............................12

*Reuber v. Chemical News, Inc.,*
    925 F.2d 703 (4th Cir. 1991) ...........................................................................13

*Reynolds v. Pronto Corp.,*
    No. 08-cv-81241, 2009 WL 10667071 (S.D. Fla. July 10, 2009) ....................................23, 24

*Rubin v. U.S. News & World Rep., Inc.,*
    271 F.3d 1305 (11th Cir. 2001) .........................................................................25

*Sakacsi v. Quicksilver Delivery Sys., Inc.,*
    No. 8:06-cv-1297-SCB-MAP, 2007 WL 4218984 (M.D. Fla. Nov. 28, 2007) ...........................23, 24

*Sharon v. Time, Inc.,*
    599 F.Supp. 538 (S.D.NY. 1984) .........................................................................12

*Shaw v. Set Enterprises, Inc.,*
    241 F. Supp. 3d 1318 (S.D. Fla. 2017) .............................................................23, 24

*Scantland v. Jeffry Knight, Inc.*,
   721 F.3d 1308 (11th Cir. 2013) ................................................................24

*Schiavo ex rel. Schindler v. Schiavo*,
   403 F.3d 1289 (11th Cir. 2005) ...............................................................18

*Schiavone Construction Co. v. Time, Inc.*,
   847 F.2d 1069 (3d Cir. 1988)............................................................10, 11

*Schiller v. Viacom, Inc.*,
   No. 1:15-cv-22129-UU, 2016 WL 9280239 (S.D. Fla. April 4, 2016) ...................................8

*Schumann v. Collier Anesthesia, P.A.*,
   No. 2:12-cv-347-FTM-29CM, 2017 WL 1207263 (M.D. Fla. Apr. 3, 2017) ........................22

*Scobie v. Taylor*,
    2013 WL 3776270 (S.D. Fla. July 17, 2013) ..............................................25

*Southern Air Transport, Inc. v. Post-Newsweek Stations, Florida, Inc.*,
   568 So.2d 927 (FCA 3d Dist. 1990) ...........................................................8

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)......................................................3, 5, 7, 8, 9, 15

*Time, Inc. v. Pape*,
   401 U.S. 279 (1971)....................................................4, 15, 16, 17

*Tipton v. Bergohr GMBH-Siegen*,
   965 F.2d 994 (11th Cir. 1992) ................................................................7

*Vital Pharmaceuticals, Inc. v. Alfieri*,
   No. 20-61307-CIV-SINGHAL/VALLE, 2022 WL 1450042 (S.D. Fla. May 9,
   2022) ..............................................................................1, 17, 18

*Young v. Gannett Satellite Corp.*,
   734 F.3d 544 (6th Cir 2013) .................................................................5, 16

*Zambrano v. Devanesan*,
   484 So.2d 603 (Fla. 4th DCA 1986) ..........................................................18, 19

**Other Authorities**

Elder: A Lawyer's Guide to Defamation, Section 9:2 ................................................25

Fed. R. Civ. P. 56(a) ....................................................................................6

Restatement (Second) of Agency § 220(2) (1958) .........................................................23

## **Introduction and Summary**

A reasonable jury could find clear and convincing evidence in this case that Defendant Cable News Network ("CNN") and its commentators and producers intentionally falsified remarks that Plaintiff Alan Dershowitz made on the floor of the U.S. Senate, over the course of two days, in which he asserted that a president *could* be impeached if he or she engaged in a criminal act. These broadcasts concealed this assertion from the public, while its commentators seized upon an edited out-of-context snippet of Dershowitz' remarks to proclaim that he had argued precisely the opposite: namely, that a president had "a license to commit crimes," Def. Ex. 67 at 5, that a president could do "anything, anything," Def. Ex. 36 at 6, that a president could "actually commit crimes," and that a president could "essentially whatever they want in order to get elected," Def. Ex. 53 at 3.

CNN also posted a column on its website entitled, "*Presenting the ludicrous 'Dershowitz Doctrine,'*" which its author described as "the argument that if you're seeking your reelection, then the things you do can't be a crime if the election is in the public interest." These statements were malicious and defamatory, and as this Court has already held, they "are not based upon a fair and accurate summary of Dershowitz' statement to the Senate" (Order Denying Motion to Dismiss, ECF No. 28, at 13).[1]

There is no dispute that these CNN accusations are false. Rather, CNN's position is that its broadcasters and producers did not act with actual malice because they claim to have believed CNN's reporting was "fair and accurate" (contrary to the Court's observations on this issue), and that their singular focus on the truncated excerpt was appropriate because, in their view, it was

---

[1] The law-of-the-case doctrine bars CNN from relitigating that issue. *Musacchio v. United States*, 577 U.S. 244, 245 (2016) (internal quotation marks omitted); *Vital Pharmaceuticals, Inc. v. Alfieri*, Case No. 20-61307-CIV-SINGHAL/VALLE, 2022 WL 1450042, at *3 (S.D. Fla. May 9, 2022).

"newsworthy."   But the reason they considered the excerpt "newsworthy" is because they purposely edited, deleted and ignored the rest of Dershowitz' remarks – which would have put the excerpted portion in context.  The relevant caselaw (also ignored by CNN) teaches that "actual malice" may be found when a publisher omits material that would have made its statements incapable of defamatory meaning (and thus "less intriguing" to its audience), when it ignores contradictory facts, when it misstates facts in favor of the most condemnatory allegations, or when it disregards material contrary to a preconceived story line.

Here, CNN developed its story line shortly after Dershowitz completed his remarks on January 29, 2020.  Facts ¶¶ 8-24.[2]  It published a News Account on its website, CNN.com, entitled "*Alan Dershowitz Argues Presidential Quid Pro Quos Aimed at Reelection Are Not Impeachable*." *Id.* ¶¶ 8-9.  This "News Account" quoted a four-sentence excerpt of Dershowitz' remarks and ignored the bulk of what was actually said – principally including his statement that a quid pro quo could be illegal, unlawful, or corrupt and thus impeachable.  *Id.* ¶9.  This "News Account" was sent to all CNN staff, and a link was separately e-mailed directly to the CNN broadcasters, contributors and producers responsible for the defamatory statements.  *Id.* ¶¶ 10-24.  It was the sole subject of the "Prelim Thursday Rundown" presented to Jeff Zucker, CNN's President, at his daily 4:30 staff meeting.  *Id.* ¶¶ 13-16.  Zucker, who had earlier written that Dershowitz was "crazy," informed his staff that he was "good with [the] rundown."  *Id.* ¶¶ 14-15.  As the afternoon wore on, this "News Account" continued to be distributed among CNN broadcasters and producers and was described by one producer as the "angle."  *Id.* ¶ 20.  Each of the defamatory broadcasts followed form – all focused exclusively on the excerpt and all ignored Dershowitz's qualifying statements.  *See* Def. Exs. 36 at 6; 53 at 2; 67 at 4.  None of these defamatory statements could or

---

[2] All citations to "Facts" are to Plaintiff's Counter Statement of Undisputed Material Facts unless otherwise indicated.

would have been made if the audience had been shown what Dershowitz actually said.  The Ludicrous Dershowitz Doctrine article, posted on CNN.com, did as well.  *See* Def. Ex. 144.  A CNN editor had sent a link to the "News Account" to the author, Paul Begala, and he relied on that account in drafting his article. *Id.* ¶¶ 17, 30.

CNN asserts that it is entitled to summary judgment because each of its broadcasters, producers and commentators professed a good faith belief that their statements and actions were fair and that they had no doubts about the accuracy of CNN's reporting.  But as the Supreme Court held in *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968), such "professions of good faith" are "unlikely to prove persuasive" in shielding a defendant from a claim of actual malice "where there are obvious reasons to doubt the veracity . . . or accuracy of the [defendant's] reports."  The intentional omission of material that contradicts a defendant's story provides strong evidence that the defendant had obvious reasons to doubt the accuracy of its reports.  As the Supreme Court further stated in *Harte-Hanks Communic's v. Connaughton*, 491 U.S. 657, 692 (1989), "the purposeful avoidance of the truth" is a sufficient basis for a finding of actual malice.

CNN also argues that it is entitled to summary judgment because its witnesses testified that each came to his or her beliefs about the newsworthiness of their statements independently, and that there was no "grand scheme" or "conspiracy" to malign Dershowitz or skew the truth.  As a legal matter, this is a straw man argument.  There is no requirement that a plaintiff demonstrate a conspiracy or concerted undertaking by all the individuals within an organization, and the Supreme Court held in *New York Times v. Sullivan,* 376 U.S. 254, 287 (1964) that the actual malice determination focuses on the state of mind of the individual speaker.[3]  Dershowitz did not plead

---

[3] At least one Supreme Court Justice has expressed doubts as to whether the *New York Times v. Sullivan* decision applying the actual malice test to public figures was correctly decided.  *McKee v. Crosby*, 139 S. Ct. 675 (2019) (Mem.) (Thomas, J., concurring in denial of *cert.*).  Recognizing that this Court has no authority to disregard *Sullivan*, Dershowitz nonetheless objects to application of the *Sullivan* standard in

any such conspiracy in his complaint, and none is required.

Moreover, while there might not have been a "grand scheme" (whatever that means), the evidence shows that CNN certainly had a pre-existing story line. *See* Facts ¶¶ 8-24. CNN's take on the Dershowitz remarks – its biased "News Account" – was posted on CNN.com, distributed to its broadcasters, producers, and commentators, and approved by its president. *See id.* It is no coincidence that every CNN broadcaster, commentator, and producer, all of whom were aware of the totality of Dershowitz's statements, chose "independently" to ignore his argument that a president could be impeached for committing a crime, and instead conclude that he had said just the opposite. Nor is it a coincidence that the video excerpts for the broadcasts all played the same four-sentence excerpt highlighted in the News Account, and (with one exception) showed ***only*** that excerpt.[4]

CNN's reliance on the Supreme Court's decision in *Time, Inc. v. Pape*, 401 U.S. 279 (1971), is similarly flawed. First, unlike the document reported on in *Pape,* there is no "extravagant [] ambiguity" in Dershowitz' statement that CNN deleted. In fact, John Berman (who mockingly referred to Dershowitz as "Dersh-O-Nuts") stated on his program that Dershowitz "was not ambiguous," Facts ¶¶ 92, 99, 104, and CNN commentator Anne Milgram testified that she "understood" Dershowitz's statements, *id.* ¶ 107. Second, even if an ambiguity existed, CNN could avoid liability only if its commentators' statements were a "rational interpretation" of the supposedly ambiguous statement. An interpretation is not "rational" under *Pape* if it is undercut

---

this case in order to preserve the argument that *Sullivan* should be overruled.

[4] The video presentations all showed the following quotation: "Every public official I know believes that his election is in the public interest. And mostly you're right. Your election is in the public interest. And if the president did something he believes will help him get elected, in the public interest, that cannot be the kind of quid pro quo that results in impeachment." Def. Ex. 36 at 6; Def. Ex. 67 at 4. Only the clip played on the Full Circle program added additional material, but not the earlier statement that a quid pro quo could be illegal, and not the subsequent examples Dershowitz provided of the types of crimes that were impeachable. Def. Ex. 53 at 2.

by a review of the entire underlying statement.  *Nader v. de Toledano,*. 408 A.2d 31, 53 (D.C. 1979).

In any event, the question for the Court at this juncture is whether a jury ***could*** reasonably find for the plaintiff under the proper evidentiary standard.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 255-256 (1986).  Under *St. Amant, Harte-Hanks,* and *Herbert v. Lando,*[5]  the evidence amassed through discovery demonstrates CNN's obvious reasons to doubt the accuracy of its story, its omission of contradictory facts to make its story "newsworthy," its choice of the most condemnatory and extreme accusations, and its adherence to the same preconceived story line, make it clear that the jury could reasonably find for Dershowitz in this case.  The question of whether CNN "rationally interpreted" an allegedly ambiguous statement is also a question for the jury.  As the Sixth Circuit observed in *Young v. Gannett Satellite Corp.,*734 F.3d 544, 548 (6th Cir 2013), both the issue of ambiguity and rational interpretation should be submitted to the jury.[6]

CNN also tries to reargue its assertion, already rejected by the Court, that these statements were protected as "pure opinion."  However, the Court correctly held that the statements constitute mixed opinion and fact and are not protected by the First Amendment.  (ECF No. 28 at 15). Nothing in the record changes that, and it is the binding law of the case.

CNN further makes the groundless argument (buried in a footnote) that the actual malice of three of its commentators cannot be imputed to CNN because they were independent contractors.  (ECF No. 234 at 17, n.19).  Under Eleventh Circuit precedent and governing Florida

---

[5]  In *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979), the Court stated: "The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights."

[6]  CNN makes much of Dershowitz' comments that he "slipped up" and that a certain comment could not be "parsed." But as he states in his attached declaration, those criticisms are irrelevant nits.  Pl. Ex. B ¶ 8,

law, these individuals are clearly considered employees under agency laws, and their speakers should be deemed CNN employees and their state of mind imputed to CNN.

Finally, the issue of damages is a question for the jury. CNN asserts that Dershowitz's reputation was already destroyed by the time it made its defamatory remarks because of his years of representing controversial clients, including Jeffrey Epstein and Donald Trump, and the false allegations of sexual impropriety that ensued in the wake of the Epstein representation, allegations that were finally recanted this week. CNN cites Dershowitz's reaction to these events as admissions that his legacy has been "destroyed." But, as set forth in Dershowitz' declaration, these comments have been taken out of context, and Dershowitz' reputation and legacy as a heralded defense attorney and constitutional scholar has been confirmed by the evidence in this case. Pl. Ex. B ¶¶ 3-7.

Despite the public criticisms of Dershowitz cited in CNN's brief, CNN's own counsel and witnesses have recognized Dershowitz' standing in the legal community. Kate Bolger, CNN's lead trial attorney states on her law firm's webpage that she is defending CNN in a defamation action brought by "famed legal scholar Alan Dershowitz." Facts ¶ 111. In this litigation, Paul Begala testified that Dershowitz possesses "a legendary legal mind." *Id.* ¶ 112. Joe Lockhart testified that Dershowitz is a "respected lawyer." *Id.* ¶ 113. And Anderson Cooper discussed his great respect for Dershowitz and his reputation as "a great defender of the first amendment." adding that he "would like him to be my attorney if I ever needed one." *Id.* ¶¶ 114-15.

# ARGUMENT

## I.     The Legal Standard

Under Fed. R. Civ. P. 56(a), summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require a submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 252 (1986).

The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal quotations omitted).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.* 975 F.2d 1518, 1534 (11th Cir. 1992) (internal quotation omitted).

In a defamation case by a public figure, *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964) requires 'clear and convincing' evidence that the defendant acted with actual malice.  The Supreme Court in *Sullivan* defined actual malice to mean "with knowledge that [the challenged statement] was false or with reckless disregard of whether it was false or not."  *Id*. at 280.  CNN mistakenly claims that "reckless disregard" of the truth "essentially" means that plaintiff must prove defendant knew the challenged statement was "very likely" false and "actually entertained

serious doubts" or was "highly aware that the account was probably false." (ECF No. 234 at 14-15).

But the test of actual malice does not depend only on what the defendant now claims. The Supreme Court made clear in *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) that "[p]rofessions of good faith" alone with not protect a defamation defendant. "[R]ecklessness may be found where there are obvious reasons to doubt the veracity" of the challenged statement." *Id.  Accord, e.g., Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016).  Among those objective "obvious reasons" is the failure of defendant to "include[] information contrary to the general conclusions reached in [the challenged] article." *Id.*  In a defamation case subject to *Sullivan*, such as this one, "where the factual dispute concerns actual malice . . . the appropriate summary judgment question will be whether the evidence in the record ***could*** support a reasonable jury finding that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Liberty Lobby*, 477 U.S. at 255 (emphasis added).[7]

Finally, given that a defamation plaintiff will "rarely be successful in proving awareness of falsehood from the mouth of the defendant himself," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), a defamation plaintiff "is entitled to prove the defendant's state of mind through circumstantial evidence[,]" which the jury should evaluate.  *Harte-Hanks*, 491 U.S. at 668.  Furthermore, this showing can be made expressly or it "can be inferred in certain circumstances." *Michel*, 816 F.3d at

---

[7] CNN claims that the actual malice standard is "so high" that, 'in reviewing cases against media defendants brought by public figures, the Eleventh Circuit last found a triable issue of fact in 1983."  *Id.* at 15. However, the Eleventh Circuit and Florida courts have held much more recently in cases involving public and private figures that genuine issues of material fact regarding a defendant's actual malice precluded the grant of summary judgment in defendant's favor. *See, e.g., Hammer v. Slater*, 20 F.3d 1137, 1143 (11th Cir. 1994); *100PlusAnimal Rescue, Inc. v. Butkus*, Case No. 17-61893-Civ-COOKE/HUNT, 2020 WL 13517903, at *8-9 (Sept. 30, 2020); *Schiller v. Viacom, Inc.*, Case No. 1:15-cv-22129-UU, 2016 WL 9280239, at *7-8 (S.D. Fla. April 4, 2016); *Southern Air Transport, Inc. v. Post-Newsweek Stations, Florida, Inc.*, 568 So.2d 927, 928-929 (FCA 3d Dist. 1990).

703.  Thus, actual malice can be established not only when there is evidence that the defendant "in fact entertained serious doubts as to the truth of his publication" but also when "there are obvious reasons to doubt the veracity . . . or the accuracy of [defendant's] reports.  *St. Amant*, 390 U.S. at 732; *Michel*, 816 F.3d at 703.

## II.   A Reasonable Jury Could Find That CNN Acted With Actual Malice

CNN's primary defense to Dershowitz' claim of actual malice is that, "[t]here is nothing in the record – let alone clear and convincing evidence – showing that any CNN witness '*in fact* entertained serious doubts as to the truth' of CNN's reporting." (ECF No. 234 at 15).  According to CNN, "every person involved in either editing the clips or making the statements testified they believed the clips and statements were fair and accurate, and had no doubts on that front."  *Id.*  CNN argues that, "[i]n light of these 'professions of good faith,'" its motion for summary judgment must be granted unless there is clear and convincing evidence that its statements were "fabricated," "the product of [CNN's] imagination," "based wholly on an unverified anonymous telephone call," "so inherently improbable that only a reckless man would have put them in circulation," or if "there were obvious reasons to doubt the veracity … or the accuracy of [CNN's] reports."  *Id.* at 17.  CNN claims "[t]here is zero evidence to support any of these contentions."  *Id.*

CNN's assertion is groundless.  The evidence shows there were "obvious reasons" known to CNN's broadcasters and producers to doubt the veracity of CNN's defamatory statements about Dershowitz' views on impeachment.   CNN's subjective "'professions of good faith'" are meaningless in the face of such reasons.  *St. Amant*, 390 U.S. at 732; *Michel*, 816 F.3d at 703.

CNN's commentators broadcast or wrote that, according to Dershowitz' testimony, a president could not be impeached so long as he acted in his own electoral interest or in what he perceived to be the public interest.  They did not limit the breadth of their mischaracterization of

Dershowitz' view on impeachment.  They implied that, according to Dershowitz, a president could not be impeached if he acted in his own electoral interest or what he perceived to be the public interest even if the president engaged in criminal conduct.  It was this sweeping and unqualified nature of the view that CNN's commentators ascribed to Dershowitz and his so-called "Dershowitz Doctrine" that prompted them to brand it as outlandish and beyond the pale.

However, the jury could find that CNN and its commentators had obvious reasons to doubt the veracity of their unbounded portrayal of Dershowitz' views on impeachment.  First, as CNN admits in its motion, CNN and its commentators knew that on January 27, 2021, a mere two days before they made their defamatory statements about Dershowitz, he "had argued to the Senate that a crime or crime-like conduct is necessary for impeachment."  (ECF No. 234 at 17).  That was reason enough for CNN and its commentators to doubt the veracity of their statements on January 29 that Dershowitz believed a president could not be impeached for engaging in criminal conduct that was in his own electoral interest or the public interest.

Second, although CNN claims that its commentators "understood Plaintiff to take a new and different position on January 29, *i.e.*, that a president cannot be impeached for acts taken in the interest of reelection," *id.*, that claim is demonstrably false.  The jury could find that CNN and its commentators knew that, in that very testimony on January 29, Dershowitz repeated his view that a quid pro quo arrangement with a foreign leader was impeachable if it involved unlawful, illegal or corrupt – in other words – criminal conduct.  Thus, CNN and its commentators ***knew*** – but concealed from the public – that Dershowitz took the ***same*** position on impeachment on January 29 that he had taken on January 27, not some "new and different position."  That, too, was reason enough for CNN and its commentators to doubt the veracity of their statements on January 29 that Dershowitz believed a president could not be impeached for engaging in criminal conduct that was in his own

electoral interest or the public interest.

Moreover, case law precedent establishes that, by itself, CNN's deletion of Dershowitz' qualifying statement, that a president could be impeached for criminal conduct, is sufficient evidence for a jury to find actual malice. For example, in *Schiavone Construction Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1988), Time magazine published an article by a reporter that implied a connection between plaintiff Schiavone and the disappearance of Teamster boss Jimmy Hoffa. The article was based on a memorandum from the personal files of FBI Director William Webster that had been leaked to a Time reporter named Sandy Smith. The evidence was that Smith knew the memorandum included exculpatory language that "none of these [references to Schiavone] suggested any criminality or organized crime associations," but Smith deleted this exculpatory because he did not believe the disclaimed. language from the article. *Schiavone*, 847 F.2d at 1074. The district court granted summary judgment in favor of Time. The Third Circuit reversed, holding that "twelve reasonable people could find by clear and convincing evidence that Time acted with actual malice." *Id.* at 1091.

The Third Circuit reasoned that Smith's choice "to credit only the portions that were damaging to Schiavone and not the portion that would have neutralized those damaging statements bears on his subjective state of mind and may point to actual malice." *Id.* at 1092. It added: "Smith's decision to simply delete language that cast a very different and more benign light on the facts he reported, could itself serve as a basis for a jury's finding by clear and convincing evidence that Time acted with knowledge of probable falsity. . . . [T]he jury could find clear and convincing evidence that Time's omission of the exculpatory clause significantly altered the message of the memorandum, that Time knew its implication was false, and that Time intended that false implication." *Id.*

The Third Circuit's analysis in *Schiavone* applies to the present case.  Here, too, a jury could find clear and convincing evidence that the choice of CNN and its commentators to broadcast or write about only the portions of Dershowitz' testimony that a president should not be impeached for making a quid pro quo arrangement that he perceived was in his electoral and the public's interests, and not the portion that would have neutralized the implication that the lawfulness of that conduct made no difference, "significantly altered" Dershowitz' actual views on impeachment, that CNN "knew its implication was false," and that CNN "intended that false implication."  That is actual malice.

Similarly, in *Reid v. Viacom Int'l Inc*., No. 1:14-CV-1252-MHC, 2017 WL 11634619 (N.D. Ga. Sept. 22, 2017), the district court, in denying summary judgment to defendant Viacom, held there was sufficient evidence for a reasonable jury to conclude that Viacom's deletion of several scenes from a movie that might have rectified another allegedly defamatory scene constituted actual malice.  The district court reasoned that a reasonable jury could find "that Defendants purposely avoided or deliberately ignored facts that would have established the falsity of one or more purportedly defamatory scenes," and that "create[d] a genuine issue of material fact as to whether Defendants acted with actual malice with regard to the remaining ten allegedly defamatory scenes identified in the Complaint."  *Viacom*, 2017 WL 11634619, at *1.

Many other cases similarly hold that the omission of contradictory material would support a jury determination of actual malice.  *See, e.g., Goldwater v. Ginzburg*, 414 F.2d 324, 337, 340 (2d Cir. 1969); *Mzamane v. Winfrey*, 693 F.Supp.2d 442, 506-507 (E.D. Pa. 2010); *Healey v. New England Newspapers, Inc.*, 555 A.2s 321, 326-327 (R.I. 1989); *Buratt v. Capital City Press*, 459 So.2d 1268, 1270-1271 (La. Ct. App. 1985); *Nader v. Toledano*, 408 A.2d 31, 51-54 (D.C. 1979); *Montandon v. Triangle Publications*, 45 Cal. App. 3d 938, 949 (Cal. Ct. App. 1975).  Actual malice

can also be found when the publisher chooses to focus on an angle to make its story "seem more convincing or condemnatory than it is." *Sharon v. Time, Inc.*, 599 F.Supp. 538, 582 (S.D.NY. 1984). *See also Rebozo v. Washington Post Co.*, 637 F.2d 375, 382 (5th Cir. 1981); *Mahnke v. Northwest Publications, Inc.*, 160 N.W.2d 1, 9-10 (Minn. 1968).

The adherence to CNN's preexisting story line established in its "News Account" will also support a finding of actual malice. *See Goldwater*, 414 F.2d at 337; *Eramo v. Rolling Stone, LLC*, 209 F.Supp.3d 862, 872 (W.D. Va. 2016). And while a failure to adhere to professional journalistic standards is not in and of itself sufficient to establish actual malice, *Harte-Hanks Communic's, Inc. v. Connaughon*, 491 U.S. 657, 665-666 (1989), the Supreme Court "did recognize that such standards might serve as supportive evidence" in the determination of actual malice. *Reuber v. Chemical News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991) (*en banc*) (citing *Harte-Hanks*, 491 U.S. at 668).

In this case, a jury could find that the CNN commentators and producers clearly did not adhere to professional journalistic standards, and their departure was egregious. The Code of Ethics of the Society of Professional Journalists, a code recognized and applied in defamation cases, *Murphy v. Boston Herald, Inc., 865* N.E. 2d 746 (Mass. 2017), states that "ethical journalism should be accurate and fair," --and this Court has already addressed that issue. The Code also provides that a journalist should "***provide context***, should "take special care not to misrepresent or oversimplify in promoting, previewing, or summarizing a story," and should "***never deliberately distort facts or context, including visual information***." Facts ¶¶ 125-26 (emphasis added). Berman acknowledged that this code contained admirable guidelines, but he did not consider it "legally enforceable." *Id.* ¶ 126. He is correct: it is not legally enforceable; but CNN's egregious departure from these standards is evidence of actual malice.

Each of the individual CNN commentators and producers (including Berman, Lockhart, Begala, Cooper, Harman, Hadad, and Xu) violated these journalistic standards.  All of them also had obvious reasons to doubt the accuracy of their broadcasts or articles.  All omitted material that was contradictory to their story and did so to make their Dershowitz criticisms "newsworthy."  All received and hewed to the CNN story line—established in the very early News Account, and approved by the CNN president, Jeff Zucker.  Facts ¶¶ 8-24.

Further, as for Begala, his statements were not only reckless, but they were made with the knowledge that they were false.  Asked if he thought his statement that "the Dershowitz Doctrine would make presidents immune from every criminal act, so long as they could plausibly claim they did it to boost their reelection effort," was fair and accurate, he stated that he did not—and then acknowledged that *"**He didn't say anything like that,**"* a clear admission that he knew his Dershowitz Doctrine assertion was false.  Facts ¶ 38.  Begala's excuse for his "inflammatory" language was that he was trying to "sound an alarm," but this hardly excuses knowing falsity.[8] *Id.* ¶36.  Falsely shouting "fire" is *also* an alarm.

Like Begala, Lockhart was also "ringing an alarm bell."  *Id.* ¶ 71.  He acknowledged that he was trying to "make a broader point, a political point," and testified that he did so because he thought the Dershowitz comments were quite dangerous "if applied in the extreme and to other forms of government."  *Id.* ¶ 68.  And most notably, he admitted that the reason he did not mention the fact that Dershowitz used the words "illegal unlawful and corrupt" is because "he did not think that was the point he was trying to make."  *Id.* ¶ 73.  Lockhart evidently considered himself at

---

[8] Anne Milgram also could not assert in her deposition that her statements were fair.  In response to a direct question as to whether she considered her comments to be fair, she gave a non-responsive and meandering answer, and refused to respond to the specific question put to her.  Facts ¶¶ 89-92.

liberty to disregard Dershowitz's actual words, because he chose to interpret them in an extreme manner, simply to make a "political point." *Id.* ¶ 71.

In the case of Berman, two additional indices of actual malice apply. First, under *Herbert v. Lando*, relevant evidence of actual malice includes the existence of ill will and hostility, and here Berman sent an email to his producer which referred to Dershowitz as "Dersh-O-Nuts." Facts ¶ 104. Second, in that same email he scripted a quotation, attributed to Dershowitz, that he was planning to use on his show: "I want to be elected. I think I'm a great president. I think I'm the greatest president that ever was, and if I'm not elected, the national interest will suffer greatly, Dershowitz said. That cannot be an impeachable offense." *Id.* Dershowitz never made that statement. It is a made-up quotation. But Berman read it on the air and attributed it to Dershowitz. Def. Ex. 36 at 7. Not only does this falsified quotation omit the thrust of the Dershowitz argument that a president could be impeached for the commission of a crime, it asserts that a president could do anything at all to get elected—without reference to Dershowitz's actual words in the excerpt, which indicated he was referring to "the kind of quid pro quo that results in impeachment." Facts ¶ 105. Under the Supreme Court's decisions in *St. Amant* and *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 517-18 (1991), fabricated quotations, and fabricated stories, are evidence of actual malice.

### III.   CNN Is Not Shielded by *Pape* from a Finding of Actual Malice

CNN repeats the argument in its motion to dismiss, that it should be shielded from a finding of actual malice under the Supreme Court's decision in *Time, Inc. v. Pape*, 401 U.S. 279 (1971). (ECF No. 234 at 18). In *Pape*, the Supreme Court held that a speaker's characterization of an event that "bristled with ambiguities" does not create a jury issue of actual malice if the speaker adopted one of several possible rational interpretations of the ambiguous event. The Court rejected this

argument before, and it should reject it again.

As the Court read *Pape*, the Supreme Court declined to permit the issue of actual malice to go to the jury because the only problem with the allegedly defamatory article about a government report in that case was the omission of the word "alleged." (ECF No. 28 at 20). The Court quoted the Supreme Court's conclusion in *Pape* that, "'[t]o permit the malice issue to go to the jury because of the omission of a work like 'alleged,' despite the context of that word in the Commission Report and the external evidence of the Report's overall meaning, would be to impose a much stricter standard of liability on errors of interpretation or judgment than on error of fact.'" *Id*. As shown above, the problem with CNN's allegedly defamatory statements about Dershowitz is far more serious than the omission of a word like "alleged."

In any event, *Pape* is *sui generis* because the report on which the article in question was written was "extravagantly ambiguous" and "bristled with ambiguities," which is why the Supreme Court decided not to apply the accepted standard of actual malice to it. *Pape*, 401 U.S. at 285, 288, 290. Dershowitz' testimony was neither "extravagantly ambiguous" nor "bristled with ambiguities." One of CNN's commentators, in fact, stated that Dershowitz "wasn't ambiguous here," and another testified that she "understood" Dershowitz' argument. Facts ¶ 5. None claimed in their broadcasts or writing that it was "ambiguous" at all. In fact, one of the broadcasters, John Berman, said that Dershowitz' statement "wasn't ambiguous."[9] *Id.* ¶ 107.

Furthermore, the rationale for the *Pape* test does not apply to this case. The "rational interpretation" test "serves First Amendment principle by allowing an author the interpretive license

---

[9] In the usual case, the issues of ambiguity and rational interpretation are jury questions. *See Rebozo v. Washington Post Co.*, 637 F.2d 375, 382 (D.C. Cir. 1981) ("[the reporter's] resolution of the obvious ambiguity whether Riley told Rebozo the stock was (a) missing, (b) stolen, or (c) missing or stolen in favor of the most potentially damaging alternative creates a jury question on whether the publication was indeed made without serious doubt as to its truthfulness"). *See also Young v. Gannett Satellite Information Network, Inc.*, 734 F.3d 544, 548 (6th Cir. 2013).

that is necessary when relying upon ambiguous sources." *Masson,* 501 U.S. at 497.  But where "a writer uses a quotation that a reasonable reader would conclude purports to be a verbatim repetition of the speaker's statement . . . the author is not interpreting the speaker's ambiguous statement, but is attempting to convey what the speaker said." *Id.* at 498.

In the present case, CNN and its commentators attempted to convey what Dershowitz said and were not trying to interpret an ambiguous statement. As the District of Columbia Court of Appeals held in *Nader v. de Toledano,* 408 A.2d 31, 53 (D.C. 1979) (interpreting *Time v. Pape),* an interpretation is not rational if it is undercut by a review of the entire underlying statement. Two of CNN's commentators, Paul Begala and Joe Lockhart, specifically acknowledged in their testimony the extreme nature of their statements.  Begala, who wrote that the Dershowitz Doctrine would immunize presidents from any criminal act, including bribery and extortion, acknowledged in his deposition that Dershowitz "didn't say anything like that" and that he did not "think that was what Dershowitz was trying to say."  Facts ¶ 38.  But as he testified, Begala chose to take a "reductio ad absurdum" position and "to sound an alarm bell."  *Id.* ¶¶ 33, 40.  Joe Lockhart's testimony was similar.  He stated that argument was "quite dangerous if applied in the extreme," and was "making a broader point, a political point, I was ringing an alarm bell."  *Id.* ¶ 66, 71.  The *Pape* test of "rational interpretation" has no application to this case.

IV.   <u>CNN's Defamatory Statements Are Not Protected "Pure" Opinion</u>

In denying CNN's motion to dismiss, the Court held that CNN's defamatory statements "were not pure opinion but instead were mixed expressions of opinion that could reasonably be construed as defamatory."  (ECF No. 28 at 15).  The Court ruled that these "mixed expressions of opinion" were not protected by the First Amendment because they lacked the "'adequate factual foundation'" that would have prevented CNN's commentators from distorting Dershowitz' opinion

17

and defaming him.  *Id.*  The Court's well-reasoned decision is the law of the case and the Court should adhere to it on CNN's motion for summary judgment.  "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Musacchio v. United States*, 577 U.S. 244, 245 (2016) (internal quotation marks omitted); *Vital Pharmaceuticals, Inc. v. Alfieri*, Case No. 20-61307-CIV-SINGHAL/VALLE, 2022 WL 1450042, at *3 (S.D. Fla. May 9, 2022).

There are three recognized exceptions to the law-of-the-case doctrine.  The courts will not apply the doctrine (i) when new and substantially different evidence emerges at a later stage, (ii) when contrary controlling authority has been rendered in the interim, and (iii) when the court's initial decision was clearly erroneous and would work a manifest injustice if implemented.  *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005).

Without expressly referring to any of these exceptions, CNN cites the Court's notation that a "'more fully developed record'" was necessary to address CNN's contention that, because the impeachment was widely covered, the facts underlying its commentators' allegedly defamatory statements were known to the public.  (ECF No. 234 at 24).  According to CNN, "with the benefit of a full record, it is clear that the statements are opinion."  *Id.*  However, there is nothing new in the "full record" that supports CNN's argument that the challenged statements are protected opinion.

CNN argues that the allegedly defamatory statements are protected opinion because they were made during panel discussions and in an op-ed and were "laced with rhetorical language."  *Id.* However, under decisions of the Florida courts and the Supreme Court, those factors do not shield those statements from allegations of defamation.  Those decisions make clear that the controlling question is whether the challenged statements were based on an adequate factual foundation.  The record shows that CNN not only concealed from the public an adequate factual foundation for the

challenged statements, but that CNN based them on a false one.

The Florida Court of Appeals for the Fourth District in *Zambrano v. Devanesan*, 484 So.2d 603, 606 (Fla. 4th DCA 1986) quoted with approval the description of the distinction between protected "pure opinion" and unprotected "mixed opinion" by the Florida Court of Appeals for the Second District in *Hay v. Independent Newspapers, Inc.*, 450 So.2d 293, 295 (Fla. 2d DCA 1984), as follows:

> Pure opinion is based upon facts that communicator sets forth in a publication, or that are otherwise known or available to the reader or the listener as a member of the public. Mixed opinion is based upon facts, regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication. . . . Pure opinion is protected under the First Amendment, but mixed opinion is not.

Thus, under *Zambrano*, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *Zambrano*, 484 So.2d at 606-07. Similarly, the Supreme Court held in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-21 (1990) that, for purposes of defamation law, an "opinion" may be actionable if it implies an assertion of false fact, whether stated or unstated. Such a statement of opinion "is not the sort of loose, figurative, or hyperbolic language" that is protected by the First Amendment. *Id*. at 21.

Therefore, under *Zambrano* and *Milkovich*, it is irrelevant that some of the allegedly defamatory statements by CNN's commentators were made in panel discussions and an op-ed and others used "hyperbolic language." What is dispositive is that the statements, branding as outlandish and beyond the pale Dershowitz' position on impeachment, are not based on an "adequate factual foundation" about Dershowitz' views. These statements imply that, in Dershowitz' view, a president cannot be impeached for ***any*** quid pro arrangement that the president believes is in his and the

19

public's interests, even if the arrangement involves unlawful conduct.  That is a false factual implication.  Dershowitz testified that presidents **can** be impeached for quid quo pro arrangements that involve unlawful conduct.  CNN and its commentators concealed this quintessential fact from its listeners.  Indeed, it told them the exact opposite.

CNN relies on several Florida cases in which statements were protected from defamation claims because, according to CNN, the facts underlying them were disclosed to the public. (*See* ECF No. 234 at 26).  For example, in *Rasmussen v. Collier County Publishing Co*., 946 So.2d 567, 571 (Fla. 2d DCA 2006), statements critical of an official involved in a public scandal were held to be protected opinion because the scandal had been extensively covered in the media and the facts were well known to the public.  Similarly, in *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981), statements critical of a tennis star were held to be protected opinion because the facts were well known to the local tennis community.

However, those cases are inapposite.  Here, although the ***impeachment*** of President Trump was widely covered in the media, the facts regarding ***Dershowitz' views*** on impeachment and quid pro quo arrangements were not known to the general public.  And in broadcasting what it purported to describe as Dershowitz' views on impeachment and quid pro quo arrangements, CNN failed to disclose to the general public an adequate and truth factual basis for them by concealing the fact that, in Dershowitz' view, a quid pro quo arrangement is impeachable if it involves unlawful conduct.

A case in point is *Jankovic v. Int'l Crisis Group*, 593 F.3d 22 (D.C. Cir. 2010).  In *Jankovic*, plaintiff, also known as Philip Zepter, sued the International Crisis Group ("ICG") for publishing an article claiming he benefited from a quid pro quo arrangement with the dictatorial Serbian regime of Slobodan Milosevic.  The article said that Zepter was among a group of oligarchs who supported the Milosevic regime and in return received favorable treatment.  The article was supported by a

reference to a published list of Serbian entities whose assets had been frozen by the United States. The district court dismissed Zepter's complaint, but the District of Columbia Circuit reversed. It held that the disclosed fact about the entities on the frozen assets list implied they were there due to their support of the Milosevic regime. The District of Columbia Circuit found that ICG failed to disclose that there was no evidence to support that implied fact. *Jankovic*, 593 F.3d at 27. Therefore, the District of Columbia Circuit held that the article deprived the public of an adequate and truthful factual foundation for its statements about Zepter.[10]  *Id.*

Here, too, the fact that the CNN and the media disclosed some facts to the general public about Dershowitz' views on impeachment does not insulate the statements of CNN's commentators from defamation in light of CNN's concealment of the key fact that, in Dershowitz' view, a quid pro quo arrangement is impeachable if it involves unlawful conduct. As in *Jankovic*, CNN's concealment of that fact deprived the public of an adequate and truthful factual foundation for its commentators' statements and renders them capable of defamatory meaning.

Finally, CNN attempts to analogize this case to *Moldea v. New York Times Co.*, 22 F.3d 310 (D.C. Cir. 1994). (ECF No. 234 at 27). CNN argues that, under the standard adopted by the District of Columbia Circuit in *Moldea*, CNN's statements about Dershowitz are protected opinion because they represent a "supportable interpretation" of the Dershowitz' "ambiguous" testimony. *Id.* *Moldea* dealt with a book review in which the reviewer made highly caustic remarks about a sports book and criticized the author's journalistic practices. The District of Columbia Circuit observed that, in the particular context of book reviews, "[t]here is a long and rich history in our cultural and legal traditions affording reviews latitude to comment on literary and other works." 22 F.3d at 315.

---

[10] The District of Columbia Circuit ultimately affirmed the district court's grant of summary judgment in favor of ICG based on substantial evidence that, in fact, Zepter supported the Milosevic regime and benefited from that support. *Jankovic v. Int'l Crisis Group*, 822 F.3d 576 (D.C. Cir. 2016).

Because the District of Columbia Circuit believed that book reviews require "'breathing space'" under the First Amendment, it adopted a standard under which a book review is defamatory only if its interpretations are unsupportable with reference to the written work. *Id*. at 317.

However, CNN's broadcasts of Dershowitz' testimony bear no resemblance to a book review. CNN cites no "long and rich history" affording television broadcasts "latitude" or extra "'breathing space'" for the expression of falsehoods, and Dershowitz is aware of none. Furthermore, CNN's commentators did not claim there was anything "ambiguous" about the truncated portions of Dershowitz' testimony that they quoted or summarized. On the contrary, they characterized those portions of his testimony as plainly outlandish. CNN also has not cited any cases since *Moldea* that have applied its unique standard in contexts other than a book review, and Dershowitz is aware of none. Accordingly, *Moldea* does not support CNN's position in this case.

In sum, CNN and its commentators failed to disclose an adequate and truthful factual basis for its statements about Dershowitz' views on impeachment. Therefore, those statements are not protected opinion. Whether or not they are defamatory is a question for a jury.

## V.     The Actual Malice of CNN Commentators Can Be Imputed To CNN

CNN argues that the actual malice of three of the speakers (Begala, Lockhart, and Milgram), cannot be imputed to CNN because their contracts refer to them as independent contractors and not employees. (ECF No. 234 at 17, n.19). That assertion is contrary to Eleventh Circuit precedent, which holds that the issue of whether the speaker of a defamatory statement is an employee of the publisher, or an independent contractor, is a matter of state law, and determined by principles of agency law. *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 (11th Cir. 1983) (*"Under Florida law, a principal is liable for the torts of his agents."*). In this regard, "the test for imposing such vicarious liability is whether the agent or employee is subject to the control of his principal

or employer." *Hunt*, 720 F.2d at 649; *see also Corsi v. Newsmax Media, Inc.,* 519 F. Supp. 3d 1110, 1121 (S.D. Fla. 2021).[11]

The fact that the CNN Contributor's Agreement refers to the speakers as "independent contractors" carries little weight.  "The label the parties put on the relationship is not determinative, nor is it relevant whether the parties intended to create an employment relationship." *Sakacsi v. Quicksilver Delivery Sys., Inc.,* No. 8:06-cv-1297-SCB-MAP, 2007 WL 4218984, at *3 (M.D. Fla. Nov. 28, 2007).  Rather, "[t]he Florida Supreme Court has adopted the test in the Restatement section 220 for determining whether an employment relationship exists." *Harper ex rel. Daley v. Toler*, 884 So. 2d 1124, 1130 (Fla. Dist. Ct. App. 2004).  Relevant factors include:  the extent of the principal's control; whether the work done by the agent is a part of the regular business of the principal; whether the agent is paid a salary or paid by the job; and whether the principal supplies the "instrumentalities, tools, and the place of work."  Restatement (Second) of Agency § 220(2) (1958).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[11]  Whether an agent is an employee, or an independent contractor, is a matter to be decided by the jury.  "Eleventh Circuit case law leaves clear that employment status becomes a mixed issue of law and fact to be resolved by a jury" where material disputed facts prevent "a finding of employment status as a matter of law." *Schumann v. Collier Anesthesia, P.A.,* No. 2:12-cv-347-FTM-29CM, 2017 WL 1207263, at *3 (M.D. Fla. Apr. 3, 2017); *see also Harper ex rel. Daley v. Toler*, 884 So. 2d 1124, 1129 (Fla. Dist. Ct. App. 2004) ("[I]t is well-established [under Florida law,] that the question of an employer/employee relationship is generally a question of fact, and therefore a question for the trier of fact.").

█████████████████████████████████████████████████████

██████████████████████████████████████

      ████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████

Other factors point strongly to employee status. ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████

---

[12] It should also be noted that even were Begala considered an independent contractor, CNN would still be liable for the article he wrote.  That is because the Begala article was edited by CNN employee, Pat Wiedenkeller, who had similar reasons to doubt the accuracy of the Begala article, and as such, her actual malice could be imputed to CNN under the doctrine of respondeat superior. *See, e.g., Hunt v. Liberty Lobby*, 720 F.2d 631 (imputing the actual malice of the editor to the publisher).

**VI.**   <u>**Dershowitz is Entitled to Prove His Damages**</u>

CNN argues that it is entitled to summary judgment on the ground that Dershowitz "will never be able to show that the statements were the proximate cause of his reputational damage." According to CNN, by the time the defamatory statements were made, Dershowitz's reputation was already destroyed by "numerous factors *besides* [CNN's] statements, and as a result it was impossible for CNN to have inflicted any incremental harm to his reputation.  As a legal matter, however, the "libel-proof plaintiff" defense and the incremental harm doctrine are not good law. Both were rejected years ago in *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 522-23 (1991) and *Liberty Lobby v. Anderson,* 746 F.2d 1563 (D.C. Cir 1984)*.  See also*:  Elder: *A Lawyer's Guide to Defamation,* Section *9:2.*

Moreover, as a factual matter, and despite CNN's reliance on Dershowitz' comments regarding the effect of his prior representations (and the Guiffre allegations), the evidence in this case demonstrates that his reputation as a legal scholar had not been diminished by these earlier events.  Even after all the criticisms and all the unfavorable publicity cited in the motion for summary judgment, CNN's trial counsel and its witnesses lauded as a "famed legal scholar," "a legendary legal mind," a "respected lawyer, and "a great defender of the first amendment," one adding that he "would like him to be my attorney if I ever needed one."  Facts ¶¶ 110-15.

CNN then proceeds to argue the defamations in this case should be considered as "libels *per quod*," and that summary judgment must be entered because Dershowitz "cannot prove special damages."  First, the defamations plead in this case are defamations *per se* and not defamations *per quod.*  As set forth in *Scobie v. Taylor*, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013), a case cited by CNN: "*per se* defamatory language may take a variety of forms. The most classic example is language that charges a person with an infamous crime or tends to subject him to hatred,

distrust, ridicule, contempt, or disgrace.  *See Rubin* [*v. U.S. News & World Rep., Inc.,* 271 F.3d 1305, 1306 (11th Cir. 2001)]; *Adams v. News-Journal Corp.,* 84 So.2d 549, 551 (Fla. 1955).  Additionally, language that interferes with one's profession can be *per se* defamatory."

Under either prong, CNN's statements in this case are *per se* defamatory.  The statements accused Dershowitz of making the "absurd and un-American" argument that a president had a "license to commit crimes;" that he espoused the "mind-blowing" position that a president could do "anything, anything;" that "the Dershowitz Doctrine would make presidents immune from every criminal act;" and that "there's no limit to basically how badly behaved people could be and they can actually commit crimes."  Def. Exs. 36 at 6, 53 at 3, 67 at 5, and 144.  Dershowitz is a legal scholar and an emeritus law professor: the readers and viewers of these comments do not have to resort to any "innuendo" or "outside context" to understand that these inflammatory words will damage his legal reputation and subject him to ridicule, disgrace, and contempt—particularly given the vast reach of the CNN network.

The other case cited by CNN, *Aflalo v. Weiner*, 2018 WL 3235529, at *2 (S.D. Fla. July 2, 2018), makes this precise point.  There, the defamatory allegation was that "Yurim and Isaac took advantage of an old 94 plus sick man elder abuse [sic]."  This Court held that this statement did not "engender the type of hatred, distrust, ridicule, contempt or disgrace that is required to succeed" because it was "a grammatically flawed and incoherent post on his Facebook wall about Plaintiff, a distant relative."  In so doing, this Court distinguished these facts from the type of situation that would engender ridicule, contempt, and disgrace: where "a widely-circulated newspaper published damaging statements about a sitting governor."[13]

---

[13] CNN's assertion, in footnote 35, that the allegations in this case are *per quod* because a viewer would have to have knowledge of the U.S. Constitution and the scholarly consensus in order to have an opinion on the "soundness" of Dershowitz's argument makes no sense.  The issue in a *per se/per quod* analysis is not whether the defamatory statement was true—but whether it interferes with the subject's profession or

In any event, even if these were *per quod* defamations, summary judgment still would be inappropriate because Dershowitz has, in fact, alleged and will prove that he suffered special damages.  Paragraph 19 of the Amended Complaint alleges: "as a direct and proximate result of CNN's defamatory actions, plaintiff has suffered and continues to suffer damage, including, but not limited to, damage to his reputation and legacy as a legal scholar, embarrassment, pain, humiliation, emotional distress, mental anguish *and bills for professional services*."  (ECF No. 66 at 7, ¶ 19); *see also* Facts ¶ 120. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

CNN's third argument is that even if these were *per se* defamations, Dershowitz cannot establish any actual damages.  CNN asserts that: (1) under Florida law, presumed damages cannot be sought against a media defendant; and (2) Dershowitz cannot establish reputational harm due to CNN's reporting. Both arguments fail.

In *Gertz v. Robert Welch*, 418 U.S. 323, 349 (1974), the Supreme Court held that presumed damages can be awarded in a case against a media defendant if the plaintiff can establish that the defendant acted with actual malice.  CNN's argument that presumed damages can never be awarded against a media defendant is based on some selective editing of this Court's opinion in *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021).  CNN quotes *Corsi* as follows: "Florida law ... eliminates presumed damages for defamation *per se* actions against media defendants."  However, the actual quotation is "Florida law applies the Supreme Court's ruling from the well-known First Amendment defamation case of *Gertz v. Robert Welch, Inc.,* 418

---

tends to engender ridicule, contempt, or disgrace.

U.S. 323, 94 S. Ct. 2997, 41 L. Ed.2d 784 (1974), which eliminates presumed damages for defamation *per se* actions against media defendants." This full quotation demonstrates this Court's understanding that Florida follows the *Gertz* presumed damages rule: in a case against a media defendant, presumed damages are appropriate if actual malice is established.[14]

Finally, and regardless of any entitlement to presumed damages, Dershowitz is also entitled to pursue an award of actual damages. As stated in *Gertz,* actual damages "include the more customary types of actual harm inflicted by the defamatory falsehood, includ[ing] impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." 418 U.S. at 350. As detailed in his accompanying declaration, Dershowitz has endured mental anguish and suffering because of CNN's defamations, which have affected his personal and professional life. Facts ¶ 121. He has received vile and condemnatory emails that specifically reference the CNN broadcasts. *Id.* ¶ 122. CNN's viewers and readers have posted offensive and damaging comments about him in response to its repetition of the defamations on social media sites, including Twitter and Facebook, which CNN "socialized far and wide." *Id.* ¶¶ 57, 123. According to one producer, Dershowitz also is ridiculed on the internet for his advocacy of the "Dershowitz Doctrine," Begala's alliterative and misguided descriptor. *Id.* ¶ 123. And the number of invitations he now receives to appear on mainstream media outlets have declined significantly. *Id.* ¶ 124. Prior to the defamations at issue in this case, he was asked to appear on many well-known media outlets, including MSNBC, PBS, ABC, NBC, BBC, Pro Publico, and CNN--even after he began to publicly advocate against the Trump impeachment. Pl. Ex. B at ¶ 18. But since the defamations, he only receives invitations to appear on conservative outlets--Fox and

---

[14] *Mid-Florida Television Corp. v. Boyles*, 467 So.2d 282 (Fla. 1985), cited in *Corsi,* was a private figure case in which the actual malice issue did not arise and dealt with pleading issues. It did not erode the *Gertz* decision.

NewsMax, empirical proof that the CNN defamatory statements have diminished his reputation in certain media circles.  *Id.*  Dershowitz is clearly entitled to pursue these types of actual damages.[15]

Respectfully submitted,

*/s/ Mark A. Schweikert*
Mark A. Schweikert (FBN 70555)
**SCHWEIKERT LAW PLLC**
1111 Brickell Avenue, Suite 1550
Miami, FL 33131
Tel. (305) 999-1906
mark@schweikertlaw.com

and

*/s/ John B. Williams*
John B. Williams (*pro hac vice*)
**WILLIAMS LOPATTO PLLC**
1629 K Street, N.W., Suite 300
Washington D.C. 20006
Tel: (202) 296-1665
jbwilliams@williamslopatto.com
fnkitton@williamslopatto.com

*Counsel for Plaintiff Alan Dershowitz*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 11, 2022, I electronically filed the foregoing document under seal with the Clerk of Court using the CM/ECF filing system, and that I served the foregoing document on defense counsel of record via email.

*/s/ Mark A. Schweikert*

---

[15] Dershowitz is also seeking an award of punitive damages, which CNN does not challenge in its motion.