## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:20-CV-61872-AHS

ALAN DERSHOWITZ,

      Plaintiff,

v.

CABLE NEWS NETWORK, INC.,

      Defendant.

_____ /

### PLAINTIFF'S RESPONSE AND COUNTER STATEMENT TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, Plaintiff submits the following response to Defendant's statement of undisputed material facts in support of its motion for summary judgment:

1.      Plaintiff Alan Dershowitz is an emeritus professor at Harvard Law School. Declaration of Katherine M. Bolger Ex. 68[1]; Ex. 17 at 333:14-17. *Undisputed.*

2.      Defendant CNN owns and operates numerous news platforms, including the television network CNN and the website CNN.com. *See* Bolger Decl. ¶ 1. *Undisputed.*

**Plaintiff Alan Dershowitz's Reputation**

3.      As a practicing criminal lawyer, Plaintiff's client roster included, among other controversial figures, O.J. Simpson, Mike Tyson, Jeffrey Epstein, and Neo-Nazis. Ex. 17 at 96:2197:8, 189:24-190:7; Ex. 69 at 4; Ex. 70. Plaintiff was criticized for, and received hate mail as a result of, these representations. Ex. 69 at 5; Ex. 71 at 3 ("Very few people were neutral about me: I had fans and detractors. People either loved or hated my proactive views and the ways in which I expressed them."); Ex. 19 at 34:12-18; Ex. 21 at 50:12-21. *Denied with explanation:*

1

*Dershowitz also defended Bill Clinton and Ted Kennedy, and often worked on a pro bono basis. Pl. Ex. B ¶ 20.*

4.    Plaintiff enjoys being a controversial figure.  *See* Ex. 72 at 4 ("Professionally, I was among the most controversial professors and lawyers in America. And I relished that status. I enjoyed being at the center of controversy for my ideas, principles and legal activities.") *Undisputed.*

5.    In 2008, Plaintiff helped negotiate a favorable plea deal for Jeffrey Epstein in connection with charges that he had sexually abused multiple minor girls. Ex. 73 at 29; Ex. 69. *Denied:  Epstein was charged with having had sex with two females, one underage.  Pl. Ex. B ¶ 21.*

6.    In 2014, one of Epstein's victims, Virginia Giuffre, publicly alleged that Plaintiff raped her. Ex. 17 at 47:5-48:8; Ex. 73 at 5.  *Denied: the allegation was that Dershowitz had sex with Guiffre.  Pl. Ex. B ¶ 22.*

7.    As a result of the Giuffre allegations, Plaintiff received hate mail and numerous invitations to speak were rescinded.  *See* Ex. 73 at 38-40; Exs. 71, 74-76.  *Denied: a few invitations were rescinded.  Pl. Ex. B ¶ 23.*

8.    Plaintiff responded to the allegations by writing a book titled *Guilt by Accusation*, in which he wrote that "[m]y reputation has been trashed, my family has suffered, my retirement has been ruined, my health has been affected" as a result of the allegations. Ex. 72 at 1-2. *Denied: out of context.  Dershowitz was referring to his personal reputation as it related to sexual morality.  The allegations have since been recanted by Guiffre.  Pl. Ex. B ¶ 24.*

9.    Plaintiff has brought libel claims or counterclaims concerning Ms. Giuffre's allegations in at least five separate lawsuits, including: *Edwards & Cassell v. Dershowitz*, No. CACE 15-00072 (Fla. Cir. Ct. Broward Cty.) (against two of Ms. Giuffre's prior lawyers); *Boies v.*

*Dershowitz*, No. 160874/2019 (N.Y. Sup. Ct. N.Y. Cty.) (against one of Ms. Giuffre's lawyers); *Giuffre v. Dershowitz*, No. 1:19-cv-3377 (LAP) (S.D.N.Y.); *Dershowitz v. Netflix, Inc., et al.*, No. 1:21-cv-21961 (S.D. Fla.) (involving a documentary about Epstein); and *Dershowitz v. Non Stop Radio LTD, et al.*, No. 42329-09-20 (Isr. Civ. Ct. Bat Yam) (against a radio news broadcaster). *Undisputed but now all resolved except the Israeli case.*

10.     On October 15, 2015, Plaintiff was deposed in the *Edwards* case, where he testified that the Giuffre allegations were "career-destroying." Ex. 77 at 116:24, 117:6. *Denied: out of context. Dershowitz was referring to his personal reputation as it related to sexual morality. The allegations have since been recanted. Pl. Ex. B ¶ 24.*

11.     Over the course of more than nine days during 2022, Plaintiff was deposed in the Boies case, where he testified, among other things, that: "as a result of the false accusation," his "entire legacy" and "entire reputation" was destroyed. Ex. 78 at 349:11-15; *see also* Exs. 79-80. *Denied: out of context. Dershowitz was referring to his personal reputation as it related to sexual morality and the allegations have been recanted. Pl. Ex. B ¶ 24.*

12.     Plaintiff has claimed his reputation was damaged because he had become a vocal advocate for Trump's "civil-liberties," and has declared himself a victim of "McCarthyism." Ex. 82; Ex. 73 at 47-48; *see* Exs. 81-94, 105, 115, 116. *Denied with explanation: Dershowitz was referring to his reputation among those opposed to Donald Trump. Pl. Ex. B ¶ 25.*

13.     Plaintiff was also publicly criticized for his shifting legal opinion on impeachment. *See* Ex. 104; Ex. 107 at 3-6; Exs. 107-108. *Denied. Dershowitz's position did not "shift," he performed more research. Pl. Ex. B ¶ 26.*

14.    In 1998, Plaintiff had publicly argued that a president could be impeached even if no crime had been committed. Ex. 110 at 10.  *Denied as to paraphrase; accurate quotation should be used.*

15.    In 2018, Plaintiff published *The Case Against Impeaching Trump* in which he argued that a crime was required for impeachment. Ex. 17 at 136:24-137:11; Ex. 107 at 4; Ex. 95 at 7.  *Denied:  Dershowitz identified crimes and criminal type behavior akin to treason and bribery.  Pl. Ex. B ¶ 27.*

16.    Then, in 2020, Plaintiff argued that a crime or what he termed "criminal-like" behavior" was required for an act to be impeachable. *See* Ex. 104; Ex. 107 at 5-6.  *Undisputed.*

17.    Plaintiff concedes that his view is outside the mainstream of constitutional scholars of impeachment. Ex. 111 at 29 ("So I ask, Are you all alone on this? Is there some group of academics, or lawyers, who are behind you on your interpretation of the Constitution? Is there a body of thinkers behind you? Are you reinventing the interpretation of the Constitution? Dershowitz shakes his head. 'I have nobody. No,' he says."); Ex. 112 at S616.  *Denied with explanation:  The argument itself is not outside the mainstream.  The fact that the argument was made on behalf of Donald Trump is outside the mainstream.   Pl. Ex. B ¶ 28.*

18.    Plaintiff's position was broadly criticized by scholars prior to his appearance in the Trump impeachment trial proceedings, including among individuals who were otherwise opposed to the impeachment, such as Professor Jonathan Turley, who later wrote that Plaintiff "is fundamentally wrong in maintaining that impeachable offenses must be based on actual crimes or "crime-like" conduct." Ex. 113; *see* Exs. 114, 127, 159.   *Denied:  to Dershowitz's knowledge, Turley was the only one.  Pl. Ex. B ¶ 29.*

**The First Impeachment Trial of President Trump & The Response**

19.     In December 2019, the U.S. House of Representatives impeached President Trump based on findings that he withheld military funds from Ukraine in order to coerce President Zelensky to investigate Joe Biden, President Trump's political rival. *See* Ex. 117. *Denied: the impeachment charged abuse of power and obstruction of Congress.  Pl. Ex. B ¶ 30.*

20.     Trump asked Plaintiff to represent him on Christmas Eve 2019. Ex. 17 at 308:19-311:19. *Undisputed.*

21.     The members of Plaintiff's family, especially his wife, Carolyn Cohen, were opposed to Plaintiff's representation of President Trump in the impeachment.  Ex. 17 at 312:12-24; Ex. 18 at 91:1-2; Ex 19 at 28:6-7; Exs. 118-121.  *Objection.  Irrelevant and inadmissible.*

22.     The impeachment trial in the Senate began on January 22, 2020.  *See* Ex. 122. *Undisputed.*

23.     CNN aired and live-streamed the trial in its entirety.  *See* Ex. 123; Ex. 15 at 43:2-6. *Undisputed.*

24.     The presidential impeachment was the top news story during late 2019 and through the trial in January 2020.  The proceedings were front-page news in national and local newspapers around the country, and were covered extensively – and live-streamed – not only by CNN but numerous network and cable news outlets. *See* Exs. 124-126.  *Undisputed.*

25.     The impeachment proceedings remain available to be streamed from the YouTube channel of the Washington Post and from C-SPAN's website. *Undisputed.*

26.     On January 27, 2020, Plaintiff presented his opening statement. *See* Ex. 112; Ex. 17 at 345:17-25.  *Undisputed.*

27.     Plaintiff's position was criticized in prominent outlets after his opening statement; he received many critical emails from strangers. Exs. 128-129, 156; Ex. 17 at 324:5-331:5. *Disputed and out of context:  Dershowitz's statement was also praised.  Pl. Ex. B ¶ 31.*

28.     Although he had not intended to appear again before the Senate, he returned on January 29, 2020 to answer questions from senators ("The Q&A").  *See* Ex. 17 at 374:8-375:4. *Disputed with explanation:  Dershowitz was told that he must return.  Pl. Ex. B ¶ 32.*

29.     Cohen did not want him to stay for any further proceedings beyond those on January 27 and was angry when he did so.  Ex. 18 at 139: 24-140:19; Ex. 17 at 375:5-7; Ex. 154.  *Objection. Irrelevant and inadmissible.*

30.     On January 29, 2020, at approximately 2:10 p.m. EST, Plaintiff responded to Senator Ted Cruz's question: "[a]s a matter of law, does it matter if there was a quid pro quo? Is it true that quid pro quos are often used in foreign policy?" Ex. 29 at S650-651 (the "Response"); Bolger Decl. ¶ 33. *Undisputed.*

31.     Plaintiff concluded his Response by saying: "But a complex middle case is: I want to be elected. I think I am a great President.  I think I am the greatest President there ever was, and if I am not elected, the national interest will suffer greatly.  That cannot be an impeachable offense."  Ex. 29 at S651; Ex. 30 at 16:26. The Congressional Record omitted the words "an impeachable offense" from the transcript of the end of Plaintiff's Response, but the video recording of the Response makes clear that Plaintiff did in fact say those words. *Id.*; Bolger Decl. ¶ 34.  *Disputed: the video recording does not make that clear. Pl. Ex. B ¶ 33.*

32.     Plaintiff did not have prepared remarks for the Q&A and the Response was a spontaneous answer.  Ex. 17 at 402:6-11. He also testified that he misspoke at points during his Response and acknowledged that people "made mistakes" about his argument. *Id*. at 397:3-10,

392:2-393:23, 404:15-407:23, 415:9-23, 432:20-21. *Denied with explanation: any error was inconsequential: the only error was that Dershowitz meant to say that the quid pro quo would be unlawful if the quid or the quo was unlawful. Pl. Ex. B ¶ 34.*

33.     Congressman Adam Schiff, who was serving as a House manager, expressed outrage at Plaintiff's Response from the Senate floor. Ex. 29 at S651. *Denied as out of context: Schiff did not say that Dershowitz said that a president could commit crimes and avoid impeachment. Pl. Ex. B ¶ 35.*

34.     Dershowitz's Response alarmed a number of Republican senators, including Sen. Roy Blunt, who told Trump's team afterward to fire Dershowitz on the spot. Ex. 155. *Disputed and inadmissible. Pl. Ex. B ¶ 36.*

35.     The Response received widespread coverage. *See* Ex. 2 at ¶ 25; Ex. 4 at ¶ 26. *Undisputed.*

36.     Media outlets reporting on the Response focused on the portion of the Response defined in the Bolger Declaration as the "Public Interest Argument." Exs. 130 at 15; 131 at 2, 10, 12; 132-136; 157-158; 160. *Denied:  some outlets did, but others did not.  Pl. Ex. B ¶ 37.*

37.     Verified Twitter users also condemned Plaintiff's argument and his expansive view of presidential power. Ex. 137. *Denied: some users did, but others did not. Pl. Ex. B ¶ 38.*

38.     A survey of all verified Twitter users that mentioned Plaintiff's name or Twitter handle in the hours after he gave his Response showed overwhelmingly negative sentiment about the Response before the publication of the first allegedly defamatory statement at 6:33 p.m. *See* Ex. 103 at 11-13; Ex. 102 (Spreadsheet of Extracted Tweets). *Disputed and denied as a matter of proof at trial.  Pl. Ex. B ¶ 39.*

39.     Plaintiff received emails criticizing his argument prior to any of the CNN statements at issue. Ex. 138.  *Denied with explanation:  some individuals criticized the argument; others supported it, and the emails cited by CNN occurred after CNN's initial reporting.  Pl. Ex. B ¶ 40.*

40.     At 4:23 p.m., Plaintiff's daughter Ella Dershowitz sent text messages to her mother that said: "Did dad actually say" that "if you believe it's in the country's best interest for you to be president you can do whatever to make that happen." Ex. 139.  *Denied: out of context.  The messages show Cohen responded that Dershowitz did not make that statement.  See id.*

**Defendant CNN and Its Reporting on the Response**

41.     On January 29, 2020, CNN contributor Anne Milgram (former Attorney General for the State of New Jersey and now head of the Drug Enforcement Administration), appeared on Anderson Cooper's online program, Anderson Cooper Full Circle ("ACFC") to discuss the impeachment trial.  Ex. 52; Ex. 48. *Undisputed.*

42.     Chuck Hadad, a supervising producer for ACFC, was responsible for putting together the Full Circle clip.  Ex. 2 ¶¶ 2-3.  He had watched the impeachment trial live and thought that the Response was newsworthy. *Id.* ¶ 12; Ex. 9 at 27:24-28:19. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

43.     The Response was too long for a single sound bite, so Hadad worked with a production assistant to cut down the clip. Ex. 9 at 50:15-22; Ex. 2 ¶¶ 14-17; Ex. 41.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.*

*Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

44.     Based on his years of experience and editorial judgment, Hadad felt that the Response was newsworthy and, accordingly, focused the Full Circle clip around the Public Interest Argument with additional statements from the Response that followed. Ex. 2 ¶¶ 18-19. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration. Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

45.     No one instructed Hadad to exclude the Illegal Quo Line from the Full Circle clip; he did so because he did not understand the sentence to qualify the Public Interest Argument.  Ex. 2 ¶¶ 23-24. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

46.     Hadad and Cooper each believed that the Full Circle clip was fair and accurate. Ex. 9 at 52:9-23, 56:8-13; Ex. 2 ¶¶ 4, 18, 37. Ex. 8 at 48:3-8.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

47.     Hadad also supervised the drafting of the questions that Cooper ultimately posed to Milgram. Ex. 47; Ex. 2 ¶¶ 25, 28-32.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

48.     Cooper and Milgram actively followed the impeachment proceedings as they unfolded, and watched the Response in full, and each believed the Response (and the portion included in the Full Circle clip in particular) was newsworthy.  Ex. 8 at 44:4-9, 86:15-87:3; Ex. 16 at 48:18-20, 65:19-66:7.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

49.     Cooper thought that Plaintiff's argument was different than any of the theories on impeachment that Plaintiff had advanced previously. Ex. 8 at 58:19-59:25, 82:22-83:15. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

50.     Cooper found Plaintiff's argument ambiguous at points. Ex. 8 at 59:5-22; 84:2-10; 90:17-92:10.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

51.     Milgram understood the Response to advocate for expansive presidential power. Ex. 16 at 33:5-14.  Milgram's opinion was formed by watching the impeachment proceedings and the "totality of" Plaintiff's statements, and not by the clip that ran during the ACFC episode. *Id.* at 53:2-15.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

52.     At approximately 6:33 p.m. the ACFC clip was shown and Cooper and Milgram discussed the Response.  Bolger Decl. ¶ 56; Ex. 52 at 3:07; Ex. 53; Ex. 48.  *Undisputed.*

53.     At the time she made the statements, Milgram believed her statements were fair and accurate, and still believes that to be the case. Ex. 16 at 58:2-5. *Disputed and incomplete. This testimony and Milgram's refusal to answer or give responsive answers to certain questions is the subject of Plaintiff's pending motion to compel against Milgram.* (*See* ECF No. 196).

54.     Cooper and Hadad each believed Milgram's statements were fair and accurate. Ex. 8 at 82:14-19; Ex. 9 at 117:18-22. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration. Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

55.     On January 29, 2020, Joe Lockhart, CNN contributor and former press secretary for President Bill Clinton, appeared on Erin Burnet OutFront ("EBOF") as a Political Commentator. Ex. 64 at 5; Ex. 11 at 24:15-22. *Undisputed.*

56.     Susie Xu was the Executive Producer of EBOF. Ex. 4 ¶ 3. *Undisputed.*

57.     Xu had watched the Response live and believed in her independent editorial judgment that it was newsworthy. Ex. 14 at 25:22-27:4; Ex. 4 ¶ 11. This belief was reinforced by watching Wolf Blitzer and Jake Tapper's coverage of the impeachment trial. *Id.* ¶ 15. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration. Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

58.     Specifically, at approximately 3:38 p.m. during the first recess in the proceedings that followed Plaintiff's delivery of the Response, Blitzer and Tapper discussed the Response and quoted a portion of the Public Interest Argument on air. Ex. 4 ¶ 15. There was no video clip of the Response shown in conjunction with this discussion. Ex. 3 ¶ 29; Ex. 56 at 38:21; Ex. 57 at 3-4. *Undisputed.*

59.     Xu directed a member of her staff to cut a clip of the Response to align with, but expand on, Blitzer and Tapper's coverage. Ex. 4 ¶ 17. This clip included the Public Interest Argument in full. *Id.*; Ex. 66. Xu did not believe that the Illegal Quo Line qualified or altered the meaning of the Public Interest Argument. Ex. 4 ¶¶ 24-25.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

60.     Xu believed that the EBOF clip was fair and accurate.  Ex. 14 at 113:10-23;131:24-132:5; Ex. 4 ¶¶ 4, 18, 28.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

61.     Burnett, who watched the impeachment proceedings live, also thought that the EBOF clip was fair and accurate.  Ex. 7 at 99:15-16; 100:10-18; 102:5-17.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

62.     Lockhart had watched the impeachment trial live and posted opinions about the Response on Twitter while he was watching in real time. Ex. 11 at 39:9-41:5; 44:6-9; Ex. 63.  He formed these opinions, and wrote his tweets, without any input from anyone at CNN. Ex. 11 at 41:6-12, 75:4-17; Ex. 7 at 119:3-8.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

63.     Lockhart testified that Plaintiff's argument set off "alarm bells." Ex. 11 at 103:12-19. He also testified that he thought the argument was, at times, confusing. *Id*. at 53:10-16. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

64.     At 7:09 p.m., Lockhart, Erin Burnett, Scott Jennings, and two legal analysts discussed the Response.  Ex. 67 at 4-6; Ex. 66 at 9:23. *Undisputed.*

65.     At 7:11 p.m., Lockhart commented on the Response on EBOF. The opinions he expressed were based on watching the impeachment trial, and hearing Plaintiff's full Response, and not by the clip of the Response shown on EBOF during his appearance. Ex. 11 at 52:24-53:4, 64:7-11, 82:21-83:24. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

66.     Lockhart believed then, and believes now, that his interpretation of Plaintiff's Response was accurate, and he conveyed an argument and opinion that he believed was (and is) appropriate in light of Plaintiff's Response.  Ex. 11 at 46:4-18, 64:7-9. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

67.     Neither Xu nor Burnett believed that Lockhart's interpretation was inaccurate or unreasonable. Ex. 14 at 84:19-85:3; Ex. 7 at 96:22-97:17, 102:10-17, 103:19-20. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.*

*Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

68.     At 4:41 p.m., CNN opinion editor Pat Wiedenkeller contacted CNN contributor Paul Begala by email to solicit an opinion piece for <u>CNN.com</u> about the Response. Ex. 140. Wiedenkeller had watched the impeachment trial and believed that the Response was newsworthy. Ex. 13 at 37:10-11; 62:20-63:20.   *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

69.     Begala had watched the impeachment trial – and Plaintiff's Response – live and also believed that the Response was newsworthy. Ex. 5 at 61:1-12, 82:6-19, 100:12-101:10. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

70.     Begala found Plaintiff's argument "dangerous." Ex. 5 at 159:18-21.  He found the Illegal Quo Line to be meaningless. *Id*. at 152:6-9.   *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

71.     At 4:01 p.m. he had tweeted his reactions to the Response, which he believed to be setting a dangerous precedent. Ex. 141; *see also* Ex. 5 at 157:16-18. His opinion on the Response was based on his interpretation of the statements made by Plaintiff in the Response, and was not influenced by anyone at CNN. *Id*. at 117:16-118:25. *Disputed with explanation: this assertion*

14

*appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

72.     Begala responded to Wiedenkeller's email and proceeded to draft his article. Ex. 142. He was not told by anyone at CNN what to say in his column. Ex.5 at 90:10-23. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration. Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

73.     After he submitted a draft to Wiedenkeller, the final, edited Begala column was published on CNN.com at 8:56 p.m. Ex. 143; Ex. 144.  *Disputed:  The Begala article was reviewed and edited by many CNN employees.  Pl.'s Counter Stmt. of Facts ¶¶49-55.*

74.     The Begala column appeared in a section of the CNN website called "Political Op-Eds Social Commentary," and includes an Editor's Note stating that Begala is a "Democratic strategist and CNN political commentator," and "[t]he opinions expressed in this commentary are his." Ex. 144. *Undisputed.*

75.     Begala believed that statements made in his column were fair and accurate, and stands by his interpretation of the Response and his opinions. Ex. 5 at 61:17-20; 124:11-14. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

76.     Wiedenkeller believed that the Begala column reflected a reasonable opinion about the Response. Ex. 13 at 97:6-13.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent*

*testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

77.     After the Begala column was published online, a video clip containing the Public Interest Argument was added to the top of the page containing the column. Ex. 59; Ex. 3 ¶ 3. This clip was created by Brett Harman, a video programming producer at CNN. *Id. Undisputed*

78.     Harman was not involved in placing the clip on the webpage with the Begala Column. Ex. 3 ¶ 5. *Disputed as vague:  Harman created the clip so by definition was involved.  He used the CMS[1] video system to place the clip on the webpage.  Pl. Ex. I at 1.*

79.     Harman selected the clip based on his independent editorial judgment and believed that it was fair and accurate. Ex. 10 at 149:25-150:18; Ex. 3 ¶¶ 4, 28.  *Disputed with explanation:  this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

80.     Harman believed that the Public Interest Argument was newsworthy and wanted to use the same portion of the Response discussed by Jake Tapper, but wanted to include more of the language than the precise portion that Tapper had quoted on air in order to give the viewer more context. Ex. 3 ¶¶ 14-21; Ex.10 at 149:25-150:18. No one told him which portions of the Response to use (or not to use). Ex. 3 ¶ 27. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

---

[1] The "CMS video system" refers to CNN's software program that publishes content online.  Def. Ex. 10 at 82:7-9.

81.      Harman did not understand the Illegal Quo Line to change the meaning of the Public Interest Argument. Ex. 3 ¶ 26.  See response to 42.  John Berman, a co-anchor on CNN's morning show, New Day, had watched the Response live and believed it to be newsworthy. Ex. 6 at 100:2–13; 125:23-126:11; Ex. 3 ¶11.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

82.      John Berman, a co-anchor on CNN's morning show, New Day, had watched the Response live and believed it to be newsworthy.  Ex. 6 at 100:2-13; 125:23-126:11; Ex. 3 ¶ 11. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

83.      Berman was surprised by Plaintiff's statement and believed that Plaintiff was expressing a new argument on impeachment that he had not previously put forth. Ex. 6 at 82:11-84:10; 106:9-13; Ex. 1 ¶ 29. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

84.      Berman did not understand the Illegal Quo Line to qualify the Public Interest Argument. Ex. 6 at 105:5-22; 107:11-24; Ex. 1 ¶¶ 30-31. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

85.     A clip containing the Public Interest Argument was prepared by New Day producers and Berman instructed his team by email to cut a clip of the portion of the Response defined in the Bolger Declaration as the Greatest President Argument. Ex. 1 ¶¶ 3, 20-21. No one told Berman what portions of the Response should be included in the clips for New Day. *Id*. ¶ 34. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration. Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

86.     Berman's email to his staff began "Dersh-o-nuts...need this for all panels." Ex. 145. Berman used the phrase "Dersh-o-nuts" because, while he respected Plaintiff as a lawyer in other contexts, he thought the argument in the Response was "alarming" and a "stunning expansion" of the bounds of presidential power. Ex. 6 at 154:23-155:8, 157:3-8.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

87.     At approximately 6:17 a.m. on January 30, 2020, a clip showing Plaintiff making the Public Interest Argument was aired on CNN during New Day, and Berman commented on the Response on air. Ex. 1 ¶ 37; Ex. 35-36. *Undisputed.*

88.     Berman and CNN head of morning programming Izabella Povich both believed that the clip of the Response used during the New Day episode was fair and accurate.  Ex.1 ¶¶ 4, 23, 24, 40; Ex. 6 at 146:25-147:16; Ex.12 at 167:23-168:2.  *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

89.     Berman was not told by anyone what to say or what narrative to advance when he commented on the Response. Ex. 1 ¶¶ 14, 26, 36-37, 40. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration. Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

90.     Berman's opinion on the Response was informed by viewing the Response in its entirety, not portion that was shown in the New Day clip. Ex. 6 at 100:2–13; 132:13-21. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration. Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

91.     Berman believed (then and now) that his interpretation of the Response and his statements about the Response were fair and accurate. Ex. 6 at 98:18-22, 106:7-17; Ex. 1 ¶¶ 5, 40. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration. Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

92.     While Berman was on the air, Povich forwarded Berman an email she had received from then-CNN president Jeff Zucker in which Zucker wrote that the "real[] story" was that the Trump defense team's theory could expand presidential power. Ex. 37. By the time Berman received this email, the segment with his statement already had been prepared, and he made his editorial decisions independently before he received the email. Ex. 1 ¶¶ 36, 37. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration. Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving. Pl. Ex. B ¶ 41.*

93.    Zucker had watched the Response in full. Ex. 15 at 22:4-11. *Undisputed.*

94.    Zucker believed that CNN's coverage of the Response was fair and accurate. Ex. 15 at 42:18-20; 59:11-20. *Disputed with explanation: this assertion appears to be a paraphrase from a deposition or a declaration.  Dershowitz does not dispute that the deponent testified in this manner but disputes the credibility of the testimony as scripted and self-serving.  Pl. Ex. B ¶ 41.*

**The Criticism Continues & Aftermath of the Response**

95.    The Response was the subject of fierce criticism by scholars and commentators. Among others, constitutional law professor Erwin Chemerinsky was quoted calling Plaintiff's Response "absurd and outrageous," and that Plaintiff's argument meant that "a president could break any law or abuse any power and say that it was for the public interest because the public interest would be served by his or her election." Ex. 146 at 5. *see also* Exs. 147-149. *Disputed with explanation:  these are quotations from a longer article and published after the CNN reporting.  Pl. Ex. B ¶ 42.*

96.    Professor Neal Katyal, the former Acting Solicitor General of the United States described Plaintiff's position as "inane," and said it "would allow a president to do literally anything and destroy re-elections as a check on presidential behavior." Ex. 146. *Disputed with explanation:  these are quotations from a longer article and published after the CNN reporting. Pl. Ex. B ¶ 42.*

97.    Professor Jonathan Turley wrote an article published on January 30, 2020, in which he referred to the Public Interest Argument as "surprising and baffling." Ex. 114.  See response to 94.  Nearly 200 "professors of law and scholars of the American constitution" sent a letter to the U.S. Senate to repudiate Plaintiff's position. Ex. 150.  *Disputed with explanation:  these are quotations from a longer article and published after the CNN reporting.  Pl. Ex. B ¶ 42.*

98.     Nearly 200 "professors of law and scholars of the American constitution" sent a letter to the U.S. Senate to repudiate Plaintiff's position.  Ex. 150.  *Undisputed about what the document purports to be but otherwise irrelevant and inadmissible.*

99.     Following the media coverage, Plaintiff claimed that the Response had been mischaracterized. On January 30 he tweeted that "CNN, MSNBC and some other media" "willfully distorted [his] answers." Ex. 151 at 14. On the same day, he published an opinion piece in *The Hill* entitled "I never said president could do anything to get reelected," in which he claimed "the media" was "deliberately distorting and mischaracterizing" his argument. "I never said president could do anything to get reelected," in which he claimed "the media" was "deliberately distorting and mischaracterizing" his argument. Ex. 110 at 157.  *Undisputed.*

100.    On January 30, Plaintiff asked CNN anchor Wolf Blitzer to appear on Blitzer's show. Ex. 152. Plaintiff was interviewed on the program later that evening. Exs. 96-97. *Undisputed.*

101.    On January 31, Plaintiff was interviewed about the Response by CNN anchor Chris Cuomo. Exs. 98-101.  *Undisputed.*

102.    Plaintiff was also invited by email to appear on Cooper's show, but Plaintiff did not reply to the invitation. Ex. 54; Ex. 2 ¶ 38.  *Undisputed.*

103.    Plaintiff also later published a book entitled *Defending the Constitution*. Ex. 110. The book includes, among other items, the transcript of his response to Senator Cruz's question, his article for the *Hill*, and a final epilogue entitled, "The Dershowitz Doctrine: The Danger of Demonization by Distortion." *Id*. at 157.  *Undisputed.*

104.    Plaintiff purported to summarize his Response during his deposition. Ex. 17 at 388:23-389:16, 390:12-17; 392:12-23.  *Undisputed.*

**Plaintiff's Alleged Damages**

105.    Plaintiff is not seeking – and has withdrawn any claim for – damages based on lost income or work opportunities. *See* Ex. 153 at 6-7; *compare* ECF 1 ¶ 19, *with* ECF 66 ¶ 19. *Undisputed.*

106.    Plaintiff is not seeking to recover damages for loss of friendships. ECF 105 at 145:6-13. *Disputed: out of context. Dershowitz is seeking damages for injuries such as emotional distress, humiliation, and reputational injury. Pl. Ex. ¶ 43.*



## PLAINTIFF'S COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff Alan Dershowitz alleges in this case that he was defamed by the commentary and video editing that was publicly aired on the Erin Burnett Out Front broadcast on January 29, 2020, the Anderson Cooper Full Circle online program on January 29, 2020, the John Berman New Day broadcast on January 30, 2020, and the article authored by Paul Begala, which was edited by CNN and posted on CNN.com on January 29, 2020. (ECF No. 66 at 2-7).

2. Dershowitz alleges that defamatory statements were made by John Berman, Anderson Cooper, Paul Begala, Anne Milgram, and Joe Lockhart. (ECF No. 66 at 5-6).

3. The videotapes of the Dershowitz statement were excerpted (or directed to be excerpted) by John Berman, Chuck Hadad, Brett Harman, and Susie Xu. Def. Ex. 1 ¶¶ 3, 20-21; Def. Ex. 2 ¶ 3; Def. Ex. 3 ¶ 22; Def. Ex. 4 ¶ 17.

4. All CNN witnesses, including Berman, Cooper, Lockhart, Milgram, Begala, Wiedenkeller, Xu, Hadad, and Harman testified that they had seen or heard the entirety of the Dershowitz statement prior to their commentary or their editing of the tapes at issue in this case. Def. 56.1 ¶ 48; Def. Ex. 1 ¶ 11; Def. Ex. 2 ¶ 12; Def. Ex. 3 ¶ 11; Def. Ex. 4 ¶ 11; Def. Ex. 5 at 61:1-3; Def. Ex. 7 at 99:15-16; Def. Ex. 8 at 44:4-9; Def. Ex. 11 at 39:15-17; Def. Ex. 13 at 37:10-12; Def. Ex. 15 at 22:4-11; Def. Ex. 16 at 48:18-20.

5. During their commentaries, on January 29 and 30, 2020, Berman and Lockhart did not indicate any confusion about the Dershowitz statement and did not state or suggest that the Dershowitz statement was ambiguous. Def. Ex. 36 at 7; Def. Ex. 53 at 3-4; Def. Ex. 67 at 5. In fact, Berman stated: "Dershowitz wasn't ambiguous here," Def. Ex. 36 at 7, and Milgram stated: "I read and understood his entire argument." Def. Ex. 16 at 67:24-25.

24

6.      In his article posted on CNN.com, Paul Begala did not indicate any confusion about the Dershowitz statement and did not state or suggest that the Dershowitz statement was ambiguous. Def. Ex. 144.

7.      Prior to its posting on CNN.com, the article by Paul Begala was edited and approved for publication by CNN employees, including Pat Wiedenkeller.  *See infra* ¶¶ 49-56.

8.      In January 2020, Nikki Carvajal was a reporter in CNN's Washington, D.C. Bureau. She was the first CNN staffer to report on the Dershowitz impeachment statement made on January 29, 2020.  Def. Ex. 14 at 35:7-18.  At 2:36 p.m. on January 29, 2020, shortly after the Dershowitz statement was completed, Carvajal's initial report on the Dershowitz impeachment statement was sent to a list serve for all political reporters, entitled "CNN Political Plus."  Pl. Ex. A at CNN392-94.  The headline was "Dershowitz argues that reelection of any politician is in the public interest, therefore as a motivation can't be impeachable[.]"  *Id.* at CNN392.  This article did not disclose Dershowitz's statement that a quid pro quo could be illegal and as such an impeachable offense. *See id.*

9.      By 3:00 p.m., a revised Carvajal report was published on CNN.com, entitled "Alan Dershowitz argues presidential quid pro quos aimed at reelection are not impeachable."  Pl. Ex. DD at CNN665.  This revised report did not disclose Dershowitz's statement that a quid pro quo could be illegal and as such an impeachable offense.  *See id.*  CNN witnesses have described this report as the "*CNN News Account*."  Def. Ex. 5 at 64:11-13.

10.     The *CNN News Account* was widely disseminated.  Pl. Ex. CNN665.  It was posted on CNN.com and received by all CNN staff.  Emails with a link to the *CNN News Account* were sent to Zucker, Harman, Hadad, Cooper, Begala, Povich, Xu, Wiedenkeller, and Berman.  *See infra* ¶¶ 12-13, 15-24; Def. Ex. 14 at 35:14-18.

25

11.     The *CNN News Account* was the only news article of the Dershowitz statement published online on CNN.com by CNN on January 29, 2020.

12.     At 3:27 p.m., Meredith Richards, producer for the New Day Show, included the *CNN News Account* in her "Prelim Thursday Rundown."  Def. Ex. 23 at CNN1.

13.     The "rundown" was discussed at the 4:30 p.m. conference call held by Jeff Zucker, President of CNN, with CNN producers, executives, and news gatherers.  Def. Ex. 14 at 71:13-72:15.

14.     Meredith Richards recapped the Zucker conference call: "It was a very brief meeting with JZ, good with rundown: . . . [redacted] . . . Takeaway so far from Senate questions: 1. Trump legal team making argument that a President is King & can do whatever he wants, [hyperlinking to *CNN News Account*] . . . ."  Pl. Ex. C at CNN10.

15.     Prior to the 4:30 p.m. conference call, Jeff Zucker had responded to an email sent to him at 2:35 p.m. by Gloria Borger, a CNN political correspondent.  Pl. Ex. D at CNN222.  Borger had stated to Zucker that Dershowitz "has gone crazy."  *Id.*  Zucker's response: "Yup.  Him and Lindsay Graham."  *Id.*

16.     The 4:30 p.m. Zucker conference call was also summarized by another producer, Amanda Willis.  She wrote: "JZ today.  Short one because no primetime.  Highlighting themes and post-trial details. . .. [redacted] . . . Basic argument today: Trump is president and he can do what he wants.  Dershowitz making this argument here: [hyperlinking to *CNN News Account*]."  Pl. Ex. E at CNN73.

17.     At 4:41 p.m., Pat Wiedenkeller sent an email to Paul Begala, hyperlinking to *CNN News Account* and asking him to provide his viewpoint.  Pl. Ex. F at BEGALA1.

18. At 4:49 p.m., Jennifer Griffiths sent an email to Anderson Cooper, Chuck Hadad, and others entitled "Full Circle Research/Impeachment Trial Latest." This research consisted of only the *CNN News Account*, some logs of Dershowitz's comments, and brief comments from Senators Scott and Schumer. Pl. Ex. G at CNN583-86, 596.

19. The "Full Circle Research/Impeachment Trial Latest" document referenced above, *see* Pl. Ex. G at CNN 583-86, 596, is the only CNN research produced by CNN to the plaintiff in this action.

20. At 6:32 p.m., producer Paulina Gigante emailed "New Day Producers, with the subject line "Anchor Assignments and Latest Angles," and specifying the "angle": "Alan Dershowitz argues presidential quid pro quos aimed at reelection are not impeachable [and hyperlinking to the *CNN News Account*.]" Pl. Ex. H at CNN4.

21. Prior to the video editing of the excerpt that appeared in connection with the Begala article, posted at 9:49 p.m., video editor Brett Harman received the hyperlink for the *CNN News Account* for placement into the CMS[2] video system. Pl. Ex. I at CNN260-67; Pl. Ex. J at CNN355; Def. Ex. 10 at 85:1-87:8.

22. At 12:38 a.m. producer Ross Finkelstein sent an email to John Berman and others, including "CNN New Day Tape" describing the "angle" for the New Day show: "Alan Dershowitz argues presidential quid pro quo aimed at reelection are not impeachable [and hyperlinking to the *CNN News Account*.]" Def. Ex. 26 at CNN20-22.

23. At 1:13 a.m., Gigante sent an email to Berman, Povich, and others entitled "Handover to the Handover," stating "We have this in our rundown—but this Dershowitz argument is just bonkers—so definitely worth a healthy panel discussion on this," and *linking to*

---

[2] The "CMS video system" refers to CNN's software program that publishes content online. Def. Ex. 10 at 82:7-9.

*the CNN News Account.* This handover further noted that the Wall Street Journal editorial board was "siding with Dersh The 'Corrupt Motives' Doctrine." Def. Ex. 27 at CNN37.

24.    At 5:14 a.m., Bruce Williams sent an email to the New Day Staff entitled "New Day 1/30 Rundown," hyperlinking to the *CNN News Account.* Def. Ex. 25 at CNN42.

## BEGALA ARTICLE

25.    Paul Begala is a "political contributor" to CNN (Dep 6) and has a standard CNN "Contributor's Agreement" with CNN.  Pl. Ex. K at CNN1734-43.

26.

████████████████████████████████████

██████████████████████████

27.     Paul Begala worked for President Bill Clinton, as a counselor and close advisor to the president on policy, politics, and communications.  Def. Ex. 5 at 8:5-7, 12:4-16.  He was also a political consultant to the Democratic party.  *Id.* at 14:1-2.

28.     At 4:01 p.m., Paul Begala sent out a tweet: "Akin to Nixon telling David Frost 'If the President does it it isn't illegal.'  Only this time its 'if the President thinks it will help his re-election and he thinks his re-election will helps the country, it isn't illegal.'"  Def. Ex. 141.

29.     At 4:41 p.m. CNN editor Pat Wiedenkeller contacted Begala.  She sent him the *CNN News Account* of the Dershowitz statement written by Nikki Carvajal and others at the CNN Washington Bureau and asked him to write "500 quick words."  Pl. Ex. F at BEGALA1.

30.     Begala reviewed the *CNN News Account* of the Dershowitz statement that was sent to him by Wiedenkeller and relied on that article in considering whether his article was accurate.  Def. Ex. 5 at 64:7-66:4.

31.     Begala then drafted an article to be published by CNN.  After editing by CNN editors, the article was posted on CNN.com.  Def. Ex. 144.

32.     Prior to writing his draft, Begala had watched the entirety of the impeachment trial.  Def. Ex. 5 at 60:12-15.

33.     Begala was "sounding an alarm bell" because he thought Dershowitz had introduced a dangerous doctrine.  Def. Ex. 5 at 82:20-21.

34.     According to Begala, "most of my columns have arguably inflammatory rhetoric."  Def. Ex. 5 at 96:5-6.

35.     According to Begala, the Dershowitz Doctrine is "the argument that if you're seeking your reelection, then the things you do can't be a crime if the election is in the public interest." Def. Ex. 5 at 99:20-23.

36.     Begala was trying to "raise red flags" and "used such inflammatory language because I wanted to sound an alarm." Def. Ex. 5 at 101:25-102:25.

37.     Begala's article stated that "the Dershowitz Doctrine would make Presidents immune from every criminal act, so long as they could plausibly claim they did it to boost their reelection effort. Campaign finance laws: Out the window. Bribery statutes: Gone. Extortion: No more. This is Donald Trump's fondest dream, to literally be able to shoot someone on Fifth Avenue and get away with it." Def. Ex. 5 at 105:16-106:3.

38.     Begala has acknowledged that Dershowitz "didn't say anything like that," *id.* at 106:15-16 and did not "think that's what Professor Dershowitz was trying to say in the moment." Def. Ex. 5 at 120:6-9.

39.     Begala has acknowledged that Dershowitz said that a president receiving a bribe advancing his pecuniary interest was impeachable. Def. Ex. 5 at 119:14-16.

40.     Begala says that he "was doing reductio ad absurdum" and that the Dershowitz Doctrine can lead to harmful and "ludicrous" conclusions. Def. Ex. 5 at 128:11-20.

41.     Begala says that his statement about President Trump being able to shoot someone on fifth Avenue and get away with it was an "extreme and absurd example . . . if you stretch it as far as you can . . . ." Def. Ex. 5 at 132:10-13.

42.     According to Begala, his article did not say that a President could commit treason, and he was "not saying that Professor Dershowitz said that. I'm saying that the rule articulated by Professor Dershowitz can lead to that." Def. Ex. 5 at 172:1-3.

43.     Begala believes that the comparison of Dershowitz to Hitler exceeded the boundaries that he sets for himself.  Def. Ex. 5 at 185:8-21.

44.     The Begala article does not state or suggest that the Dershowitz statement was ambiguous or confusing.  *See* Def. Ex. 144.

45.     At no point in his deposition did Begala state that the Dershowitz statement was ambiguous or confusing.  *See* Def. Ex. 5.

46.     As of January 2020, Pat Wiedenkeller was an employee of CNN.  Def. Ex. 13 at 32:3-11. Her position was as an assistant to the "managing editor of opinion."  *Id.* at 41:23-42:5.

47.     She watched the 2020 impeachment proceedings.  Def. Ex. 13 at 37:10-12.

48.     At 4:41 p.m. on January 29, she asked Paul Begala to write "500 quick words" on the Dershowitz statement and sent him the CNN News Account of the Dershowitz statement.  Pl. Ex. F at BEGALA1.

49.     Begala provided a draft of his article to Wiedenkeller at 5:20 p.m., and asked "How's this?"  Pl. Ex. L at CNN75.

50.     At 6:37 p.m., Wiedenkeller responded to Begala, saying "thanks."  Pl. Ex. M at CNN105.

51.     The draft was reviewed by Wiedenkeller, as well as by her boss, Richard Gallant, and by two other editors, Jane Carr and Yaffa Fredrick.  Def. Ex. 13 at 67:23-68:9.

52.     At 6:42 p.m., Richard Gallant wrote an email to Wiedenkeller stating "great piece" and asking for "review, pls."  Pl. Ex. M at CNN106.

53.     Wiedenkeller immediately responded to Gallant, saying "If only I had a headline." Pl. Ex. M at CNN106.   She ultimately selected the headline: "Presenting the Ludicrous 'Dershowitz Doctrine'[.]"  Def. Ex. 144 at 1.

54.     At 6:43 p.m., Wiedenkeller sent the article back to Begala, entitling the email "CNN-edit" and provided hyperlinks, including one to the *CNN News Account*.  Pl. Ex. N at BEGALA4.

55.     Between 6:55 and 7:08 p.m., Wiedenkeller, Gallant, and Carr exchanged emails. The first headline suggested was "Even Nixon thinks Dershowitz is bonkers," ultimately landing on "ludicrous."  The "looney tunes" line was rejected as "gilding the lily."  Pl. Ex. M at CNN105; Pl. Ex. O at CNN94.

56.     The Begala draft was also sent to a CNN Opinion Review list serve.  Pl. Ex. O at CNN94.  This list serve includes "maybe half a dozen people."  Def. Ex. 13 at 112:7-12.

57.     The Begala article was published 8:56 p.m.  Wiedenkeller wrote an email to Begala at 9:09 telling him that "we're socializing it far and wide."  Pl. Ex. P at BEGALA6.  It was "socialized" on Twitter and Facebook.  Def. Ex. 13 at 118:15-23.

58.     Brett Harman was responsible for the video editing of the Dershowitz statement that accompanied the article by Paul Begala posted on CNN.com and was an employee of CNN. Def. Ex. 10 at 7:23-8:19.

59.     Harman watched the Dershowitz statement from which the excerpt posted on CNN.com was edited.  Def. Ex. 10 at 144:14-19.

60.     Harman instructed the video editors to "tweak the clips" and that "it would be better to have him actually say the part about quid pro quos in the public interest."  Pl. Ex. Q at CNN391.

**OUT-FRONT PROGRAM**

61.     Erin Burnett is the anchor of the Out-Front broadcast on CNN.  On January 29, 2020, Joe Lockhart was a commentator on her show.  *See* Def. Ex. 67.

62.     Lockhart is a "communications consultant."  Def. Ex. 11 at 9:2-3.  In January 2020, he was a paid contributor at CNN and had a standard Contributor's Agreement with CNN.  Def. Ex. 11 at 9:7-10:14; *see* Pl. Ex. R at CNN1790-98.

63.     From December 1997 until October 2000, Lockhart worked in the White House and was the deputy press secretary and press secretary for President Bill Clinton.  Def. Ex. 11 at 15:16-20.

64.     On January 29, 2020, Lockhart was contacted by a CNN producer, Rachel Kutler, and told to "show up at 7:00 o'clock."  Def. Ex. 11 at 33:19-20.  He then appeared on the Erin Burnett show, *id.* at 29:22-24 and made statements that are the subject matter of this litigation.

65.     Prior to being contacted to appear on CNN, Joe Lockhart had posted at least four tweets regarding Dershowitz's statement.  Producer Katherine Carver sent an email to Erin Burnett and Susie Xu (a Burnett producer) stating that Lockhart was "tweeting up a storm," and noting that Lockhart was claiming that Dershowitz was making a "crazy" and "corrupt" argument, and that he was making these arguments "to get back on the dinner party circuit guests lists."  Lockhart also claimed that Dershowitz was saying that "cheating in an election is ok as long as the candidate thinks he's a better candidate."  None of Lockhart's tweets disclosed Dershowitz's statement that a quid pro quo could be illegal, and as such an impeachable offense. Pl. Ex. S at CNN65-66.

66.     Lockhart's statements on the Erin Burnett show are set forth in the transcript prepared by CNN.  Def. Ex. 67 at 5.

67.     Prior to his appearance on CNN on January 29, 2020, Lockhart watched the Senate impeachment trial "wall-to wall," including the entirety of the Dershowitz statement. Def. Ex. 11 at 38:5-9.

68.      Lockhart testified that the arguments Dershowitz made were "quite dangerous . . .

if applied in the extreme . . . ."  Def. Ex. 11 at 47:20-21.

69.     Lockhart interpreted Dershowitz to say that "if the president thought it was in his interest and that he was a good president he could do whatever he wants" and that this was a "very, very dangerous" argument.  Def. Ex. 11 at 47:22-48:5.

70.     Lockhart testified that he interpreted Dershowitz's statement as saying that "the president has no limits on his power." Def. Ex. 11 at 80:3-6.

71.     Lockhart testified that he "was making a broader point, a political point, I was ringing an alarm bell . . . ." Def. Ex. 11 at 81:17-18.

72.     Lockhart testified that in making his references to Hitler, Stalin, and Mussolini, he was "not concerned" how those references might affect Dershowitz.  Def. Ex. 11 at 103:6-13.

73.     Lockhart testified that he did not mention Dershowitz's use of the words "illegal, unlawful, and corrupt" because he did not "think that was the point he was trying to make."  He thought that Dershowitz was trying to make the impeachment standard "impossible to reach."  Def. Ex. 11 at 106:12-18.

74.     Lockhart testified that he "reacted as strongly as I did because using that argument and knowing how it might be interpreted was a very dangerous thing."  Def. Ex. 11 at 107:18-20.

75.     In his comments during the Erin Burnett show, Lockhart does not state or suggest that the Dershowitz statement was ambiguous or confusing.  Def. Ex. 67 at 5.

76.     Suzie Xu is the producer for the Erin Burnett Out Front show at CNN and is an employee of CNN.  Def. Ex. 14 at 8:6-10.

77.     Xu watched the impeachment trial in its entirety.  Def. Ex. 14 at 26:11-25.

78.     Xu received a copy of the *CNN News Account*.  Dep. Def. Ex. 14 at 35:7-18.

79.     Xu was responsible for the content of the clips aired on the Erin Burnett show. Def. Ex. 4 ¶ 17.

## FULL CIRCLE PROGRAM

80.     Anderson Cooper is an anchor for the CNN news program Full Circle.  He is an employee of CNN and has been so at least since January 2020.  Def. Ex. 8 at 14-18; *see* Pl. Ex. T at CNN1760-89.

81.     One of his guests on the Full Circle program on January 29, 2020 was Anne Milgram.  Def. Ex. 53.

82.     During that broadcast, Cooper and Milgram made comments about Dershowitz. Def. Ex. 53.

83.     Before the Full Circle broadcast, Cooper had reviewed the entirety of the Dershowitz statement on January 29, 2020.  Def. Ex. 8 at 116:6-14.

84.     On January 20 or 21, Cooper quoted Dershowitz as stating: "without a crime there can be no impeachment."  Def. Ex. 8 at 66:21-67:5.

85.     In January 2020, Anne Milgram was a paid commentator for CNN, and had a standard Contributor's Agreement with CNN.  Pl. Ex. CC at 1799-1808.

86.     In January 2020, Milgram was Of Counsel to a New Jersey law firm. Def. Ex. 16 at 11:7-12.  Previously, she served on the staff of Senator Jon Corzine (D.N.J.) and was the Attorney General of New Jersey.  Def. Ex. 16 at 7:4-7, 11:3-6.

87.     On January 29, 2020, Milgram appeared on the Full Circle program and made certain statements about Dershowitz.  Def. Ex. 53.

88.     Prior to her appearance on the Full Circle broadcast, Milgram watched "every part of the impeachment trial," including the statements of Dershowitz on both January 27 and 29, 2020. Def. Ex. 16 at 17:23-18:18.

89.     Milgram was aware that Dershowitz identified three different bases upon which a president could be impeached.   "Q: Mr. Dershowitz identified three different bases upon which a president could be impeached, did he not?  A: Mr. Dershowitz gave a lengthy explanation of what his view of presidential authority was when it came to in the public interest and impeachment, and I read his statement in totality."  Def. Ex. 16 at 42:5-14.

90.      At her deposition, Milgram refused to answer the following question: "So let's just focus on the statement there, 'The only thing that would make a quid pro quo unlawful is if the quo were in some way illegal.'  Do you agree or disagree with that statement?" Def. Ex. 16 at 32:11-22.

91.     Milgram testified that one must look at the totality of a statement and not take anything out of context. "Q: You say you have to look at things in the totality of the statements, and not take anything out of context, right? A: Yes. I said that I always read the full statement to form an opinion."  Def. Ex. 16 at 58:19-23.

92.     Milgram was then asked whether it was fair to have made the statements she made about Dershowitz without putting into context the fact that he had given three examples of impeachable conduct.  In response, she was unable or unwilling to testify that her statements were fair, as follows: "I didn't cherry pick any particular statement in making my opinion.  What I did was I looked at the totality of his statements.  I considered his entire argument. I read and understood his entire argument; in my personal view I drew a legal opinion and I stand by it." Def. Ex. 16 at 67:21-68:2.

93.     Chuck Hadad is the senior producer for the Anderson Cooper show.  Def. Ex. 9 at 5:19-23.  He was employed by CNN in January 2020 as the supervising producer for the Full Circle broadcast.  *Id.* at 5:24-6:7.

94.     Hadad watched "every moment" of the impeachment trial.  Def. Ex. 9 at 93:13-16.

95.     Hadad relied on the *CNN News Account*, Pl. Ex. G at 583-85, in connection with his preparation for the Full Circle broadcast.  Def. Ex. 9 at 97:4-99:8.

96.     Hadad directed the editing of the Dershowitz statement on January 29, 2020, that was aired on the Full Circle broadcast.  Def. Ex. 9 at 49:17-50:22. The edited version is formatted in Pl. Ex. U at CNN610-11.

97.     Hadad was responsible for the content of the clips aired on the Anderson Cooper show.  Def. Ex. 2 ¶ 3.

## NEW DAY PROGRAM

98.     John Berman was the anchor of the CNN New Day program in January 2020.  He was an employee of CNN ███████████████████████████████████████ ███████████████████  Pl. Ex. X at CNN1744-59; Def. Ex. 6 at 68:3-70:24.

99.     Berman directed the selection of the excerpt of the Dershowitz statement to be played on the air.  Def. Ex. 1 ¶¶ 3, 11, 20-21; Def. Ex. 6 at 156:13-15.  He did so in an email entitled "Dersh-O-Nuts."  Pl. Ex. V at CNN41.

100.     Berman's statements on the New Day program are set forth in the CNN Transcript.  Def. Ex. 36.

101.     Berman chose not to address Dershowitz's statement about corrupt motives because "that was not related to what I was talking about."  Def. Ex. 6 at 151:25-152:7.

102.     Berman testified that when he made his comments during his New Day broadcast

on January 30, 2020, he did not believe that Alan Dershowitz thinks that a president cannot be impeached for treason or bribery.  Def. Ex. 6 at 210:15-17.

103.    Berman testified that when he made his comments during his New Day broadcast on January 30, 2020, he "was not thinking of treason or bribery."  Def. Ex. 6 at 211:8-9.  He also testified that he did "not remember making that clear to my audience."  Def. Ex. 6 at 211:10-13.

104.    At 4:52 a.m., prior to his New Day broadcast, John Berman sent an email to producer Melanie Moffit providing her with a Dershowitz quote he wanted to use on his program. The quote was "'I want to be elected.  I think I'm a great president.  I think I'm the greatest president there ever was.  And if I'm not elected, the national interest will suffer greatly,' Dershowitz said.  'That cannot be an impeachable offense.'"  The subject line of the email was "Dersh-o-nuts...need this for all panels[.]" Pl. Ex. V at CNN41.

105.     Berman sent this email to Moffit because he wanted to use this "sound bite" on his broadcast.  Def. Ex. 6 at 155:17-156:15. The Berman quote attributed to Dershowitz was not accurate.  However, during the broadcast, the following sound bite was played: "Every public official I know believes that his election is in the public interest.  And if a president does something which he believes will help him get elected in the public interest, that cannot be the pro quo that results in impeachment." Def. Ex. 36 at 6.

106.    The supposed Dershowitz quotation was made up by Berman.  Dershowitz never made that statement.  However, during his New Day performance, Berman stated that Dershowitz had, in fact, made that statement: "I want to be elected.  I think I'm a great president. I think I'm the greatest president that ever was, and if I'm not elected, the national interest will suffer greatly. That can't be impeachable, he says."  Def. Ex. 36 at 7.

107.    Berman stated during his broadcast that "Dershowitz wasn't ambiguous here." Def.

Ex. 36 at 7.

108.     In his comments during his broadcast, Berman does not state or suggest that the Dershowitz statement was ambiguous or confusing.  *See* Def. Ex. 36 at 7

## ALAN DERSHOWITZ

109.     Alan Dershowitz is an Emeritus Professor of Law with Harvard University.  Def. Ex. 17 at 333:14-17.  He is a noted and respected constitutional scholar.  *See, e.g.*, *infra* ¶¶ 111-15.

110.     Katherine M. Bolger is lead counsel for the defendant in this case, Cable News Network.  Her law firm's website states that she is an "experienced First Amendment and media litigator . . . ."  Pl. Ex. W at 1.

111.     After the filing of this lawsuit, Bolger posted a description on her law firm's website stating that she was "defending CNN in a defamation action brought by famed legal scholar Alan Dershowitz…" Pl. Ex. W at 3 (emphasis added).

112.     In this litigation, Paul Begala testified that Dershowitz possesses "a legendary legal mind." Def. Ex. 5 at 182:18-21.

113.     In this litigation, Joe Lockhart testified that Dershowitz is a "respected lawyer." Def. Ex. 11 at 85:12.

114.     In this litigation, Anderson Cooper testified that he has great respect for Dershowitz and "would like him to be my attorney if I ever needed one."  Def. Ex. 8 at 21:10-11.

115.     Anderson Cooper also referred to Dershowitz in this litigation as "a great defender of the first amendment."  Def. Ex. 8 at 100:16-17.

116.     Bolger, Begala, Lockhart, and Cooper made these statements after it was publicly known that Dershowitz's "client roster included, among other controversial figures, O.J. Simpson,

Mike Tyson, Jeffrey Epstein and Neo-Nazis." Def. Ex. 17 at 96:21-97:8, 189:24-190:7; Def. Ex. 69 at 4; Def. Ex. 70.

117.    Bolger, Begala, Lockhart, and Cooper made these statements after Virginia Guiffre publicly alleged that Dershowitz raped her.  Def. Ex. 17 at 47:5-48:8; Def. Ex. 73 at 5.

118.    Bolger, Begala, Lockhart, and Cooper made these statements after Dershowitz "was the subject of fierce criticism by scholars and commentators," including Erwin Chemerinsky, Neal Katyal, and Jonathan Turley.  Def. Ex. 146 at 5; *see also* Def. Exs. 114, 147-49.

119.    Bolger, Begala, Lockhart, and Cooper made these statements after "nearly 200 'professors and scholars of the American constitution' sent a letter to the U.S. Senate to repudiate [Dershowitz's] position."  Def. Ex. 150.

120.    As a result of the CNN defamations at issue in this litigation, ███████████

███████████████████████████████████████████████████████████████████

███████████████████████    Pl. Ex. B ¶ 13; Def. Ex. 17 at 34:10-18; Def. Ex. 18 at 185:10-13; Def. Ex. 153 at 2-3.

121.    As a result of the CNN defamations at issue in this case, Dershowitz has been the subject of ridicule, embarrassment, pain, humiliation, emotional distress, and mental anguish, and has suffered harm to his reputation and legacy. Pl. Ex. B ¶ 14.

122.    As a result of the CNN defamations at issue in this case, Dershowitz has received vile and condemnatory emails from individuals, referring to the CNN broadcasts.  Pl. Ex. B ¶ 15; *see, e.g.*, Pl. Ex. Y.

123.    As a result of the CNN defamations at issue in this case, CNN viewers and readers have posted offensive and damaging comments about him in response to its repetition of the defamations on social media sites, including Twitter and Facebook.  *See, e.g.*, Pl. Ex. AA.  He is

ridiculed on the internet for his advocacy of the "Dershowitz Doctrine."  *See, e.g.*, Pl. Ex. Z.

124.    As a result of the CNN defamations at issue in this case, Dershowitz is no longer

asked to appear by most mainstream television broadcasters, including MSNBC, ABC, PBS, NBC,

BBC, Pro Publico, and CNN.  Pl. Ex. B ¶¶ 18-19; Def. Ex. 17 at 34:2-9, 160:3-10.

### JOURNALISM STANDARDS

125.    The Society of Professional Journalists has published a Code of Ethics which state

that ethical journalism should be accurate and fair, that journalists should provide context and take

special care not to misrepresent or oversimplify in promoting, reviewing, or summarizing a story,

and should never deliberately distort facts or content, including visual information.  Pl. Ex. BB.

126.    Berman   testified   that   he   considered   the   Code   of   Ethics   to   be   "admirable

guidelines," but did not consider them to be "legally enforceable."  Def. Ex. 6 at 38:15-17, 158:2-

4.

Respectfully submitted,

*/s/ Mark A. Schweikert*
Mark A. Schweiker (FNN 70555)
SCHWEIKERT LAW PLLC
1111 Brickell Avenue, Suite 1550
Miami, FL 33131
Tel. (305) 999-1906
mark@schweikertlaw.com


*/s/ John B. Williams*
John B. Williams (*pro hac vice*)
WILLIAMS LOPATTO PLLC
1629 K Street, N.W., Suite 300
Washington D.C. 20006
Tel: (202) 296-1665
jbwilliams@williamslopatto.com
fnkitton@williamslopatto.com

*Counsel for Plaintiff Alan Dershowitz*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 11, 2022, I electronically filed the foregoing document under seal with the Clerk of Court using the CM/ECF filing system, and that I served the foregoing document was served on all counsel of record via email.

*/s/ Mark A. Schweikert*