# EXHIBIT A

**EXPERT WITNESS REPORT**

**Dershowitz v. CNN**

**Frank O. Bowman, III**

I.      **Introduction**

This lawsuit is about what Professor Alan Dershowitz argued on the floor of the U.S. Senate during the first impeachment trial of President Donald Trump, and what other people, particularly employees of and commentators on Cable News Network (CNN), reported Professor Dershowitz to have said.

I have been retained as an expert in the constitutional law and history of presidential impeachment to analyze statements made by Professor Dershowitz during the impeachment trial. At the outset, the limits of the following opinion should be noted.

First, I offer no opinion on what Professor Dershowitz personally believed during the trial about the correct or best interpretation of the Constitution's provisions on impeachment. Not only would any such opinion be necessarily speculative, but the role played by Professor Dershowitz during the trial would render any such speculation peculiarly difficult. In the trial, Professor Dershowitz did not appear as either a fact witness or an expert witness. In this respect, his role differed from the academic experts who testified under oath before the House Judiciary Committee on December 4, 2019, about their opinions on the constitutional grounds for impeachment. Indeed, given the rules of the Senate trial, Professor Dershowitz could not have appeared as a witness inasmuch as no witnesses were permitted. Instead, he was retained by President Trump to represent him as an advocate. Therefore, his obligation was to present the argument on behalf of his client that he thought would be most persuasive to senators, not to express his own views. Whether the argument he made did or did not coincide with his personal views cannot be known.

Second, although I disagree with Professor Dershowitz's argument on the Senate floor, and although it was contrary to the overwhelming consensus of modern constitutional scholars of impeachment, the opinion outlined below does not rest on which position is constitutionally correct or even on the relative strength of his argument in relation to the scholarly consensus.

In the opinion that follows, I confine myself to explaining the constitutional issues addressed in Professor Dershowitz's argument, how his positions on those issues changed over time, how his argument in the Senate differed from the contemporary scholarly consensus, and how I and other constitutional scholars understood his Senate argument, in particular his response to a question from Senator Ted Cruz.

In order for me to provide an opinion on the narrow claim presented in plaintiff Dershowitz's complaint it is necessary to provide at least a summary explanation of the constitutional issues Professor Dershowitz addressed in the Senate. In addition, to give context for my assessment of how informed listeners who had followed the Trump impeachment controversy carefully – including members of the press and professional broadcast commentators– could have understood Professor Dershowitz's argument in the Senate, I provide a review of Professor Dershowitz's unique, and changing, public positions on the constitutional standard for impeachable presidential conduct, as expressed before, during, and immediately after his Senate appearance.

## II.       Issues addressed by Professor Dershowitz in the Senate

In December 2019, the House of Representatives approved two articles of impeachment alleging that President Donald Trump had committed "treason, bribery or other high crimes and misdemeanors." The first article charged abuse of power in connection with President Trump's threat to withhold military and diplomatic assistance from Ukraine unless the Ukrainian government publicly announced an investigation into Trump's political rival, former Vice President Joseph Biden. The second article charged obstruction of Congress as a result of President Trump's refusal to comply with subpoenas issued by the House as part of its impeachment inquiry.

Professor Dershowitz was engaged as counsel for the president to argue on his behalf during the Senate trial. On January 27, 2020, Professor Dershowitz gave a prepared argument. On January 29, 2020, Professor Dershowitz returned to respond to certain questions propounded by senators. Although Professor Dershowitz said on January 27 that he would address both articles of impeachment, the primary focus of his argument on both days was the first article charging abuse of power.

The main points of Professor Dershowitz's argument concerned three questions, two general and one more particular: First, does the constitutional standard for impeachable conduct – "Treason, Bribery, or other high Crimes and Misdemeanors" – require proof of criminal conduct by a president, or even conduct which if not technically criminal, is somehow akin to crime? Second, can abuse of power not amounting to prosecutable crime nonetheless constitute an impeachable high crime or misdemeanor? Third, and particular to the facts of this case, if a president uses his power to grant or withhold American aid to a foreign country in order coerce that country into undertaking actions that would politically damage the president's political rival and thus promote the president's interest in securing reelection, can that be an impeachable abuse of power?

On the first two points, there has long existed a near-universal consensus among constitutional scholars.

First, the phrase "high Crimes and Misdemeanors" does not require proof of a chargeable criminal act. The argument that a chargeable crime is required has been raised routinely for centuries by advocates for officeholders in England and the United States facing impeachment; however, it has just as routinely been rejected. All credible modern authorities emphasize that the language of the constitution's impeachment clause and historical impeachment precedents should be understood to require very grave presidential misconduct, but not a criminal act. I share this consensus view.[1]

It is difficult to overemphasize how universal the consensus against a requirement of crime for impeachment is, and was at the time of Professor Dershowitz's appearance in the Senate. The books

---

[1] I explain the reasons for this consensus view, citing the historical and modern authorities, in my book, High Crimes & Misdemeanors: A History of Impeachment for the Age of Trump (Cambridge University Press 2019), and also in several articles published in late 2019 and early 2020. Bowman, The Common Misconception About 'High Crimes and Misdemeanors," The Atlantic, https://www.theatlantic.com/ideas/archive/2019/10/what-does-high-crimes-and-misdemeanors-actually-mean/600343/ (Oct. 22, 2019); Bowman, *Constitutional Crabgrass: President Trump's Defenders Distort the Impeachment Clause*, Just Security (Jan. 24, 2020), https://www.justsecurity.org/68240/constitutional-crabgrass-president-trump-defenders-distort-the-impeachment-clauses-frank-bowman-high-crimes-misdemeanors/.  For reasons of space, I will not recapitulate that material here.

and articles from constitutional scholars and historians endorsing this conclusion are legion.[2] The same view is shared by legal scholars who have considered, but not published on, the question. For example, on December 6, 2019, a group of roughly 500 legal scholars forwarded a letter to Congress stating, "conduct need not be criminal to be impeachable. The standard here is constitutional; it does not depend on what Congress has chosen to criminalize."[3]

Second, the consensus among constitutional scholars is that the phrase "high Crimes and Misdemeanors" *does* include abuses of presidential power, including abuses that violate no criminal law, if they are of sufficient gravity. Indeed, impeachment was invented by the English Parliament in 1376 and refined over the next four centuries preceding the founding of the American nation as a legislative response to executive abuse of power. The Framers of the American Constitution were extremely familiar with this English mechanism, which had also been used in the American colonies. They adopted it into the American Constitution in 1787 primarily to serve the same core function for which it had been used in Great Britain, that is, as a control on abuse of executive power, which in the new American constitution meant as a control on abuse of power by the president.[4] The scholarly consensus on the impeachability of abuses of presidential power, including abuses that violate no criminal or civil statute, is also near-universal.  There are certainly disagreements among serious impeachment scholars about which kinds and degrees of abuse of presidential power are impeachable. But there is no disagreement on the principle.

### III.        Professor Dershowitz's steadily changing public position

In order to assess what Professor Dershowitz argued before the Senate and how informed observers of that argument could understand it, it is necessary to place his particular statements to the Senate into the context of his previous, published and broadcast, positions on the constitutional standard for impeachable conduct.

As Professor Dershowitz admitted during his Senate argument on January 27, 2020,[5] at the time of President Clinton's impeachment in 1998, he "accepted the academic consensus" among constitutional

---

[2] The list of modern constitutional authorities who published views in accord with this consensus in the roughly fifty years prior to the first Trump impeachment is extraordinarily lengthy and beyond the scope of this opinion. Those who published those views in books include, but are not limited to: RAOUL BERGER, IMPEACHMENT: THE CONSTITUTIONAL PROBLEMS (Harvard University Press 1973); CHARLES L. BLACK, JR., IMPEACHMENT: A HANDBOOK (Yale University Press 1974) [joined by Philip Bobbitt in a revised edition in 2018]; MICHAEL GERHARDT, THE FEDERAL IMPEACHMENT PROCESS (Princeton University Press 1995); AKHIL REED AMAR, AMERICA'S CONSTITUTION 199-201 (Random House 2005); CASS R. SUNSTEIN, IMPEACHMENT: A CITIZEN'S GUIDE (2017); Jeffrey A. Engel, in MEACHAM, BAKER, NAFTALI & ENGEL, IMPEACHMENT: AN AMERICAN HISTORY 212 (2018); and LAURENCE TRIBE & JOSHUA MATZ, TO END A PRESIDENCY: THE POWER OF IMPEACHMENT (2018). Many other scholars of constitutional law and the presidency have expressed the same view in published journal articles.
[3] Letter to Congress from Legal Scholars (Dec. 6, 2019), https://legalscholarsonimpeachment.medium.com/letter-to-congress-from-legal-scholars-6c18b5b6d116.
[4] For an explanation of the reasons for this consensus view, including historical and modern authorities, see Bowman, HIGH CRIMES & MISDEMEANORS: A HISTORY OF IMPEACHMENT FOR THE AGE OF TRUMP (Cambridge University Press 2019), and Bowman, *Constitutional Crabgrass: President Trump's Defenders Distort the Impeachment Clause*, JUST SECURITY (Jan. 24, 2020), https://www.justsecurity.org/68240/constitutional-crabgrass-president-trump-defenders-distort-the-impeachment-clauses-frank-bowman-high-crimes-misdemeanors/.
[5] In 2020, Professor Dershowitz published a book titled, DEFENDING THE CONSTITUTION: ALAN DERSHOWITZ'S SENATE ARGUMENT AGAINST IMPEACHMENT, which consists primarily of the text of his arguments to the Senate on Jan. 27 and

scholars that the phrase "high crimes and misdemeanors" did not require proof of a crime and that "abuse of trust" could be impeachable. This was not merely a privately held opinion, but one that Professor Dershowitz offered as a legal expert in an interview with CNN host Larry King. [6]

However, in 2018, Professor Dershowitz published a book titled, *The Case Against Impeaching Trump*, in which he reversed himself. In Chapter One of that book, he stated repeatedly and unequivocally that a president can be impeached only for conduct that is an actual crime. His statements on that point included:

> "It is difficult to argue reasonably from the text [of the Constitution] that these words can be interpreted to mean that a person can be impeached for anything less than a crime." [7]

> \*\*\*

> "But words have meanings and crime means crime, not something else." [8]

> \*\*\*

> "...I do not believe that the text [of the Constitution] permits totally ignoring the requirement of a 'crime.' It may, however, permit inclusion of state crimes, which were the dominant crimes at the time of the framing. It may also permit 'common law crimes,' which were permissible until 1812. The text would not, however, permit the inclusion of bad, even dangerous, 'misdeeds' that did not fit the definition of 'crime'." [9]

> \*\*\*

> "...I fundamentally disagree with applying 'living constitution' interpretation to erase the explicit words in Article I, Section 4, that require conviction of a specified crime as prerequisite to impeachment. Sometimes the Constitution gives no escape, even from a conclusion that seems irrational by contemporary standards. Just as the two-thirds requirement [for conviction in a Senate impeachment trial] may result in a tyrant remaining in office, so too may the requirement for conviction of a specified crime cause bad results. But that would not justify ignoring either requirement." [10]

---

29, 2020, but also includes some explanatory material and an op-ed in THE HILL by Professor Dershowitz dated Jan. 30, 2020, in which he responded to the public reaction to his Senate argument. In this opinion, I will cite Professor Dershowitz's words in the Senate by reference to his book. The explanation of his changed position on the standard of impeachable conduct appears at pp. 68-69.

[6] In this 1998 interview, he said, among other things, "It certainly doesn't have to be a crime if you have somebody who completely corrupts the office of president and who abuses trust and who poses great danger to our liberty, you don't need a technical crime." Benjamin Siegel, *Dershowitz's 1998 comments on impeachment resurface ahead of Trump trial*, ABC NEWS (Jan. 20, 2020), https://abcnews.go.com/Politics/dershowitzs-1998-comments-impeachment-resurface-ahead-trump-trial/story?id=68409934.

[7] ALAN DERSHOWITZ, THE CASE AGAINST IMPEACHING TRUMP (2018), at p. 11.

[8] Id. at 13.

[9] Id.

[10] Id. at 14.

Professor Dershowitz is, as he noted in his Senate remarks, a longtime professor of criminal law. Therefore, the word "crime" in the sense he used it in his 2018 book can only refer to an offense that can be charged in an indictment or information, tried in a court, and, if proven beyond a reasonable doubt, result in a conviction for which the defendant may be incarcerated, fined, or otherwise punished under law. As will be discussed in more detail below, "crime" does not mean any violation of civil statutes or regulations, common law rules, or even provisions of the Constitution itself. It is not equivalent to "illegal" or "unlawful." There are innumerable acts which are illegal and unlawful, but not criminal.

This is an important point for the present lawsuit because, in paragraph 8 of Plaintiff's First Amended Complaint, Professor Dershowitz asserts that actions and statements by CNN were intended to create "a one-sided and false narrative that Professor Dershowitz believes and argued that as long as the President believes his reelection is in the public interest, that he could do anything at all – including illegal acts – and be immune from impeachment. The very notion of that was preposterous and foolish on its face...."

One difficulty this assertion confronts is that in his 2018 book, Professor Dershowitz <u>did</u> argue that a President could do anything at all, including illegal acts, and be immune from impeachment, with the sole caveat that the President's illegal acts not be technically criminal.[11] Whether his 2018 position was "preposterous and foolish" is a question beyond the scope of this report. However, it was contrary to the near-universal consensus of modern constitutional scholars. Moreover, his position, as he himself explained it, had implications that constitutional scholars, and I think it fair to say most observers, would view as being extreme.

For example, in his 2018 book, Professor Dershowitz wrote:

> "*Assume Putin decides to 'retake' Alaska, the way he 'retook' Crimea. Assume further that a president allows him to do it, because he believed that Russia has a legitimate claim to 'its' original territory. That would be terrible, but would it be impeachable? Not under the text of the Constitution.*"

In sum, Prof. Dershowitz argued that if Russia invaded and occupied Alaska using its army, navy, and air force, as in 2014 it had actually invaded and occupied Crimea, and a president did nothing in response, but simply accepted forcible Russian annexation of an American state, that would not be impeachable.

Two years later, in 2020, as he was preparing to undertake the defense of President Trump before the Senate in relation to the Ukraine matter, Professor Dershowitz once again fundamentally altered his public position on the constitutional definition of impeachable conduct. In public statements before the

---

[11] Moreover, Professor Dershowitz went further and argued that because the president is "head of our 'unitary executive' branch," he is largely exempt from some criminal statutes and other legal rules and norms that restrict the behavior of subordinate executive branch officials. Id. at 25. Unlike his position on the definition of impeachable conduct, as to which he was effectively alone among modern American lawyers and legal scholars regardless of political or ideological orientation, Professor Dershowitz had academic company in adopting a "unitary executive" view of the presidency. However, by combining his uniquely restrictive view of impeachable conduct with unitary executive theory, he espoused an expansive view of presidential control over the vast powers of the executive branch of government that is at least highly unusual, and may be unique among American legal scholars.

Senate trial, and during his Senate argument, he no longer insisted that an actual chargeable "crime" was necessary for impeachment, but said instead that either crime or what he variously described as "criminal-like" or "criminal-type" conduct would do.[12]

One cannot know whether Professor Dershowitz's altered position while representing President Trump was his personal opinion as an academic student of the Constitution or whether it was instead a position adopted as part of an advocate's strategy to persuade the Senate to vote in favor of his client. Regardless, it was a change in his public position. There are several important points about this change:

First, it is logically irreconcilable with the position he had written into his 2018 book. There he asserted unequivocally that a president could be impeached only if he committed a "crime." "Crime-like" or "criminal-type" conduct – conduct somehow analogous to crime – is not crime.

Second, despite the significant inconsistency between his 2018 book and his 2020 argument, Professor Dershowitz claimed that he had held the same position all along. During his Senate argument, after explaining that he believed impeachment extended to "criminal-type acts akin to treason and bribery," he claimed that, "I published this academic conclusion well before I was asked to present arguments in this case."[13] Assuming, as seems reasonable, that the "academic conclusion" to which he refers was his 2018 book, the position he espoused in that book was entirely different.

Third, Professor Dershowitz never explained exactly what he meant by "crime-like" or "criminal-type" conduct. He argued on January 27 that "abuse of power" should not be impeachable in large part because he asserted that the category was too broad and undefined. But he did not explain how his newly adopted category of "crime-like" or "criminal-type" conduct was any more definitive.

Fourth, whether one confines one's attention solely to Professor Dershowitz's statements on the floor of the Senate, or reads them in the context of his previous writings and statements, it is difficult, even for an academic impeachment specialist, to determine exactly what he was arguing in the Senate on behalf of his client, beyond the conclusion that the allegations in the articles of impeachment ought not result in President Trump's conviction. The particulars of Professor Dershowitz's legal position were ambiguous, confusing, and subject to multiple interpretations.

This general problem was particularly evident in the response by Professor Dershowitz to Senator Cruz which is the basis of this lawsuit.

## IV.   Analysis of Dershowitz argument in First Amended Complaint

The cause of action alleged in the First Amended Complaint rests on a single passage in Professor Dershowitz's response to a question by Senator Ted Cruz on January 29. Paragraph 7 of First Amended Complaint states:

---

[12] See *Dershowitz says he was wrong during Clinton trial to say impeachment doesn't require 'technical' crime*, NBC News, https://www.nbcnews.com/politics/trump-impeachment-inquiry/live-blog/live-trump-impeachment-senate-trial-coverage-n1119061/ncrd1119701#liveBlogCards (reproducing tweets dated Jan. 20, 2020, in which Professor Dershowitz said that he had not researched the issue during the Clinton period, but that, "I have now thoroughly researched the issue and concluded that although a technical crime with all the elements may not be required, criminal like behavior akin to treason and bribery is required."), and DERSHOWITZ, DEFENDING THE CONSTITUTION, pp. 48, 69-70.

[13] DERSHOWITZ, DEFENDING THE CONSTITUTION, pp. 69-70.

7. The relevant part of plaintiff's argument which serves as the basis of this cause of action was the following:

*"The only thing that would make a quid pro quo unlawful is if the quo were somehow illegal. Now we talk about motive. There are three possible motives that a political figure could have. One, a motive in the public interest and the Israel argument would be in the public interest. The second is in his own political interest and the third, which hasn't been mentioned, would be his own financial interest, his own pure financial interest, just putting money in the bank. I want to focus on the second one for just one moment. Every public official that I know believes that his election is in the public interest and, mostly you are right, your election is in the public interest, and if a president does something which he believes will help him get elected in the public interest, that cannot be the kind of quid pro quo that results in impeachment."*

Paragraph 8 of the First Amended Complaint goes on to allege that CNN aired only the last sentence of the foregoing excerpt, thus creating what it describes as a "a one-sided and false narrative that Professor Dershowitz believes and argued that as long as the President believes his reelection is in the public interest, that he could do anything at all – including illegal acts – and be immune from impeachment. The very notion of that was preposterous and foolish on its face, and that was the point: to falsely paint Professor Dershowitz as a constitutional scholar and intellectual who had lost his mind."

Paragraph 8 concludes by alleging that CNN intended to "fool its viewers" about Professor Dershowitz's views, and that its chosen means of doing so was to "deliberately omit" the first sentence of the passage quoted in Paragraph 7: "The only thing that would make a quid pro quo unlawful is if the quo were somehow illegal." Plaintiff's case therefore appears to turn centrally on what the omitted sentence meant and how its presence or absence affected interpretation by commentators and the public of what Professor Dershowitz said.

## A. Was the allegedly omitted sentence clear and obvious either alone or in context?

Far from being a plain statement of unmistakable clarity, the omitted sentence is at best opaque, either standing alone, or even in the context of Professor Dershowitz's entire response to Senator Cruz. The sentence could be understood in multiple different ways by intelligent, informed readers or listeners. Even as an impeachment scholar and specialist, I am unable to interpret it with any certainty.

To begin, the words "unlawful" and "illegal" are synonyms. Indeed, in both ordinary English and in the law, they are effectively identical in meaning and are commonly used interchangeably.[14] Both refer to

---

[14] For example, BLACK'S LAW DICTIONARY (11th ed. 2019), perhaps the most commonly referenced legal dictionary, defines the two terms as follows:

*illegal*: "Forbidden by law; <u>unlawful</u>" (emphasis added; illustrative usages omitted).
*unlawful*: "1. Not authorized by law; <u>illegal</u>. 2. Criminally punishable. 3. Involving moral turpitude" (emphasis added; illustrative usages omitted).

Similarly, a premier dictionary of ordinary English usage, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (2002) defines the two terms as follows:

some action that violates the law -- any law. Neither "unlawful" nor "illegal" means conduct that violates criminal law only. Both refer to violations of private civil law such as property law, contract law, or tort law. It is both "unlawful" and "illegal" to trespass upon or dump waste onto private land without the owner's permission.  Just as it is both "unlawful" and "illegal" to violate a valid contract for the sale of goods or to operate a backhoe negligently and smash your neighbor's fence. The terms "unlawful" and "illegal" also properly describe innumerable civil violations of local, state, and federal statutes and regulations. Finally, the terms "unlawful" and "illegal" properly describe violations of the federal constitution. It is "unlawful" and "illegal" for a policeman to conduct an "unreasonable search and seizure" in violation of the Fourth Amendment, for a person under the age of twenty-five to become a member of the House of Representatives in violation of Article I, Section 2, or for Congress to pass an ex post facto law or a bill of attainder in violation of Article I, Section 9. Accordingly, Professor Dershowitz's use of these two words renders the meaning of the allegedly critical sentence extremely uncertain.

Because "unlawful" and "illegal" mean exactly the same thing in ordinary English and legal usage, one must first consider the possibility that Professor Dershowitz used them, and meant them to be understood, in accordance with that ordinary usage.[15]

Recall that the questions from Senator Cruz to which Professor Dershowitz was responding related to "quid pro quos." "Quid pro quo" is simply a fancy Latin phrase literally meaning "this for that," which refers to any exchange of one thing for another. In the first Trump impeachment, the phrase was used to describe the threat by President Trump to withhold military and diplomatic assistance from Ukraine unless Ukranian president Zelensky promised to initiate an investigation of Trump's political rival, Joseph Biden. Aid for investigation. Or investigation for aid. Or more accurately in this case, removal of a presidential hold on already-congressionally authorized aid to Ukraine in return for a promise of investigation of Biden. This for that. Quid pro quo.

If we assume Professor Dershowitz was using "unlawful" and "illegal" in their ordinary senses as substantially equivalent synonyms, his formulation of the key sentence is baffling. What does it mean to say that, "The only thing that would make a quid pro quo unlawful [i.e., a violation of law] is if the quo were somehow illegal [i.e., a violation of law]"?

---

*illegal*: "contrary to or violating a law or regulation or something else (as an established custom) having the force of law: <u>unlawful</u>, illicit" (emphasis added; illustrative usages omitted).
*unlawful*: "1: not lawful: contrary to or prohibited by law: not authorized or justified by law: not permitted or warranted by law 2: acting contrary to or in defiance of law: disobeying or disregarding the law  3: contrary to normal or acceptable procedure: irregular; *esp.* not morally right or conventional" (illustrative usages omitted).

[15] Because the two words mean the same thing, he could have used either one of them twice in his sentence, or used both and reversed their order, without changing the legal import of what he said. In other words, any of the following formulations would, to either a layman or a lawyer, be equivalent expressions:
- "The only thing that would make a quid pro quo *unlawful* is if the quo were somehow *illegal*." (His actual words.)
- The only thing that would make a quid pro quo *illegal* is if the quo were somehow *unlawful*.
- The only thing that would make a quid pro quo *unlawful* is if the quo were somehow *unlawful*.
- The only thing that would make a quid pro quo *illegal* is if the quo were somehow *illegal*.

**8**

Perhaps Professor Dershowitz was saying that a quid pro quo transaction is a violation of law if the entire transaction is a violation of law. Which is true, but circular and completely unhelpful.

Alternatively, if one reads the sentence literally as Professor Dershowitz spoke it, he appears to say that the whole quid pro quo/this-for-that transaction is a violation of law if only one part of it – the quo – is "somehow illegal" (a violation of law). So perhaps he is saying that the whole transaction violates the law if one half of the this-for-that exchange violates the law. But if one interprets the statement in that way, which half is the quid and which the quo? Must it be the thing the President demanded (investigation of a political rival) or the thing he offered in return (lifting a hold on congressionally appropriated aid)?

Moreover, if Professor Dershowitz was using "unlawful" and "illegal" in their customary senses as substantially equivalent synonyms, how is one to understand which kind of unlawfulness/illegality he was referring to throughout the key sentence?  Did he intend unlawful/illegal to be understood in the sense of a violation of a criminal statute? Or did he intend unlawful/illegal to be understood in the sense of violation of any law, civil or criminal? Or did he intend unlawful/illegal to be understood in the sense of a violation of the law of impeachment, in particular the standard for impeachable conduct by a president?

In truth, the sentence at issue makes very little sense if Professor Dershowitz was using "unlawful" and "illegal" as substantial equivalents. Therefore, we must also consider whether he used two synonymous words intending them to mean different things. But if he did, the intended difference between the two words is unclear on the face of the sentence, and is not made notably clearer if one considers this sentence in the context either of Professor Dershowitz's full response to Senator Cruz, or of his complete argument to the Senate.

If one treats "unlawful" and "illegal" as having different intended meanings, there are multiple plausible interpretations of Professor Dershowitz's statement. Perhaps he used "unlawful" to mean in violation of the constitutional law governing impeachment, while intending "illegal" to mean in violation of criminal law. In which case he was arguing that a quid pro quo transaction would be impeachable only if either the action requested or the promised reward for the action was independently criminal.  Or perhaps he intended "unlawful" to mean in violation of the constitutional law governing impeachment, while intending "illegal" to mean violation of any statutory law or regulatory prohibition. In which case he was arguing that a quid pro quo transaction would be impeachable if either the action requested or the promised reward for the action was independently a violation of *either* a criminal statute *or* non-criminal statute or regulation.[16]

I should add that neither of the foregoing possibilities is a correct statement of law, whether one is considering the constitutional law of impeachable conduct or even the law governing strictly criminal

---

[16] It is also possible that Prof. Dershowitz intended "unlawful" to signify in violation of the criminal law, while intending "illegal" to signify violation of any statutory or regulatory law. That seems counterintuitive, and less likely than the possible interpretations in the text. But it makes some sense if Prof. Dershowitz understood Senator Cruz to be asking whether the transaction charged against the president could be criminal, and thus within a core category of impeachable conduct, if there were no provable quid pro quo.

public corruption offenses like bribery which require proof of a quid pro quo. None of those criminal laws require that one side of the quid pro quo exchange be independently criminal or otherwise a violation of law. It is the entire exchange, the combination of an offer (or threat) of one thing in exchange for the other together with a "corrupt" intent that brings a transaction within the ambit of these criminal statutes.[17]

But the key point here is that if Professor Dershowitz indeed intended the two words to signify different legal concepts in the critical sentence, there is no way to know with certainty which interpretation he had in mind for which word, and thus what the entire sentence was intended to convey.

Professor Dershowitz might respond by saying that he described his position on the general standard for impeachable conduct (basically, that impeachable conduct can be either a chargeable crime or be "crime-like,") elsewhere in his Senate remarks, and that CNN and its commentators would or should have interpreted any ambiguities in his specific statement about quid pro quos in light of that overall position. But his First Amended Complaint alleges that the omitted statement is so clear standing alone that its inclusion in CNN broadcasts would have immediately informed the general audience and CNN commentators of what he claims to have been his actual position.

However, if one reads the omitted statement in light of Dershowitz's incorporation of "crime-like" conduct into his general position, the intended interpretation of that statement becomes even murkier. Recall the specific statement: "The only thing that would make a quid pro quo unlawful is if the quo were somehow illegal." If one tries to harmonize these words with Dershowitz's acceptance of "crime-like" behavior as impeachable, is he saying that a quid pro quo transaction becomes sufficiently "crime-like" to be "unlawful" in the sense of being constitutionally impeachable so long as one half of the quid pro quo independently violates (a) the criminal law, or (b) any non-criminal law? Or is he saying that a quid pro quo transaction is unlawful in the sense of being impeachable if the whole transaction is not formally criminal, but is nonetheless "crime-like" because either the whole transaction or some part of it violates a non-criminal law?

In the course of preparing this report, I have read the critical sentence over and over for days. I have read it in isolation. I have read it the context of his response to Senator Cruz. I have read it in light of the rest of his argument before the Senate. I have read it in light of the body of his writings and published statements on impeachment before and immediately after the first Trump impeachment. I still do not know exactly what Professor Dershowitz was trying to convey in this sentence. Read standing alone, the statement is legally incomprehensible. Read in context of Professor Dershowitz's entire response to Senator Cruz, or his entire presentation to the Senate, or his body of public written and oral statements over time, multiple significantly different interpretations are entirely supportable. That being so, it is my opinion that there was no way for any listener or reader on January 29, 2020, to reliably interpret the sentence upon which this complaint rests. Thus, CNN's alleged omission of this sentence from its coverage did not remove a pellucidly clear statement of Prof. Dershowitz's views. Rather, in any broadcasts from which this sentence was omitted, CNN excised a singularly confusing statement subject to multiple competing interpretations.

---

[17] *See, e.g.*, United States v. Sun-Diamond Growers of California, 326 U.S. 398 (1999); United States v. Alfisi, 308 F.3d 144 (2002).

**B.  Professor Dershowitz's entire response to Senator Cruz**

I have also carefully studied Professor Dershowitz's entire response to Senator Cruz. Even if read with great care over a period of days by a person with extensive legal knowledge,  including specialized expertise in the law and history of impeachment, that response is not clear. However, to an expert in the law of impeachment, the following is the most supportable interpretation.

To begin, I understand Senator Cruz to have been asking whether quid pro quo transactions by a president can be impeachable. Professor Dershowitz begins his answer by pointing out that some types of quid pro quo exchanges are common and unobjectionable in foreign relations, concluding that thought with the enigmatic sentence: "The only thing that would make a quid pro quo unlawful is if the quo were somehow illegal."

His very next sentence is, "Now we talked about motive," and the entire remainder of his answer concerns motive. The most obvious reading of everything he says thereafter is that *it is the President's motive in entering into a quid pro quo transaction that determines whether the transaction or any part of it is "illegal" or "unlawful," and therefore in Professor Dershowitz's view impeachable.*

Professor Dershowitz then identifies three possible presidential motives: "a motive in the public interest," the President's "own political interest," and the President's "own pure financial interest, just putting money in the bank." He goes on to declare, without qualification, "*if a president does something which he believes will help him get elected in the public interest, that cannot be the kind of quid pro quo that results in impeachment.*"

It is true that Professor Dershowitz then talked about mixed presidential motives, but what he said made his declaration that a President could not be impeached for a transaction motivated by a desire for reelection even more absolute. He said, quite plainly, that a President who enters a quid pro quo transaction with mixed motives that included a desire to promote his own election could not properly be impeached:

> *Everybody has mixed motives, and for there to be a constitutional impeachment based on mixed motives would permit almost any President to be impeached. * * ***
>
> *[I]t is not in the national interest for everybody who is running to be elected – but for it to be impeachable, you would have to discern that he or she made a decision solely on the basis of, as the House managers put it, corrupt motives, <u>and it cannot be a corrupt motive if you have a mixed motive that partially involves the national interest, partially involves electoral interest, and does not involve personal pecuniary interest</u>.*

Professor Dershowitz then emphasizes that a scheme in which the President demanded "a million-dollar kickback" for himself as a condition of releasing foreign aid funds would be "purely corrupt and in the purely private interest," and would thus be impeachable. But he then concludes his answer to Senator Cruz this way:

> *But a complex middle case is: I want to be elected. I think I am a great President. I think I am the greatest President that ever was, and if I am not elected, the national interest will suffer greatly. That cannot be.*

11

Taken as a whole, the most likely interpretation of Professor Dershowitz's answer to Senator Cruz is this: So long as a president is motivated in whole or even in part by a desire to promote his own reelection, he cannot be impeached for threatening to employ the power of the United States government against another country, organization, or person, or for threatening to withhold U.S. government assistance from another country, organization, or person, in exchange for anything at all except a direct, personal pecuniary payment. [18]

Critically, Professor Dershowitz's answer to Senator Cruz does not by its actual terms exclude any crime, or indeed any other forms of non-criminal illegality, from his sweeping assertion of presidential immunity from impeachment. Nowhere in his answer does the word "crime" appear. As noted above, the word "illegal" in the sentence emphasized in Professor Dershowitz's complaint does not mean criminal, but includes every kind of violation of law. Considered in the context of subsequent passages of Professor Dershowitz's answer, the most likely among several possible meanings of "illegal" in this sentence is a quid pro quo transaction involving a corrupt motive. But as just observed, Professor Dershowitz argued that a President whose sole or mixed motives include a desire to promote his reelection cannot be acting "corruptly."

## C. Contemporary Reactions to Professor Dershowitz's argument

The position expressed by Professor Dershowitz throughout his Senate argument and particularly in his answer to Senator Cruz represented a strikingly cramped view of the constitutional standard for impeachable conduct and a strikingly expansive view of the reach of presidential power. At a minimum, both the general and particular points of his presentation were contrary to the consensus of American constitutional law scholars.

His views were considered sufficiently out of the mainstream that on January 31, 2020, a group of more than 200 legal scholars, including some of the most eminent names in the American legal academy submitted a letter to the Senate repudiating Professor Dershowitz's arguments. [19] This letter concluded: (1) "The consensus of scholarly opinion is that impeachable conduct does not require proof of crime," and (2) "The consensus of scholarly opinion is that abuse of power is an impeachable 'high crime and misdemeanor.'" Addressing Professor Dershowitz's particular response to Senator Cruz, the letter stated:

> Finally, one of President Trump's attorneys has suggested that so long as a president believes his re-election is in the public interest, "if a president did something that he believes will help get him elected, in the public interest, that cannot be the kind of quid pro quo that results in his impeachment." It is true that merely because a president makes a policy choice he believes will have beneficial political effects, that choice is not necessarily impeachable. However, if a president employs his powers in a way that cannot reasonably be explained except as a means of promoting his own reelection, the

---

[18] The essential accuracy of this interpretation seems confirmed by Professor Dershowitz's op-ed in "The Hill" of January 30, 2020, in which he affirms his position that mixed motive decisions in which one motive is "personal partisan benefit" are not impeachable. DERSHOWITZ, DEFENDING THE CONSTITUTION, pp. 157-164.

[19] This letter was submitted to the Senate and introduced into the record of the impeachment trial by Senator Richard Durbin. I was the principal draftsman of this letter, though its final form reflected input from a number of eminent scholars. https://www.durbin.senate.gov/imo/media/doc/v3.0_Senate%20Open%20Letter-CrimesAbuseofPower-WITH%20SIGNATURES.pdf.

president's private conviction that his maintenance of power is for the greater good does not insulate him from impeachment. To accept such a view would be to give the president carte blanche to corrupt American electoral democracy.

Note that this collective opinion was not influenced by CNN or by any alleged selective editing of Professor Dershowitz's statements. Rather, it resulted from careful consideration by multiple constitutional law luminaries of what he said on the Senate floor. Note also that it characterizes Professor Dershowitz's view as one that would "give the president carte blanche to corrupt American democracy." In short, the authors and signatories of the letter concluded that Professor Dershowitz's argument, if accepted, would grant presidents effectively unchecked authority to use the power of the American government to secure reelection.[20]

Multiple other political and legal commentators not affiliated with CNN expressed similar views. I will not attempt to catalogue them all here. However, three points may be of significance.

First, a common theme expressed in the immediate reactions among legal scholars and scholars of the presidency to Professor Dershowitz's argument was that he espoused an extreme, even unique, interpretation of the constitution which would remove a critical constitutional check on presidential power.[21] Multiple highly credentialed commentators even suggested that Professor Dershowitz's position, if accepted, would have rendered the articles of impeachment drafted against President Nixon constitutionally void.[22]

---

[20] Indeed, if one considers Professor Dershowitz's Senate argument together with his 2018 book, his public position on the breadth of presidential power and the limits on impeachment seems to be even more expansive than appears from his answer to Senator Cruz. As noted above in fn. 11, in 2018, he adopted the unitary executive view of presidential power and argued that, for example, a president "may direct the attorney general and the director or the FBI as to who and what to investigate and/or charge with crimes, as well as who not to investigate and charge with crimes" and may do so "wrongly or in a self-serving manner," and not be subject to prosecution or impeachment in either case. DERSHOWITZ, THE CASE AGAINST REMOVING TRUMP, at 25. He also asserted that, "a president may never be charged with obstruction of justice for firing the head of the FBI, for pardoning potential witnesses against him, or directing law enforcement officials who to prosecute and who not to prosecute." Id. at 54. He went further to say that such a case could not be brought even if "his motive in engaging in these constitutional acts is corrupt." Id. at 55. In short, by January 29, 2020, Professor Dershowitz's publicly articulated position about presidential power extended far beyond the particular quid pro quo transaction alleged in the first Trump impeachment to other types of cases in which a great many, perhaps most, scholars believe either criminal prosecution or impeachment would be constitutionally proper.

[21] For example, on January 30, 2020, notable conservative academic Keith E. Whittington, William Nelson Cromwell Professor of Politics at Princeton University, wrote, "The Dershowitz argument would gut the congressional impeachment power and embolden future presidents to further abuse the powers of their office." *Acquit if You Must, But Don't Endorse the Dershowitz Argument*, VOLOKH CONSPIRACY (Jan. 30, 2020), https://reason.com/volokh/2020/01/30/acquit-if-you-must-but-dont-endorse-the-dershowitz-argument/. Similarly, on January 30, Erwin Chemerinsky, dean of the University of California, Berkeley law school said of Dershowitz's argument that "It means that a president could break any law or abuse any power and say that it was for the public interest because the public interest would be served by his or her election." Allan Smith, Scholars push back on Dershowitz's 'outrageous' and 'preposterous' claim, NBC News (Jan, 30, 2020), https://www.nbcnews.com/politics/trump-impeachment-inquiry/live-blog/trump-impeachment-trial-live-coverage-senators-ask-questions-witness-battle-n1126271/ncrd1126356#liveBlogCards.

[22] On January 30, 2020, presidential historian Robert Dallek said of the Dershowitz argument, "Frankly, I've never seen that before, that a president's power extends to wherever his politics are." In same article, both Mr. Dallek

Second, no group of legal scholars or scholars of the presidency came forward to support Professor Dershowitz's view in the Senate. Indeed, I am aware of no legal scholar or academic expert on the presidency who wrote or spoke in any forum after Professor Dershowitz' argument supporting his views.[23]

Third, even Professor Jonathan Turley, the only witness called by Republicans during the Judiciary Committee hearing on the scope of impeachable conduct, wrote both before and after Professor Dershowitz's arguments to repudiate his views. Before the trial, Professor Turley wrote that Professor Dershowitz's reliance on the case of Andrew Johnson for the proposition that crime is required for impeachment was unfounded.[24] On January 30, 2020, the day after Professor Dershowitz finished his Senate appearance, Professor Turley wrote specifically criticizing Professor Dershowitz's response to Senator Cruz, calling it "surprising and baffling," as well as disconcerting because it would impose insufficient limits on presidential power.[25]

In sum, the national community of constitutional and presidential scholars and legal commentators who heard or read Professor Dershowitz's argument interpreted it to be an extreme position, inconsistent with the consensus of opinion on the meaning of the Constitution's impeachment clauses, and one that would permit presidents to abuse the powers of their office in ways not previously thought

---

and Barbara Perry, director of presidential studies at the University of Virginia's Miller Center, are quoted as agreeing that "the closest similar invocation of presidential power was Nixon's statement, made after he resigned the presidency, 'Well when the president does it ... that means it's not illegal.'"  Mark Sherman, *Dershowitz says his impeachment argument was misinterpreted*, PBS NEWS HOUR (Jan. 30, 2020), https://www.pbs.org/newshour/nation/dershowitz-says-his-impeachment-argument-was-misinterpreted. John Dean, former White House Counsel to Richard Nixon, agreed with the Nixon analogy. Following Professor Dershowitz's argument, Mr. Dean tweeted, "Alan Dershowitz unimpeached Richard Nixon today. All Nixon was doing was obstructing justice and abusing power because he thought he was the best person for the USA to be POTUS. When POTUS does it...etc. Seriously, that was his motive. Agree with Alan and impeachment is gone." Matthew Impelli, *Former Nixon White House Counsel Says Dershowitz 'Unimpeached Richard Nixon' With His Trump Defense*, Newsweek (Jan. 31, 2020), https://www.newsweek.com/former-nixon-white-house-counsel-says-dershowitz-unimpeached-richard-nixon-his-trump-defense-1485086 Professor Keith Whittington also concluded that Professor Dershowitz's argument would have rendered the articles of impeachment drafted against President Nixon "constitutionally defective." Keith E. Whittington, *The Senate is likely to acquit Trump. It should still reject Dershowitz's logic*, WASHINGTON POST (Jan. 30, 2020), https://www.washingtonpost.com/outlook/2020/01/30/senate-will-likely-acquit-trump-it-should-still-reject-dershowitzs-logic/.

[23] Josh Blackman of South Texas College of Law had written written an Op-Ed in the New York Times *before* Professor Dershowitz's argument, titled, "Trump Acts Like a Politician. That's Not an Impeachable Offense," N.Y. TIMES (Jan. 23, 2020), https://perma.cc/42ZR-T96H. In it, he argued that the fact that a president has a political motive for official conduct does not necessarily make that conduct impeachable. However, he also seems to concede that "plainly politically motived" conduct that "mov[es] beyond a threshold of personal political gain" would be impeachable. The exact parameters of this apparent caveat are unclear. However, Professor Blackman's position does not appear to coincide in important respects with Professor Dershowitz's argument in Senate.

[24] Jonathan Turley, *The Johnson Fallacy: Why Dershowitz Is Wrong About the Prevailing Argument in the Johnson Trial* (Jan. 24, 2020), https://jonathanturley.org/2020/01/24/the-johnson-fallacy-why-dershowitz-is-wrong-about-the-prevailing-argument-in-the-johnson-impeachment/.

[25] Jonathan Turley, *The dubious impeachment proclamations of Alan Dershowitz: The famed Harvard Law professor is making the case against himself*, USA TODAY (Jan 30, 2020), https://www.usatoday.com/story/opinion/2020/01/30/donald-trumps-impeachment-lawyers-alan-dershowitz-jonathan-turley-column/4619466002/.

constitutionally permissible, so long as one motive for the president's action was to promote his own interest in reelection. Critically to the present case, that effectively universal interpretation of Professor Dershowitz's argument was not dependent on the presence or absence of any one sentence from his response to Senator Cruz.

\*\*\*

**Fed. R. Civ. Pro. 26 Disclosures**

1. I have not testified as an expert witness in any court during the last four years.
2. The foregoing opinion is based upon review of the following materials:
   a. Plaintiff's First Amendment Complaint
   b. Answer and Affirmative Defenses to First Amended Complaint
   c. Order on Motion to Dismiss, May 24, 2021.
   d. Alan Dershowitz, Defending the Constitution (2020) (including transcript of Prof. Dershowitz's arguments to the U.S. Senate on Jan. 29-30, 2020)
   e. Alan Dershowitz, The Case Against Impeaching Trump (2018) (later republished as "The Case Against Removing Trump").
   f. Frank O. Bowman, III, High Crimes & Misdemeanors: A History of Impeachment for the Age of Trump (Cambridge Univ. Press 2019), and all sources cited therein.
   g. All sources cited in the text or footnotes of this opinion.
   h. All published articles by the author of this opinion relating to impeachment, and the sources cited therein, including but not limited to:
      i. Bowman, "High Crimes & Misdemeanors": Defining the Constitutional Limits on Presidential impeachment, 72 So. Cal. L. R. 1517 (1999).
      ii. Bowman (with S. Sepinuck), Written testimony to House Judiciary Committee in Clinton impeachment inquiry on behalf of Nat'l Assoc. of Criminal Defense Attorneys (NACDL), see, Background and History of Impeachment, Hearing before the Subcommittee on the Constitution, House Judiciary Committee, 105th Cong., 2d Sess., Nov. 9, 1998, at 342-372.
      iii. *Falling Out of Love With America: The Clinton Impeachment and the Madisonian Constitution*, 59 MARYLAND L. REV. 5 (2001).
      iv. *British Impeachments (1376–1787) and the Present American Constitutional Crisis*, 46 HASTINGS CONSTITUTIONAL LAW QTRLY 745 (2019).
      v. Bowman, Trump's Extortion of Ukraine Is an Impeachable Abuse of Power, Just Security  https://www.justsecurity.org/66407/trumps-extortion-of-ukraine-is-an-impeachable-abuse-of-power/
      vi. Bowman, The Common Misconception About 'High Crimes and Misdemeanors," THE ATLANTIC, https://www.theatlantic.com/ideas/archive/2019/10/what-does-high-crimes-and-misdemeanors-actually-mean/600343/  (Oct. 22, 2019)
      vii. Bowman, Foreign Policy Has Always Been at the Heart of Impeachment, FOREIGN AFFAIRS (Nov. 25, 2019) https://www.foreignaffairs.com/articles/2019-11-25/foreign-affairs-has-always-been-heart-impeachment
      viii. Bowman, Constitutional Crabgrass: President Trump's Defenders Distort the Impeachment Clause, JUST SECURITY (Jan. 24, 2020), https://www.justsecurity.org/68240/constitutional-crabgrass-president-trump-

15

[defenders-distort-the-impeachment-clauses-frank-bowman-high-crimes-misdemeanors/](defenders-distort-the-impeachment-clauses-frank-bowman-high-crimes-misdemeanors/)

ix. Bowman, If Trump's Ukraine Call Isn't Impeachable, Nothing Is, CNN OPINION (Sept. 25, 2019) [https://www.cnn.com/2019/09/25/opinions/trump-ukraine-call-if-this-isnt-impeachable-nothing-is-bowman/index.html](https://www.cnn.com/2019/09/25/opinions/trump-ukraine-call-if-this-isnt-impeachable-nothing-is-bowman/index.html)

3. Exhibits which may be used at trial to summarize or support the opinions stated herein are at present unknown. This report will be supplemented as needed to provide that information.

4. I am being paid $800.00 per hour by CNN for my efforts herein, including this report, study and testimony in this case.