# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:20-CV-61872-AHS

ALAN DERSHOWITZ,

    Plaintiff,

v.

CABLE NEWS NETWORK, INC.,

    Defendant.

_____/

**DECLARATION OF JOHN BERMAN
IN SUPPORT OF CNN'S MOTION FOR SUMMARY JUDGMENT**

I, John Berman, declare as follows:

1. I am over the age of eighteen, am a resident of Westchester, New York, and am competent to make this declaration. I have personal knowledge of the statements set forth below. I submit this declaration in support of the motion by defendant Cable News Network, Inc. ("CNN") for summary judgment in this action (the "Motion").

2. I am currently the co-anchor of CNN's television program New Day.

3. On January 29, 2020, Alan Dershowitz, who was defending former President Donald Trump during his first impeachment trial, responded to a question posed by Senator Ted Cruz on the floor of the U.S. Senate (the "Response"). As co-anchor of New Day, I was responsible for the content on our show, including certain clips of Dershowitz's Response that were aired on New Day the following morning (the "New Day Clips") and the statements I made on air about the Response ("My Statement").

4. The New Day Clips are verbatim excerpts of footage of Dershowitz's Response. At the time that CNN aired the New Day Clips, I had no doubt that they were fair and accurate. I believe that to this day.

5. When I made My Statement, I was expressing my opinion, and I believed that My Statement was a reasonable interpretation of Dershowitz's Response. In fact, at the time, I had no doubt that my stated interpretation was correct. In fact, while I understand that Dershowitz claims I misconstrued his Response, to this day I still believe that My Statement was reasonable and correct.

**My Background in Journalism**

6. I have 27 years of journalism experience. Over the years, I have co-anchored CNN's New Day, CNN Newsroom, Early Start, and At This Hour. I have also appeared on air on ABC's World News with Diane Sawyer, Good Morning America, Nightline, and 20/20, and I was the head writer for World News Tonight with Peter Jennings. I have covered a wide range of stories, including reporting from warzones and covering two presidential impeachments.

7. I graduated from Harvard University in 1995 with a B.A. in social studies.

8. After working for ABC for 17 years, I joined CNN in 2012 as co-anchor of Early Start. In 2018, I became co-anchor of New Day.

9. New Day is CNN's morning show that airs from 6 to 9 AM. New Day covers the latest news and top stories. I frequently lead panel discussions with experts on the show. My guests, my co-anchor (at the time, Alisyn Camerota), and I all offer insightful analysis and opinion on the news of the day.

10. I have been nominated and have won numerous awards for excellence in journalism while at ABC and at CNN.

**Preparing the Rundown**

11. On January 29, 2020, as part of my job responsibilities at CNN, I watched the impeachment proceedings that CNN was airing live from the U.S. Senate. CNN aired the entire impeachment trial live.

12. At approximately 3:27 PM, one of our senior producers, Meredith Richards, emailed our team the preliminary rundown of our show for the following morning. The rundown is a list of all the segments on our show, broken down into blocks that are separated by commercial breaks. For example, the 6A block is the first block in the 6 AM hour, which is followed by a commercial break and then the 6B block. For this show, the 6B block featured guests John Avlon (a CNN senior political analyst) and Joshua Geltzer (a Georgetown Law professor and former National Security Council Senior Director for Counterterrorism). As stated in the preliminary rundown, the 6B block was going to cover the Senators' questions in the impeachment trial, including Dershowitz's Response. (A true and correct copy of this email, CNN00000001, dated January 29, 2020, 3:27 PM, is attached as **Exhibit 23** to the Declaration of Katherine M. Bolger in support of the Motion ("Bolger Declaration"). All further references to "**Exhibit __**" in this declaration refer to the numbered exhibits attached to the Bolger Declaration.)

13. At approximately 4:30 PM, I understand that some members of my team participated in a daily meeting with CNN's president, Jeff Zucker. Although I did not attend this meeting, Richards informed me about it in an email at approximately 5:24 PM. Richards stated that the meeting with Zucker was very brief and relayed Zucker's suggestion that one of the takeaways from the questions and answers in the Senate was that President Trump's lawyers were making the argument that the President is king and can do whatever he wants, which was tied to Dershowitz's argument that quid pro quos aimed at reelection are not impeachable. (A true and

correct copy of this email, CNN00000010, dated January 29, 2020, 5:24 PM, is attached as **Exhibit 24**.)

14. In my independent judgment, I agreed that this was one of the takeaways from the question-and-answer session. Indeed, before this meeting, our preliminary rundown already included this very topic.

15. As our team revised the rundown throughout the day and evening, this topic remained in the 6B block, as reflected in the final version of the rundown that was emailed to our team before the show aired. (A true and correct copy of this email, CNN00000042, dated January 30, 2020, 5:14 AM, is attached as **Exhibit 25**.)

**Conducting the Research**

16. As part of our preparation for the show, our team circulates relevant research. For example, our team circulates the point of view (or "POV") of our guests on a particular aspect of a story (or "angle") to help us prepare for the discussion. Our team may talk to the guests to ask them for their point of view. At approximately 12:38 AM on January 30, 2020, one of our segment producers, Russ Finkelstein, emailed our team the point of view of our two previously scheduled guests, Joshua Geltzer and John Avlon. Finkelstein stated that Geltzer believed that "Dershowitz appears to think virtually nothing is impeachable." Finkelstein stated that Avlon believed that "Dershowitz argued that the president can do anything he wants to win an eleciton [sic] as long as he thinks it's in the national interest," which was a "breathtaking argument." (A true and correct copy of this email, CNN00000020–21, dated January 30, 2020, 12:38 AM, is attached as **Exhibit 26**.)

17. Additional examples of our research are contained in a recap of items on the show called the "handover to the handover." This recap is meant to be a handover from the evening

team to the overnight team to bring them up to speed. At approximately 1:13 AM, one of our senior broadcast producers, Paulina Gigante, emailed our team the handover. Gigante noted that we already had Dershowitz's Response in our rundown, and that his Response was remarkable and merits a substantial discussion on a panel. (A true and correct copy of this email, CNN00000036–37, dated January 30, 2020, 1:13 AM, is attached as **Exhibit 27**.)

18. In addition to my team's research, I also conducted my own research by reading the news reported by other outlets such as the New York Times, the Washington Post, and the Wall Street Journal.

**The New Day Clips**

19. At approximately 12:47 AM, Finkelstein emailed our team the "master elements" for our show. These included the soundbites (or "SOT," which stands for Sound on Tape) and other elements that we intended to use on the show. These master elements included one of the New Day Clips (the "First New Day Clip"). The First New Day Clip comprised the following portion of Dershowitz's Response:

> Every public official that I know believes that his election is in the public interest. And mostly you're right. Your election is in the public interest. And if a president did something that he believes will help him get elected, in the public interest, that cannot be the kind of quid pro quo that results in impeachment.

(A true and correct copy of this email, CNN00000032–33, dated January 30, 2020, 12:47 AM, is attached as **Exhibit 28**.)

20. In addition, I decided to use a second clip of Dershowitz's Response (the "Second New Day Clip"), to provide further context.

21. At approximately 4:52 AM, I asked another producer, Melanie Moffitt, to cut the Second New Day Clip and include the following portion of Dershowitz's Response:

5

> I want to be elected. I think I'm a great president. I think I'm the greatest president there ever was. And if I'm not elected, the national interest will suffer greatly. That cannot be an impeachable offense.[1]

(A true and correct copy of this email, CNN00000041, dated January 30, 2020, 4:52 AM, is attached as **Exhibit 31**.)

22. Based on a review of documents produced in this case, I understand that the final version of the Second New Day Clip also included the prefatory clause "But a complex middle case is." Hence, the final version of the Second New Day Clip comprised the following portion of Dershowitz's Response:

> But a complex middle case is 'I want to be elected. I think I'm a great president. I think I'm the greatest president there ever was. And if I'm not elected, the national interest will suffer greatly.' That cannot be an impeachable offense.

(A true and correct copy of this email, CNN00000251, dated January 30, 2020, 5:01 AM, is attached as **Exhibit 32**.)

23. In my editorial judgment, I believed then, and believe now, that the New Day Clips were fair and accurate. In my 27 years of experience, I have covered many kinds of stories, including two presidential impeachments. Part of my job is selecting video or audio clips of those events for the viewing public.

24. I based my conclusion that the New Day Clips were fair and accurate on the fact that they are verbatim clips of Dershowitz's Response in which he stated that "if a President does something which he believes will help him get elected in the public interest, that cannot be the kind of quid pro quo that results in impeachment." Dershowitz reaffirmed this point when he

---

[1] Although the Congressional Record of the proceeding incorrectly omitted the words "an impeachable offense," Dershowitz in fact said those words, which were captured in the Second New Day Clip and the video of the proceeding. (A true and correct copy of the Congressional Record, the relevant portion of which is at pages S650–51, is attached as **Exhibit 29**. A true and correct copy of the video of the proceeding, the relevant portion of which is at timestamp 16:26, is attached as **Exhibit 30**).

stated: "a complex middle case is: I want to be elected. I think I am a great President. I think I am the greatest President there ever was, and if I am not elected, the national interest will suffer greatly. That cannot be an impeachable offense."  These quoted statements, among other statements, were included in the New Day Clips because they are key parts of Dershowitz's Response.

25. In addition, Dershowitz reaffirmed that "to be impeachable," the president must decide to act "solely" on the basis of corrupt motives, and a "mixed motive" that "partially involves electoral" interests "cannot be a corrupt motive."

26. The totality of Dershowitz's Response, and the portions quoted above in particular, informed my understanding of his Response as arguing that a president can do anything and not be impeached, so long as the president was acting in the interest of his re-election. I arrived at that understanding through my own independent judgment.

27. My understanding of the Response was also informed by the context in which this impeachment occurred. Although a statutory crime was not alleged in the articles of impeachment, the acts underlying the impeachment—the extortion of the President of Ukraine by the illegal withholding of congressionally authorized funds, and obstruction of congress—were illegal and even criminal in nature. Indeed, on January 16, 2020, the U.S. Government Accountability Office determined that the withholding of these funds was illegal, which was a major story that we covered on New Day. (A true and correct copy of the U.S. Government Accountability Office's decision, dated January 16, 2020, is attached as **Exhibit 33**.)  A true and correct copy of a transcript of New Day the following day is attached as **Exhibit 34**.)  I also understood that obstructing government investigations, including congressional investigations, is a crime. For Dershowitz to argue that President Trump could not be impeached for these acts if he was acting in the interest

7

of getting reelected, despite their illegal and criminal nature, informed my understanding of Dershowitz's Response.

28. Finally, my understanding of the Response was informed by the fact that Dershowitz appeared at the trial as an advocate for President Trump's impeachment team. He was making arguments to obtain acquittal, not expressing personal beliefs.

29. Moreover, I understood that Dershowitz has had very different views on impeachment over the years. I understood that in 1998, Dershowitz stated that impeachment does not require a crime. Then in 2018, I understood that Dershowitz took the opposite position, i.e., that impeachment does require a crime. And during President Trump's impeachment trial, he initially argued that impeachment requires a crime or crime-like conduct. In his Response, I understood Dershowitz to take a new position once again and argue that any acts in the interest of getting reelected cannot be impeachable.

30. I understand that in this lawsuit Dershowitz contends that the meaning of his Response is somehow changed by the following statement: "The only thing that would make a quid pro quo unlawful is if the quo were in some way illegal." Specifically, I understand that he contends that this statement somehow qualified his statements about acts in the interest of getting reelected, which he spoke several sentences later, and that the qualification supposedly excluded illegal acts from the discussion. For that reason, he thinks we should have included that language.

31. In my editorial judgment, I did not understand that sentence in the way that Dershowitz contends. In fact, that statement is unclear to me, seems to be a meaningless tautology, and certainly has no qualifying language suggesting that it limited the meaning of what he said several sentences later or excluded illegal acts from the subsequent sentences.

8

32. At my deposition in this case, I stated that Dershowitz appeared to think that treason and bribery were impeachable. I believe that to be true as a general matter. But Dershowitz, as an advocate for President Trump, did not make that point in the Response. Instead, he seemed to advance an argument that would make treason or bribery specifically committed in the interest of getting reelected unimpeachable.

33. My determination that Dershowitz's Response was newsworthy was confirmed when I saw the attention and controversy those statements were generating in other news outlets. I also observed that other organizations and commentators interpreted Dershowitz's Response in the same way that I did.

34. I understand that in this lawsuit Dershowitz contends that the New Day Clips were part of a coordinated "scheme" linked to other statements and clips at issue in this case. That contention is false. I had no contact with anyone responsible for those other statements and clips regarding the New Day Clips. The New Day Clips and My Statement were the product of my independent judgment.

**The New Day Telecast and My Statement**

35. At approximately 6 AM on January 30, 2020, New Day aired. (A true and correct copy of the 6 AM hour of this episode of New Day is attached as **Exhibit 35**. A true and correct copy of the transcript of the top of this hour is attached as **Exhibit 36**.)

36. At approximately 6:08 AM, while I was on air, the VP for morning programming, Izzy Povich, forwarded me an email from Jeff Zucker stating that Zucker was interested in the aspect of the story (or "angle") that President Trump's defense could expand presidential power. I replied that Povich should send Zucker my opening from the show, since I had already referenced our upcoming segment on Dershowitz's argument and its implications. (A true and correct copy

9

of this email, CNN00000061, dated January 30, 2020, 6:08 AM, is attached as **Exhibit 37**.) I had no contact with Zucker about this, and he did not tell me what to say on New Day.

37. At approximately 6:17 AM, we started the 6B block, which My Statement at issue in this case. As I explained above, the 6B block had already been prepared well before I was forwarded the email from Jeff Zucker.

38. In addition to playing the First New Day Clip, during the discussion in the 6B block, I also quoted the following statement by Dershowitz (which tracks the language in the Second New Day Clip): "I want to be elected. I think I'm a great president. I think I'm the greatest president that ever was, and if I'm not elected, the national interest will suffer greatly. That can't be impeachable." My co-anchor, Alisyn Camerota, also noted that Dershowitz has had different opinions on impeachment over the years and has been a "moving target."

39. At approximately 7 AM, we discussed Dershowitz's argument again. Among other things, we played part of the First New Day Clip and played the Second New Day Clip. (A true and correct copy of the 7 AM hour of this episode of New Day is attached as **Exhibit 38**. A true and correct copy of the transcript of the top of this hour is attached as **Exhibit 39**.)

40. I believed then, and believe now, that My Statement was an expression of my opinion, that My Statement was a reasonable interpretation of Dershowitz's Response, and that my stated interpretation was correct. I believed then, and believe now, that the New Day Clips were fair and accurate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: __10/10__, 2022

_____
John Berman