```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2
                   Case No. 20-CV-61872-SINGHAL
 3

 4   ALAN DERSHOWITZ,           )
                                )
 5            Plaintiff,        )
                                )
 6        -v-                   )
                                )
 7   CABLE NEWS NETWORK, INC.,  )
                                )
 8            Defendant.        )   Fort Lauderdale, Florida
                                )   December 16, 2022
 9   _____)   1:26 p.m.

10

11      TRANSCRIPT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

12                 BEFORE THE HONORABLE RAAG SINGHAL

13                       U.S. DISTRICT JUDGE

14

15   Appearances:

16

     For the Plaintiff:        WILLIAMS LOPATTO PLLC
17                             BY:  JOHN WILLIAMS, ESQ.
                               1629 K Street, NW, Suite 300
18                             Washington, DC  20006
                                        -and-
19                             SCHWEIKERT LAW PLLC
                               BY:  MARK SCHWEIKERT, ESQ.
20                             1111 Brickell Avenue, Suite 1550
                               Miami, Florida  33131
21

22

23   Reporter:                 Karl Shires, RMR, FCRR
     (954) 769-5496            Official Court Reporter
24                             299 East Broward Boulevard, # 110B
                               Fort Lauderdale, Florida  33301
25
```

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1    Appearances:  (Continued)

 2    For the Defendant:          GUNSTER YOAKLEY & STEWART
                                  BY:  GEORGE LeMIEUX, ESQ.
 3                                BY:  RAPHAEL HOLOSZYC-PIMENTEL, ESQ
                                  450 East Las Olas Boulevard
 4                                Fort Lauderdale, Florida  33301
                                       -and-
 5                                DAVIS WRIGHT TREMAINE, LLP
                                  BY:  KATHERINE BOLGER, ESQ.
 6                                1251 Avenue of the Americas
                                  New York, New York  10020
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        (Call to Order of the Court.)

2            THE COURT:  All right.  So I'm going to call the case

3    of Alan Dershowitz versus Cable News Network.

4            We're here today regarding the defendant's motion for

5    summary judgment.  That document is on the CM/ECF system as

6    docket entry 213.  Obviously there's a statement of facts that

7    comes along with that.  I have as well the response at docket

8    entry 252, and then the reply docket entry 263.  I also have

9    access to the entire CM/ECF system in front of me.  So if

10   either side needs to direct me to any other filings, just

11   please let me know.  And I've carefully read all of your

12   submissions.

13           So let me start off with appearances.  And let me say

14   it's very nice to see you all in person after all this time.

15           MR. WILLIAM:  Your Honor, good afternoon.  On behalf

16   of Alan Dershowitz, my name is John Williams.

17           THE COURT:  Nice to see you.

18           MR. SCHWEIKERT:  Good afternoon, Your Honor.  Mark

19   Schweikert.

20           THE COURT:  Nice to see you.  And do you want to make

21   an appearance as well?

22           MR. ROSETTA:  Sure, Your Honor.  My name is David

23   Rosetta.  I'm a clerk for Mr. Williams.

24           THE COURT:  Great.  Nice to have the three of you

25   here.

1          How about for the defendant Cable News Network?

2          MR. LEMIEUX:  Good afternoon, Judge.  George LeMieux,

3    along with Kate Bolger, on behalf of CNN.  And our client is

4    here as well, Dana Nolan.

5          THE COURT:  Nice to see each of you.

6          And then if there's anyone else who needs to speak who

7    wants to make an appearance, just do so at the appropriate

8    time.

9          MR. LEMIEUX:  Thank you.

10          THE COURT:  Okay.  So I will tell you that it's pretty

11    rare for me to have hearings on Rule 56, but certainly this is

12    not the typical case.  And so I'm looking forward to hearing

13    the arguments from each side.  I have enjoyed reading your

14    submissions.  I appreciate the hard work that went into each of

15    those.

16          What I think would be good, although I don't know how

17    you have prepared, but I'm assuming, Mr. Bolger, that you're

18    going to kind of take the lead based on how it's been on Zoom.

19    How did you want to do it?  Did you have maybe like a 30-minute

20    presentation you wanted to make, was it an hour?  How is your

21    time frame?

22          MS. BOLGER:  Your Honor, it's about 45 minutes, but

23    some of that is video clips.  So it won't just be me droning

24    on.  And if Your Honor would like to do it another way,

25    obviously, I can do that.  But it's about 45 minutes with --

```
 1              THE COURT:  Not a problem.  So, obviously, we'll start
 2     with that, and then we'll have a response, which could be up to
 3     45 minutes.  You know, we'll see how that works.  It's not like
 4     an appellate argument where I've got lights that are going to
 5     make you have to sit down at a certain time.  I just really
 6     want you all to, you know, make your best arguments, and then
 7     we'll go from there.
 8              MS. BOLGER:  Great.
 9              THE COURT:  All right.  Before we start, though, any
10     issues, anything that we need to talk about other than get
11     right into it?
12              MS. BOLGER:  No, Your Honor.  I would love the
13     transfer rebuttal, but I think you've generally indicated we'll
14     do that.
15              THE COURT:  Yes, definitely we'll have some rebuttal.
16     And, frankly, you know, I don't want to go back and forth all
17     afternoon.  But, I mean, if there are points back and forth, we
18     can do a little of that.
19              MS. BOLGER:  I would also like some guarantees that
20     height doesn't count, Your Honor.  Because Mr. Williams is much
21     taller than I am behind the podium.
22              THE COURT:  So quick story there.  When our jury
23     trials are over, I often go back to meet with the jurors and
24     every jury comments on how short I really am in real life.  So
25     don't worry about height there.  But that having been said,
```

1    whenever you're ready.

2          MS. BOLGER:  Great.  Good afternoon.  As Your Honor is

3    aware, my name is Kate Bolger and I represent CNN.

4          This lawsuit is about a response that plaintiff

5    Alan Dershowitz gave as an advocate on the floor of the United

6    States Senate to argue for the acquittal of the then-president

7    of the United States during his first impeachment trial.  The

8    question he was answering was written by a United States

9    Senator.  It was asked of him by the Chief Justice of the

10   United States Supreme Court.  And when Mr. Dershowitz gave that

11   answer, which he did willingly, he chose to do it, he gave the

12   answer on the floor of the United States Senate with a hundred

13   senators sitting in judgment of the President of the United

14   States.

15         This lawsuit is about speech that's central to our

16   ideas of how we govern ourselves.  Plaintiffs, nonetheless,

17   brought a defamation lawsuit because he did not like the way

18   CNN edited a clip of his response, and he did not like the

19   commentary of CNN commentators on that response.

20         What plaintiff claims made this a defamation action,

21   rather than just a disagreement about governmental speech, was

22   an alleged conspiracy.  I hate to use the word "conspiracy."

23   An alleged deliberate scheme to defame plaintiff.  As imagined

24   in the complaint, the plaintiff's thought was that there was

25   one clip that was edited and messed up what Mr. Dershowitz

1  said, then it was sent out all across CNN, and all CNN

2  commentators were told to comment on specifically that clip.

3          We move to dismiss this case.  And Your Honor said,

4  you know what, I'm going to let the plaintiff try to prove that

5  allegation, to try to prove that deliberate scheme.  And now

6  here we are at the end of discovery and there is no evidence of

7  that deliberate scheme or any other evidence of actual malice.

8  There's no evidence of doctoring a clip.  There's no evidence

9  of a conspiracy.  There's no evidence of intent to defame.

10 There's no evidence of knowing falsity.

11         Instead what the evidence has shown is that the CNN

12 speakers and decision-makers were good faith actors who watched

13 the response live, who made their judgments independently, and

14 who believed they were accurately characterizing what

15 Mr. Dershowitz said.  They believed that in January of 2020,

16 Your Honor, and they believe it now, and they will always

17 believe it.

18         Based on this record, this Court should grant summary

19 judgment on one of three independent grounds.  One is that the

20 plaintiff has not established that CNN acted with actual

21 malice.  Two is that the statements are opinion.  And three is

22 that the plaintiff will never be able to prove that it was CNN

23 that damaged him because he had already testified in another

24 case that his reputation had been ruined.

25         THE COURT:  Let me ask you this.  The three parts that

1  you just announced, is that kind of looking at the claim in

2  order or is that strongest argument to weakest argument?

3       MS. BOLGER:  Your Honor, it's looking at the claim in

4  an order that I think is frankly most consistent with your

5  decision on the motion to dismiss.  I actually think the

6  opinion argument is an absolute slam dunk, Your Honor, but I'm

7  going to go with that second.

8       THE COURT:  Okay.  No, I understand.  The only reason

9  I ask that is because the actual malice argument really is

10 based on the current state of the law, New York Times versus

11 Sullivan, 1964 case.  There's been talk that's getting louder

12 about, hey, that's a standard that shouldn't really be out

13 there anymore.  I mean, you know, at the time that that case

14 was decided, I mean, I was one year old.  I think there were

15 two news channels, right.  Channel 2 and Channel 4, and then

16 Channel 7 came along after.  And so I guess my question to you

17 is assuming that we didn't have that actual malice standard,

18 you think you still win, right?

19      MS. BOLGER:  I do, Your Honor.

20      THE COURT:  Okay.

21      MS. BOLGER:  I think, by the way, this case is a

22 wonderful testament to the actual malice standard because, of

23 course, Mr. Dershowitz absolutely had access to the channels of

24 communication to rebut what CNN said.  CNN gave him 33 minutes

25 of airtime, Your Honor, to say what he believed.  So I actually

1  think this case, in which Mr. Dershowitz had the ability to

2  speak freely, is an excellent ringing endorsement of the actual

3  malice standard, but I don't think I need it here, Your Honor.

4  There was no falsification.  Every witness believes they told

5  the truth.  And there was no negligence.  There's no

6  culpability here.  I think I should hold onto the actual malice

7  standard, but I don't think I need it.

8          THE COURT:  Understood.

9          MS. BOLGER:  So, Your Honor, in opposing our motion,

10 the plaintiff seems sort of hopelessly stuck at the motion to

11 dismiss stage.  The primary legal argument in his brief is that

12 Your Honor already made decisions about the speech at issue

13 here.  Mostly they seem to suggest that Your Honor made the

14 decision that the speech was false.  Of course that's not the

15 case.  As Your Honor remarked in the Fairchild Tropical Botanic

16 Garden case, any ruling at the motion to dismiss stage does not

17 preclude the Court from reaching a different result after

18 considering the record evidence.  And here that's very

19 important.

20         When Your Honor looked at the Congressional Record in

21 the motion to dismiss, it contained an error.  Your Honor,

22 Mr. Dershowitz concluded his remarks with this sentence, "but a

23 complex middle case is:  I want to be elected.  I think I am a

24 great President.  I think I am the greatest President there

25 ever was, and if I am not elected, the national interest will

1    suffer greatly.  That cannot be an impeachable offense."

2         Now, when Your Honor looked at that at the motion to

3    dismiss stage, the words "an impeachable defense" were not in

4    the Congressional Record.  I think they may not have gotten

5    picked up on a microphone.  But they were unquestionably said.

6    And as Mr. Dershowitz himself conceded in his opposition brief,

7    that line, quote, asserts that a president could do anything at

8    all to get elected.  And it was in particularly very relevant

9    to how CNN perceived what Mr. Dershowitz said on the floor of

10   the Senate.  And for that reason, of course, Your Honor, you

11   cannot -- you should be considering it now, when we did not

12   have it at the motion to dismiss stage.

13        So I'm going to start my argument today by showing you

14   the entirety of Mr. Dershowitz's argument.  Sorry.

15   Mr. Dershowitz's response to Senator Cruz on January 29th.

16        To set this the stage, though, Mr. Dershowitz first

17   commented on impeachment in 1998 when he said that a crime was

18   not necessary for impeachment.  Then in 2018 plaintiff decided

19   to write a book advocating that crime was necessary for

20   impeachment, which was a dramatic outlier among impeachment

21   scholars.  Then on January 27th Mr. Dershowitz changed his

22   argument again arguing that a crime or a crime like behavior

23   was necessary for impeachment.  At no point, in any of those

24   many different ways Mr. Dershowitz has talked about

25   impeachment, has he ever said that a crime was sufficient for

1    impeachment purposes or even that a crime was always

2    impeachable.  He has just said a crime is necessary.

3            Now, after the argument on January 27th,

4    Mr. Dershowitz was originally slated to go home, but he made

5    the decision to come back to the floor of the Senate and

6    represent Mr. -- represent the former president on

7    January 29th.  And at about 2:11 in the afternoon, he gave this

8    answer.

9            (Videotape now being played in open court.)

10           MS. BOLGER:  I'm sure you could hear he said "an

11   impeachable offense" as he turned away from the microphone.

12           Before Mr. Dershowitz even sat down in his seat, the

13   Internet was exploding with commentary about what

14   Mr. Dershowitz was saying.  Those comments were being made by

15   the mainstream media, by alternative media, by commentators on

16   Twitter.

17           The first line, Your Honor, is several mainstream

18   media organizations, all of them say, "Trump attorney Alan

19   Dershowitz:  'If a president does something which he believes

20   will help him get elected in the public interest, that cannot

21   be the kind of quid pro quo that results in impeachment.'"

22           Each of those links, Your Honor, links to

23   Mr. Dershowitz's making what we refer to in our brief as the

24   public interest line, the line that began "Every public

25   official I know".  All of those clips highlighted that clip.

1   They did not highlight the illegal quo line, which we'll talk

2   about in a minute.

3           If you turn to -- go to the next slide.

4           Here's The Daily Beast talking about it or The

5   New York Times.  And the New York times said, "Alan Dershowitz,

6   one of President Trump's defense lawyers, argued that anything

7   a president does to get re-elected could be considered in the

8   nation's interest and is therefore not impeachable."

9           The Daily Mail, all the way from London, had a

10  screaming headline.  "ANYTHING Donald Trump does to get himself

11  re-elected is UNIMPEACHABLE says Alan Dershowitz."

12          The Washington Post headline:  "Dershowitz argues that

13  a president is immune if he views his reelection as in the

14  public interest."

15          The New York Times -- and, Your Honor, this is at 2 --

16  sorry.  That Washington Post headline I just read, 2:13 p.m.

17  Mr. Dershowitz was still on the floor and talking, and

18  The Washington Post was already reporting "Dershowitz argues

19  that a president is immune if he views his reelection as in the

20  public interest."

21          At 2:59 p.m. The New York Times had a headline.

22  "Anything a president does to stay in power is in the national

23  interest, Dershowitz argues."

24          And it wasn't just media organizations.  It was also

25  individual Americans who were watching the impeachment live and

1    were commenting on it on Twitter.

2         Here's a slide of Bradley Moss, who was a national

3    security lawyer, who says, "Am I wrong to interpret

4    Dershowitz's argument to be that if a president were to walk

5    down the street and start executing people at random it's still

6    not impeachable if he claims he had a public motive?"

7         THE COURT:  So let me stop you there.  And maybe I

8    just should have done better in common law.  I don't know.  But

9    it seems that the commentators that said that last thing, which

10   is kind of similar to what Begala said, are forgetting the part

11   dealing with high crimes and misdemeanors, which has nothing to

12   do with quid pro quo.  I mean, the quid pro quo part is a

13   different section than high crimes and misdemeanors.  The

14   shooting part is under high crimes and misdemeanors.  So you

15   get impeached there, and it's just an easy decision.  What am I

16   missing here?

17        Like, for example, it would seem to me that it would

18   have been easy for commentators across the world to have said

19   abuse of power is an impeachable offense, a statutory crime is

20   not required.  They could have even gone to the Federalist

21   Papers and cited Federalist 65.  Because Federalist 65 talks

22   about injuries done to society.  But to basically forget about

23   the high crimes and misdemeanors part and say that Dershowitz

24   was saying you can kill somebody, I mean I don't -- that

25   doesn't follow from what he said at all.

 1          MS. BOLGER:  Your Honor, I think that you have done a

 2    better job making that point than Mr. Dershowitz did, and I

 3    think that's the point here, Your Honor.  The response was a

 4    set five-minute piece in which the words "high crimes and

 5    misdemeanors" were not used, right.

 6          The First amendment does not require any reporter to

 7    talk about everything that Alan Dershowitz has ever said about

 8    impeachment or even all of the various ways you can be

 9    impeached.  That's the Miami Herald case versus Tornillo.

10    Editorial discretion is allowed.

11          In these cases, these reactions -- and, Your Honor,

12    every single one of these reactions is before any of the CNN

13    statements were said out loud.  All of these reactions are

14    reacting to the response in which, Your Honor, Mr. Dershowitz

15    didn't do as good a job as you just did distinguishing between

16    quid pro quo and high crimes and misdemeanors.  This is

17    commentary on a response, not on impeachment law.

18          And, Your Honor, they kept going.  For example, here

19    is Jonathan Alter, a commentator, saying:  "The White House,

20    through Dershowitz, has landed on the 'So What?' defense.  It's

21    like Nixon's argument to David Frost:  'If the president does

22    it, it's not illegal.' Dangerous.  Dangerous.  Dangerous."

23          Or here's another one saying:  "Dershowitz is arguing

24    Nixon did no wrong."

25          Or Garry Kasparov, who I think we can all agree is

1  kind of smart, saying:  "Dershowitz is actually making the King

2  Louis XIV argument right now!  Trump is good for the country,

3  so anything he does to stay in power is in the national

4  interest, even if corrupt or illegal.  That's the language of

5  every king & dictator:  I am the end and the means justify me."

6         And Joe Walsh, a former Republican Congressman said:

7  "'L'Etat, c'est moi.' - Alan Dershowitz January 29, 2020,"

8  which, of course, is the Louis XIV line.

9         Your Honor, commentators across the political spectrum

10  in all form of media perceived Mr. Dershowitz as saying that

11  anything the president does to get elected, if he thinks it's

12  in the public interest, is unimpeachable.  And all of that

13  happened, Your Honor, before any single statement at issue in

14  this lawsuit was uttered by CNN.

15         So there are, of course, four statements at issue

16  here, Your Honor.  And I'm going to talk briefly about all of

17  them.  But one of the things I think that's important in

18  understanding what's happening here is that all of the speakers

19  believed, when they said them, that the statements were true

20  and they believe it now.

21         Now, in the opposition brief plaintiff seems to

22  suggest that falsity had been determined here.  That is not

23  correct.  Falsity has not been determined.  CNN disputes

24  falsity.  We just didn't move for summary judgment on that

25  grounds.

```
 1            We did move for summary judgment on actual malice.  So
 2     let's talk a little bit about what actual malice is.  Actual
 3     malice, Your Honor, was created by Justice Brennan in the
 4     Sullivan case.  And what he held there was a public official,
 5     and later public figures, must prove that the defendant acted
 6     with actual malice which he defined as a knowing or reckless
 7     disregard of the truth.
 8            Years later in the St. Amant case the Court talked
 9     about what reckless disregard was.  And the Court said that
10     reckless disregard is not an objective measure at all.  It's
11     whether the speaker actually entertains serious doubts as to
12     the veracity of the published account or was highly aware that
13     the account was probably false.
14            Now, it's very important, Your Honor, that this is a
15     subjective analysis.  What matters is what CNN thought.  And
16     while the plaintiff can establish subjective intent by
17     circumstantial evidence, the plaintiff misstates the standard
18     in their brief.  In the brief the plaintiff says that a
19     decision not to include purportedly contrary information is
20     actual malice.  That is incorrect, Your Honor.  It was
21     specifically rejected by the Eleventh Circuit in a case called
22     Levan versus Capital Cities.  In that case the Court said a
23     decision not to include purportedly contrary information
24     without more is irrelevant to the actual malice inquiry.  And
25     the Michel case, which they cite, does not hold otherwise.
```

```
 1            So when it comes to actual malice, the Supreme Court
 2   has been clear that the appropriate summary judgment standard
 3   is whether the evidence in the record could support a
 4   reasonable jury finding either that the plaintiff has shown
 5   actual malice by clear and convincing evidence or that the
 6   plaintiff has not, and the plaintiff must put forward evidence
 7   to defeat a summary judgment motion.  That's the Anderson v
 8   Liberty Lobby case.  There is no such evidence here.
 9            So let's talk about the first statement.
10            THE COURT:  Let me stop you for one second.
11            MS. BOLGER:  Yes.
12            THE COURT:  I interrupted you with a few questions.  I
13   don't want you to think that your time is going to be shortened
14   for that.  So just get out what you need to say, and don't
15   rush.
16            MS. BOLGER:  Your Honor, I want you to ask me any
17   questions you possibly have because I want to tell you as much
18   as I possibly can, Your Honor.
19            THE COURT:  Understood.
20            MS. BOLGER:  So, Your Honor, the first allegedly --
21   and also I speak quickly because I'm a native New Yorker, and
22   it's a habit.  And I'm sorry.  I'll get better.
23            THE COURT:  I'm not worried about myself.  I'm worried
24   about Karl.  So if you can just --
25            MS. BOLGER:  I always feel like I owe the court
```

1    reporter a drink at the end the hearing.

2          So, Your Honor, the first allegedly defamatory

3    statement at issue here was made on a web-based show called

4    "Anderson Cooper Full Circle."  It was a colloquy between

5    Mr. Cooper and a woman named Anne Milgram, who's now the head

6    of the DEA.  And was there as a legal analyst giving commentary

7    on what happened on the floor of the Senate that day.

8          The clip that was used in that broadcast, which was

9    the public interest clip, was selected by Chuck Hadad, who was

10   an executive producer.  He had watched the impeachment live.

11   He testified he reached his own independent conclusions about

12   it.  He testified he believed that the clip was a fair summary

13   of Dershowitz's arguments.  He testified that he was aware that

14   discussion of that clip was, to use his words, blowing up the

15   Internet and that what was being said on the Internet was

16   consistent with his understanding of what Mr. Dershowitz said.

17         Anderson Cooper testified that he watched the

18   impeachment live and he reached his own independent conclusions

19   about Mr. Dershowitz's comments.  He believed and testified

20   that anyone with any sense of news judgment would have focused

21   on the portions of Mr. Dershowitz's speech that he focused on.

22   And he believed it was a fair summary.  To give you a break

23   from my voice, here is what Mr. Cooper said.

24         (Videotape now being played in open court.)

25         MS. BOLGER:  Ms. Milgram testified that she believed,

1   based on what she watched, that Dershowitz was saying "that a
2   president could not be impeached if the president engaged in
3   conduct that the president believed was in the public interest;
4   and I believe he left open the possibility of a vast amount of
5   permissible conduct because if the president was acting in the
6   public interest then that could not be impeachable."
7        Now, the second statement at issue was uttered by
8   Joe Lockhart on the "Erin Burnett OutFront" program at about
9   7:11 p.m.
10       Just so you understand, Your Honor, what this news day
11  was like; 7:11 p.m. was during a break in the impeachment
12  proceeding.  The impeachment proceedings resumed immediately
13  after the -- so it was a constant 24-hour news cycle about
14  these impeachment proceedings.  And Joe Lockhart testified that
15  he watched the impeachment proceedings completely and totally.
16  And he did, in this case, see Mr. Dershowitz's argument at home
17  in his house where he was watching the impeachment proceedings.
18  And he had an immediate reaction to it.  And we know that, Your
19  Honor, because he Tweeted about it simultaneously with watching
20  it.
21       These are his Tweets, Your Honor.  Let's please
22  remember that Mr. Dershowitz was speaking on the floor of the
23  Senate at 2:11.  Mr. Lockhart's first Tweet is at 2:13 p.m.,
24  Your Honor, alone in his house without any contact from CNN.
25       If you look at the second Tweet, the 2:15 Tweet, he

1   says, "Dershowitz is making a crazy argument.  If Trump

2   believes getting another country to manufacture dirt on a

3   political opponent and he thinks its in the public interest for

4   him to be reelected, not his opponent, he can do whatever he

5   wants.  That's just a corporate argument."  2:15 p.m., Your

6   Honor.

7           At 2:21 p.m. Mr. Lockhart Tweeted:  "Dershowitz --

8   cheating in an election is ok as long as the candidate thinks

9   he's a better candidate."

10          So we know that Mr. Lockhart independently sitting on

11  his own in his house understood Mr. Dershowitz's argument to be

12  that a president can commit a crime or engage in any activity

13  if he was acting in the public interest to get re-elected.

14          Back at the studio, unbeknownst to Mr. Lockhart,

15  Susie Xu, who was the executive producer of the Erin Burnett

16  show, selected a clip that she thought represented

17  Mr. Dershowitz's argument.  It was the public interest clip.

18  She testified that she knew there was considerable commentary

19  about it and that's why she selected it.  And she believed it

20  to be an accurate quotation.

21          As for Mr. Lockhart, well, Mr. Lockhart testified that

22  his was "an argument and an opinion that I believe is

23  appropriate, and it is an argument and an opinion that I

24  believe today and I will also tell you it is my argument and my

25  opinion and no one else's."

1            The third allegedly defamatory statement was made in

2    an op-ed column by Paul Begala.  It was published on the web

3    page "Political Op-Eds and Social Commentary."  It included an

4    editor's note that said, Begala is a democratic strategist and

5    CNN political commentator and the opinions expressed in this

6    commentary are his.

7            Begala testified that he watched the response live

8    actually on an airplane, because modern technology is amazing,

9    and he reached his own independent conclusions about what he

10   saw.  And we know that, Your Honor, because before CNN asked

11   him to write the op-ed, he Tweeted about Mr. Dershowitz's

12   arguments and he Tweeted it's "Akin to Nixon telling David

13   Frost, 'If the president does it, it isn't illegal.' Only this

14   time it's 'If the President thinks it will help his

15   re-election, and he thinks his re-election helps the country,

16   it isn't illegal.'"  Before any contact with CNN that's what

17   Mr. Begala had to say.

18           He wrote his op-ed.  He came back and it was

19   published.  And he testified he believed he got it right.  He

20   said, I thought his argument -- he thought Begala's argument

21   "was similar and I think it holds up.  People can disagree with

22   my opinion, but I think I stated it very clearly and I still --

23   I still hold to that opinion.  It's my opinion."

24           After Mr. Begala wrote the article, a clip was added

25   to the article.  Mr. Begala had no idea that was done.  He did

1  not see the clip.  I believe he testified that to this day he

2  hasn't seen the clip.  The clip was actually edited by an

3  editor named Brett Harman who was working on his own, making

4  his independent judgment, and placed the clip into the article.

5       The final defamatory statement, alleged defamatory

6  statement was made on the "New Day" program on January 30th at

7  6:17 in the morning the next day.  And it was a longer

8  discussion of Mr. Dershowitz's statements.  And, in fact, there

9  were two clips of Mr. Dershowitz's statement that aired during

10  the "New Day" show.  One was the public interest line, and the

11  other was the greatest president line that I began this

12  discussion about.

13       Berman, John Berman, the anchor, was responsible for

14  selecting the clips.  He testified that he thought that he

15  reached his conclusions about what were the most relevant clips

16  and his conclusions about plaintiff's response independently.

17  He testified he was aware of the news coverage about the

18  response.  And he testified that he believed that the

19  statements he made were accurate.

20       He said, "I feel I presented the full context of the

21  argument that he was making, which was a novel argument as far

22  as I was aware.  I had not heard it before that if you believe

23  your action is in the public interest, and I'm trying to get

24  re-elected in your view in the public interest, then the action

25  cannot be impeachable.  That was the context, I had not heard

1   that argument before, he said it twice.  And I believe then,

2   and I believe now, that we presented that in an accurate way."

3          Now, Your Honor, almost as soon as CNN published these

4   stories, Mr. Dershowitz began to publicly state that CNN and

5   other media organizations were misstating what he said,

6   intentionally misstating what he said.  So did CNN do?  They

7   invited him on CNN's air.  On January 30th, the next day, Your

8   Honor, Mr. Dershowitz appeared during Wolf Blitzer's television

9   program for 15 minutes, Your Honor, which is an eternity in

10  television news.  And during that interview he didn't just, you

11  know, say a couple of things.  He actively debated with

12  Wolf Blitzer and Jeff Toobin about what he had said on the

13  floor of the Senate.  It was a frank discussion of his belief

14  that CNN had misquoted him.

15         And then later that same day at midnight

16  Mr. Dershowitz appeared on Chris Cuomo's show.  And he was

17  there for 18 minutes making the same points he was making on

18  Wolf Blitzer's show, saying to a CNN audience on CNN's air that

19  CNN had misquoted him and gotten it wrong.

20         In short, Your Honor -- oh, and by the way, Your

21  Honor, although Mr. Dershowitz says this in his brief, he was

22  invited back on CNN the following month to just give a regular

23  commentary and declined.

24         In sum, Your Honor, the evidence has shown that there

25  was not, as plaintiff alleged, just one clip made of the

1  response and then circulated around.  In fact, there were four

2  clips cut by four different people exercising four different

3  editorial judgments.

4       The evidence has shown that there was no coordination

5  between the decision-makers among the shows.  They never talked

6  to each other.  There was never any interaction between these

7  four shows.  They show that each decision-maker acted

8  independently; that each commentator was commenting not on the

9  clip, as Dershowitz alleged, but on the response as they saw

10 it; that each decision-maker was aware of widespread reporting

11 about his answer; and each decision-maker believed the

12 statements they were making was consistent with the widespread

13 reporting on the matter.  And each decision-maker, and this is

14 most important, of course, testified that the statements were

15 true when they were spoken, and they are true now.  And, by the

16 way, CNN was so unafraid of its reporting that it then allowed

17 Mr. Dershowitz to come on the air the next day for 33 minutes

18 to rebut it.  There is no evidence here of actual malice.

19      Now, in light of these, what the law calls,

20 professions of good faith, Mr. Dershowitz was required to come

21 forward and provide actual evidence of actual malice, and he

22 hasn't done so.

23      I do just want to bring up the point that the whole

24 reason that Mr. Dershowitz's claim was a defamation claim was

25 because it was a deliberate scheme.  He alleged a deliberate

1   scheme to do this.  And there was found no evidence of that

2   deliberate scheme.  There were lots of clips, there were lots

3   of decision-makers, and there was no coordination.

4        In the opposition, the closest the plaintiff gets to

5   talking about a deliberate scheme is to talk about an email

6   which refers to, in the opposition, a news account, which was

7   an email that contained a news story written by someone named

8   Nikki Carvajal about what Mr. Dershowitz said on the floor of

9   the Senate.  And that email went to a bunch of news people at

10  CNN.

11       Plaintiff tries to spin some kind of conspiracy out of

12  the fact that this one article was circulated.  But that

13  particular dog won't hunt, Your Honor.  And that's for two

14  reasons.  One is, there is nothing false and defamatory in that

15  article.  Mr. Dershowitz did not sue CNN about that article.

16  In fact, Mr. Dershowitz amended his complaint after he knew

17  about the existence of that article and did not sue on that

18  article because it is not false and defamatory.  So the

19  allegation is that CNN circulated a perfectly truthful article

20  about the impeachment argument, and that can't be evidence of

21  actual malice.

22       The other thing is that if it were some kind of

23  conspiracy, it would be a poor one.  That article did not go to

24  Joe Lockhart, did not go to Anne Milgram.  Came to Paul Begala

25  after, after he had already made his statements on Twitter

1    about what he believed to be true, and did not go to Brett

2    Harman.  Your Honor, he's just spitballing on that one.

3          The other argument he makes is that the topic of

4    Mr. Dershowitz's argument came up on January 29th in an

5    all-hands telephone call that used to happen at CNN when

6    Mr. Zucker was there.  But this argument fails for the same

7    reasons that the argument related to the Nikki Carvajal article

8    fail.  One, there's no allegation that anything that was said

9    on that call was false or defamatory.  They certainly talked

10   about Mr. Dershowitz's argument.  Everybody was talking about

11   Mr. Dershowitz's argument.  But there's no allegation that what

12   they said was false or defamatory.  And, Your Honor, this is

13   even a worst conspiracy.  Mr. Begala, Mr. Lockhart, Mr. Cooper,

14   and Ms. Milgram, most of our speakers, were not on that call.

15   They did not hear what was said.

16         For all of these reasons there's no evidence of a

17   conspiracy, as plaintiff promised at the beginning of the case.

18         Your Honor, Mr. Dershowitz's primary argument, and the

19   one you a little just hinted at, Your Honor, is that CNN should

20   have doubted its statements because of other statements

21   Mr. Dershowitz made about impeachment, and that they knew

22   better, sort of, in terms of how to make these statements.

23   And, Your Honor, that argument has also changed quite a bit

24   over time and is not successful here.  And the reason for that

25   is severalfold.

1          First off, Your Honor, this is the Congressional

2    Record, which includes the language that the plaintiff said was

3    omitted.   That's in blue.   And then the purple language is the

4    language that's in a clip way down in a next paragraph after he

5    changes the topic, right.   And, Your Honor, the language is,

6    "The only thing that would make a quid pro quo unlawful is if

7    the quo were some way illegal."   Of course that line does not

8    make the sense that plaintiff thinks it did, and Mr. Dershowitz

9    testified as much.

10         Mr. Dershowitz testified when I asked him, "Are you

11   saying that if the quid were illegal it wouldn't make the quid

12   pro quo unlawful?"   And Mr. Dershowitz responded, "It would.

13   It would.   I -- I thought I had said if the quid or the quo,

14   but I guess either I slipped up or reporter slipped up.   I

15   thought I said quid or quo.   That's what I meant."

16         Mr. Dershowitz is testifying that the very argument

17   that he hung his complaint on to begin with had a slipup in it.

18   He meant to say something different.   Your Honor, that is

19   enormously compelling evidence that this was not as clear as

20   Mr. Dershowitz intended it to be.

21         The other thing, Your Honor, that is crystal clear is

22   that every CNN person, from the top to the bottom, from the

23   editors to the executive producers to the speakers, everybody

24   testified that they did not understand the illegal quo argument

25   to qualify anything else Mr. Dershowitz said.   Everybody

 1  testified to that, Your Honor.

 2          And again, actual malice is a subjective standard.

 3  What matters is only what CNN were thinking.

 4          And here's Paul Begala explaining his thinking.

 5      (Videotape now being played in open court.)

 6          MS. BOLGER:  It swallows it whole, Your Honor.

 7          THE COURT:  Is Mr. Begala a lawyer?

 8          MS. BOLGER:  Mr. Begala is a lawyer, Your Honor.

 9  Well, I'll say this.  He went to law school and I believe he's

10  admitted to the Bar, but I don't think he practices.

11          Your Honor, in addition to Mr. Begala, everybody else

12  testified consistent with Mr. Begala.  Although one of the

13  things that's most amazing about this case, and talk about no

14  deliberate scheme, every single CNN witness testified about

15  what they saw and what they believed, and nobody gave the same

16  answer to the question, Your Honor.  That's Mr. Begala's

17  answer.

18          And here is Mr. Cooper's answer.  Mr. Cooper was

19  asked, "Don't you think it's important to a viewer who has not

20  interviewed Alan Dershowitz a number of times to understand

21  that sentence," the illegal quote sentence, "in the context of

22  the entirety of what he said in answering Senator Cruz's

23  questions?"

24          And Cooper said, "I don't even understand that

25  sentence.  There is no one in this Chamber who would regard

1    that as... The only thing that would make a quid pro quo

2    unlawful was if the quo were in some way illegal.  What if the

3    quid were illegal?  Would that be okay?"

4            "I am asking, would the quid be okay?  Because if the

5    quid would be okay then that means you could break the law;

6    because the quid is okay, because if the quid is not in some

7    way illegal, then it's okay.  So it seems like a weird way to

8    phrase something that seems so important, and he's really

9    trying to get people to know."

10           Joe Lockhart testified that he didn't -- he was asked,

11   "But you did not use the words 'illegal, unlawful or corrupt.'"

12   And he said, "I didn't, but I'll tell you why.  Because I

13   didn't think that was the point he was trying to make, I

14   thought he was trying to make a different point and I offered

15   my opinion of the point he was really trying to make, from a

16   political perspective, that we are going to make this standard

17   so impossible to reach the President is not going to be held

18   accountable.  That's just my opinion."

19           And finally, Your Honor, John Berman testified.  "He

20   said it," the illegal quo line, "as part of an answer to a

21   question about whether quid pro quos happen in foreign policy,

22   and then after he said that he went onto this new argument

23   about running for re-election and actions being in the interest

24   of re-election and believing that those actions were within the

25   public interest, and that was argument I had not heard before

1   and it seemed disconnected from the previous statement, and

2   frankly, the language that he used before was -- he was talking

3   about a quid pro quo being unlawful if the quo were in some way

4   illegal.  So I don't see how that related to the very next

5   thing."

6           So, Your Honor, that's four separate individuals for

7   CNN testifying in four different ways that they did not

8   understand the illegal quo line to modify the rest of

9   Mr. Dershowitz's response.  That undercuts any claim that they

10  were willfully ignoring anything.

11          Now, in the opposition the plaintiff sort of makes an

12  argument that on the January 27th argument Mr. Dershowitz said

13  that a crime was necessary for impeachment and that somehow

14  contradicted what he said on the floor of the Senate.

15          Your Honor, first of all, they never really point to

16  what line that is in the January 27th impeachment.  Second of

17  all, it's wildly improbable to suggest that a media

18  organization has to report everything a speaker says about

19  impeachment over the course of their career, especially,

20  whereas here, Mr. Dershowitz changes his mind often.  And in

21  addition, every witness testified that the arguments

22  Mr. Dershowitz made were new, that they hadn't heard them

23  before, that they were divorced from what he had said in the

24  past.

25          So that information that they published on the

```
 1   January -- the information on the January 27th argument did not
 2   inform anybody's understanding of the January 29th argument.
 3         And so too, Your Honor, to get back to your question
 4   about high crimes and misdemeanors, their understanding of
 5   impeachment law wasn't at issue either.  These were all
 6   statements in response to what Mr. Dershowitz said on
 7   January 29th.
 8         And not for nothing, Your Honor, but everyone, all
 9   those commentators that I showed you at the beginning, the
10   social media accounts, the news organizations, Garry Kasparov,
11   former congressman, everybody heard it the same way as CNN did.
12         THE COURT:  So let me ask you this.  One of the
13   questions that was asked of John Berman was something like did
14   you consider how a reasonable person would have viewed the
15   reports, something like that.  I'm paraphrasing.  But really
16   it's the reasonable person part that I'm interested in.
17         MS. BOLGER:  Right.
18         THE COURT:  What's your thought of what's a reasonable
19   person now?
20         MS. BOLGER:  Your Honor, I think a reasonable person
21   doesn't have much to do with actual malice.  So a reasonable
22   person is, of course, when you are assessing whether something
23   is capable of a defamatory meaning, the test is that you're
24   supposed to look at what a reasonable person is.  And I think
25   the law is, right, a reasonable person is someone of average
```

1    intelligence in the United States of America.

2            THE COURT:  And that's really my question.  Because

3    ultimately my decision on summary judgment, on Rule 56, the way

4    I look at it is, if I have all the facts and if all of these

5    facts were to go to the jury for a jury to hear it, but then at

6    the directed verdict stage I'm going to grant directed verdict,

7    then I should grant summary judgment.

8            MS. BOLGER:  Yes, sir.

9            THE COURT:  That's the way I look at it.

10           MS. BOLGER:  Yes, sir.

11           THE COURT:  It's a pretrial directed verdict is really

12   kind of the way it makes sense to me.

13           As far as reasonable person goes, though, I know what

14   I think.  I know what these commentators think.  I know in your

15   brief you mentioned Garry Kasparov, you mentioned Adam Schiff.

16   I'm not sure who's reasonable.  I mean, luckily you didn't

17   mention Keith Olbermann.  But I'm just trying to figure out,

18   like, who is reasonable.  Do I look at just what I think?

19           MS. BOLGER:  Well, Your Honor, for the actual malice

20   standard you look only at what CNN thinks, right.  Nobody else

21   matters.

22           THE COURT:  Because it's a subjective standard.

23           MS. BOLGER:  Because it's a subjective standard, Your

24   Honor.  So the actual malice standard, what you're looking for,

25   and there is none, is clear and convincing evidence that there

1   was subjective doubt in the truth.  Not half.  The tie doesn't

2   go to the runner.  It's clear and convincing evidence that the

3   speakers subjectively doubted what they were saying.  That's

4   what you're looking for in the actual malice context.

5           The reasonable reader isn't relevant nor, by the way,

6   should they be, Your Honor.  You don't want reporters making

7   decisions about what they think someone's going to hear.  You

8   should want reporters making decisions about what they think is

9   truthful.  And that is what happened here, right.  This isn't a

10  reasonable reader test.  This is these guys who said these

11  words on this day based on this video.

12          THE COURT:  Okay.

13          MS. BOLGER:  Your Honor, the other argument that

14  plaintiff makes in his opposition which is worth addressing,

15  but I confess I don't understand, he seems to argue Mr. Berman

16  fabricated a quote from Mr. Dershowitz.  And that's just wrong,

17  Your Honor.  Here is Mr. Dershowitz and --

18      (Videotape now being played in open court.)

19          MS. BOLGER:  All right.  Mr. Berman directly quoted

20  Mr. Dershowitz.  It's not totally clear to me what

21  Mr. Dershowitz's argument is here, but that is a direct quote

22  from Mr. Dershowitz.

23          At bottom, Your Honor, no decision-maker or speaker at

24  CNN thought or thinks the statements they made were false even

25  now.  And plaintiff has produced no concrete evidence, as they

1   were required, to rebut that presumption.

2          But, Your Honor, what if you think they got it wrong,

3   right.  Which is possible.  And Your Honor just alluded to it

4   when you were thinking about the reasonable person test, right.

5   Who is the person who's supposed to be deciding here?  What if

6   they got it wrong?  Well, Your Honor, we still win because of

7   the decision in Time, Inc. versus Pape.

8          Time, Inc. versus Pape is an incredibly important

9   decision not just because I think it helps me win this case but

10  because it is important to understanding how we're supposed to

11  talk to each other in this democracy about matters of public

12  concern.  In Pape the journalist read a government report on

13  police brutality and made what the Supreme Court characterized

14  it as a deliberate choice to interpret it in one way.

15         Now, the article presented this report as making

16  conclusions that, in fact, were simply allegations.  So the

17  article was wrong, right.  And the plaintiff argued that the

18  fact that the article was wrong and has stated something that

19  was not true was a knowing falsehood.  And the Supreme Court

20  said no.  The Supreme Court said that the report was

21  extravagantly ambiguous and that because of that any rational

22  interpretation about what was said in that report would be

23  protected.

24         Very importantly, Your Honor, the article that was

25  published did not say that the report was ambiguous.  The

1   reporter did not believe the underlying document was ambiguous.

2   The reporter thought the reporter got it right.  It was the

3   Court and the state of being that determined that the report

4   was ambiguous.

5           And the Supreme Court held a speaker's deliberate

6   choice of how to characterize an event that bristled with

7   ambiguities is not enough to create a jury issue of malice even

8   if the statement arguably reflects a misconception where the

9   speaker was simply adopting one of a number of possible

10  rational interpretations of the ambiguous statement.  And the

11  Court said that was a very important rule.  Because to rule

12  otherwise would be to impose a stricter standard of liability

13  on errors of interpretation than on actual errors of historic

14  fact.  That's what the Supreme Court said.

15          This case is clearly governed by Pape both in practice

16  and in spirit.  The Pape ruling, Your Honor, is very important

17  in understanding how to talk about public affairs.  For free

18  speech to thrive in the marketplace of ideas, you can't run off

19  to court for a $300 million defamation claim every time you

20  disagree about how to read a public document, as in Pape, or

21  here how to understand what someone says in the most important

22  chamber in the United States of America.  We have to be able to

23  talk about what people say on a good faith basis.  And in the

24  absence of any allegations of bad faith because these

25  statements were rational interpretations of an ambiguous

1    response, they are protected by the Pape rule.

2          Now, in the papers Mr. Dershowitz argues that his

3    response was not ambiguous.  Your Honor, I think he was

4    hopelessly muddled.  And, in fact, Mr. Dershowitz testified to

5    many things that would make that clear.  Not only did he

6    testify that he meant to say "quid or quo" when he said "quo,"

7    not only did he testify that, oh, when he said what Abraham

8    Lincoln did with the troops was a quid pro quo but it wasn't

9    really a quid pro quo, I didn't really mean that.  He also

10   testified, as you see on the slide.

11         He said, "This is an answer to a question that is

12   given spontaneously.  It is not written out.  Obviously, every

13   single word of it can't be parsed together."  He admitted that

14   people misunderstood him.  He said other people made mistakes

15   about the response.

16         His statement was ambiguous.  And, Your Honor, of

17   course it was.  He was an advocate.  He was arguing on behalf

18   of his client.  He was trying to get his client acquitted.  He

19   was doing what I'm doing, Your Honor.  I'm advocating a

20   position.  That's not -- those are not -- that is not an

21   unambiguous thing to do.

22         He is also, of course, an academic who has a life-long

23   reputation for pushing the envelope.  So the ambiguity I think

24   is fairly clear.

25         Now, in the papers the plaintiff makes the argument

1    that his statement wasn't ambiguous for two reasons.  They

2    first say that Mr. -- they first say that no one at CNN said

3    the response was ambiguous.  That's actually wrong, Your Honor.

4    Both Ms. Milgram and Mr. Cooper said on air that what

5    Mr. Dershowitz said was confusing.  Ms. Milgram called it a

6    head-scratcher.  So it's wrong as a matter of fact.  And it's

7    also irrelevant.

8         Pape has no requirement that the published article

9    says the underlying document is ambiguous.  In fact, that's

10   literally what did not happen in Pape.  What happened in Pape

11   was the reporter made a deliberate choice they thought was

12   right and it turned out to be wrong.  That's the same as here.

13        The other argument they made is that John Berman at

14   one point said, well, Dershowitz is not ambiguous here, and

15   then he cites the greatest president line.  Mr. Dershowitz

16   argues that that means there's no ambiguity.  Well, I disagree

17   that that could even relate to anybody else's statement.  But

18   in Mr. Berman's case that's the same as the reporter in Pape.

19   He made a deliberate choice.  He thought he made the right

20   choice.  Maybe it was wrong, but that wasn't actual malice.

21        And, Your Honor, it's very clear that the statements

22   were rational, right, that the defendant's statements were a

23   rational interpretation of what Mr. Dershowitz said even if

24   they got it wrong.  As Mr. Cooper said when he testified about

25   the illegal quo line, he said if he wanted to qualify it with

```
 1    that sentence, he would have put them together.
 2           In addition, further evidence of the rationality of
 3    CNN's response is that over 200 constitutional scholars wrote
 4    to the Senate to repudiate Mr. Dershowitz's response.  And they
 5    said, "To accept such a view would be to give the president
 6    carte blanche to corrupt American electoral democracy."
 7           Constitutional law professor Erwin Chemerinksy looked
 8    at what Mr. Dershowitz said and said it was "absurd and
 9    outrageous," and that plaintiff's argument meant that "a
10    president could break any law or abuse any power and say that
11    it was for the public interest because the public interest
12    would be served by his or her election."
13           I think Mr. Chemerinsky is the reason I graduated from
14    law school, because I used to use his hornbook.  So I think
15    he's particularly important here, Your Honor.
16           THE COURT:  You know, that's a good quote that you put
17    up there.  Because if Chemerinsky thinks that -- you know, it's
18    interesting.  Because the way I saw what Mr. Dershowitz said
19    and the way I read it, he didn't say anything of the kind.  But
20    that's what Chemerinsky thought.  So, you know, it's
21    interesting.
22           MS. BOLGER:  Your Honor, I think that really goes to
23    what's so weird about this defamation case.  What this is, Your
24    Honor, is American citizens disagreeing about something that
25    was happening in the center of our republic.
```

```
 1            THE COURT:  I agree with you.  But at no point did the

 2   plaintiff say a president could break any law.  I mean, I could

 3   look at that statement over and over again.  It's just not

 4   there.  And that's -- I think Chemerinsky, isn't he the dean of

 5   Berkeley now?

 6            MS. BOLGER:  He is, Your Honor.  But, Your Honor, that

 7   just goes to show that this is a rational interpretation.  That

 8   people heard this differently than you did, Your Honor, and

 9   that is not a defamation case.

10            THE COURT:  If I hear things that way and I rule that

11   way, I get reversed.  I mean, I don't know how you can hear

12   things that just weren't said.

13            MS. BOLGER:  Because, Your Honor --

14            THE COURT:  But the media's different.  So I

15   understand.

16            MS. BOLGER:  Well, reversal in a democracy isn't

17   supposed to be by court order, right.

18            THE COURT:  Right.

19            MS. BOLGER:  We believe in a marketplace of ideas.  We

20   believe that Mr. Chemerinsky can say one thing and The New York

21   Times can say one thing and CNN can say one thing, and you

22   really disbelieve it, Your Honor.  But the way you get reversed

23   in a democracy is that the other guy's argument losses, right.

24   The wrong argument is supposed to lose in the marketplace of

25   ideas.  That's what we believe in the Bill of Rights, which I
```

1   notice is right behind me.  That is meant to be the way the

2   First Amendment works, Your Honor.

3         THE COURT:  I don't disagree with you.  I'm just

4   saying, you know, it's interesting.  And weren't they

5   co-counsel on the O.J. case together?  So it's kind of

6   interesting.

7         MS. BOLGER:  I think they were, Your Honor.

8         Your Honor, the other argument that plaintiff makes is

9   that CNN acted with actual malice and is not within the

10   protections of Pape because they left out contradictory facts.

11   The contradictory facts they claim we left out is the illegal

12   quo statement.

13         And, Your Honor, this case is nothing like Schiavone.

14   And the reason for that is that in Schiavone there was an

15   exculpatory fact that the reporter knew was inconsistent with

16   what they published and he made choice not to include it,

17   right.  The report said that there was no criminal activity.

18   The article implied there was criminal activity.  It

19   180 degrees wrong.

20         In this case, Your Honor, there is no contrary fact

21   because the CNN reporters -- and remember, Your Honor, they're

22   all that matter -- did not hear the illegal quo line the way

23   plaintiff says it.  They do not think it was a contradictory

24   fact.  So we are not in the world of Schiavone.

25         For all these reasons, Your Honor, we believe that the

1   plaintiff has failed to carry his burden of demonstrating that

2   a jury could find by clear and convincing evidence that the

3   speakers acted with actual malice.  So I think I win on that

4   ground, Your Honor.  But if I haven't convinced you, we also

5   win on the grounds that the statements constitute the

6   constitutionally protected opinions of the speakers.

7          So under Florida law pure opinion is protected.  And

8   pure opinion is defined as opinions that are based either on

9   facts that the communicator sets forth explicitly in a

10  publication or facts that are otherwise known or available to

11  the reader or listener as a member of the public.

12         At the motion to dismiss stage, Your Honor, I tried to

13  convince you it was opinion then, and you declined to agree

14  with me.  But you specifically said, Your Honor, that you would

15  look at a more fully developed record.  And the thing you asked

16  me to fully develop was, quote, the underlying facts were known

17  to the audience.  And here, Your Honor, we think we've done

18  exactly what you asked us to do.

19         The statements -- the undisputed facts that form the

20  basis of the CNN decision are now in the record.  And the

21  record it is now clear that plaintiff made these arguments on

22  the floor of the US Senate during the impeachment trial of the

23  President of the United States, the biggest, broadest, largest

24  stage you could ever hope for, Your Honor, one that

25  Mr. Dershowitz chose to put himself on.

1        It was the Trump -- evidence now shows that the Trump

2    impeachment story was the top news story in early 2020.

3        The undisputed evidence shows that the response and

4    the entire impeachment trial were aired and live-streamed in

5    full by CNN and other media outlets.  And, Your Honor, they're

6    still there.  If you want to watch what Mr. Dershowitz says,

7    you can go to CNN and look it up.

8        Your Honor, the undisputed evidence shows that the

9    response obtained widespread coverage in the media.  It was all

10   over the place.  In the words of Chuck Hadad, it was blowing up

11   the Internet.  And much of that reporting was consistent with

12   CNN's reporting.  Even before CNN spoke people were reading

13   Mr. Dershowitz's argument in the way that CNN read the

14   argument.  All of those facts, Your Honor, are now in the

15   record for you to conclude that the public was aware of the

16   facts on which the CNN reporters based their opinion.  Your

17   Honor, that's why I said I think this is such a slam dunk.

18       And I will also point out, which I did at the motion

19   stage, that most of the language used in these responses are

20   marked by the rhetorical hyperbole that is the hallmark of

21   American jurisprudence.

22       The Berman statement talks about blowing your mind.

23   The Begala statement talks about something being bonkers and

24   ludicrous.  The Milgram statement -- Anne Milgram refers to it

25   as real head-scratcher.  And the Lockhart statement is the most

1   opinony of them all.  He refers to it as un-American and then

2   says these are the types of arguments you hear from Stalin,

3   Mussolini, and Hitler.  That type of language the United States

4   Supreme Court in Milkovich said was rhetorical hyperbole and,

5   of course, the Second Circuit in the Buckley versus Litell case

6   said was protected opinion.

7         In short, Your Honor, we have done what you asked and

8   shown you that the facts that form the basis of CNN's opinions

9   which were expressed in rhetorical hyperbole were available to

10  the audience.

11        There's another way that the opinion defense shields

12  us here, and that's the Moldea case which we cited in our

13  papers.  The Moldea court held that when a reviewer offers

14  commentary that is tied to the work being reviewed and that is

15  a supportable interpretation of the author's work, that

16  interpretation does not present a verifiable issue of fact that

17  can be actionable in defamation.

18        And here, Your Honor, the opinions are tied to

19  Mr. Dershowitz's response, and they are supportable for the

20  same reasons they were rational.  These are deeply held

21  opinions by people who read a text and reached a conclusion

22  even if Your Honor thinks it's wrong.

23        And, Your Honor, a really interesting case about that

24  is the Partington versus Bugliosi case, which is a Ninth

25  Circuit case we cite in our brief.  Partington versus Bugliosi

1   is actually about Mr. Bugliosi, the prosecutor who prosecuted

2   Charles Manson, being critical of another lawyer's performance

3   in a trial.  And that lawyer sued for defamation and said you

4   were critical of my performance.  And the Court said, yeah, but

5   everybody who looks at this knows this is Mr. Bugliosi's

6   opinion.  Everybody who looked at these reports knew that these

7   were the opinions of the speaker based on facts that were in

8   the public record and known to the public.

9         And if I haven't convinced you of that, Your Honor, my

10  last argument is that plaintiff's claim should be dismissed

11  because he will never be able to show that CNN's statement was

12  the proximate cause of his damage to his reputation because he

13  had testified that it had been destroyed long before CNN spoke.

14        Mr. Dershowitz, of course, has courted controversy at

15  every stage of his career.  He testified that he used to have

16  Post-It notes on his door about all the terrible things people

17  said about him.  But, Your Honor, that's even not what I'm

18  talking about.

19        What I'm talking about is in January of 2022, this

20  year, Your Honor, two years after the CNN report,

21  Mr. Dershowitz gave testimony in several lawsuits related to

22  Virginia Giuffre's allegations that he assaulted her.  And this

23  is what Mr. Dershowitz said.  He said, "It's -- it's just

24  incomprehensible.  I was -- at the time I was falsely accused

25  in -- in the running-up to 2015 year -- New Year New I had

1    turned 75.  I had written I think 35 books.  I was being

2    honored all over the world.  I was getting honorary degrees.  I

3    was being celebrated.  People were doing summaries of -- of --

4    of my work.  And then as the result of a totally false

5    accusation made up by a woman I never met doing something I

6    would never ever in a million years do my entire legacy has

7    been destroyed.  My entire reputation has been destroyed."

8          Two days later, on January 7th, Mr. Dershowitz

9    testified, "It's affected me in every possible -- in ever

10   possible way.  It has ruined my life.  It has destroyed my --

11   my retirement.  It has hurt my family.  I mean, I could spend

12   hours.  It has resulted in me -- me being canceled from

13   various -- in -- in venues.  It has result in -- in negative

14   effects in just every possible way."

15         And finally, Your Honor, on January 10th

16   Mr. Dershowitz testified again, and this time he testified

17   specifically about what Ms. Guiffre's allegations had done to

18   his career and his professional reputation.  And he said,

19   "They", meaning the woman who accused him, "just sat there and

20   decided that they were going to destroy me and they did.  They

21   destroyed my life, they destroyed my happiness, they destroyed

22   my health, they destroyed my reputation, they destroyed my

23   career as a public speaker, they affected my writing, my sales

24   of books, the readership of my books.  I don't think any part

25   of my life was not affected by this totally false and made up

1  actuation against you."

2          In light of that testimony, Your Honor, Mr. Dershowitz

3  will never be able to prove that it was CNN's statements, not

4  Ms. Guiffre's allegations, that damaged him.

5          THE COURT:  So I read these statements in your papers,

6  but what I missed was these statements are from January of '22?

7          MS. BOLGER:  Yes, Your Honor.  They were just a few

8  months ago.  Two years after the CNN report.

9          Your Honor, I would like to just conclude by talking

10 about what sort of an unusual case this has been for me.  And I

11 get the honor of defending the press a lot of the time, and

12 this has been an unusual case for me because it is about such

13 enormously important matters of public interest.

14          And what I keep coming back to, Your Honor, is that

15 Alan Dershowitz chose to represent the president in an

16 unbelievably high-profile, an important thing that happened to

17 the United States in the United States of America.  He appeared

18 as an advocate trying to win a case.  In fact, in public

19 records Mr. Dershowitz says that his wife wanted him not to be

20 an advocate.  She wanted him to be a talking head, but he

21 wanted to be an advocate.  Mr. Dershowitz wanted to do this.

22 And he wanted to do it because he wanted President Trump to be

23 acquitted.  And he stood at what Senator LeMieux refers to as

24 the alter of our democracy, the well of the United States

25 Senate, and he made these arguments.

1          The CNN reporters acted in good faith interpreting

2   what he said.  Not just as journalists, but as American

3   citizens who were hearing arguments made in the most secret of

4   all of our sacred spaces.  And they interpreted them and they

5   commented on them.  Regardless of whether Your Honor agrees

6   with them, what they were doing was not defamation.  What they

7   were doing was disagreeing with Mr. Dershowitz or criticizing

8   him.

9          And defamation law and you and me, Your Honor, we

10  don't belong here.  This is where the First Amendment does its

11  work.  These statements are supposed to be measured by the

12  average man, not by you, not by me, and certainly not by a

13  jury.  And for these reasons, Your Honor, we think you should

14  grant our motion for summary judgment.

15          THE COURT:  Ms. Bolger, thank you so much.  I really

16  appreciate -- the argument was very well put together and

17  looking forward to hearing the plaintiff's argument.  But I do

18  want to comment before I hear from the plaintiff.

19          I mean, this is exactly what courts are all about, is

20  people that argue both sides, that argue it well.  I know

21  what's coming from your side is going to be well argued as

22  well.  And that's why I asked you the reasonable man question.

23  I mean, it seems to me that people have forgotten what courts

24  are all about and that their minds are made up already.  So

25  personally it's an unusual case, but I really appreciate having

1    the opportunity to hear it.

2            MS. BOLGER:  Your Honor, I think CNN would tell you

3    gladly that they believe in reasoned public good faith debate,

4    just as the kind we're having here.

5            THE COURT:  Got it.  Understood.  Understood.

6            Okay.  I guess it's the response, but it's also your

7    argument.

8            MR. WILLIAM:  Thank you.

9            THE COURT:  Are you going to use the computer as well?

10           MR. WILLIAM:  I am not, Your Honor.

11           THE COURT:  Okay.

12           MR. WILLIAM:  Good afternoon, Your Honor.  John

13   Williams on behalf of Alan Dershowitz.

14           Let me rewind and start with the malice argument.

15           THE COURT:  Okay.

16           MR. WILLIAM:  We heard repeatedly from Ms. Bolger

17   today that we have failed to present sufficient evidence.

18   Actually, we failed in her view to present any evidence that

19   could support a reasonable jury finding that CNN commentators

20   made their statements with actual malice.  But the only way CNN

21   gets to that point is by misinterpreting the law and

22   discounting the objective evidence we have presented on the

23   malice issue.  Because, according to CNN, in the views of its

24   witnesses they have testified that they acted in good faith and

25   that they had no reason to doubt the accuracy of their

1    statements.  We heard that repeatedly from her.  And she showed

2    all the clips of her witnesses saying that.  And they have said

3    that.

4         But, Your Honor, in a public figure actual malice case

5    every liable defendant says that.  Every liable defendant says

6    that they acted in good faith and they had every confidence in

7    the accuracy of what they said.  And in view of this, the case

8    law, which is almost virtually ignored by CNN, provides that

9    the good faith claims of the defendant have got to be weighed

10   by the Court and the jury against the objective evidence

11   introduced by the plaintiff to show that the defendant had,

12   quote, obvious reasons to doubt the truth or accuracy of their

13   statements.  Obvious reasons to doubt the statement.  Objective

14   evidence.  And that comes from the 1968 decision of the Supreme

15   Court in St. Amant that articulated that standard.

16        And since then there has been a long line of cases

17   which deal with the publisher's omission of significant or

18   contradictory or crucial facts that it presented would have

19   made their statements more benign, less condemnatory, or even

20   incapable of defamatory meaning.  These are the omission cases

21   that we talk about in our brief.  They start the year after

22   St. Amant in the Goldwater versus Ginzburg case in 1969, and

23   they go all the way through -- the most recent one is the Reid

24   versus Viacom case, also cited in our brief.

25        In this case I do not think there's any dispute that

1    each one of the CNN anchors and their contributors and their

2    video editors were aware that Alan Dershowitz had made the

3    statement that a quid pro quo would be unlawful if the quo were

4    illegal.  And the Court addressed that statement by Dershowitz

5    in its ruling on the motion to dismiss when it said that the

6    CNN broadcast omitted this, quote, crucial qualification.  Your

7    Honor stated that in your decision with respect to the fair

8    comment doctrine, which I don't think is being challenged.

9          This crucial qualification to the Dershowitz statement

10    is that an illegal motive or a quid pro quo would be corrupt.

11    And further the Court said, of course, that this omission

12    changed the gist of what Professor Dershowitz had actually

13    said.

14          I don't think CNN denies that its commentators were

15    aware of the full extent of Dershowitz's statement to the

16    Senate or that the omission of the qualifying language changed

17    the gist of what he said or that the omission of this

18    qualification caused the broadcast to be defamatory.  What they

19    say instead is that as a legal matter its decision to omit this

20    qualification has no bearing on the actual malice

21    determination.  And she cited three cases, and I want to talk

22    about each case because they're important.

23          First, she cited the Levan case, an Eleventh Circuit

24    decision.  And she -- the Levon case -- Levan versus Capital

25    Cities ABC.  She says, and they write in their brief

1    specifically at page 6 of their reply brief, that Levan holds,

2    quote, that a decision not to include contrary evidence without

3    more is irrelevant to the actual malice inquiry.  What they are

4    saying here is all of these omission cases don't matter because

5    by virtue of the Levan case they have said it's irrelevant.

6             The Levan case does not come close to saying this.

7    And I refer to the facts in Levan that the Eleventh Circuit

8    dealt with.  In Levan ABC had broadcast an investigative report

9    which claimed that the plaintiff, Levan, had engaged in a

10   variety of transactions that were unfair to his limited

11   partners.  And his proof of malice, Your Honor, was that ABC

12   had failed to air some interviews with some of the limited

13   partners who said they did not think that they had been treated

14   unfairly.  Levan said, well, you're whole theme here is that

15   you're being treated unfairly, but some of the limited partners

16   said they disagree they thought they were treated unfairly.

17            But ABC's broadcast had included a segment that

18   disclosed the fact that the majority of Levan's limited

19   partners had actually voted in favor of the transactions.  And

20   so as the Eleventh Circuit said, look, there hasn't been any

21   significant omission here.  They just said -- and they quoted,

22   ABC just didn't make the point as strongly as Levan would have

23   liked.  That case has no relevance here.  Unlike CNN, ABC did

24   disclose the contradictory information.  They just didn't do it

25   the way the plaintiff wanted him to do.

1          And the Levan case is consistent with the other case

2    Ms. Bolger cited, the Michel versus NY Holdings case.  They

3    also misinterpret that.  In Michel the Court said that when a

4    publisher includes information that is contrary to the general

5    conclusions in the article, that showing tends to undermine a

6    showing of actual malice.  And conversely, of course.  Whereas

7    here, the publisher does not include information that is

8    contrary to the gist of the article, that omission can lead to

9    the inference of actual malice.

10          And now let's go to the third case that she cited,

11   which is the Schiavone case out of the Third Circuit.  She has

12   crafted this argument I had never seen before.  She says that

13   in these omission cases a plaintiff is required to prove that

14   its commentators subjectively believed that the omitted facts

15   were contradictory.  So this is another requirement.  Not only

16   would we have to show that they subjectively had reasons to

17   doubt the truth of what they said, but they are now saying that

18   subjectively we have to show that the omitted facts in these

19   omission cases, that they knew that they were different than

20   the theme of the article.

21          That argument that she is making based on Schiavone is

22   entirely at odds with the omission cases cited in our brief

23   which focus on the objective fact that the information was

24   omitted.  They say nothing or little as to why it was omitted.

25   And this argument that you must introduce proof that the

1    defendant believed that the omitted statement was contradictory

2    is itself contradicted by the Eleventh Circuit's decision in

3    Hunt versus Liberty Lobby.

4            In Hunt versus Liberty Lobby the court stated as

5    follows:  The inference of actual malice can be drawn when a

6    defendant publishes a defamatory statement that contradicts

7    information known to him.  And then it goes on to say, which is

8    key to the rejection of her argument here, it goes on to say,

9    that is true, quote, even when the defendant testifies that he

10   believed that the statement was consistent with the facts

11   within his knowledge.

12           Now, the jump cite there, Your Honor -- the cite for

13   Hunt versus Liberty Lobby -- and let me give it to you.

14   Because in view of her argument, I think it is crystal clear

15   that it should be rejected.  It's Hunt versus Liberty Lobby,

16   720 F.2d 631.  It's an Eleventh Circuit case from 1983.  The

17   jump cite is 645.

18           And furthermore, even if we did have this obligation

19   to show that they knew subjectively that the omitted statement

20   was contradictory against what Professor Dershowitz had said,

21   there's plenty of evidence of that as well in the record by

22   which the jury could infer that each one of them was aware of

23   the contradictory nature.

24           Berman, for example, testified that he omitted the

25   qualification because he simply considered it irrelevant.

1 Cooper, Anderson Cooper said about the same thing.  He didn't

2 think it linked up.  And the political commentators, they just

3 rejected it because they're trying to sound this alarm bell.

4 No one testified that they believed the omitted statement was

5 consistent with their allegations.  There's no proof of that.

6 And, quietly frankly, it doesn't matter under Hunt versus

7 Liberty Lobby.

8    THE COURT:  So let me ask you a question here.  To the

9 extent that the complaint talks about CNN having some type of a

10 conspiracy, if you will, as Ms. Bolger has pointed out, the

11 plaintiff's statements were made approximately 2:11 p.m. and

12 these Tweets were going out at 2:13, 2:14, 2:15, times like

13 that.  At what point -- does your evidence show that CNN got

14 everybody together at 2:12 and --

15    MR. WILLIAM:  No, it doesn't.  And it doesn't have to,

16 Your Honor.

17    THE COURT:  Okay.

18    MR. WILLIAM:  We hear that over and over.  And I hope

19 I pointed that out when I wrote the brief.  We're not here

20 saying that there's some grand conspiracy.  We don't have to

21 show that there's a grand conspiracy.  We're not saying that

22 there's some sort of scheme there.  The evidence of what we

23 call a preconceived story line --

24    Continue?

25    THE COURT:  Yes, please.

```
 1            MR. WILLIAM:  We're simply pointing out that there is
 2    evidence of a preconceived story line which -- it doesn't
 3    necessarily have to be something that includes everybody, but
 4    they had a storyline out there that was sent to everybody and
 5    that focused singularly on this truncated excerpt and nothing
 6    else.  That's all we're saying.  And that that storyline then
 7    was presented to the CNN president, Jeff Zucker, who approved
 8    it as the agenda.
 9            This is not -- the entry point to the proof of actual
10    malice here is the obvious reasons to doubt.  And what the
11    Supreme Court said in Herbert versus Lando is that once you
12    have established the obvious reasons to doubt, then you can
13    just put in other evidence of actual malice, which we have.
14    Which is, first of all, hostility, which we suggest exists by
15    virtue of, you know, Zucker saying that Dershowitz is crazy
16    and, more importantly, by Berman calling him Dershonuts,
17    Dershowitz nuts, or whatever he called him, and then the
18    failure to abide by the journalistic standards, additional
19    evidence of malice, and finally the fact that there was this
20    preconceived line that was sent around.
21            Now, they say a lot of people didn't actually get the
22    memo.  Well, most of them did.  And Begala certainly did.  And
23    Lockhart was contacted after by the people who did as well
24    after they saw what he was going to say.
25            THE COURT:  So I understand that part.  But, you know,
```

1   it seemed to me that, at least what I heard, Begala was

2   Tweeting from the plane or something like that.  So his Tweets

3   were out and then maybe he got some memo.

4        But then, more than that, paragraph 12 of your

5   complaint says, the aftermath of that barrage of defamatory

6   programming was its ripple affect throughout the entire media

7   industry.  From other news outlets to talk show hosts and

8   social media trends, CNN's deliberately false narrative spread

9   like a disease.

10        Ms. Bolger showed me at least 20 different media

11   outlets that had put up their posts before CNN did anything.

12        MR. WILLIAM:  And that's correct.  I don't, I don't

13   argue to the contrary, Your Honor.  But it's simply irrelevant.

14   The question really is one that goes -- it's irrelevant to the

15   malice issue, Your Honor.  It is certainly something that goes

16   to damages, that what is -- they are certainly entitled to

17   argue that Alan Dershowitz was not just damaged by what we

18   said, that he was damaged by what other people said as well.

19        And we will show -- and I'm happy to jump into

20   damages, but let me save that for a moment.  We can show the

21   affect of CNN in particular because they were the ones that

22   coined this Dershowitz doctrine that still dogs him on the

23   Internet.

24        THE COURT:  So going to the damages issue, you know,

25   you conclude your brief by saying, but since the defamations he

1   only receives invitations to appear on conservative outlets --

2            MR. WILLIAM:  Right.

3            THE COURT:  -- Fox and Newsmax -- I'll agree Newsmax

4   is conservative -- empirical proof that the CNN defamatory

5   statements have diminished his reputation in certain media

6   circles.

7            I don't watch any of these stations.  I do read

8   magazines.  The latest I read in Forbes is that for the third

9   quarter Fox had three times the viewers of CNN.  So how is the

10  plaintiff damaged if he's only receiving invitations to be on a

11  station that has the most viewers?

12           MR. WILLIAM:  Well, first of all, I'm not sure your

13  statistics are correct.

14           THE COURT:  I don't know if they are.  I just read

15  them in a magazine.

16           MR. WILLIAM:  But I give you the fact that Fox has

17  greater reach than CNN and MSNBC.

18           THE COURT:  Okay.  So you'll agree with that.  You'll

19  agree Fox has a greater reach.

20           MR. WILLIAM:  Yes --

21           THE COURT:  Okay.  So how is he damaged?

22           MR. WILLIAM:  -- then each one of them.

23           THE COURT:  So how is he damaged by being on a station

24  that has a greater reach?

25           MR. WILLIAM:  Because it goes to his reputation.  How

 1    is it in libel cases do you show that your reputation has been

 2    damaged?  Sometimes it's very difficult to do.  But in this

 3    case we had the fact that at least with respect to his

 4    reputation among the more liberal or more mainstream, if I can

 5    use that, media outlets that he has been cut off from them, and

 6    that shows a diminishment of his reputation.

 7          Now, the fact that he may not have suffered

 8    reputational loss in every circle of American life is certainly

 9    a factor.  And I expect that they're going to point to that.

10    But we do not have to show that he lost his good name with

11    respect to every American or even half of them.  And that's how

12    I would deal with that.

13          THE COURT:  Okay.

14          MR. WILLIAM:  Okay.  Let me come back to damages in a

15    minute, because we've heard so much about Ms. Giuffre without

16    an acknowledgment that all those allegations have now been

17    recanted.

18          THE COURT:  Does everybody know about that?

19          MR. WILLIAM:  Yes.  Well, Ms. Bolger does, I know,

20    yes.  I don't think that there's any dispute to that.  It was

21    in the newspapers maybe, oh, a month ago.  It's very recent.

22          THE COURT:  Kind of like Richard Jewell, right?  He

23    orchestrated the bombing of the Olympics in Atlanta, and it's

24    all over page 1 day after day.  Oh, we got the wrong guy, on

25    section B, page 37.

1          MR. WILLIAM:  Correct.  Yes.  I don't think there's

2   any dispute.  And we're happy to put in an affidavit to that

3   extent.  But I think it's certainly agreed.

4          But I do want to turn for a moment to the standard of

5   review, Your Honor, because it is important here.  The question

6   on summary judgment is whether the evidence could support a

7   reasonable jury finding that the plaintiff has shown actual

8   malice by clear and convincing evidence.  The operative word

9   there, of course, for us is whether the evidence could support

10  that jury verdict.

11         The Supreme Court in Anderson versus Liberty Lobby

12  said something else as well that's equally important or even

13  more so.  What it says is that in assessing this proof, summary

14  judgment should only be granted if the evidence is so one-sided

15  that one party must prevail as a matter of law.  And it went on

16  to say, if the evidence presents a sufficient disagreement, the

17  court requires submission to a jury.

18         And we would submit that the evidence before Your

19  Honor certainly presents a sufficient disagreement on the issue

20  of malice to require submission to a jury.

21         What we have here is CNN's reliance on the good faith

22  declarations and testimony of its witnesses.  These are

23  declarations and testimony, Your Honor, that were developed and

24  refined and vetted by lawyers well after the events at issue

25  transpired, well after this case was filed.  And these

1   post-hock statements have got to be weighed against the

2   objective evidence that we have developed from the

3   contemporaneous evidence, the documents, which show that the

4   CNN commentators had obvious reasons to doubt their allegations

5   against Alan Dershowitz.

6       And here we go.  They all knew that Professor

7   Dershowitz has taken the position that quid pro quos could be

8   unlawful.  They knew he had taken the position that impeachment

9   required the showing of a crime.

10      When I came down on the airplane, Your Honor, I went

11  back and I looked at his comments on January 27th which, by the

12  way, all of the CNN commentators and witnessed said they had

13  seen, they were glued to their TV whether in their office,

14  their home, or on the plane, and Alan Dershowitz said during

15  January 27th eight different times that you had to have a crime

16  to be impeachable.  And if the president had committed a crime,

17  he could be impeached.  Eight times.  And he concluded by

18  saying on January 27th, there must be one impeachable offense

19  within the meaning of high crimes and misdemeanors.

20      And then two days later, and she played most of it, I

21  think, he made the statement about the corrupt unlawful quid

22  pro quo, which Your Honor indicated was a crucial

23  qualification.  And then right after this discussion that they

24  like to show about the greatest president argument, or whatever

25  that is, the public interest argument, right after that he goes

1   on and gives another example about how a president could be

2   impeached if he had gotten a kickback which was criminal.

3          Yet despite all of that, it just doesn't matter

4   because they felt themselves entitled to go ahead and allege

5   that Dershowitz had said he could do anything, anything,

6   anything he wanted.  He could commit whatever crime he wanted,

7   extortion or high crimes or whatever.  Which is ridiculous

8   because the Constitution itself says that you can be impeached

9   for high crimes and misdemeanors.  And then nobody's suggesting

10  that he read that out.  But they're still suggesting that he

11  made this statement.  They are saying that he said he had a

12  license to commit crimes, and he never said that.

13         And case after case has held that an omission of this

14  nature which so significantly changes the gist of the story

15  permits a reasonable jury to infer that the defendant acted

16  with actual malice.

17         And CNN's evidence of good faith, which are the

18  statements of its witnesses and their declarations and

19  testimony, is plainly not so one-sided under Anderson versus

20  Liberty Lobby to entitle it to judgment as a matter of law.

21         THE COURT:  So let me ask you this.  The omission

22  here, the way I see, it's not an omission in terms of the high

23  crimes and misdemeanors part of something that plaintiff said.

24         MR. WILLIAM:  Correct.

25         THE COURT:  It's an omission of what the law is.

1          Do reporters have to go ahead and lay out the whole

2   law and then say but this is what this person said and kind of

3   compare it?

4          MR. WILLIAM:  No.

5          THE COURT:  So isn't the reasonable person charged

6   with knowing the laws?

7          MR. WILLIAM:  I'm sorry.  Is it okay to disagree with

8   you?

9          THE COURT:  Of course.  I hope you would all disagree

10  with me, otherwise we wouldn't need hearings.

11         MR. WILLIAM:  No, the omission is not what the

12  Constitution said.  If we got into that, we would be into a,

13  you know, constitutional debate.  No, the omission is what he

14  said.  Okay.  And the cases are very clear.  If you're going to

15  rely on this statement, like they did in Schiavone, you can't

16  just be selective and take out something that is contrary.  And

17  that's what they did.

18         THE COURT:  Sure.  But why can't we count on the

19  citizenry to just know basic things and to watch CNN and hear

20  this argument and say that's not right?  I mean, that's a high

21  crime and a misdemeanor.

22         I mean, something -- there's some disconnect here in

23  terms of what the reasonable man knows or should know.  I don't

24  know when this kind of downturn started.  It has nothing to do

25  with you all in the courtroom.  But people just don't seem to

1   know basic things anymore.

2          MR. WILLIAM:  I think -- and maybe Ms. Bolger will

3   agree with me on this.  I think how you packaged that, that

4   your question into our legal analysis is by -- let me start

5   with this.  What you posit is that a lot of people do know

6   about this, okay.  But this goes to the opinion defense.  And

7   the opinion defense basically says, and Your Honor indicated,

8   is that if all of the people already know what Alan Dershowitz

9   has said on the floor of the Senate and that he had taken the

10  position that you had to -- there had to be a crime and they

11  already knew about that, then it would not be mixed opinion.

12  It would be pure opinion.

13         But what we have said in our brief, I think in bold,

14  is that the -- while people certainly knew -- and this is the

15  reasonable person, the audience that Your Honor said you might

16  want to get a little more information on in your decision on

17  motion to dismiss.  While the people knew that there was an

18  impeachment going on, they did not know what Alan Dershowitz's

19  views were.  What Alan Dershowitz's had said was the

20  constitutional requirement to -- was the constitutional

21  requirement to impeach a president.  I think that's where you

22  get into the reasonable person.  But maybe she'll agree with

23  me.  I don't know.

24         So it is a question of, as you Your Honor said, the

25  audience and what they know.  And certainly if they all did

```
1    know that Dershowitz had said that, then that would be pure
2    opinion.  That's right out of the cases.
3           THE COURT:  Certainly you agree that the comment
4    dealing with Hitler, Stalin, Mussolini, that that's opinion.
5           MR. WILLIAM:  Yes.
6           THE COURT:  Okay.  So we can kind of extract that
7    comment.
8           MR. WILLIAM:  Yes.  Right.
9           THE COURT:  Okay.
10          MR. WILLIAM:  Yes.  I think we made that clear,
11   previous counsel made that clear earlier.
12          THE COURT:  All right.  And then so really -- I guess
13   is the main argument relating to what Mr. Begala said about
14   shooting someone?
15          MR. WILLIAM:  No, I think -- no.  No shooting someone
16   I think was rhetorical, and I think that was taken out.  It was
17   when Begala said or one of them said that they had a license to
18   commit crimes, that you could do -- or Berman said anything,
19   anything he wants to do.
20          THE COURT:  So Berman did say "anything, anything."
21          MR. WILLIAM:  Correct.
22          THE COURT:  He didn't actually say "license to commit
23   crimes."
24          MR. WILLIAM:  No, but that was said by --
25          THE COURT:  But that's the one.  It's the Berman
```

```
 1   statement that bothers you the most?
 2           MR. WILLIAM:  Well, if I was Alan Dershowitz, I would
 3   say it was the license to commit crimes.  I don't know which
 4   one bothers him the most.  But certainly license to commit
 5   crimes or to do things that are unethical.  That was Lockhart.
 6           Berman was -- he says -- by the way, he says, it's a
 7   factual statement, he says that if a president is running for
 8   re-election because he thinks getting elected will help
 9   America, he can do anything, anything.  Well, Dershowitz never
10   said that and that's a false statement.
11           Begala's statement was that -- oh, yeah.  Here.  The
12   Dershowitz doctrine would make presidents immune from every
13   criminal act, campaign finance laws out the window, bribery
14   statues gone, extortion no more.
15           So those are the statements that I think are the most
16   irritating to Professor Dershowitz.
17           THE COURT:  Okay.  And so I guess I'm just circling
18   back just so I can make sure that I'm crystal clear on this.
19   Why isn't that opinion?
20           MR. WILLIAM:  Which one?  Okay.
21           THE COURT:  The Dershowitz doctrine --
22           MR. WILLIAM:  Let me take it on two different levels
23   here.
24           THE COURT:  Okay.
25           MR. WILLIAM:  One is a level I don't think that there
```

1  was a lot of discussion on in the motion to dismiss.  It is a

2  factual statement.  Under Milkovich if you make a statement

3  that can be determined true or false, that by definition is not

4  opinion.

5        So, for example, when they say Berman says he said you

6  can do anything, anything, well, he didn't say that.  And that

7  was false and that was defamatory.

8        The Dershowitz doctrine would make plaintiffs immune

9  from every criminal act.  False, defamatory, and didn't provide

10  that.

11        So when they are saying that he said this, number one,

12  under Milkovich it is clearly not opinion.  It is fact.  But

13  then you get into the issue of pure opinion, Your Honor, and

14  mixed opinion.  And let me just go to that.

15        The mixed opinion cases -- so the mixed opinion

16  cases -- as Your Honor indicated in the motion to dismiss --

17  I'm going to embellish on this a little bit with other cases.

18  But you cited the Zambrano case where you said correctly that

19  under Zambrano a pure opinion is one that is based upon facts

20  that are set forth in the opinion -- excuse me, in the

21  publication or are known to the audience.  So there you go

22  about, you know, does the audience know what position

23  Dershowitz has taken.  Those statements were not set forth in

24  the publication and were not known to the audience, and that's

25  what makes it a mixed opinion.

1          And again, while they knew that the impeachment was

2   full bore in the Senate, people did not know the facts

3   regarding Dershowitz's views on impeachment.

4          And, by the way, since this Court also stated -- take

5   that one step further in your opinion.  You said, quote, when a

6   speaker or writer neglects to provide the audience with an

7   adequate factual foundation prior to engaging in the offending

8   disclosure, liability may arise.

9          And here by omitting his crucial qualification CNN

10  failed to provide the audience with an adequate factual

11  foundation.  And I said I would embellish it a little.  I'm

12  going to embellish it by the Supreme Court's decision also in

13  Milkovich.  Milkovich says exactly the same thing.  Quote, even

14  if the speaker states the facts upon which he basis his

15  opinion, if those facts are incomplete or incorrect, the

16  statement may imply a false assertion of fact.

17         Let me come back, Your Honor, to this issue that she

18  raises that she says is so determinative under Time versus

19  Pape.  And remember we're into an issue here of actual malice.

20  And summary judgment under Anderson versus Liberty Lobby and

21  the question then under this Time versus Pape ambiguity issue,

22  is it so one-sided that CNN is entitled to summary judgment as

23  a matter of law.

24         Let's talk about Pape for a minute.  And it bears

25  scrutiny.  CNN is relying on Time versus Pape to say that

1    because the statement was in its view ambiguous, although that

2    is disputed, its commentators were then entitled to address

3    that ambiguity, supposed ambiguity with their own

4    interpretation even if that was false.

5           The extent of the ambiguity the Supreme Court was

6    talking about in Time versus Pape is radically different than

7    this one.  And, in fact, they except out from their decision

8    this type of case, and I'll tell you why.  In Pape Time

9    magazine had tried to summarize a lengthy report published by

10   the Civil Rights Commission.  That report itself relied on a

11   variety of secondary sources.  Some of those secondary sources

12   included factual statements that had been through the courts

13   and determined, others just included allegations.  It was very

14   difficult, almost impossible to read that report and figure out

15   what was truth and what was allegation.

16          And then on top of this, the Civil Rights Commission

17   itself, according to the Supreme Court, added its own

18   qualifications to the different events.  Thus, the Supreme

19   Court said, quote, ramifying the complications in understanding

20   the report.  And that's why the Supreme Court stated that the

21   report was, quote, extravagantly ambiguous and bristled with

22   ambiguities.

23          And then the Court went on to contrast this situation,

24   with all of its ramifying complications, to the far more common

25   situation which is presented in this case where the speaker

1   simply makes a report on what he or she said.  They're not

2   trying to interpret a report bristling with ambiguities.  They

3   are simply saying this is what Alan Dershowitz said.  This is

4   the normal garden variety libel case.

5        We certainly had no difficulty in reporting on the

6   events.  What did Dershowitz say?  We don't have the type of

7   situation in Time versus Pape.  Here the CNN commentators

8   provided only firsthand reports of what Alan Dershowitz had

9   said, and they were certainly not trying to interpret any

10  extravagantly ambiguous report.

11       And at bottom, while CNN likes to put the Dershowitz

12  words, you know, under a microscope to analyze his grammar and

13  his syntax, there's no real ambiguity here.  And I think Your

14  Honor has caught that.

15       Dershowitz claimed that a president could be impeached

16  if he engaged in illegal conduct.  CNN claims just the

17  opposite.  Dershowitz said that a president had a license to

18  commit crimes.  There's no ambiguity in what he said on the

19  floor.

20       And even Mr. Berman said he's not being ambiguous.  I

21  know we don't have to bring in proof that the commentator

22  actually said, oh, yes, he was not ambiguous, but was

23  ambiguous.  It doesn't really matter.  The fact of the matter

24  is this is a factual matter.  And we can present it to the jury

25  to say while they're saying it's ambiguous, even one of their

1    own witnesses, one of their anchors said it was not ambiguous.

2          And this moment Ms. Bolger continues to refer to

3    Professor Dershowitz saying that his response was difficult to

4    parse.  He did not say it was difficult to parse.  They put

5    that in quotes in their papers.  But that's not what he said.

6    What he said is that every single word of one particular

7    response could not be parsed, every word could not be parsed.

8    And the response he was asked about was not even the illegal

9    quid pro quo that they're arguing in their papers was so

10   ambiguous.

11         But in any event, even if the Dershowitz statement had

12   some ambiguity to it, that some of us don't say, summary

13   judgment is only appropriate if the speaker's interpretation

14   was rational.  And let's talk about that for a minute.

15         As the Court held in Nader v De Toledano, a case out

16   of District of Columbia Court of Appeals, which goes through an

17   extensive analysis of the Pape issue, an interpretation is not

18   rational if it is undercut by a review of the entire underlying

19   statement.

20         Here Professor Dershowitz told the Senators that the

21   high crimes and misdemeanors clause meant what it said, that

22   conduct is impeachable only if it involves a crime.  And if a

23   quid pro quo is illegal, it is impeachable.  Otherwise it's

24   not.

25         CNN turned that statement upside down portraying the

1    statement as the exact opposite of what he said, and under no

2    circumstances can that be considered rational.

3           THE COURT:  Well, when did he say this about the high

4    crimes and misdemeanors clause?

5           MR. WILLIAM:  Oh, that was January 27.

6           THE COURT:  So two days earlier.

7           MR. WILLIAM:  Two days earlier.  Which, by the way --

8    and the important thing is, yes, two days earlier, but every

9    one of the CNN witnesses said that they had watched that as

10   well.

11          Now, while we are certainly focused on the omissions

12   from, you know, 15 seconds before and 15 seconds after the

13   article that -- excuse me, what they seized upon, they

14   certainly cannot be excused from simply ignoring and saying

15   anything else he said has no relevance to them.  That's what

16   they're saying.  When we asked in depositions why is it that

17   you didn't put in this statement about -- why didn't you

18   include the -- as Your Honor said, the crucial qualification.

19   But basically what they said is we just didn't consider it

20   relevant.  It's clearly relevant, Your Honor.  How could it not

21   be relevant?

22          Let me conclude on this opinion.  I think we have been

23   through this.  I think under Milkovich this clearly is a

24   factual statement that can be demonstrated to be true or false.

25   Anytime they said Dershowitz said this and he didn't say it,

1  that's a factual statement.  And under Milkovich it is fact,

2  not opinion.

3         And then we also talked about -- even if you want to

4  go to mixed opinion, they have not favored their audience with

5  all of the facts or even many of the facts.

6         And let me just note this as well, Your Honor.  This

7  Moldea case.  The same principle of omitted facts also disposes

8  CNN's argument based on Moldea, the Moldea case out of the DC

9  Circuit.  And let me explain that.

10         Moldea was a case involving a literary book review.

11  And I think it was a New York Times book reviewer had read this

12  book.  It was a book by Dan Moldea about sports and gambling,

13  Joe Namath and everything, and it was somewhat controversial.

14  And so the book reviewer looked at it and did a lengthy book

15  review and came to the conclusion that the book, quote,

16  contained too much sloppy journalism.  That was the defamatory

17  statement.  Dan Moldea came in and said of course it's not

18  sloppy journalism and he was offended and he brought the case.

19         What the DC Circuit said in Moldea was that they were

20  going to consider that protected.  But the reason that they

21  were going to consider it protected was that the statement "too

22  much sloppy journalism" was based upon, quote, facts that were

23  fully disclosed in the book review.  And because of that the

24  readers then were permitted to draw their own conclusions.

25  They had all the information there.  Every fact upon which the

1  book reviewer said that it was too sloppy journalism was set

2  forth in this lengthy article.  And that is what sets this case

3  apart from Moldea.

4         Here the underlying facts of CNN's reported opinion

5  was not disclosed.  And, by the way, the cases -- and we cite

6  them in our brief.  And particularly the Jankovich case, which

7  they do not even respond to.  Jankovich makes this very point

8  clear, that the -- and, by the way, Jankovich was also decided

9  by the DC Circuit which decided Moldea.  And it said -- well,

10 let me tell you about Moldea.  Moldea only protects purported

11 opinions that are based upon facts that are disclosed in the

12 article and are accurate and are complete.  And that is the

13 Jankovich case.

14        And one final thing, Your Honor.  We make this point

15 in our brief.  Moldea is very limited.  To my knowledge, and we

16 said this in the brief, it has not been applied outside of the

17 case of literary reviews for obvious reasons.  CNN argues in

18 its reply brief that I'm wrong about that, that it's been

19 applied a lot of times, but they don't cite where it's been

20 applied.  I'm just unaware of it.  But in any event, whether or

21 not it's been applied outside of the context of literary

22 reviews, the fact of the matter is it is way apart from this

23 case because in Moldea all of the facts were disclosed.

24        Let me go to another issue on vicarious liability,

25 Your Honor.  Vicarious liability, she did not mention it.  I'm

 1    happy to deal with it.  In a footnote -- I just want to make

 2    sure we're covered here.  In a footnote --

 3           THE COURT:  This is the independent contractor

 4    footnote?

 5           MR. WILLIAM:  Yes.

 6           THE COURT:  Okay.

 7           MR. WILLIAM:  CNN is asserting that it is not liable

 8    for some of the statements.  They would acknowledge, for

 9    example, that because Berman is clearly an employee, they're

10    liable for his.  Cooper the same thing.  But they are saying

11    because some of them were labeled as independent contractors,

12    that you cannot impute actual malice to the defendant, to CNN.

13           And we responded to this footnote with about two or

14    three pages of text to show that under Eleventh Circuit

15    precedent the question of whether an individual is an employee

16    or an independent contractor is to be determined through the

17    application of Florida agency law.  In other words, in

18    defamation cases it's a tort.  When you're arguing that you're

19    not vicariously liable, the jury must determine whether or not

20    you're an independent contractor and not a liable employee, and

21    you are.  And we went on to show that under Florida agency law,

22    and in view of the degree of control that is exercised by CNN,

23    they should be considered employees and not independent

24    contractors.

25           And we note that there is a multifactorial test to

1    determine employment status under Florida law.  And we applied

2    those factors to the facts here.  And I think on virtually

3    every factor that is relevant under Florida law it points to

4    the fact that these commentators would have employment status.

5    Just, for example, they work at set times.

6         MS. BOLGER:  Your Honor, if we're going to discuss the

7    terms of the contract, which are highly confidential, I would

8    ask that that be done in private.  And I don't think we need to

9    do it here, Your Honor.  That's in the brief.  But I object to

10   Mr. Williams discussing anything from contracts designated

11   highly confidential.

12        MR. WILLIAM:  That's fine, Your Honor.  I don't care.

13   It is all set forth in our brief.  And we cite to the various

14   provisions that in our view make it clear that they are

15   independent contractors.

16        MS. BOLGER:  Sorry, John.  I didn't mean to interrupt.

17        MR. WILLIAM:  No, that's fine.  I'm sorry I did that.

18        CNN's sole response to all of this is that the cases

19   we cited, Hunt and Corsi, in those particular cases actually

20   did not find employee status.  That was not the point.  I

21   understand that.  We cited them because they were clear

22   discussions that the issue was to be determined by Florida

23   agency law.  That's the holding of one of the courts here.  I

24   think perhaps even the Southern District, Your Honor.  And it's

25   also the holding of the Eleventh Circuit.

 1           Obviously, we cited those for the proposition that the

 2    Eleventh Circuit and this Court has made clear that the issue

 3    of employee versus independent contractor has got to be decided

 4    through agency law.  And also, by the way, under those cases

 5    and the Florida cases it's a jury issue.  I don't think those

 6    points appear to be tested.

 7           THE COURT:  Well, wasn't Corsi a summary judgment?  I

 8    think Judge Ruiz granted summary judgment.  He said it wasn't a

 9    jury issue.

10           MR. WILLIAM:  You know what?  You're right.  I think

11    you are right in that case.  But the judge did indicate that

12    Florida law should be applied.  Certainly there are -- I think

13    in that case -- by the way, as I recall it, it was very

14    difficult to figure out that case.  I don't think there was

15    even any allegation in that case that the commentator had any

16    relationship to Newsmax.  I think that was the basis upon which

17    they went forward.  But certainly in the Hunt case they do talk

18    about agency law.

19           Finally, let me talk about damages.  As we argued in

20    our opposition brief, despite what they say, Alan Dershowitz is

21    not this libel-proof plaintiff.  He has a distinguished

22    reputation as a prominent constitutional law professor.  We

23    showed under the law he is entitled to pursue a claim for

24    damages.

25           And as I look at CNN's brief, and I heard Ms. Bolger

1   this morning -- this afternoon, the response is that he's not

2   entitled to it because he stated in this Giuffre case that the

3   allegations had destroyed his reputation.  As I said,

4   Ms. Giuffre has now recanted those allegations.  But even

5   before she did we have the statements of the CNN witnesses who

6   all indicate, almost to a one, of the esteem that they had for

7   him.

8          And I will note that Your Honor pointed out that the

9   Giuffre -- when he said Giuffre had ruined his legacy, that was

10  earlier this year in January, the statements that the CNN

11  witnesses have made were all subsequent to that as well.  So

12  despite what Giuffre had done to Alan Dershowitz's reputation,

13  up until the recantation it didn't seem to affect anything with

14  respect to the esteem that has been shown by CNN to

15  Alan Dershowitz.  And I think clearly, and I don't think CNN

16  even argues to the contrary, the damage issue is certainly

17  something that goes to the jury.

18         Thank you, Your Honor.  Nothing further.

19         THE COURT:  Question before I let you go.

20         MR. WILLIAM:  Yes.

21         THE COURT:  So the next day he gets 15 minutes with

22  Wolf Blitzer, 18 minutes with Chris Cuomo, he gets invited to

23  go back with Anderson Cooper, he says no.  How does that play

24  into damages?  Should damages be for a 24-hour period?  What's

25  your thought?

```
1            MR. WILLIAM:  No, damages are as much as we can show
2    the lasting affect.  Just because he is able to be back and
3    argue with Jeff Toobin and these other people about what he
4    said and what he didn't say where they say, well, you did say
5    this and you did say this and you did articulate the Dershowitz
6    doctrine, that doesn't wash out damages.
7            By the way, it -- often in these cases you ask for a
8    retraction.  And sometimes you get it.  And when you do get it
9    or you get an opportunity to voice yourself, that goes to show
10   that they're not sticking to their -- that it's not additional
11   evidence of malice.  And that's what it is.  It is not
12   additional evidence of malice.  It does not cure his
13   reputation.
14           THE COURT:  Okay.
15           MR. WILLIAM:  Thank you very much, Your Honor.
16           THE COURT:  Thank you so much.
17           I want to give you some rebuttal, but I think I ought
18   to give everyone ten minutes to stretch and use the rest rooms
19   and things like that.
20           And then, Karl, you need a few minutes?
21           THE COURT REPORTER:  Yes.
22           THE COURT:  Let's do that.  And then we'll start up --
23   it's 3:40.  We'll start up at 3:50.  If you can give me a few
24   minutes, each side, and then we'll wrap it up.
25           Thank you so much for the very good argument, both of
```

1   you.

2           MR. WILLIAM:  Thank you, Your Honor.

3           MS. BOLGER:  Thank you, Your Honor.

4       (Recess at 3:40 p.m.)

5           THE COURT:  Okay.  Everyone please grab a seat.  And

6   then, Ms. Bolger, back over to you.

7           MS. BOLGER:  Your Honor, before I give a rebuttal, I

8   thought I would just ask if you had any questions you wanted me

9   to respond to before I tell you what I think I should be

10  telling you.

11          THE COURT:  I think for both of you I asked all the

12  questions I had --

13          MS. BOLGER:  Great.

14          THE COURT:  -- during your initial presentations, but

15  I appreciate that.

16          MS. BOLGER:  Well, what we just heard from

17  Mr. Williams is remarkably similar to what we heard at the

18  motion to dismiss stage.  And, in fact, I'd kind of like to

19  debate defamation law with Mr. Williams.  He's really

20  knowledgeable, and it would be a lot of fun.  But I didn't hear

21  Mr. Williams talk about the evidence.

22          And we are at the summary judgment stage.  And we are

23  at the summary judgment stage where the plaintiff bears the

24  burden of showing by clear and convincing evidence that the

25  defendants acted with actual malice.  And you didn't hear and I

1   didn't hear what that evidence was.  I didn't hear what our

2   reporters testified to that would give them that evidence.

3          But I did hear Mr. Williams say that the only evidence

4   we have are essentially the ipse dixit of our reporters.

5   That's wrong, Your Honor.  We have real-time Tweets by people

6   like Lockhart and Begala in real-time commenting on what they

7   believed, right.  So we have evidence.  The plaintiff has not

8   pointed to any other evidence.

9          The most interesting omission in Mr. Williams' speech

10  was he never really quoted Alan Dershowitz.  He certainly

11  summarized Alan Dershowitz.  He told you the best version of

12  what he thinks Mr. Dershowitz's argument was.  But he did not

13  ever quote Mr. Dershowitz.  And I think that's a really

14  important omission here.

15         There's a couple statements that Mr. Williams made

16  that I would like to just correct, one of which he said that we

17  do not dispute that the exclusion of the quid pro quo line

18  changed the gist of the response.  That is incorrect.  We very

19  much dispute that taking that line out does anything or changes

20  the statement at all.  Every single witness testified that they

21  did not think the illegal quo line modified the rest of the

22  response, right.  So we do dispute that there was any altering

23  or tampering or changing of the quote.  Every witness testified

24  that they got it right.

25         One other thing that the plaintiff said I wanted to

1    mention quickly is that he mentions that the other publicity

2    given to Mr. Dershowitz's argument, that slide after slide that

3    I showed you at the beginning of my presentation, he said that

4    wasn't relevant to actual malice.  Of course that's relevant to

5    actual malice.  Every witness testified they knew all that.

6    Susie Xu and Chuck Hadad testified that part of the way they

7    selected what to put on the air was because it was the most

8    newsworthy moment because it was blowing up the Internet.  So

9    of course it's relevant to the actual malice inquiry.

10         There's a couple legal points that I disagree with

11   Mr. Williams on, the most important of which is that Your Honor

12   should be weighing evidence here.  There's no weighing of the

13   evidence, Your Honor.  The plaintiff bears all the burden here.

14   It is the plaintiff's job to put forward evidence, not

15   arguments, of knowing and reckless disregard of the truth.

16   That's not a weighing.  That's a carrying.  And if they don't

17   carry it, then there has to be a summary judgment motion.  And,

18   Your Honor, the plaintiff is not carrying that burden.  They

19   are making argument.

20         Your Honor, Mr. Williams misquoted the Michel case,

21   which is an Eleventh Circuit case.  And you're certainly able

22   to read it.  But the Michel case says nothing about a failure

23   to include contradictory information.  It actually says where

24   the publisher includes information contrary to the general

25   conclusions reached in the article, that showing undermines a

 1   claim of actual malice.  So it says nothing about actually

 2   failing to include evidence.

 3       And actually, Your Honor, I want to talk about that

 4   and Levan.  Because Mr. Williams was saying that these cases --

 5   that this is a different case than Levan or Michel because we

 6   excluded evidence in the form of Mr. Dershowitz's statements.

 7   Your Honor, we are the people who aired it live.  CNN was the

 8   only news organization -- actually, maybe that's not right.  I

 9   think there was one other and C-SPAN that aired the impeachment

10   trial in its entirety and still has it on the website.  The

11   idea that CNN did not show all of Mr. Dershowitz's statements

12   is just simply incorrect.

13       Next I want to talk about Hunt versus Liberty Lobby

14   because Mr. Williams said that Hunt versus Liberty Lobby kind

15   of puts paid to my argument that Schiavone, which Mr. Williams

16   totally pronounced better than I do, he said that that's the

17   one that puts paid to my argument that the defendants needed to

18   know that there was contradictory evidence, rather just there

19   exists contrary evidence in the law.  He is incorrect.

20       I'm reading from Hunt versus Liberty Lobby.  The Court

21   in Hunt versus Liberty Lobby says, there is evidence that

22   Liberty Lobby had reason to and in fact did question the

23   parties neutrality reporting in the CIA matters.

24       So the Hunt case did focus on the fact that there was

25   objective evidence that the defendants knew something was

1    contradictory.  Here, Your Honor, there is no evidence of that

2    knowledge of contradictory.

3         The next thing I want to talk about is the Jankovich

4    case which Mr. Williams said held that Time versus Pape didn't

5    apply in certain circumstances.  But that was the motion to

6    dismiss opinion he was citing, Your Honor, not the summary

7    judgment opinion.  At summary judgment the Court concluded that

8    Time versus Pape meant that summary judgment had to be granted

9    for the defendants.  Summary judgment was granted.  And when it

10   was granted the Court said, an honest misinterpretation does

11   not amount to actual malice even if the publisher was negligent

12   in failing to read the document carefully.  That's 822 F.3d

13   590, Your Honor.

14         MR. HOLOSZYC-PIMENTEL:  576.

15         MS. BOLGER:  576.  I'm sorry.  Rafe is an amazing

16   associate, and his handwriting is terrible.

17         So, Your Honor, Jankovich is the point, Your Honor, is

18   the point, Your Honor, even if you think we got it wrong.  An

19   honest misinterpretation does not amount to actual malice.  And

20   that is the key on the Jankovich decision.

21         Mr. Williams also likened this case to Nader versus

22   De Toledano and said that this is just like that case.  But,

23   Your Honor -- actually, no, I'm going to get to that in a

24   second.  I was disorganized and out of order.  I will get back

25   to that one.  So those are those cases.

1          On the ambiguity point Mr. Williams again mentions

2     that he believes that the statements are not ambiguous.  But to

3     think of the quid pro quo line or maybe it was what he said on

4     January 27th or maybe it's what Mr. Williams said

5     Mr. Dershowitz said.  The idea that there is a fact here, a

6     contradictory fact that is left out, it's not in the record.

7     There is no -- the quid pro quo line or what the argument was

8     that Mr. Dershowitz made on January 27th, those are not facts.

9     Those are legal arguments that he made and were interpreted by

10    people all across the political spectrum.  Those are not facts

11    that were ignored.  And the Nader case makes that point.  And

12    this is what I was winding up to say.

13         In the Nader case the error was, the falsification was

14    that the reporter had in his hand a piece of evidence that said

15    the plaintiff made a good faith -- made a statement in good

16    faith based on the information available to him.  That was the

17    information the reporter had.  When the reporter then reported

18    the article, he said that the evidence demonstrated

19    conclusively that the activist had falsified evidence.  It was

20    a fact that directly undercut what he published.  There is no

21    such fact here.

22         And I think there's a really important point to be

23    made here, which is that every single commentator testified

24    that they believed Mr. Dershowitz's arguments on January 29th

25    were new.  Time and again they testified to it.  I think you

1    heard Mr. Begala say it.  I read to you from Mr. Cooper.  I

2    read to you from Mr. Berman.  This was something that they had

3    not seen before.  It was divorced in their minds from the

4    January 27th statements, and that's very important here.

5         I will also add, by the way, that Anne Milgram on the

6    air as part of her statement says it is almost impossible to

7    understand that argument.  So the CNN journalists were flagging

8    that this was ambiguous.

9         I will just talk quickly about opinion because I think

10   this is the most surprising argument of all.  In light of these

11   publications, which are in the record now and before Your Honor

12   and were not on the motion to dismiss, this Tweet after Tweet

13   after Tweet after article after article after article about

14   what Mr. Dershowitz said on the floor of the Senate, all of

15   which were published before CNN made any of the allegedly

16   defamatory statements, I simply don't think there's any

17   credible argument that the facts were not known to the public.

18        The facts were not only known to the public.  They

19   were reveling in them.  They were making comments in French and

20   likening it to -- and Garry Kasparov was weighing in.

21   Everybody knew what Mr. Dershowitz was saying.  And that's

22   something we've been able to show in discovery.

23        Mr. Williams relies often on Milkovich in his

24   arguments.  Milkovich is, of course, a Supreme Court decision.

25   Usually, you know, we kind of listen to what they have to say.

1    But of course when they speak, that is the constitutional

2    floor, not the constitutional maximum.  Florida has a broader

3    protection for opinion law.  And that broader protection is

4    that you can include facts publicly known rather than just in

5    your article, and that's what CNN did here.

6          The last thing I will just say on damages, Your Honor,

7    because we obviously stand on what we said.  We did not

8    actually say he was libel proof, Your Honor.  What we said is

9    that he will never be able to show that the CNN documentary was

10   the proximate cause of his damage because in January 2022 he

11   was saying it was something else.

12         Your Honor, every single CNN witness testified that

13   they believed they got it right.  There is no evidence,

14   evidence.  Not argument.  I understand Mr. Williams knows a ton

15   about defamation law.  And, as I said, I'd love to talk to him

16   about it.  But that doesn't carry the water here.  He has to

17   put forward evidence.  And there is no evidence of actual

18   malice.  It is clear --

19         Oh, I want to say one more thing about opinions.

20   Mr. Williams said Mr. Dershowitz was particularly upset about

21   Begala's article.  I would mention that Begala's argument was

22   published on the opinion page.  He was described as an opinion

23   columnist.  And it said directly on it that the opinions in the

24   report were his own.

25         And the language of it is clearly rhetorical

1   hyperbole.  He uses words like this is Donald Trump's fondest

2   figurate dream, right.  These are words of rhetorical

3   hyperbole.  So too are the words Berman used and the words the

4   other speakers used.

5           In short, Your Honor, we think you should dismiss this

6   case because there's no malice because the statements were

7   constitutionally protected opinion.  And even if all else

8   fails, the plaintiff will never be able to show damages here.

9           THE COURT:  Thanks, Ms. Bolger.  Before you sit down

10  there was that one case that you were beginning to argue and

11  you said you would come back to it.

12          MS. BOLGER:  I did come back to it.  It was the Nader

13  case.

14          THE COURT:  That was Nader.

15          MS. BOLGER:  Yes.

16          THE COURT:  Okay.  Got it.

17          MS. BOLGER:  Thanks, Your Honor.  Wish my kids listen

18  to me that well.

19          THE COURT:  Okay.  And Mr. Williams.

20          MR. WILLIAM:  Thank you.  First of all, let me

21  apologize to Ms. Bolger.  When she said that they do dispute --

22  that the gist of statement changed, I hadn't seen that in their

23  papers.  I just assumed that they were not disputing that.  I

24  do note that Your Honor had made that determination in your

25  decision on summary judgment.

```
 1              She took me to task for Hunt, but here's my point on

 2      Hunt.  And this has to do with the Schiavonne case where she is

 3      making the argument that there had to be a showing of knowledge

 4      that the defendants knew that the omitted statement was

 5      contradictory.  I think the Hunt versus Liberty Lobby case is

 6      just on all fours.  It said you may draw the inference of

 7      malice where there's a contradictory statement, quote, even

 8      when the defendant testifies he believed the statement was

 9      consistent.  So I think that does dispose of it.  But,

10      obviously, I direct your attention, please, to take a look at

11      that 645 cite.

12              I think she -- there's a little confusion on what I

13      was saying about Michel.  The Michel case from the Eleventh

14      Circuit is quite clear.  And I think this is what I said, but

15      I'll say it again.  In Michel the Court stated that when a

16      publisher, quote, includes information contrary to the general

17      conclusions reached in the article, that showing tends to

18      undermined claims of actual malice.

19              That's what it said.  And I was simply making the

20      point that conversely the opposite, as here.  When the

21      publisher does not include information that is contrary, I

22      think it is a fair assumption that the Eleventh Circuit would

23      agree that that does constitute evidence of actual malice.

24              The fourth point I wanted to make is this.  This

25      opinion thing that she's talked about, and I -- as I understand
```

1    her argument, she said Tweet after Tweet after Tweet of

2    everybody that she had shown for -- in her video, her slide

3    presentation, they all made the same statement and therefore

4    the public knew and had all this information in its possession

5    that would make this a pure opinion.  Well, no, they didn't.

6    Let's coming back to back basics.  What all of those things

7    said is that Alan Dershowitz said this.  Not one of them

8    informed the public.  No, what Alan Dershowitz really said is

9    quite to the contrary.

10          And finally, Your Honor, objective evidence.  No

11   evidence of malice.  No.  We have made -- we have presented

12   proof to show that there was obvious reasons to doubt.  We

13   showed all of the statements.  She's right.  I didn't sit there

14   and quote them, but they are in the record for the Senate.

15   Eight times he talked about you need a crime to impeach on

16   January 27th.  He said it again.  There's no dispute about

17   that.

18          And the objective evidence is that he made all of

19   those statements.  The objective evidence that we have put in

20   the record and is not disputed is that each and every one of

21   the CNN witnesses was aware of all of those things he had said.

22   And the objective evidence is also that they omitted that

23   particular -- they omitted to say that Alan Dershowitz had made

24   it clear or they admitted saying that Alan Dershowitz had

25   indicated that you need a crime to impeach a president.

```
 1              Thank you very much.  That's all I have.

 2              THE COURT:  I do have a question for you.  Not that

 3    this is what everything hangs on.  But based on that last

 4    argument, is it rational and reasonable for journalists in

 5    general, in this case CNN, to believe that the statement by

 6    Mr. Dershowitz on the 29th was a change of his position from

 7    the 27th?

 8              MR. WILLIAM:  No.

 9              THE COURT:  Because there is some information in the

10    record that there's a change in position at different times.

11              MR. WILLIAM:  No, I don't think it is.  And I'll

12    handle that two ways.  They really can't say that that is a

13    change in the position because on the 27th he made it clear and

14    he gave examples of exactly, you know, the types of criminal

15    conduct that would make impeachable conduct anchored, of

16    course, by the high crimes and misdemeanors.  He then came back

17    to it on the 29th where he was asked to respond to some

18    questions.  And he said again, quid pro would be corrupt if it

19    was illegal.  And then he said even after that that he gave the

20    example of purely pecuniary interest, and he said that would be

21    corrupt as well.

22              So it's not a new argument.  It was made in the

23    context of a debate on one particular issue of motive, and it

24    didn't -- it did not change at all what he had been saying

25    about how you need a crime to impeach.
```

```
 1              Thank you very much.
 2              THE COURT:  The reason I ask it is because I read
 3     somewhere -- I've read a lot of the papers, and so I can't go
 4     exactly where it was.  But I guess in the late '90s he had made
 5     an argument that you didn't need a high crime or a misdemeanor.
 6              MR. WILLIAM:  Yes.  That's right.  No, that's
 7     absolutely right.  He got involved somehow in the Clinton
 8     impeachment and made some sort of presentation or wrote
 9     something, and then he went back to the books and realized.
10     And he went back and basically -- maybe it's a little
11     different.  But as I understand it what the Senate had done was
12     to impeach -- I think there was just one article of
13     impeachment, and it was for abuse of power.
14              THE COURT:  Okay.
15              MR. WILLIAM:  He was charged with abuse of power.  And
16     when you look at the statement, and understanding in that
17     regard, what he is essentially saying throughout is that abuse
18     of power is just too amorphous.  Anybody can be charged with
19     abuse of power.  And this was a big thing back in 2020, as I
20     recall, that the Republicans were saying you haven't charged
21     him with a crime.  And Alan Dershowitz came in to say that.
22              So that's why he -- I think he did more research, and
23     he admitted he did more research.  And it was that point he was
24     trying to make is that you can't impeach because -- unless you
25     have charged a crime and the house managers had failed to
```

1    charge a crime.

2              THE COURT:  Okay.

3              MR. WILLIAM:  Thank you.

4              THE COURT:  Thank you both for a great argument.

5    There's a lot there.

6              As I've told you, I rarely, rarely have hearings on

7    Rule 56 motions.  And so, you know, this was a good

8    two-and-a-half hours of argument, and I appreciate all of the

9    hard work all of you put into it.

10             MS. BOLGER:  Your Honor, I have a copy of the

11   PowerPoint.  I don't know if you want it.

12             THE COURT:  That would be great.  I was kind of taking

13   notes on some of them.

14             MS. BOLGER:  I won't pass the podium, because I

15   understand I'm not supposed to do that.

16             THE COURT:  Thanks.

17             MR. WILLIAM:  May we have a copy too?

18             MS. BOLGER:  I'm sorry.  I thought you had one.

19             MR. WILLIAM:  No, not yet.  Thank you very much.

20             MS. BOLGER:  Of course.

21             THE COURT:  We will work on this.  I don't really have

22   a time frame that I can get you in terms of when we'll have a

23   decision, but I think, you know, we already had that status

24   with regard to the potential trial date.  And I know,

25   Mr. Williams, based on that you have a long case coming up, you

```
 1   know, already.  So hopefully we'll get things to you in the

 2   next 30 days or so, but we'll see.

 3           Okay.  Thank you all so much.  I'll glad you're here

 4   in Florida instead of New York.

 5           MS. BOLGER:  Yes.

 6           THE COURT:  It's a little bit warmer.

 7           MR. WILLIAM:  Thank you, Judge.

 8           THE COURT:  Take care, everyone.

 9           MR. WILLIAM:  Happy Holidays.

10           THE COURT:  Happy Holidays, Merry Christmas, and have

11   a great break.

12           MR. WILLIAM:  Thank you very much, Your Honor.  And

13   thank you very for your graciousness with the scheduling issue.

14           THE COURT:  Oh, sure.  Sure.

15           MR. WILLIAM:  I had a few sleepless nights trying to

16   figure out if I had to be in two places during February.

17           THE COURT:  No, that -- you know, I think family and

18   vacations are the most important.  But, I mean, if you have

19   another trial, that's not even a fun excuse.

20           MR. WILLIAM:  I know.  I wish it was.

21           THE COURT:  Okay.  Take care, everyone.  Safe travels.

22           MR. WILLIAM:  Thank you.

23           MS. BOLGER:  Thank you, Your Honor.

24       (Proceedings concluded at 4:12 p.m.)

25
```

1                    C E R T I F I C A T E

2          I, Karl Shires, Registered Merit Reporter and Federal

3     Certified Realtime Reporter, certify that the foregoing is a

4     correct transcript from the record of proceedings in the

5     above-entitled matter.

6          Dated this 23rd day of December, 2022.

7

8     _____
      Karl Shires, RMR FCRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR.**
**HOLOSZYC-PIMENT**
**EL: [1]** 83/14
**MR. LEMIEUX: [2]** 4/2
4/9
**MR. ROSETTA: [1]**
3/22
**MR. SCHWEIKERT:**
**[1]** 3/18
**MR. WILLIAM: [58]**
3/15 48/8 48/10 48/12
48/16 54/15 54/18
55/1 56/12 57/2 57/12
57/16 57/20 57/22
57/25 58/14 58/19
59/1 61/24 62/4 62/7
62/11 63/2 64/5 64/8
64/10 64/15 64/21
64/24 65/2 65/20
65/22 65/25 71/5 71/7
74/5 74/7 75/12 75/17
76/10 77/20 78/1
78/15 79/2 87/20 90/8
90/11 91/6 91/15 92/3
92/17 92/19 93/7 93/9
93/12 93/15 93/20
93/22
**MS. BOLGER: [50]**
4/22 5/8 5/12 5/19 6/2
8/3 8/19 8/21 9/9
11/10 14/1 17/11
17/16 17/20 17/25
18/25 28/6 28/8 31/17
31/20 32/18 32/10
32/19 32/23 33/13
33/19 38/22 39/6
39/13 39/16 39/19
40/7 46/7 48/2 75/6
75/16 79/3 79/7 79/13
79/16 83/15 87/12
87/15 87/17 92/10
92/14 92/18 92/20
93/5 93/23
**THE COURT**
**REPORTER: [1]** 78/21
**THE COURT: [99]**

**$**

**$300 [1]** 35/19
**$300 million [1]** 35/19

**'**

**'22 [1]** 46/6
**'90s [1]** 91/4
**'If [4]** 11/19 14/21
21/13 21/14
**'illegal [1]** 29/11
**'L'Etat [1]** 15/7
**'So [1]** 14/20

**-**

**-and [2]** 1/18 2/4
**-v [1]** 1/6

**1**

**10020 [1]** 2/6
**10th [1]** 45/15
**110B [1]** 1/24
**1111 [1]** 1/20
**12 [1]** 56/4
**1251 [1]** 2/6
**15 [4]** 23/9 71/12
71/12 77/21
**1550 [1]** 1/20
**16 [1]** 1/8
**1629 [1]** 1/17
**18 [2]** 23/17 77/22
**180 degrees [1]** 40/19
**1964 [1]** 8/11
**1968 [1]** 49/14
**1969 [1]** 49/22
**1983 [1]** 53/16
**1998 [1]** 10/17
**1:26 [1]** 1/9

**2**

**20 [1]** 56/10
**20-CV-61872-SINGHA**
**L [1]** 1/2
**200 [1]** 38/3
**20006 [1]** 1/18
**2015 year [1]** 44/25
**2018 [1]** 10/18
**2020 [4]** 7/15 15/7
42/2 91/19
**2022 [4]** 1/8 44/19
86/10 94/6
**213 [1]** 3/6
**23rd [1]** 94/6
**24-hour [2]** 19/13
77/24
**252 [1]** 3/8
**263 [1]** 3/8
**27 [1]** 71/5
**27th [14]** 10/21 11/3
30/12 30/16 31/1
60/11 60/15 60/18
84/4 84/8 85/4 89/16
90/7 90/13
**29 [1]** 15/7
**299 [1]** 1/24
**29th [8]** 10/15 11/7
26/4 31/2 31/7 84/24
90/6 90/17
**2:11 [2]** 11/7 19/23
**2:11 p.m [1]** 54/11
**2:12 [1]** 54/14
**2:13 [1]** 54/12
**2:13 p.m [2]** 12/16
19/23
**2:14 [1]** 54/12
**2:15 [3]** 19/25 20/5
54/12
**2:21 p.m [1]** 20/7
**2:59 p.m [1]** 12/21

**3**

**30 [1]** 93/2
**30-minute [1]** 4/19
**300 [1]** 1/17

**36th [2]** 22/6 23/7
**33 [2]** 8/24 24/17
**33131 [1]** 1/20
**33301 [2]** 1/24 2/4
**35 [1]** 45/1
**37 [1]** 58/25
**3:40 [2]** 78/23 79/4
**3:50 [1]** 78/23

**4**

**45 [3]** 4/22 4/25 5/3
**450 [1]** 2/3
**4:12 [1]** 93/24

**5**

**5496 [1]** 1/23
**56 [3]** 4/11 32/3 92/7
**576 [2]** 83/14 83/15
**590 [1]** 83/13

**6**

**631 [1]** 53/16
**645 [2]** 53/17 88/11
**65 [2]** 13/21 13/21
**6:17 [1]** 22/7

**7**

**720 [1]** 53/16
**75 [1]** 45/1
**769-5496 [1]** 1/23
**7:11 p.m [2]** 19/9
19/11
**7th [1]** 45/8

**8**

**822 [1]** 83/12

**9**

**954 [1]** 1/23

**A**

**ABC [5]** 50/25 51/8
51/11 51/22 51/23
**ABC's [1]** 51/17
**abide [1]** 55/18
**ability [1]** 9/1
**able [9]** 7/22 35/22
44/11 46/3 78/2 81/21
85/22 86/9 87/8
**above-entitled [1]**
94/5
**Abraham [1]** 36/7
**absence [1]** 35/24
**absolute [1]** 8/6
**absolutely [2]** 8/23
91/7
**absurd [1]** 38/8
**abuse [6]** 13/19 38/10
91/13 91/15 91/17
91/19
**academic [1]** 36/22
**accept [1]** 38/5
**access [2]** 3/9 8/23
**account [3]** 16/12
16/13 25/6
**accountable [1]** 29/18
**accounts [1]** 31/10

**accuracy [3]** 48/25
49/7 49/12
**accurate [4]** 20/20
22/19 23/2 73/12
**accurately [1]** 7/14
**accusation [1]** 45/5
**accused [2]** 44/24
45/19
**acknowledge [1]** 74/8
**acknowledgment [1]**
58/16
**acquittal [1]** 6/6
**acquitted [2]** 36/18
46/23
**act [2]** 65/13 66/9
**acted [10]** 7/20 16/5
24/7 40/9 41/3 47/1
48/24 49/6 61/15
79/25
**acting [2]** 19/5 20/13
**action [3]** 6/20 22/23
22/24
**actionable [1]** 43/17
**actions [2]** 29/23
29/24
**actively [1]** 23/11
**activist [1]** 84/19
**activity [3]** 20/12
40/17 40/18
**actors [1]** 7/12
**actual [51]** 7/7 7/20
8/9 8/17 8/22 9/2 9/6
16/1 16/2 16/2 16/6
16/20 16/24 17/1 17/5
24/18 24/21 24/21
25/21 28/2 31/21
32/19 32/24 33/4
35/13 37/20 40/9 41/3
48/20 49/4 50/20 51/3
52/6 52/9 53/5 55/9
55/13 59/7 61/16
67/19 74/12 79/25
81/4 81/5 81/9 82/1
83/11 83/19 86/17
88/18 88/23
**actuation [1]** 46/1
**Adam [1]** 32/15
**Adam Schiff [1]** 32/15
**add [1]** 85/5
**added [2]** 21/24 68/17
**addition [3]** 28/11
30/21 38/2
**additional [3]** 55/18
78/10 78/12
**address [1]** 68/2
**addressed [1]** 50/4
**addressing [1]** 33/14
**adequate [2]** 67/7
67/10
**admitted [4]** 28/10
36/13 89/24 91/23
**adopting [1]** 35/9
**advocate [5]** 6/5
36/17 46/18 46/20
46/21
**advocating [1]** 10/19

**36/19**
**affairs [1]** 35/17
**affect [4]** 56/6 56/21
77/13 78/2
**affidavit [1]** 59/2
**aftermath [1]** 56/5
**afternoon [8]** 3/15
3/18 4/2 5/17 6/2 11/7
48/12 77/1
**agency [5]** 74/17
74/21 75/23 76/4
76/18
**agenda [1]** 55/8
**ago [2]** 46/8 58/21
**agree [10]** 14/25 39/1
41/13 57/3 57/18
57/19 63/3 63/22 64/3
88/23
**agreed [1]** 59/3
**agrees [1]** 47/5
**ahead [2]** 61/4 62/1
**air [7]** 23/7 23/18
24/17 37/4 51/12 81/7
85/6
**aired [4]** 22/9 42/4
82/7 82/9
**airplane [2]** 21/8
60/10
**airtime [1]** 8/25
**Akin [1]** 21/12
**ALAN [32]** 1/4 3/3
3/16 6/5 11/18 12/5
12/11 14/7 15/7 28/20
46/15 48/13 50/2
56/17 60/5 60/14 63/8
63/18 63/19 65/2 69/3
69/8 76/20 77/12
77/15 80/10 80/11
89/7 89/8 89/23 89/24
91/21
**Alan Dershowitz [2]**
6/5 77/15
**alarm [1]** 54/3
**all-hands [1]** 26/5
**allegation [6]** 7/5
25/19 26/8 26/11
68/15 76/15
**allegations [11]** 34/16
35/24 44/22 45/17
46/4 54/5 58/16 60/4
68/13 77/3 77/4
**allege [1]** 61/4
**alleged [6]** 6/22 6/23
22/5 23/25 24/9 24/25
**allegedly [4]** 17/20
18/2 21/1 85/15
**allowed [2]** 14/10
24/16
**alluded [1]** 34/3
**alter [2]** 14/19 46/24
**altering [1]** 80/22
**alternative [1]** 11/15
**Amant [3]** 16/8 49/15
49/22
**amazing [3]** 21/8
28/13 83/15

**A**

ambiguities [3] 35/7 68/22 69/2
ambiguity [10] 36/23 37/16 67/21 68/3 68/3 68/5 69/13 69/18 70/12 84/1
ambiguous [23] 34/21 34/25 35/1 35/4 35/10 35/25 36/3 36/16 37/1 37/3 37/9 37/14 68/1 68/21 69/10 69/20 69/22 69/23 69/25 70/1 70/10 84/2 85/8
amended [1] 25/16
amendment [3] 14/6 40/2 47/10
America [4] 32/1 35/22 46/17 65/9
American [7] 38/6 38/24 42/21 43/1 47/2 58/8 58/11
Americans [1] 12/25
Americas [1] 2/6
amorphous [1] 91/18
amount [3] 19/4 83/11 83/19
analysis [3] 16/15 63/4 70/17
analyst [1] 18/6
analyze [1] 69/12
anchor [1] 22/13
anchored [1] 90/15
anchors [2] 50/1 70/1
Anderson [8] 17/7 18/4 18/17 54/1 59/11 61/19 67/20 77/23
Anne [4] 18/5 25/24 42/24 85/5
announced [1] 8/1
answer [9] 6/11 6/12 11/8 24/11 28/16 28/17 28/18 29/20 36/11
answering [1] 6/8 28/22
anybody [2] 37/17 91/18
anybody's [1] 31/2
anymore [2] 8/13 63/1
Anytime [1] 71/25
apart [2] 73/3 73/22
apologize [1] 87/21
Appeals [1] 70/16
appear [2] 57/1 76/6
appearance [2] 3/21 4/7
appearances [3] 1/15 1/25 3/13
appeared [3] 23/8 23/16 46/17
appellate [1] 5/4
application [1] 74/17
applied [6] 73/16 73/19 73/20 73/21 75/1 76/12

apply [1] 83/5
appreciate [5] 4/14 47/16 47/25 79/15 92/8
appropriate [4] 4/7 17/2 20/23 70/13
approved [1] 55/7
approximately [1] 54/11
arguably [1] 35/8
argue [8] 6/6 33/15 47/20 47/20 56/13 56/17 78/3 87/10
argued [4] 12/6 34/17 47/21 76/19
argues [7] 12/12 12/18 12/23 36/2 37/16 73/17 77/16
arguing [5] 10/22 14/23 36/17 70/9 74/18
argument [87] 5/4 8/2 8/2 8/6 8/9 9/11 10/13 10/14 10/22 11/3 13/4 14/21 15/2 19/16 20/1 20/5 20/11 20/17 20/22 20/23 20/24 22/21 23/1 25/20 26/3 26/4 26/6 26/7 26/10 26/11 26/18 26/23 27/16 27/24 29/22 29/25 30/12 30/12 31/1 31/2 33/13 33/21 36/25 37/13 38/9 39/23 39/24 40/8 42/13 42/14 44/10 47/16 47/17 48/7 48/14 52/12 52/21 52/25 53/8 53/14 60/24 60/25 62/20 64/13 72/8 78/25 80/12 81/2 81/19 82/15 82/17 84/7 85/7 85/10 85/17 86/14 86/21 88/3 89/1 90/4 90/22 91/5 92/4 92/8
arguments [13] 4/13 5/6 18/13 21/12 30/21 41/21 43/2 46/25 47/3 81/15 84/9 84/24 85/24
article [32] 21/24 21/25 22/4 25/12 25/15 25/15 25/17 25/18 25/19 25/23 26/7 34/15 34/17 34/18 34/24 37/8 40/18 52/5 52/8 52/20 71/13 73/2 73/12 81/25 84/18 85/13 85/13 85/13 86/5 86/21 88/17 91/12
articulate [1] 78/5
articulated [1] 49/15
asked [14] 6/9 21/10

27/18 28/19 29/16 31/13 41/15 41/18 43/7 47/22 70/8 71/16 71/20 90/17
asking [1] 29/4
assaulted [1] 44/22
asserting [1] 74/7
assertion [1] 67/16
asserts [1] 10/7
assessing [2] 31/22 59/13
associate [1] 83/16
assumed [1] 87/23
assuming [2] 4/17 8/17
assumption [1] 88/22
Atlanta [1] 58/23
attention [1] 88/10
attorney [1] 11/18
audience [11] 23/18 41/17 43/10 63/15 63/25 66/21 66/22 66/24 67/6 67/10 72/4
author's [1] 43/15
available [1] 41/10 43/9 84/16
Avenue [2] 1/20 2/6
average [2] 31/25 47/12
aware [11] 6/3 16/12 18/13 22/17 22/22 24/10 42/15 50/2 50/15 53/22 89/21

**B**

back [25] 5/16 5/17 5/23 11/5 20/14 21/18 23/22 31/3 46/14 58/14 60/11 65/18 67/17 77/23 78/2 79/6 83/24 87/11 87/12 89/6 89/6 90/16 91/9 91/10 91/19
bad [1] 35/24
Bar [1] 28/10
barrage [1] 56/5
based [17] 4/18 7/18 8/10 18/3 19/1 33/11 41/8 42/16 44/7 52/21 66/19 72/8 72/22 73/11 84/16 90/3 92/25
basic [2] 62/19 63/1
basically [4] 13/22 63/7 71/19 91/10
basics [1] 89/6
basis [5] 35/23 41/20 43/8 67/14 76/16
bearing [1] 50/20
bears [3] 67/24 79/23 81/13
Beast [1] 12/4
Begala [21] 13/10 21/2 21/4 21/7 21/17 21/24 21/25 25/24 26/13 28/4 28/7 28/8

28/11 28/12 42/23 55/22 56/1 64/13 64/17 80/6 85/1
Begala's [5] 21/20 28/16 65/11 86/21 86/21
began [3] 11/24 22/11 23/4
beginning [4] 26/17 31/9 81/3 87/10
behalf [4] 3/15 4/3 36/17 48/13
behavior [1] 10/22
belief [1] 23/3
believe [18] 7/16 7/17 15/20 19/4 20/20 20/24 22/1 22/22 23/1 23/2 28/9 35/1 39/19 39/20 39/25 40/25 48/3 90/5
believed [23] 7/14 7/15 8/25 15/19 18/12 18/19 18/22 18/25 19/3 20/19 21/19 22/18 24/11 26/1 28/15 52/14 53/1 53/10 54/4 80/7 84/24 86/13 88/8
believes [4] 9/4 11/19 20/2 84/2
believing [1] 29/24
bell [1] 54/3
belong [1] 47/10
benign [1] 49/19
Berkeley [1] 39/5
Berman [19] 22/13 22/13 29/19 31/13 33/15 33/19 37/13 42/22 53/24 55/16 64/18 64/20 64/25 65/6 66/5 69/20 74/9 85/2 87/3
Berman's [1] 37/18
best [2] 5/6 80/11
better [6] 13/8 14/2 17/22 20/9 26/22 82/16
big [1] 91/19
biggest [1] 41/23
Bill [1] 39/25
bit [4] 16/2 26/23 66/17 93/6
blanche [1] 38/6
Blitzer [2] 23/12 77/22
Blitzer's [2] 23/8 23/18
blowing [4] 18/14 42/10 42/22 81/8
blue [1] 27/3
bold [1] 63/13
BOLGER [16] 2/5 4/3 4/17 6/3 47/15 48/16 52/2 54/10 56/10 58/19 63/2 70/2 76/25 79/6 87/9 87/21
bombing [1] 58/23

bonkers [1] 42/23
book [10] 10/19 72/10 72/11 72/12 72/12 72/14 72/14 72/15 72/23 73/1
books [4] 45/1 45/24 45/24 91/9
bore [1] 67/2
Botanic [1] 9/15
bothers [2] 65/1 65/4
bottom [2] 27/22 33/23 69/11
Boulevard [2] 1/24 2/3
Bradley [1] 13/2
break [6] 18/22 19/11 29/5 38/10 39/2 93/11
Brennan [1] 16/3
Brett [2] 22/3 26/1
bribery [1] 65/13
Brickell [1] 1/20
brief [25] 9/11 10/6 11/23 15/21 16/18 16/18 23/21 32/15 43/25 49/21 49/24 50/25 51/1 52/22 54/19 56/25 63/13 73/6 73/15 73/16 73/18 75/9 75/13 76/20 76/25
briefly [1] 15/16
bring [3] 24/23 69/21
bristled [2] 35/6 68/21
bristling [1] 69/2
broadcast [5] 18/8 50/6 50/18 51/8 51/17
broader [2] 86/2 86/3
broadest [1] 41/23
brought [2] 6/17 72/18
Broward [1] 1/24
brutality [1] 34/13
Buckley [1] 43/5
Bugliosi [3] 43/24 43/25 44/1
Bugliosi's [1] 44/5
bunch [1] 25/9
burden [4] 41/1 79/24 81/13 81/18
Burnett [2] 19/8 20/15

**C**

c'est [1] 15/7
C-SPAN [1] 82/9
CABLE [3] 1/7 3/3 4/1
call [6] 3/1 3/2 26/5 26/9 26/14 54/23
called [4] 16/21 18/3 37/5 55/17
calling [1] 55/16
calls [1] 24/19
campaign [1] 65/13
canceled [1] 45/12
candidate [2] 20/8 20/9
capable [1] 31/23

**C**

**Capital [2]** 16/22 50/24
**care [3]** 75/12 93/8 93/21
**career [4]** 30/19 44/15 45/18 45/23
**carefully [2]** 3/11 83/12
**carry [3]** 41/1 81/17 86/16
**carrying [2]** 81/16 81/18
**carte [1]** 38/6
**Carvajal [2]** 25/8 26/7
**case [98]**
**cases [23]** 14/11 49/16 49/20 50/21 51/4 52/13 52/19 52/22 58/1 62/14 64/2 66/15 66/16 66/17 73/5 74/18 75/18 75/19 76/4 76/5 78/7 82/4 83/25
**caught [1]** 69/14
**cause [2]** 44/12 86/10
**caused [1]** 50/18
**celebrated [1]** 45/3
**center [1]** 38/25
**central [1]** 6/15
**certain [3]** 5/5 57/5 83/5
**certainly [22]** 4/11 26/9 47/12 55/22 56/15 56/16 58/8 59/3 59/19 63/14 63/25 64/3 65/4 69/5 69/9 71/1 71/14 76/12 76/17 77/16 80/10 81/21
**Certified [1]** 94/3
**certify [1]** 94/3
**challenged [1]** 50/8
**chamber [2]** 28/25 35/22
**change [4]** 90/6 90/10 90/13 90/24
**changed [6]** 10/21 26/23 50/12 50/16 80/18 87/22
**changes [4]** 27/5 30/20 61/14 80/19
**changing [1]** 80/23
**Channel [3]** 8/15 8/15 8/16
**channels [2]** 8/15 8/23
**characterize [1]** 35/6
**characterized [1]** 34/13
**characterizing [1]** 7/14
**charge [1]** 92/1
**charged [5]** 62/5 91/15 91/18 91/20 91/25

**Charles [1]** 44/2
**cheating [1]** 20/8
**Chemerinsky [1]** 38/7
**Chemerinsky [5]** 38/13 38/17 38/20 39/4 39/20
**Chief [1]** 6/9
**choice [6]** 34/14 35/6 37/11 37/19 37/20 40/16
**chose [3]** 6/11 41/25 46/15
**Chris [2]** 23/16 77/22
**Christmas [1]** 93/10
**Chuck [3]** 18/9 42/10 81/6
**CIA [1]** 82/23
**circle [2]** 18/4 58/8
**circles [1]** 57/6
**circling [1]** 65/17
**Circuit [17]** 16/21 43/5 43/25 50/23 51/7 51/20 52/11 53/16 72/9 72/19 73/9 74/14 75/25 76/2 81/21 88/14 88/22
**Circuit's [1]** 53/2
**circulated [3]** 24/1 25/12 25/19
**circumstances [2]** 71/2 83/5
**circumstantial [1]** 16/17
**cite [9]** 16/25 43/25 53/12 53/12 53/17 73/5 73/19 75/13 88/11
**cited [12]** 13/21 43/12 49/24 50/21 50/23 52/2 52/10 52/22 66/18 75/19 75/21 76/1
**cites [1]** 37/15
**Cities [2]** 16/22 50/25
**citing [1]** 83/6
**citizenry [1]** 62/19
**citizens [2]** 38/24 47/3
**Civil [2]** 68/10 68/16
**claim [10]** 8/1 8/3 24/24 24/24 30/9 35/19 40/11 44/10 76/23 82/1
**claimed [2]** 51/9 69/15
**claims [5]** 6/20 13/6 49/9 69/16 88/18
**clause [2]** 70/21 71/4
**clear [27]** 17/2 17/5 27/19 27/21 32/25 33/2 33/20 36/5 36/24 37/21 41/2 41/21 64/10 64/11 65/18 73/8 75/14 75/21 76/2 79/24 86/18 88/14 89/24 90/13
**clearly [8]** 21/22 35/15

60/12 71/20 71/25 74/9 77/15 86/25
**clerk [1]** 3/23
**client [3]** 4/3 36/18 36/18
**Clinton [1]** 91/7
**clip [19]** 6/18 6/25 7/2 7/8 11/25 18/8 18/9 18/12 18/14 20/16 20/17 21/24 22/1 22/2 22/2 22/4 23/25 24/9 27/4
**clips [8]** 4/23 11/25 22/9 22/14 22/15 24/2 25/2 49/2
**close [1]** 51/6
**closest [1]** 25/4
**CM [2]** 3/5 3/9
**CM/ECF [2]** 3/5 3/9
**CNN [99]**
**CNN's [14]** 23/7 23/18 38/3 42/12 43/8 44/11 46/3 56/8 59/21 61/17 72/8 73/4 75/18 76/25
**co-counsel [1]** 40/5
**coined [1]** 56/22
**colloquy [1]** 18/4
**Columbia [1]** 70/16
**column [1]** 21/2
**columnist [1]** 86/23
**come [8]** 11/5 24/17 24/20 51/6 58/14 67/17 87/11 87/12
**comes [3]** 3/7 17/1 49/14
**coming [4]** 46/14 47/21 89/6 92/25
**comment [5]** 7/2 47/18 50/8 64/3 64/7
**commentary [9]** 6/19 11/13 14/17 18/6 20/18 21/3 21/6 22/23 43/14
**commentator [6]** 14/19 21/5 24/8 69/21 76/15 84/23
**commentators [17]** 6/19 7/2 11/15 13/9 13/18 15/9 31/9 32/14 48/19 50/14 52/14 54/2 60/4 60/12 68/2 69/7 75/4
**commented [2]** 10/17 47/5
**commenting [3]** 13/1 24/8 80/6
**comments [5]** 5/24 11/14 18/19 60/11 85/19
**Commission [2]** 68/10 68/16
**commit [8]** 20/12 61/6 61/12 64/18 64/22 65/3 65/4 69/18
**committed [1]** 60/16
**common [2]** 13/8

68/24
**communication [1]** 8/24
**communicator [1]** 41/9
**compare [1]** 62/3
**compelling [1]** 27/19
**complaint [5]** 6/24 25/16 27/17 54/9 56/5
**complete [1]** 73/12
**completely [1]** 19/15
**complex [1]** 9/23
**complications [2]** 68/19 68/24
**computer [1]** 48/9
**conceded [1]** 10/6
**concern [1]** 34/12
**conclude [4]** 42/15 46/9 56/25 71/22
**concluded [4]** 9/22 60/17 83/7 93/24
**conclusion [2]** 43/21 72/15
**conclusions [10]** 18/11 18/18 21/9 22/15 22/16 34/16 52/5 72/24 81/25 88/17
**conclusively [1]** 84/19
**concrete [1]** 33/25
**condemnatory [1]** 49/19
**conduct [6]** 19/3 19/5 69/16 70/22 90/15 90/15
**confess [1]** 33/15
**confidence [1]** 49/6
**confidential [2]** 75/7 75/11
**confusing [1]** 37/5
**confusion [1]** 88/12
**Congressional [3]** 9/20 10/4 27/1
**congressman [2]** 15/6 31/11
**conservative [2]** 57/1 57/4
**consider [4]** 31/14 71/19 72/20 72/21
**considerable [1]** 20/18
**considered [4]** 12/7 53/25 71/2 74/23
**considering [2]** 9/18 10/11
**consistent [9]** 8/4 18/16 24/12 28/12 42/11 52/1 53/10 54/5 88/9
**conspiracy [10]** 6/22 62/2 7/9 25/11 25/23 26/13 26/17 54/10 54/20 54/21
**constant [1]** 19/13
**constitute [1]** 41/5

88/25
**Constitution [2]** 61/8 62/12
**constitutional [8]** 38/3 38/7 62/13 63/20 63/20 76/22 86/1 86/2
**constitutionally [2]** 41/6 87/7
**contact [2]** 19/24 21/16
**contacted [1]** 55/23
**contained [3]** 9/21 25/7 72/16
**contemporaneous [1]** 60/3
**context [6]** 22/20 22/25 28/21 33/4 73/21 90/23
**Continue [1]** 54/24
**Continued [1]** 2/1
**continues [1]** 70/2
**contract [1]** 75/7
**contractor [4]** 74/3 74/16 74/20 76/3
**contractors [3]** 74/11 74/24 75/15
**contracts [1]** 75/10
**contradicted [2]** 30/14 53/2
**contradictory [16]** 40/10 40/11 40/23 49/18 51/24 52/15 53/1 53/20 53/23 81/23 82/18 83/1 83/2 84/6 88/5 88/7
**contradicts [1]** 53/6
**contrary [14]** 16/19 16/23 40/20 51/2 52/4 52/8 56/13 62/16 77/16 81/24 82/19 88/16 88/21 89/9
**contrast [1]** 68/23
**contributors [1]** 50/1
**control [1]** 74/22
**controversial [1]** 72/13
**controversy [1]** 44/14
**conversely [2]** 52/6 88/20
**convince [1]** 41/13
**convinced [2]** 41/4 44/9
**convincing [6]** 17/5 32/25 33/2 41/2 59/8 79/24
**Cooper [14]** 18/4 18/5 18/17 18/23 26/13 28/18 28/24 37/4 37/24 54/1 54/1 74/10 77/23 85/1
**Cooper's [1]** 28/18
**coordination [2]** 24/4 25/3
**copy [2]** 92/10 92/17
**corporate [1]** 20/5
**correct [8]** 15/23

**C**

correct... **[7]** 56/12 57/13 59/1 61/24 64/21 80/16 94/4
correctly **[1]** 66/18
corrupt **[6]** 15/4 38/6 50/10 60/21 90/18 90/21
corrupt.' **[1]** 29/11
Corsi **[2]** 75/19 76/7
counsel **[2]** 40/5 64/11
count **[2]** 5/20 62/18
country **[3]** 15/2 20/2 21/15
couple **[3]** 23/11 80/15 81/10
course **[24]** 8/23 9/14 10/10 15/8 15/15 24/14 27/7 30/19 31/22 36/17 36/22 43/5 44/14 50/11 52/6 59/9 62/9 72/17 81/4 81/9 85/24 86/1 90/16 92/20
court **[50]** 1/1 1/23 3/1 6/10 7/18 9/17 11/9 16/8 16/9 16/22 17/1 17/25 18/24 28/5 33/18 34/13 34/19 34/20 35/3 35/5 35/11 35/14 35/19 39/17 43/4 43/13 44/4 49/10 49/15 50/4 50/11 52/3 53/4 55/11 59/11 59/17 67/4 68/5 68/17 68/19 68/20 68/23 70/15 70/16 76/2 82/20 83/7 83/10 85/24 88/15
Court's **[1]** 67/12
courted **[1]** 44/14
courtroom **[1]** 62/25
courts **[4]** 47/19 47/23 68/12 75/23
coverage **[2]** 22/17 42/9
covered **[1]** 74/2
crafted **[1]** 52/12
crazy **[2]** 20/1 55/15
create **[1]** 35/7
created **[1]** 16/3
credible **[1]** 85/17
crime **[24]** 10/17 10/19 10/22 10/22 10/25 11/1 11/2 13/19 20/12 30/13 60/9 60/15 60/16 61/6 62/21 63/10 70/22 89/15 89/25 90/25 91/5 91/21 91/25 92/1
crimes **[20]** 13/11 13/13 13/14 13/23 14/4 14/16 31/4 60/19 61/7 61/9 61/12 61/23 64/18 64/23 65/3 65/5

69/18 70/21 71/4 90/16
criminal **[6]** 40/17 40/18 61/2 65/13 66/9 90/14
critical **[2]** 44/2 44/4
criticizing **[1]** 47/7
crucial **[6]** 49/18 50/6 50/9 60/22 67/9 71/18
Cruz **[1]** 10/15
Cruz's **[1]** 28/22
crystal **[3]** 27/21 53/14 65/18
culpability **[1]** 9/6
Cuomo **[1]** 77/22
Cuomo's **[1]** 23/16
cure **[1]** 78/12
current **[1]** 8/10
cut **[2]** 24/2 58/5
CV **[1]** 1/2
cycle **[1]** 19/13

**D**

Daily **[2]** 12/4 12/9
damage **[3]** 44/12 77/16 86/10
damaged **[8]** 7/23 46/4 56/17 56/18 57/10 57/21 57/23 58/2
damages **[12]** 56/16 56/20 56/24 58/14 76/19 76/24 77/24 77/24 78/1 78/6 86/6 87/8
Dan **[2]** 72/12 72/17
Dana **[1]** 4/4
Dangerous **[3]** 14/22 14/22 14/22
date **[1]** 92/24
Dated **[1]** 94/6
David **[3]** 3/22 14/21 21/12
DAVIS **[1]** 2/5
day **[14]** 18/7 19/10 22/1 22/6 22/7 22/10 23/7 23/15 24/17 33/11 58/24 58/24 77/21 94/6
days **[6]** 45/8 60/20 71/6 71/7 71/8 93/2
DC **[4]** 1/18 72/8 72/19 73/9
De **[2]** 70/15 83/22
De Toledano **[1]** 83/22
DEA **[1]** 18/6
deal **[3]** 49/17 58/12 74/1
dealing **[2]** 13/11 64/4
dealt **[1]** 51/8
dean **[1]** 39/4
debate **[4]** 48/3 62/13 79/19 90/23
debated **[1]** 23/11
December **[2]** 1/8 94/6

decided **[6]** 8/14 10/18 45/20 73/8 73/9 76/3
deciding **[1]** 34/5
decision **[31]** 7/12 8/5 9/14 11/5 13/15 16/19 16/23 24/5 24/7 24/10 24/11 24/13 25/3 32/3 33/23 34/7 34/9 41/20 49/14 50/7 50/19 50/24 51/2 53/2 63/16 67/12 68/7 83/20 85/24 87/25 92/23
decision-maker **[5]** 24/7 24/10 24/11 24/13 33/23
decision-makers **[3]** 7/12 24/5 25/3
decisions **[3]** 9/12 33/7 33/8
declarations **[3]** 59/22 59/23 61/18
declined **[2]** 23/23 41/13
deeply **[1]** 43/20
defamation **[13]** 6/17 6/20 24/24 35/19 38/23 39/9 43/17 44/3 47/6 47/9 74/18 79/19 86/15
defamations **[1]** 56/25
defamatory **[18]** 18/2 21/1 22/5 22/5 25/14 25/18 26/9 26/12 31/23 49/20 50/18 53/6 56/5 57/4 66/7 66/9 72/16 85/16
defame **[2]** 6/23 7/9
defeat **[1]** 17/7
defendant **[14]** 1/8 2/2 4/1 16/5 49/5 49/5 49/9 49/11 53/1 53/6 53/9 61/15 74/12 88/8
defendant's **[3]** 1/11 3/4 37/22
defendants **[5]** 79/25 82/17 82/25 83/9 88/4
defending **[1]** 46/11
defense **[6]** 10/3 12/6 14/20 43/11 63/6 63/7
defined **[2]** 16/6 41/8
definitely **[1]** 5/15
definition **[1]** 66/3
degree **[1]** 74/22
degrees **[2]** 40/19 45/2
deliberate **[12]** 6/23 7/5 7/7 24/25 24/25 25/2 25/5 28/14 34/14 35/5 37/11 37/19
deliberately **[1]** 56/8
democracy **[5]** 34/11 38/6 39/16 39/23 46/24
democratic **[1]** 21/4
demonstrated **[2]**

7/1 24 84/16
demonstrating **[1]** 41/1
denies **[1]** 50/14
depositions **[1]** 71/16
Dershonuts **[1]** 55/16
DERSHOWITZ **[135]**
Dershowitz's **[33]** 10/14 10/15 11/23 13/4 18/13 18/19 18/21 19/16 20/11 20/17 21/11 22/8 22/9 24/24 26/4 26/10 26/11 26/18 30/9 33/21 38/4 42/13 43/19 50/15 63/18 63/19 67/3 77/12 80/12 81/2 82/6 82/11 84/24
described **[1]** 86/22
designated **[1]** 75/10
despite **[3]** 61/3 76/20 77/12
destroy **[1]** 45/20
destroyed **[10]** 44/13 45/7 45/7 45/10 45/21 45/21 45/21 45/22 45/22 77/3
determination **[2]** 50/21 87/24
determinative **[1]** 67/18
determine **[2]** 74/19 75/1
determined **[7]** 15/22 15/23 35/3 66/3 68/13 74/16 75/22
develop **[1]** 41/16
developed **[3]** 41/15 59/23 60/2
dictator **[1]** 15/5
didn't **[33]** 8/17 14/15 15/24 23/10 29/10 29/12 29/13 32/16 36/9 38/19 51/22 51/24 54/1 55/21 64/22 66/6 66/9 71/17 71/17 71/19 71/25 75/16 77/13 78/4 79/20 79/25 80/1 80/1 83/4 89/5 89/13 90/24 91/5
different **[18]** 9/17 10/24 13/13 24/2 24/2 27/18 29/14 30/7 39/14 52/19 56/10 60/15 65/22 68/6 68/18 82/5 90/10 91/11
differently **[1]** 39/8
difficult **[5]** 58/2 68/14 70/3 70/4 76/14
difficulty **[1]** 69/5
diminished **[1]** 57/5
diminishment **[1]** 58/6

direct **[3]** 3/10 35/21 88/10
directed **[3]** 32/6 32/6 32/11
directly **[1]** 33/19
disagree **[8]** 21/21 35/20 37/16 40/3 51/16 62/7 62/9 81/10
disagreeing **[2]** 38/24 47/7
disagreement **[3]** 6/21 59/16 59/19
disbelieve **[1]** 39/22
disclose **[1]** 51/24
disclosed **[5]** 51/18 72/23 73/5 73/11 73/23
disclosure **[1]** 67/8
disconnect **[1]** 62/22
disconnected **[1]** 30/1
discounting **[1]** 48/22
discovery **[2]** 7/6 85/22
discretion **[1]** 14/10
discuss **[1]** 75/6
discussing **[1]** 75/10
discussion **[6]** 18/14 22/8 22/12 23/13 60/23 66/1
discussions **[1]** 75/22
disease **[1]** 56/9
dismiss **[16]** 7/3 8/5 9/11 9/16 9/21 10/3 10/12 41/12 50/5 63/17 66/1 66/16 79/18 83/6 85/12 87/5
dismissed **[1]** 44/10
disorganized **[1]** 83/24
dispose **[1]** 88/9
disposes **[1]** 72/7
dispute **[8]** 49/25 58/20 59/2 80/17 80/19 80/22 87/21 89/16
disputed **[2]** 68/2 89/20
disputes **[1]** 15/23
disputing **[1]** 87/23
disregard **[4]** 16/7 16/9 16/10 81/15
distinguished **[1]** 76/21
distinguishing **[1]** 14/15
DISTRICT **[5]** 1/1 1/1 1/13 70/16 75/24
divorced **[2]** 30/23 85/3
dixit **[1]** 80/4
docket **[3]** 3/6 3/7 3/8
doctoring **[1]** 7/8
doctrine **[6]** 50/8 56/22 65/12 65/21

**D**

doctrine... [2] 66/8 78/6
document [5] 3/5 35/1 35/20 37/9 83/12
documentary [1] 86/9
documents [1] 60/3
dog [1] 25/13
dogs [1] 56/22
doing [6] 36/19 36/19 45/3 45/5 47/6 47/7
Donald [2] 12/10 87/1
door [1] 44/16
doubt [9] 33/1 48/25 49/12 49/13 52/17 55/10 55/12 60/4 89/12
doubted [2] 26/20 33/3
doubts [1] 16/11
downturn [1] 62/24
dramatic [1] 10/20
draw [2] 72/24 88/6
drawn [1] 53/5
dream [1] 87/2
drink [1] 18/1
droning [1] 4/23
dunk [2] 8/6 42/17

**E**

earlier [5] 64/11 71/6 71/7 71/8 77/10
early [1] 42/2
East [2] 1/24 2/3
easy [2] 13/15 13/18
ECF [2] 3/5 3/9
ed [3] 21/2 21/11 21/18
edited [3] 6/18 6/25 22/2
editor [1] 22/3
editor's [1] 21/4
editorial [2] 14/10 24/3
editors [2] 27/23 50/2
Eds [1] 21/3
effects [1] 45/14
eight [3] 60/15 60/17 89/15
either [5] 3/10 17/4 27/14 31/5 41/8
elected [10] 9/23 9/25 10/8 11/20 12/7 12/11 15/11 20/13 22/24 65/8
election [7] 20/8 21/15 21/15 29/23 29/24 38/12 65/8
electoral [1] 38/6
Eleventh [12] 16/21 50/23 51/7 51/20 53/2 53/16 74/14 75/25 76/2 81/21 88/13 88/22
else's [2] 20/25 37/17
email [3] 25/5 25/7

25/9
embellish [3] 66/17 67/11 67/12
empirical [1] 57/4
employee [5] 74/9 74/15 74/20 75/20 76/3
employees [1] 74/23
employment [2] 75/1 75/4
endorsement [1] 9/2
engage [1] 20/12
engaged [3] 19/2 51/9 69/16
engaging [1] 67/7
enjoyed [1] 4/13
enormously [2] 27/19 46/13
entertains [1] 16/11
entire [6] 3/9 42/4 45/6 45/7 56/6 70/18
entirely [1] 52/22
entirety [3] 10/14 28/22 82/10
entitle [1] 61/20
entitled [7] 56/16 61/4 67/22 68/2 76/23 77/2 94/5
entry [3] 3/6 3/8 3/8 55/9
envelope [1] 36/23
equally [1] 59/12
Erin [2] 19/8 20/15
error [2] 9/21 84/13
errors [2] 35/13 35/13
Erwin [1] 38/7
especially [1] 30/19
ESQ [5] 1/17 1/19 2/2 2/3 2/5
essentially [2] 80/4 91/17
establish [1] 16/16
established [2] 7/20 55/12
esteem [2] 77/6 77/14
eternity [1] 23/9
event [3] 35/6 70/11 73/20
events [3] 59/24 68/18 69/6
everybody [13] 26/10 27/23 27/25 28/11 31/11 44/5 44/6 54/14 55/3 55/4 58/18 85/21 89/2
evidence [82] 7/6 7/7 7/8 7/8 7/9 7/10 7/11 9/18 16/17 17/3 17/5 17/6 17/8 23/24 24/4 24/18 24/21 25/1 25/20 26/16 27/19 32/25 33/2 33/25 38/2 41/2 42/1 42/3 42/8 48/17 48/18 48/22 49/10 49/14 51/2 53/21 54/13 54/22

53/2 55/13 55/19 59/6 59/8 59/9 59/14 59/16 59/18 60/2 60/3 61/17 78/11 78/12 79/21 79/24 80/1 80/2 80/3 80/7 80/8 81/12 81/13 81/14 82/2 82/6 82/18 82/19 82/21 82/25 83/1 84/14 84/18 84/19 86/13 86/14 86/17 86/17 88/23 89/10 89/11 89/18 89/19 89/22
exact [1] 71/1
exactly [5] 41/18 47/19 67/13 90/14 91/4
example [8] 13/17 14/18 53/24 61/1 66/5 74/9 75/5 90/20
examples [1] 90/14
excellent [1] 9/2
excerpt [1] 55/5
excluded [1] 82/6
exclusion [1] 80/17
exculpatory [1] 40/15
excuse [3] 66/20 71/13 93/19
excused [1] 71/14
executing [1] 13/5
executive [3] 18/10 20/15 27/23
exercised [1] 74/22
exercising [1] 24/2
existence [1] 25/17
exists [2] 55/14 82/19
expect [1] 58/9
explain [1] 72/9
explaining [1] 28/4
explicitly [1] 41/9
exploding [1] 11/13
expressed [2] 21/5 43/9
extensive [1] 70/17
extent [4] 50/15 54/9 59/3 68/5
extortion [2] 61/7 65/14
extract [1] 64/6
extravagantly [3] 34/21 68/21 69/10

**F**

F.2d [1] 53/16
F.3d [1] 83/12
fabricated [1] 33/16
fact [36] 22/8 24/1 25/12 25/16 34/16 34/18 35/14 36/4 37/6 37/9 40/15 40/20 40/24 43/16 46/18 51/18 52/23 55/9 57/16 58/3 58/7 66/12 67/16 68/7 69/23 72/1 72/25 73/22 75/4 79/18 82/22 82/24

84/3 84/6 84/20 84/21
factor [2] 58/9 75/3
factors [1] 75/2
facts [35] 3/6 32/4 32/5 40/10 40/11 41/9 41/10 41/16 41/19 42/14 42/16 43/8 44/7 49/18 51/7 52/14 52/18 53/10 66/19 67/2 67/14 67/15 72/5 72/5 72/7 72/22 72/24 73/11 73/23 75/2 84/8 84/10 85/17 85/18 86/4
factual [8] 65/7 66/2 67/7 67/10 68/12 69/24 71/24 72/1
fail [1] 26/8
failed [6] 41/1 48/17 48/18 51/12 67/10 91/25
failing [2] 82/2 83/12
fails [2] 26/6 87/8
failure [2] 55/18 81/22
fair [4] 18/12 18/22 50/7 88/22
Fairchild [1] 9/15
fairly [1] 36/24
faith [13] 7/12 24/20 35/23 35/24 47/1 48/3 48/24 49/6 49/9 59/21 61/17 84/15 84/16
false [17] 9/14 16/13 25/14 25/18 26/9 26/12 33/24 45/4 45/25 56/8 65/10 66/3 66/7 66/9 67/16 68/4 71/24
falsehood [1] 34/19
falsely [1] 44/24
falsification [2] 9/4 84/13
falsified [1] 84/19
falsity [4] 7/10 15/22 15/23 15/24
family [2] 45/11 93/17
far [2] 22/21 32/13 68/24
favor [1] 51/19
favored [1] 72/4
FCRR [2] 1/23 94/8
February [1] 93/16
Federal [1] 94/2
Federalist [2] 13/20 13/21 13/21
feel [2] 17/25 22/20
felt [1] 61/4
figurate [1] 87/2
figure [5] 32/17 49/4 68/14 76/14 93/16
figures [1] 16/5
filed [1] 59/25
filings [1] 3/10
final [2] 22/5 73/14
finally [5] 29/19 45/15 55/19 76/19 89/10

finance [1] 63/15
find [2] 41/2 75/20
finding [3] 17/4 48/19 59/7
fine [2] 75/12 75/17
first [18] 6/7 10/16 11/17 14/6 17/9 17/20 18/2 19/23 27/1 30/15 37/2 37/2 40/2 47/10 50/23 55/14 57/12 87/20
firsthand [1] 69/8
five [1] 14/4
five-minute [1] 14/4
flagging [1] 85/7
floor [15] 6/5 6/12 10/9 11/5 12/17 18/7 19/22 23/13 25/8 30/14 41/22 63/9 69/19 85/14 86/2
FLORIDA [15] 1/1 1/8 1/20 1/24 2/4 41/7 74/17 74/21 75/1 75/3 75/22 76/5 76/12 86/2 93/4
focus [2] 52/23 82/24
focused [1] 18/20 18/21 55/5 71/11
follow [1] 13/25
following [1] 23/22
follows [1] 53/5
fondest [1] 87/1
footnote [4] 74/1 74/2 74/4 74/13
Forbes [1] 57/8
foregoing [1] 94/3
foreign [1] 29/21
forget [1] 13/22
forgetting [1] 13/10
forgotten [1] 47/23
form [4] 15/10 41/19 43/8 82/6
former [1] 11/6 15/6 31/11
Fort [3] 1/8 1/24 2/4
forth [7] 5/16 5/17 41/9 66/20 66/23 73/2 75/13
forward [7] 4/12 17/6 24/21 47/17 76/17 81/14 86/17
found [1] 25/1
foundation [2] 67/7 67/11
four [7] 15/15 24/1 24/2 24/2 24/7 30/6 30/7
fours [1] 88/6
fourth [1] 88/23
Fox [4] 57/3 57/9 57/16 57/19
frame [2] 4/21 92/22
frank [1] 23/13
frankly [5] 5/16 8/4 30/2 54/6
free [1] 35/17

**F**

**freely [1]** 9/2
**French [1]** 85/19
**front [1]** 3/9
**Frost [2]** 14/21 21/13
**full [5]** 18/4 22/20 42/5
50/15 67/2
**fully [3]** 41/15 41/16
72/23
**fun [2]** 79/20 93/19
**further [4]** 38/2 50/11
67/5 77/18
**furthermore [1]** 53/18

**G**

**gambling [1]** 72/12
**garden [2]** 9/16 69/4
**Garry [4]** 14/25 31/10
32/15 85/20
**general [4]** 52/4 81/24
88/16 90/5
**generally [1]** 5/13
**GEORGE [2]** 2/2 4/2
**getting [4]** 8/11 20/2
45/2 65/8
**Ginzburg [1]** 49/22
**gist [6]** 50/12 50/17
52/8 61/14 80/18
87/22
**Giuffre [6]** 58/15 77/2
77/4 77/9 77/9 77/12
**Giuffre's [1]** 44/22
**give [10]** 18/22 23/22
38/5 53/13 57/16
78/17 78/18 78/23
79/7 80/2
**given [2]** 36/12 81/2
**gives [1]** 61/1
**giving [1]** 18/6
**glad [1]** 93/3
**gladly [1]** 48/3
**glued [1]** 60/13
**go [24]** 5/7 5/16 5/23
8/7 11/4 12/3 25/23
25/24 26/1 32/5 33/2
42/7 49/23 52/10 60/6
61/4 62/1 66/14 66/21
72/4 73/24 77/19
77/23 91/3
**goes [13]** 32/13 38/22
39/7 53/7 53/8 56/14
56/15 57/25 60/25
63/6 70/16 77/17 78/9
**going [28]** 3/2 4/18
5/4 7/4 8/7 10/13
14/18 15/16 17/13
29/16 29/17 32/6 33/7
45/20 47/21 48/9
54/12 55/24 56/24
58/9 62/14 63/18
66/17 67/12 72/20
72/21 75/6 83/23
**Goldwater [1]** 49/22
**good [24]** 3/15 3/18
4/2 4/16 6/2 7/12
14/15 15/2 24/20

33/23 38/10 47/1 48/3
48/12 48/24 49/6 49/9
58/10 59/21 61/17
78/25 84/15 84/15
92/7
**gotten [3]** 10/4 23/19
61/2
**govern [1]** 6/16
**governed [1]** 35/15
**government [1]** 34/12
**governmental [1]**
6/21
**grab [1]** 79/5
**graciousness [1]**
93/13
**graduated [1]** 38/13
**grammar [1]** 69/12
**grand [2]** 54/20 54/21
**grant [4]** 7/18 32/6
32/7 47/14
**granted [5]** 59/14 76/8
83/8 83/9 83/10
**great [8]** 3/24 5/8 6/2
9/24 79/13 92/4 92/12
93/11
**greater [3]** 57/17
57/19 57/24
**greatest [4]** 9/24
22/11 37/15 60/24
**greatly [1]** 10/1
**ground [1]** 41/4
**grounds [3]** 7/19
15/25 41/5
**guarantees [1]** 5/19
**guess [6]** 8/16 27/14
48/6 64/12 65/17 91/4
**Guiffre's [2]** 45/17
46/4
**GUNSTER [1]** 2/2
**guy [1]** 58/24
**guy's [1]** 39/23
**guys [1]** 33/10

**H**

**habit [1]** 17/22
**Hadad [3]** 18/9 42/10
81/6
**half [3]** 33/1 58/11
92/8
**hallmark [1]** 42/20
**hand [1]** 84/14
**handle [1]** 90/12
**hands [1]** 26/5
**handwriting [1]** 83/16
**hangs [1]** 90/3
**happen [3]** 26/5 29/21
37/10
**happened [5]** 15/13
18/7 33/9 37/10 46/16
**happening [2]** 15/18
38/25
**happiness [1]** 45/21
**happy [5]** 56/19 59/2
74/1 93/9 93/10
**hard [2]** 4/14 92/9
**Harman [2]** 22/3 26/2

**hate [1]** 6/22
**head [4]** 18/5 37/6
42/25 46/20
**head-scratcher [2]**
37/6 42/25
**headline [1]** 12/10
12/12 12/16 12/21
**health [1]** 45/22
**hear [17]** 11/10 26/15
32/5 33/7 39/10 39/11
40/22 43/2 47/18 48/1
54/18 62/19 79/20
79/25 80/1 80/1 80/3
**heard [14]** 22/22
22/25 29/25 30/22
31/11 39/8 48/16 49/1
56/1 58/15 76/25
79/16 79/17 85/1
**hearing [4]** 4/12 18/1
47/3 47/17
**hearings [3]** 4/11
62/10 92/6
**height [2]** 5/20 5/25
**held [8]** 16/4 29/17
35/5 43/13 43/20
61/13 70/15 83/4
**help [1]** 11/20 21/14
65/8
**helps [2]** 21/15 34/9
**Herald [1]** 14/9
**Herbert [1]** 55/11
**hey [1]** 8/12
**high [17]** 13/11 13/13
13/14 13/23 14/4
14/16 31/4 46/16
60/19 61/7 61/9 61/22
62/20 70/21 71/3
90/16 91/5
**high-profile [1]** 46/16
**highlight [1]** 12/1
**highlighted [1]** 11/25
**highly [3]** 16/12 75/7
75/11
**hinted [1]** 26/19
**historic [1]** 35/13
**Hitler [1]** 43/3 64/4
**hock [1]** 60/1
**hold [3]** 9/6 16/25
21/23
**holding [2]** 75/23
75/25
**Holdings [1]** 52/2
**holds [2]** 21/21 51/1
**Holidays [2]** 93/9
93/10
**HOLOSZYC [1]** 2/3
**HOLOSZYC-PIMENTE
L [1]** 2/3
**home [3]** 11/4 19/16
60/14
**honest [2]** 83/10
83/19
**honor [192]**
**HONORABLE [1]** 1/12
**honorary [1]** 45/2
**honored [1]** 45/2

**hope [3]** 41/24 54/18
62/9
**hopefully [1]** 93/1
**hopelessly [2]** 9/10
36/4
**hornbook [1]** 38/14
**hostility [1]** 55/14
**hosts [1]** 56/7
**hour [3]** 4/20 19/13
77/24
**hours [2]** 45/12 92/8
**house [5]** 14/19 19/17
19/24 20/11 91/25
**hundred [1]** 6/12
**hung [1]** 27/17
**hunt [16]** 25/13 53/3
53/4 53/13 53/15 54/6
75/19 76/17 82/13
82/14 82/20 82/21
82/24 88/1 88/2 88/5
**hurt [1]** 45/11
**hyperbole [5]** 42/20
43/4 43/9 87/1 87/3

**I**

**I'd [2]** 79/18 86/15
**I'll [8]** 17/22 28/9
29/12 57/3 68/8 88/15
90/11 93/3
**I'm [40]** 3/2 3/23 4/12
4/17 7/4 8/6 10/13
11/10 15/16 17/21
17/22 17/23 17/23
22/23 31/15 31/16
32/6 32/16 32/17
36/19 36/19 40/3
44/17 44/19 56/19
57/12 62/7 65/17
65/18 66/17 67/11
73/18 73/20 73/25
75/17 82/20 83/15
83/23 92/15 92/18
**I've [4]** 3/11 5/4 91/3
92/6
**idea [3]** 21/25 82/11
84/5
**ideas [4]** 6/16 35/18
39/19 39/25
**ignored [2]** 49/8 84/11
**ignoring [2]** 30/10
71/14
**illegal [22]** 12/1 15/4
27/7 27/11 27/24
28/21 29/2 29/7
29/20 30/4 30/8 37/25
40/11 40/22 50/4
50/10 69/16 70/8
70/23 80/21 90/19
**illegal.' [1]** 14/22
21/13 21/16
**imagined [1]** 6/23
**immediate [1]** 19/18
**immediately [1]** 19/12
**immune [4]** 12/13
12/19 65/12 66/8
**impeach [6]** 63/21

69/15 89/25 90/25
91/12 91/24
**impeachable [14]**
10/1 10/3 11/2 11/11
12/8 13/6 13/19 19/6
22/25 60/16 60/18
70/22 70/23 90/15
**impeached [7]** 13/15
14/9 19/2 60/17 61/2
61/8 69/15
**impeachment [34]** 6/7
10/17 10/18 10/20
10/20 10/23 10/25
11/1 12/25 14/8 14/17
18/10 18/18 19/11
19/12 19/14 19/15
19/17 25/20 26/21
30/13 30/16 30/19
31/5 41/22 42/2 42/4
60/8 63/18 67/1 67/3
82/9 91/8 91/13
**impeachment.' [1]**
11/21
**implied [1]** 40/18
**imply [1]** 67/16
**important [23]** 9/19
15/17 16/14 24/14
28/19 29/8 34/8 34/10
35/11 35/16 35/21
38/15 46/13 46/16
50/22 59/5 59/12 71/8
80/14 81/11 84/22
85/4 93/18
**importantly [2]** 34/24
55/16
**impose [1]** 35/12
**impossible [3]** 29/17
68/14 85/6
**improbable [1]** 30/17
**impute [1]** 74/12
**INC [3]** 1/7 34/7 34/8
**incapable [1]** 49/20
**include [10]** 16/19
16/23 40/16 51/2 52/7
71/18 81/23 82/2 86/4
88/21
**included [4]** 21/3
51/17 68/12 68/13
**includes [5]** 27/2 52/4
55/3 81/24 88/16
**incomplete [1]** 67/15
**incomprehensible [1]**
44/24
**inconsistent [1]** 40/15
**incorrect [5]** 16/20
67/15 80/18 82/12
82/19
**incredibly [1]** 34/8
**independent [12]**
7/19 18/11 18/18 21/9
22/4 74/3 74/11 74/16
74/20 74/23 75/15
76/3
**independently [4]**
7/13 20/10 22/16 24/8
**indicate [2]** 76/11

indicate... [1] 77/6
indicated [5] 5/13
60/22 63/7 66/16
89/25
individual [2] 12/25
74/15
individuals [1] 30/6
industry [1] 56/7
infer [2] 53/22 61/15
inference [3] 52/9
53/5 88/6
inform [1] 31/2
information [19]
16/19 16/23 30/25
31/1 51/24 52/4 52/7
52/23 53/7 63/16
72/25 81/23 81/24
84/16 84/17 88/16
88/21 89/4 90/9
informed [1] 89/8
initial [1] 79/14
injuries [1] 13/22
inquiry [3] 16/24 51/3
81/9
intelligence [1] 32/1
intended [1] 27/20
intent [2] 7/9 16/16
intentionally [1] 23/6
interaction [1] 24/6
interest [25] 9/25
11/20 11/24 12/8
12/14 12/20 12/23
15/4 15/12 18/9 19/3
19/6 20/3 20/13 20/17
22/10 22/23 22/24
29/23 29/25 38/11
38/11 46/13 60/25
90/20
interested [1] 31/16
interesting [6] 38/18
38/21 40/4 40/6 43/23
80/9
Internet [6] 11/13
18/15 18/15 42/11
56/23 81/8
interpret [4] 13/3
34/14 69/2 69/9
interpretation [9]
34/22 35/13 37/23
39/7 43/15 43/16 68/4
70/13 70/17
interpretations [2]
35/10 35/25
interpreted [2] 47/4
84/9
interpreting [1] 47/1
interrupt [1] 75/16
interrupted [1] 17/12
interview [1] 23/10
interviewed [1] 28/20
interviews [1] 51/12
introduce [1] 52/25
introduced [1] 49/11
investigative [1] 51/8
invitations [2] 57/1

57/10
invited [3] 23/7 23/22
77/22
involved [1] 91/7
involves [1] 70/22
involving [1] 72/10
ipse [1] 80/4
irrelevant [7] 16/24
37/7 51/3 51/5 53/25
56/13 56/14
irritating [1] 65/16
issue [26] 9/12 15/13
15/15 18/3 19/7 31/5
35/7 43/16 48/23
56/15 56/24 59/19
59/24 66/13 67/17
67/19 67/21 70/17
73/24 75/22 76/2 76/5
76/9 77/16 90/23
93/13
issues [1] 5/10
it's [73] 3/14 4/10 4/18
4/22 4/25 5/3 8/3 13/5
13/15 14/20 14/22
15/11 16/10 16/14
17/22 21/12 21/14
21/23 28/19 29/7
30/17 31/16 32/11
32/22 32/23 33/2
33/20 37/6 37/6 37/21
38/17 38/20 39/3 40/4
40/5 43/22 44/23
44/23 45/9 47/25 48/6
48/6 51/5 53/15 53/16
56/13 56/14 58/2
58/21 58/23 59/3
61/22 61/25 64/25
65/6 69/25 70/23
71/20 72/17 73/18
73/19 73/21 74/18
75/24 76/5 78/10
78/23 81/9 84/4 84/6
90/22 91/10 93/6

J

Jankovich [7] 73/6
73/7 73/8 73/13 83/3
83/17 83/20
January [30] 7/15
10/15 10/21 11/3 11/7
15/7 22/6 23/7 26/4
30/12 30/16 31/1 31/1
31/2 31/7 44/19 45/8
45/15 46/6 60/11
60/15 60/18 71/5
77/10 84/4 84/8 84/24
85/4 86/10 89/16
January 10th [1]
45/15
January 2022 [1]
86/10
January 27 [1] 71/5
January 27th [12]
10/21 11/3 30/12
30/16 31/1 60/11
60/15 60/18 84/4 84/8

85/4 89/16
January 29 [1] 15/7
January 29th [6]
10/15 11/7 26/4 31/2
31/7 84/24
January 30th [2] 22/6
23/7
January 7th [1] 45/8
Jeff [3] 23/12 55/7
78/3
Jewell [1] 58/22
job [3] 14/2 14/15
81/14
Joe [6] 15/6 19/8
19/14 25/24 29/10
72/13
Joe Lockhart [1] 19/8
JOHN [8] 1/17 3/16
22/13 29/19 31/13
37/13 48/12 75/16
Jonathan [1] 14/19
journalism [4] 72/16
72/18 72/22 73/1
journalist [1] 34/12
journalistic [1] 55/18
journalists [3] 47/2
85/7 90/4
judge [5] 1/13 4/2
76/8 76/11 93/7
judgment [29] 1/11
3/5 6/13 7/19 15/24
16/1 17/2 17/7 18/20
22/4 32/3 32/7 47/14
59/6 59/14 61/20
67/20 67/22 70/13
76/7 76/8 79/22 79/23
81/17 83/7 83/7 83/8
83/9 87/25
judgments [2] 7/13
24/3
jump [3] 53/12 53/17
56/19
jurisprudence [1]
42/21
jurors [1] 5/23
jury [21] 5/22 5/24
17/4 32/5 32/5 35/7
41/2 47/13 48/19
49/10 53/22 59/7
59/10 59/17 59/20
61/15 69/24 74/19
76/5 76/9 77/1
Justice [2] 6/9 16/3
justify [1] 15/5

K

Kasparov [4] 14/25
31/10 32/15 85/20
Kate [2] 4/3 6/3
KATHERINE [1] 2/5
keep [1] 46/14
Keith [1] 32/17
kept [1] 14/18
key [2] 53/8 83/20
kickback [1] 61/2
kids [1] 87/17

kill [1] 13/24
kind [19] 4/18 8/1
11/21 13/10 15/1
25/11 25/22 32/12
38/19 40/5 48/4 58/22
62/2 62/24 64/6 79/18
82/14 85/25 92/12
king [2] 15/1 15/5
knew [18] 20/18 25/16
26/21 40/15 44/6
52/19 53/19 60/6 60/8
63/11 63/14 63/17
67/1 81/5 82/25 85/21
88/4 89/4
know [58] 3/11 4/16
5/3 5/6 5/16 7/4 8/13
11/25 13/8 19/18
20/10 21/10 23/11
29/9 32/13 32/14
32/14 38/16 38/17
38/20 39/11 40/4
47/20 55/15 55/25
56/24 57/14 58/18
58/19 62/13 62/19
62/23 62/24 63/1 63/5
63/8 63/18 63/23
63/25 64/1 65/3 66/22
66/22 67/2 69/12
69/21 71/12 76/10
82/18 85/25 90/14
92/7 92/11 92/23
92/24 93/1 93/17
93/20
knowing [5] 7/10 16/6
34/19 62/6 81/15
knowledge [4] 53/11
73/15 83/2 88/3
knowledgeable [1]
79/20
known [9] 41/10
41/16 44/8 53/7 66/21
66/24 85/17 85/18
86/4
knows [3] 44/5 62/23
86/14

L

labeled [1] 74/11
landed [1] 14/20
Lando [1] 55/11
language [10] 15/4
27/2 27/3 27/4 27/5
30/2 42/19 43/3 50/16
86/25
largest [1] 41/23
Las [1] 2/3
lasting [1] 78/2
late [1] 91/4
latest [1] 57/8
Lauderdale [3] 1/8
1/24 2/4
law [36] 1/19 8/10
13/8 14/17 24/19 28/9
29/5 31/5 31/25 38/7
38/10 38/14 39/2 41/7
47/9 48/21 49/8 59/15

61/20 61/25 62/2
67/23 74/17 74/21
75/1 75/3 75/23 76/4
76/12 76/18 76/22
76/23 79/19 82/19
86/3 86/15
laws [2] 62/6 65/13
lawsuit [4] 6/4 6/15
6/17 15/14
lawsuits [1] 44/21
lawyer [4] 13/3 28/7
28/8 44/3
lawyer's [1] 44/2
lawyers [2] 12/6 59/24
lay [1] 62/1
lead [2] 4/4 55/13
left [4] 19/4 40/10
40/11 84/6
legacy [2] 45/6 77/9
legal [6] 9/11 18/6
50/19 63/4 81/10 84/9
LeMIEUX [5] 2/2 4/2
46/23
lengthy [3] 68/9 72/14
73/2
Levan [14] 16/22
50/23 50/24 51/1 51/5
51/6 51/7 51/8 51/9
51/14 51/22 52/1 82/4
82/5
Levan's [1] 51/18
level [1] 65/25
levels [1] 65/22
Levon [1] 50/24
liability [4] 35/12 67/8
73/24 73/25
liable [6] 49/5 49/5
74/7 74/10 74/19
74/20
libel [4] 58/1 69/4
76/21 86/8
libel-proof [1] 76/21
liberal [1] 58/4
Liberty [15] 17/8 53/3
53/4 53/13 53/15 54/7
59/11 61/20 67/20
82/13 82/14 82/20
82/21 82/22 88/5
license [2] 61/12
64/17 64/22 65/3 65/4
69/17
life [6] 5/24 36/22
45/10 45/21 45/25
58/8
life-long [1] 36/22
light [3] 24/19 46/2
85/10
lights [1] 5/4
liked [1] 51/23
likened [1] 83/21
likening [1] 85/20
likes [1] 69/11
limited [5] 51/10
51/12 51/15 51/18
73/15
Lincoln [1] 36/8

**L**

line [24] 10/7 11/17
11/24 11/24 12/1 15/8
22/10 22/11 27/7
29/20 30/8 30/16
37/15 37/25 40/22
49/16 54/23 55/2
55/20 80/17 80/19
80/21 84/3 84/7
linked [1] 54/2
links [2] 11/22 11/22
listen [2] 85/25 87/17
listener [1] 41/11
Litell [1] 43/5
literally [1] 37/10
literary [3] 72/10
73/17 73/21
little [10] 5/18 16/2
26/19 52/24 63/16
66/17 67/11 88/12
91/10 93/6
live [7] 7/13 12/25
18/10 18/18 21/7 42/4
82/7
live-streamed [1] 42/4
LLP [1] 2/5
Lobby [15] 17/8 53/3
53/4 53/13 53/15 54/7
59/11 61/20 67/20
82/13 82/14 82/20
82/21 82/22 88/5
Lockhart [14] 19/8
19/14 20/7 20/10
20/14 20/21 20/21
25/24 26/13 29/10
42/25 55/23 65/5 80/6
Lockhart's [1] 19/23
London [1] 12/9
long [5] 20/8 36/22
44/13 49/16 92/25
longer [1] 22/7
look [13] 19/25 31/24
32/4 32/9 32/18 32/20
39/3 41/15 42/7 51/20
76/25 88/10 91/16
looked [6] 9/20 10/2
38/7 44/6 60/11 72/14
looking [6] 4/12 8/1
8/3 32/24 33/4 47/17
looks [1] 44/5
LOPATTO [1] 1/16
lose [1] 39/24
loss [1] 58/8
losses [1] 39/23
lost [1] 58/10
lot [8] 46/11 55/21
63/5 66/1 73/19 79/20
91/3 92/5
lots [2] 25/2 25/2
loud [1] 14/13
louder [1] 8/11
Louis [2] 15/2 15/8
love [2] 5/12 86/15
luckily [1] 32/16
ludicrous [1] 42/24

**M**

magazine [2] 57/15
68/9
magazines [1] 57/8
Mail [1] 12/9
main [1] 64/13
mainstream [3] 11/15
11/17 58/4
majority [1] 51/18
maker [5] 24/7 24/10
24/11 24/13 33/23
makers [3] 7/12 24/5
25/3
making [17] 11/23
14/2 15/1 20/1 22/3
22/21 23/17 23/17
24/12 33/6 33/8 34/15
52/21 81/19 85/19
88/3 88/19
malice [61] 7/7 7/21
8/9 8/17 8/22 9/3 9/6
16/1 16/2 16/3 16/6
16/20 16/24 17/1 17/5
24/18 24/21 25/21
28/2 31/21 32/19
32/24 33/4 35/7 37/20
40/9 41/3 48/14 48/20
48/23 49/4 50/20 51/3
51/11 52/6 52/9 53/5
55/10 55/13 55/19
56/15 59/8 59/20
61/16 67/19 74/12
78/11 78/12 79/25
81/4 81/5 81/9 82/1
83/11 83/19 86/18
87/6 88/7 88/18 88/23
89/11
man [3] 47/12 47/22
62/23
managers [1] 91/25
Manson [1] 44/2
manufacture [1] 20/2
MARK [2] 1/19 3/18
marked [1] 42/20
marketplace [3] 35/18
39/19 39/24
matter [15] 24/13 37/6
40/22 50/19 51/4 54/6
59/15 61/3 61/20
67/23 69/23 69/23
69/24 73/22 94/5
matters [6] 16/15 28/3
32/21 34/11 46/13
82/23
maximum [1] 86/2
mean [16] 5/17 8/13
8/14 13/12 13/24
32/16 36/9 39/2 39/11
45/11 47/19 47/23
62/20 62/22 75/16
93/18
meaning [4] 31/23
45/19 49/20 60/19
means [3] 15/5 29/5
37/16
meant [7] 27/15 27/18

36/6 38/9 40/1 70/2
83/8

measure [1] 16/10
measured [1] 47/11
media [15] 11/15
11/15 11/18 12/24
15/10 23/5 30/17
31/10 42/5 42/9 56/6
56/8 56/10 57/5 58/5
media's [1] 39/14
meet [1] 5/23
member [1] 41/11
memo [2] 55/22 56/3
mention [4] 32/17
73/25 81/1 86/21
mentioned [2] 32/15
32/15
mentions [2] 81/1
84/1
Merit [1] 94/2
Merry [1] 93/10
messed [1] 6/25
met [1] 45/5
Miami [2] 1/20 14/9
Michel [9] 16/25 52/2
52/3 81/20 81/22 82/5
88/13 88/13 88/15
microphone [2] 10/5
11/11
microscope [1] 69/12
middle [1] 9/23
midnight [1] 23/15
Milgram [9] 18/5
18/25 25/24 26/14
37/4 37/5 42/24 42/24
85/5
Milkovich [9] 43/4
66/2 66/12 67/13
67/13 71/23 72/1
85/23 85/24
million [2] 35/19 45/6
mind [2] 30/20 42/22
minds [2] 47/24 85/3
minute [6] 4/19 12/2
14/4 58/15 67/24
70/14
minutes [12] 4/22
4/25 5/3 8/24 23/9
23/17 24/17 77/21
77/22 78/18 78/20
78/24
misconception [1]
35/8
misdemeanor [2]
62/21 91/5
misdemeanors [13]
13/11 13/13 13/14
13/23 14/5 14/16 31/4
60/19 61/9 61/23
70/21 71/4 90/16
misinterpret [1] 52/3
misinterpretation [2]
83/10 83/19
misinterpreting [1]
48/21
misquoted [3] 23/14

23/9 87/20

missed [1] 46/6
missing [1] 13/16
misstates [1] 16/17
misstating [2] 23/5
23/6
mistakes [1] 36/14
misunderstood [1]
36/14
mixed [6] 63/11 66/14
66/15 66/15 66/25
72/4
modern [1] 21/8
modified [1] 80/21
modify [1] 30/8
moi.' [1] 15/7
Moldea [15] 43/12
43/13 72/7 72/8 72/8
72/10 72/12 72/17
72/19 73/3 73/9 73/10
73/10 73/15 73/23
moment [4] 56/20
59/4 70/2 81/8
month [2] 23/22 58/21
months [1] 46/8
morning [2] 22/7 77/1
Moss [1] 13/2
motion [21] 1/11 3/4
8/5 9/9 9/10 9/16 9/21
10/2 10/12 17/7 41/12
42/18 47/14 50/5
63/17 66/1 66/16
79/18 81/17 83/5
85/12
motions [1] 92/7
motive [3] 13/6 50/10
90/23
move [3] 7/3 15/24
16/1
Mr [7] 11/6 18/19
23/21 37/2 38/18 85/1
85/1
Mr. [150]
Mr. Begala [9] 21/17
21/24 21/25 26/13
28/7 28/8 28/11 28/12
64/13
Mr. Begala's [1] 28/16
Mr. Berman [4] 33/15
33/19 69/20 85/2
Mr. Berman's [1]
37/18
Mr. Bolger [1] 4/17
Mr. Bugliosi [1] 44/1
Mr. Bugliosi's [1]
44/5
Mr. Chemerinsky [2]
38/13 39/20
Mr. Cooper [6] 18/5
18/23 26/13 28/18
37/4 37/24
Mr. Cooper's [1]
28/18
Mr. Dershowitz [67]
6/10 6/25 7/15 8/23
9/1 9/22 10/6 10/9

10/16 10/21 10/24
11/4 11/12 11/14
12/17 14/2 14/14
15/10 18/16 19/22
23/4 23/8 23/16 24/17
24/20 25/8 25/15
25/16 26/21 27/8
27/10 27/12 27/16
27/20 27/25 30/12
30/20 30/22 31/6
33/16 33/17 33/20
33/22 36/2 36/4 37/5
37/15 37/23 38/8
41/25 42/6 44/14
44/21 44/23 45/8
45/16 46/2 46/19
46/21 47/7 80/13 84/5
84/8 85/14 85/21
86/20 90/6
Mr. Dershowitz's [25]
10/14 10/15 11/23
18/21 19/16 20/11
20/17 21/11 22/8 22/9
24/24 26/4 26/10
26/11 26/18 30/9
33/21 38/4 42/13
43/19 80/12 81/2 82/6
82/11 84/24
Mr. Lockhart [6] 20/7
20/10 20/14 20/21
20/21 26/13
Mr. Lockhart's [1]
19/23
Mr. Williams [22] 3/23
5/20 75/10 79/17
79/19 79/21 80/3
80/15 81/11 81/20
82/4 82/14 82/15 83/4
83/21 84/1 84/4 85/23
86/14 86/20 87/19
92/25
Mr. Williams' [1] 80/9
Mr. Zucker [1] 26/6
Ms [3] 45/17 46/4
47/15
Ms. [17] 18/25 26/14
37/4 37/5 48/16 52/2
54/10 56/10 58/15
58/19 63/2 70/2 76/25
77/4 79/6 87/9 87/21
Ms. Bolger [11] 48/16
52/2 54/10 56/10
58/19 63/2 70/2 76/25
79/6 87/9 87/21
Ms. Giuffre [2] 58/15
77/4
Ms. Milgram [4] 18/25
26/14 37/4 37/5
MSNBC [1] 57/17
muddled [1] 36/4
multifactorial [1]
74/25
Mussolini [2] 43/3
64/4

**N**

Namath [1] 72/13
name [4] 3/16 3/22 6/3
58/10
named [3] 18/5 22/3
25/7
narrative [1] 56/8
nation's [1] 12/8
national [4] 9/25
12/22 13/2 15/3
native [1] 17/21
nature [2] 53/23 61/14
necessarily [1] 55/3
necessary [5] 10/18
10/19 10/23 11/2
30/13
need [11] 5/10 9/3 9/7
17/14 62/10 75/8
78/20 89/15 89/25
90/25 91/5
needed [1] 82/17
needs [2] 3/10 4/6
negative [1] 45/13
neglects [1] 67/6
negligence [1] 9/5
negligent [1] 83/11
NETWORK [3] 1/7 3/3
4/1
neutrality [1] 82/23
never [14] 7/22 24/5
24/6 30/15 44/11 45/5
45/6 46/3 52/12 61/12
65/9 80/10 86/9 87/8
new [19] 2/6 2/6 8/10
12/5 12/5 12/15 12/21
17/21 22/6 22/10
29/22 30/22 39/20
44/25 44/25 72/11
84/25 90/22 93/4
New York [1] 12/5
news [16] 1/7 3/3 4/1
8/15 18/20 19/10
19/13 22/17 23/10
25/6 25/7 25/9 31/10
42/2 56/7 82/8
Newsmax [3] 57/3
57/3 76/16
newspapers [1] 58/21
newsworthy [1] 81/8
nice [5] 3/14 3/17 3/20
3/24 4/5
nights [1] 93/15
Nikki [2] 25/8 26/7
Ninth [1] 43/24
Nixon [2] 14/24 21/12
Nixon's [1] 14/21
nobody's [1] 61/9
Nolan [1] 4/4
normal [1] 69/4
note [5] 21/4 72/6
74/25 77/8 87/24
notes [2] 44/16 92/13
notice [1] 40/1
novel [1] 22/21
number [3] 28/20 35/9
66/11

**riluts [1]** 55/17
NW [1] 1/17
NY [1] 52/2

**O**

O.J [1] 40/5
object [1] 75/9
objective [11] 16/10
48/22 49/10 49/13
52/23 60/2 82/25
89/10 89/18 89/19
89/22
obligation [1] 53/18
obtained [1] 42/9
obvious [7] 49/12
49/13 55/10 55/12
60/4 73/17 89/12
obviously [7] 3/6 4/25
5/1 36/12 76/1 86/7
88/10
odds [1] 52/22
offended [1] 72/18
offending [1] 67/7
offense [4] 10/1 11/11
13/19 60/18
offered [1] 29/14
offers [1] 43/13
office [1] 60/13
official [3] 1/23 11/25
16/4
oh [9] 23/20 36/7
58/21 58/24 65/11
69/22 71/5 86/19
93/14
ok [1] 20/8
okay [34] 4/10 8/8
8/20 29/3 29/4 29/5
29/6 29/7 33/12 48/6
48/11 48/15 54/17
57/18 57/21 58/13
58/14 62/7 62/14 63/6
64/6 64/9 65/17 65/20
65/24 74/6 78/14 79/5
87/16 87/19 91/14
92/2 93/3 93/21
Olas [1] 2/3
Olbermann [1] 32/17
old [1] 8/14
Olympics [1] 58/23
omission [19] 49/17
49/20 50/11 50/16
50/17 51/4 51/21 52/8
52/13 52/19 52/22
61/13 61/21 61/22
61/25 62/11 62/13
80/9 80/14
omissions [1] 71/11
omit [1] 50/19
omitted [14] 27/3 50/6
52/14 52/18 52/24
52/24 53/1 53/19
53/24 54/4 72/7 88/4
89/22 89/23
omitting [1] 67/9
once [1] 55/11
one-sided [3] 59/14

61/13 67/22
ones [4] 56/21
op [4] 21/2 21/3 21/11
21/18
op-ed [3] 21/2 21/11
21/18
Op-Eds [1] 21/3
open [5] 11/9 18/24
19/4 28/5 33/18
operative [1] 59/8
opinion [48] 7/21 8/6
20/22 20/23 20/25
21/22 21/23 21/23
29/15 29/18 41/7 41/8
41/13 42/16 43/6
43/11 44/6 63/6 63/7
63/11 63/12 64/2 64/4
65/19 66/4 66/12
66/13 66/14 66/15
66/15 66/19 66/20
66/25 67/5 67/15
71/22 72/2 72/4 73/4
83/6 83/7 85/9 86/3
86/22 86/22 87/7
88/25 89/5
opinions [10] 21/5
41/6 41/8 43/8 43/18
43/21 44/7 73/11
86/19 86/23
opinony [1] 43/1
opponent [2] 20/3
20/4
opportunity [2] 48/1
78/9
opposing [1] 9/9
opposite [3] 69/17
71/1 88/20
opposition [7] 10/6
15/21 25/4 25/6 30/11
33/14 76/20
orchestrated [1]
58/23
order [5] 3/1 8/2 8/4
39/17 83/24
organization [2]
30/18 82/8
organizations [4]
11/18 12/24 23/5
31/10
originally [1] 11/4
ought [1] 78/17
OutFront [1] 19/8
outlets [5] 42/5 56/7
56/11 57/1 58/5
outlier [1] 10/20
outrageous [1] 38/9
outside [2] 73/16
73/21
owe [1] 17/25

**P**

p.m [11] 1/9 12/16
12/21 19/9 19/11
19/23 20/5 20/7 54/11
79/4 93/24
packaged [1] 63/3

page [5] 21/3 51/7
58/24 58/25 86/22
pages [1] 74/14
paid [2] 82/15 82/17
Pape [22] 34/7 34/8
34/12 35/15 35/16
35/20 36/1 37/8 37/10
37/10 37/18 40/10
67/19 67/21 67/24
67/25 68/6 68/8 69/7
70/17 83/4 83/8
papers [9] 13/21 36/2
36/25 43/13 46/5 70/5
70/9 87/23 91/13
paragraph [2] 27/4
56/4
paraphrasing [1]
31/15
parse [2] 70/4 70/4
parsed [3] 36/13 70/7
70/7
part [11] 13/10 13/12
13/14 13/23 29/20
31/16 45/24 55/25
61/23 81/6 85/6
particular [6] 25/13
56/21 70/6 75/19
89/23 90/23
particularly [4] 10/8
38/15 73/6 86/20
parties [1] 82/23
Partington [2] 43/24
43/25
partners [4] 51/11
51/13 51/15 51/19
parts [1] 7/25
party [1] 59/15
pass [1] 92/14
Paul [3] 21/2 25/24
28/4
pecuniary [1] 90/20
people [28] 13/5
21/21 24/2 25/9 29/9
35/23 36/14 36/14
39/8 42/12 43/21
44/16 45/3 47/20
47/23 55/21 55/23
56/18 62/25 63/5 63/8
63/14 63/17 67/2 78/3
80/5 82/7 84/10
perceived [2] 10/9
15/10
perfectly [1] 25/19
performance [2] 44/2
44/4
period [1] 77/24
permissible [1] 19/5
permits [1] 61/15
permitted [1] 72/24
person [16] 3/14
27/22 31/14 31/16
31/19 31/20 31/22
31/24 31/25 32/13
34/4 34/5 62/2 62/5
63/15 63/22
personally [1] 47/25

perspective [1] 29/16
phrase [1] 29/8
picked [1] 10/5
piece [2] 14/4 84/14
PIMENTEL [1] 2/3
place [1] 42/10
placed [1] 22/4
places [1] 93/16
plainly [1] 61/19
plaintiff [49] 1/5 1/16
6/4 6/20 6/23 7/4 7/20
7/22 9/10 10/18 15/21
16/16 16/17 16/18
17/4 17/6 17/6 23/25
25/4 25/11 26/17 27/2
27/8 30/11 33/14
33/25 34/7 36/25
39/2 40/8 40/23 41/1
41/21 47/18 49/11
51/9 51/25 52/13
57/10 59/7 61/23
76/21 79/23 80/7
80/25 81/13 81/18
84/15 87/8
plaintiff's [7] 6/24
22/16 38/9 44/10
47/17 54/11 81/14
plaintiffs [2] 6/16 66/8
plane [2] 56/2 60/14
play [1] 77/23
played [5] 11/9 18/24
28/5 33/18 60/20
please [5] 3/11 19/21
54/25 79/5 88/10
plenty [1] 53/21
PLLC [2] 1/16 1/19
podium [2] 5/21 92/14
point [28] 10/23 14/2
14/3 24/23 29/13
29/14 29/15 30/15
37/14 39/1 42/18
48/21 51/22 54/13
55/9 58/9 73/7 73/14
75/20 83/17 83/18
84/1 84/11 84/22 88/1
88/20 88/24 91/23
pointed [4] 54/10
54/19 77/8 80/8
pointing [1] 55/1
points [5] 5/17 23/17
75/3 76/6 81/10
police [1] 34/13
policy [1] 29/21
political [7] 15/9 20/3
21/3 21/5 29/16 54/2
84/10
poor [1] 25/23
portions [1] 18/21
portraying [1] 70/25
posit [1] 63/5
position [8] 36/20
60/7 60/8 63/10 66/22
90/6 90/10 90/13
possession [1] 89/4
possibility [1] 19/4
possible [5] 34/3 35/9

**B**

possible... [3] 45/9 45/10 45/14
possibly [2] 17/17 17/18
post [5] 12/12 12/16 12/18 44/16 60/1
post-hock [1] 60/1
Post-It [1] 44/16
posts [1] 56/11
potential [1] 92/24
power [8] 12/22 13/19 15/3 38/10 91/13 91/15 91/18 91/19
PowerPoint [1] 92/11
practice [1] 35/15
practices [1] 28/10
precedent [1] 74/15
preclude [1] 9/17
preconceived [3] 54/23 55/2 55/20
prepared [1] 4/17
present [4] 43/16 48/17 48/18 69/24
presentation [4] 4/20 81/3 89/3 91/8
presentations [1] 79/14
presented [5] 22/20 23/2 34/15 48/22 49/18 55/7 68/25 89/11
presents [2] 59/16 59/19
president [40] 6/6 6/13 9/24 9/24 10/7 11/6 11/19 12/6 12/7 12/13 12/19 12/22 13/4 14/21 15/11 19/2 19/2 19/3 19/5 20/12 21/13 21/14 22/11 29/17 37/15 38/5 38/10 39/2 41/23 46/15 46/22 55/7 60/16 60/24 61/1 63/21 65/7 69/15 69/17 89/25
presidents [1] 65/12
press [1] 46/11
presumption [1] 34/1
pretrial [1] 32/11
pretty [1] 4/10
prevail [1] 59/15
previous [2] 30/1 64/11
primary [2] 9/11 26/18
principle [1] 72/7
prior [1] 67/7
private [1] 75/8
pro [21] 11/21 13/12 13/12 14/16 27/6 27/12 29/1 29/21 30/3 36/8 36/9 50/3 50/10 60/7 60/22 70/9 70/23 80/17 84/3 84/7 90/18
probably [1] 16/13

**P**

problem [1] 8/1
proceeding [1] 19/12
proceedings [6] 19/12 19/14 19/15 19/17 93/24 94/4
produced [1] 33/25
producer [2] 18/10 20/15
producers [1] 27/23
professional [1] 45/18
professions [1] 24/20
professor [8] 38/7 50/12 53/20 60/6 65/16 70/3 70/20 76/22
profile [1] 46/16
program [3] 19/8 22/6 23/9
programming [1] 56/6
prominent [1] 76/22
promised [1] 26/17
pronounced [1] 82/16
proof [10] 51/11 52/25 54/5 55/9 57/4 59/13 69/21 76/21 86/8 89/12
proposition [1] 76/1
prosecuted [1] 44/1
prosecutor [1] 44/1
protected [8] 34/23 36/1 41/6 41/7 43/6 72/20 72/21 87/7
protection [2] 86/3 86/3
protections [1] 40/10
protects [1] 73/10
prove [6] 7/4 7/5 7/22 16/5 46/3 52/13
provide [4] 24/21 66/9 67/6 67/10
provided [1] 69/8
provides [1] 49/8
provisions [1] 75/14
proximate [2] 44/12 86/10
public [38] 11/20 11/24 11/24 12/14 12/20 13/6 15/12 16/4 16/5 18/9 19/3 19/6 20/3 20/13 20/17 22/10 22/23 22/24 29/25 34/11 35/17 35/20 38/11 38/11 41/11 42/15 44/8 44/8 45/23 46/13 46/18 48/3 49/4 60/25 85/17 85/18 89/4 89/8
publication [3] 41/10 66/21 66/24
publications [1] 85/11
publicity [1] 81/1
publicly [2] 23/4 86/4
published [12] 16/12 21/2 21/19 23/3 30/25 34/25 37/8 40/16 68/9 84/20 85/15 86/22

**Q**

qualification [8] 50/6 50/9 50/18 50/20 53/25 60/23 67/9 71/18
qualifications [1] 68/18
qualify [2] 27/25 37/25
qualifying [1] 50/16
quarter [1] 57/9
question [18] 6/8 8/16 28/16 29/21 31/3 32/2 36/11 47/22 54/8 56/14 59/5 63/4 63/24 67/21 74/15 77/19 82/22 90/2
questions [7] 17/12 17/17 28/23 31/13 79/8 79/12 90/18
quick [1] 5/22
quickly [3] 17/21 81/1 85/9
quid [30] 11/21 13/12 13/12 14/16 27/6 27/11 27/11 27/13 27/15 29/1 29/3 29/4 29/5 29/6 29/6 29/21 30/3 36/6 36/8 36/9 50/3 50/10 60/7 60/21 70/9 70/23 80/1 84/3 84/7 90/18
quietly [1] 54/6
quite [3] 26/23 88/14 89/9
quo [34] 11/21 12/1 13/12 13/12 14/16 27/6 27/7 27/12 27/13 27/15 27/24 29/1 29/2 29/20 30/3 30/3 30/8 36/6 36/6 36/8 36/9 37/25 40/12 40/22

**R**

publisher [6] 52/4 52/7 83/24 83/11 88/16 88/21
publisher's [1] 49/17
publishes [1] 53/6
pure [7] 41/7 41/8 63/12 64/1 66/13 66/19 89/5
purely [1] 90/20
purple [1] 27/3
purported [1] 73/10
purportedly [2] 16/19 16/23
purposes [1] 11/1
pursue [1] 76/23
pushing [1] 36/23
put [16] 17/6 38/1 38/16 41/25 47/16 55/13 56/11 59/2 69/11 70/4 71/17 81/7 81/14 86/17 89/19 92/9
puts [2] 82/15 82/17

RAAG [1] 1/12
radically [1] 68/6
Rafe [1] 83/15
raises [1] 67/18
ramifying [2] 68/19 68/24
random [1] 13/5
RAPHAEL [1] 2/3
rare [1] 4/11
rarely [2] 92/6 92/6
rational [11] 34/21 35/10 35/25 37/22 37/23 39/7 43/20 70/14 70/18 71/2 90/4
rationality [1] 38/2
re-elected [4] 12/7 12/11 20/13 22/24
re-election [5] 21/15 21/15 29/23 29/24 65/8
reach [4] 29/17 57/17 57/19 57/24
reached [7] 18/11 18/18 21/9 22/15 43/21 81/25 88/17
reaching [1] 9/17
reacting [1] 14/14
reaction [1] 19/18
reactions [3] 14/11 14/12 14/13
read [20] 3/11 12/16 34/12 35/20 38/19 42/13 43/21 46/5 57/7 57/8 57/14 61/10 68/14 72/11 81/22 83/12 85/1 85/2 91/2 91/3
reader [3] 33/5 33/10 41/11
readers [1] 72/24
readership [1] 45/24
reading [3] 4/13 42/12 82/20
ready [1] 6/1
real [5] 5/24 42/25 69/13 80/5 80/6
real-time [2] 80/5 80/6
realized [1] 91/9
really [27] 5/5 5/24 8/9

50/3 50/3 50/16 60/22 70/9 70/23 80/17 80/21 84/3 84/7
quos [2] 29/21 60/7
quotation [1] 20/20
quote [21] 10/7 28/21 33/16 33/21 38/16 41/12 49/12 50/6 51/2 53/9 67/5 67/13 68/19 68/21 72/15 72/22 80/13 80/23 88/7 88/16 89/14
quoted [3] 33/19 51/21 80/10
quotes [1] 70/5

**R**

50/3 50/3 50/16 60/22
31/15 32/2 32/11 36/9 36/9 38/22 39/22 43/23 47/15 47/25 56/14 64/12 69/23 79/19 80/10 80/13 84/22 89/8 90/12 92/21
Realtime [1] 94/3
reason [10] 8/8 10/10 24/24 26/24 38/13 40/14 48/25 72/20 82/22 91/2
reasonable [23] 17/4 31/14 31/16 31/18 31/20 31/21 31/24 31/25 32/13 32/16 32/18 33/5 33/10 34/4 47/22 48/19 59/7 61/15 62/5 62/23 63/15 63/22 90/4
reasoned [1] 48/3
reasons [15] 25/14 26/7 26/16 37/1 40/25 43/20 47/13 49/12 49/13 52/16 55/10 55/12 60/4 73/17 89/12
rebut [2] 8/24 24/18 34/1
rebuttal [6] 5/13 5/15 78/17 79/7
recall [2] 76/13 91/20
recantation [1] 77/13
recanted [2] 58/17 77/4
receives [1] 57/1
receiving [1] 57/10
Recess [1] 79/4
reckless [4] 16/6 16/9 16/10 81/15
record [18] 7/18 9/18 9/20 10/4 17/3 27/2 41/15 41/20 41/21 42/15 44/8 53/21 84/6 85/11 89/14 89/20 90/10 94/4
records [1] 46/19
reelected [1] 20/24
reelection [2] 12/13 12/19
refer [3] 11/23 51/7 70/2
refers [4] 25/6 42/24 43/1 46/23
refined [1] 59/24
reflects [1] 35/8
regard [3] 28/25 91/17 92/24
regarding [2] 3/4 67/3
Regardless [1] 47/5
Registered [1] 94/2
regular [1] 23/22
Reid [1] 49/23
rejected [2] 16/21 53/15 54/3

**R**

rejection [1] 53/8
relate [1] 37/17
related [3] 26/7 30/4 44/21
relating [1] 64/13
relationship [1] 76/16
relevance [2] 51/23 71/15
relevant [10] 10/8 22/15 33/5 71/20 71/20 71/21 75/3 81/4 81/4 81/9
reliance [1] 59/21
relied [1] 68/10
relies [1] 85/23
rely [1] 62/15
relying [1] 67/25
remarkably [1] 79/17
remarked [1] 9/15
remarks [1] 9/22
remember [3] 19/22 40/21 67/19
repeatedly [2] 48/16 49/1
reply [3] 3/8 51/1 73/18
report [20] 30/18 34/12 34/15 34/20 34/22 34/25 35/3 40/17 44/20 46/8 51/8 68/9 68/10 68/14 68/20 68/21 69/1 69/2 69/10 86/24
reported [2] 73/4 84/17
reporter [16] 1/23 1/23 14/6 18/1 27/14 35/1 35/2 35/2 37/11 37/18 40/15 84/14 84/17 84/17 94/2 94/3
reporters [8] 33/6 33/8 40/21 42/16 47/1 62/1 80/2 80/4
reporting [8] 12/18 24/10 24/13 24/16 42/11 42/12 69/5 82/23
reports [3] 31/15 44/6 69/8
represent [4] 6/3 11/6 11/6 46/15
represented [1] 20/16
republic [1] 38/25
Republican [1] 15/6
Republicans [1] 91/20
repudiate [1] 38/4
reputation [15] 7/24 36/23 44/12 45/7 45/18 45/22 57/5 57/25 58/1 58/4 58/6 76/22 77/3 77/12 78/13
reputational [1] 58/8
require [2] 14/6 59/20
required [5] 13/20

24/20 34/1 32/13 60/9
requirement [4] 37/8 52/15 63/20 63/21
requires [1] 59/17
research [2] 91/22 91/23
respect [4] 50/7 58/3 58/11 77/14
respond [3] 73/7 79/9 90/17
responded [2] 27/12 74/13
response [34] 3/7 5/2 6/4 6/18 6/19 7/13 10/15 14/3 14/14 14/17 21/7 22/16 22/18 24/1 24/9 30/9 31/6 36/1 36/3 36/15 37/3 38/3 38/4 42/3 42/9 43/19 48/6 70/3 70/7 70/8 75/18 77/1 80/18 80/22
responses [1] 42/19
responsible [2] 22/13
rest [3] 30/8 78/18 80/21
result [3] 9/17 45/4 45/13
resulted [1] 45/12
results [1] 11/21
resumed [1] 19/12
retirement [1] 45/11
retraction [1] 78/8
reveling [1] 85/19
reversal [1] 39/16
reversed [2] 39/11 39/22
review [5] 59/5 70/18 72/10 72/15 72/23
reviewed [1] 43/14
reviewer [4] 43/13 72/11 72/14 73/1
reviews [2] 73/17 73/22
rewind [1] 48/14
rhetorical [6] 42/20 43/4 43/9 64/16 86/25 87/2
Richard [1] 58/22
ridiculous [1] 61/7
right [45] 3/2 5/9 5/11 8/15 8/18 14/5 15/2 21/19 27/5 31/17 31/25 32/20 33/9 33/19 34/3 34/4 34/17 35/2 37/12 37/19 37/22 39/17 39/18 39/23 40/1 40/17 57/2 58/22 60/23 60/25 62/20 64/2 64/8 64/12 76/10 76/11 80/7 80/22 80/24 82/8 86/13 87/2 89/13 91/6 91/7
Rights [3] 39/25 68/10 68/16

**ringing** [1] 9/2
ripple [1] 56/6
RMR [2] 1/23 94/8
rooms [1] 78/18
Rosetta [1] 3/23
ruined [3] 7/24 45/10 77/9
Ruiz [1] 76/8
rule [7] 4/11 32/3 35/11 35/11 36/1 39/10 92/7
Rule 56 [3] 4/11 32/3 92/7
ruling [3] 9/16 35/16 50/5
run [1] 35/18
runner [1] 33/2
running [3] 29/23 44/25 65/7
running-up [1] 44/25
rush [1] 17/15

**S**

sacred [1] 47/4
Safe [1] 93/21
sales [1] 45/23
sat [2] 11/12 45/19
save [1] 56/20
saw [5] 21/10 24/9 28/15 38/18 55/24
saying [37] 11/14 13/24 14/19 14/23 15/1 15/10 19/1 23/18 27/11 33/3 40/4 49/2 51/4 51/6 52/17 54/20 54/21 55/6 55/15 56/25 60/18 61/11 66/11 69/3 69/25 70/3 71/14 71/16 74/10 82/4 85/21 86/11 88/13 89/24 90/24 91/17 91/20
says [32] 12/11 11/3 16/18 20/1 23/21 30/18 35/21 37/9 40/23 42/6 43/2 46/19 49/5 49/5 50/25 52/12 56/5 59/13 61/8 63/7 65/6 65/6 65/7 66/5 67/13 67/18 77/23 81/22 81/23 82/1 82/21 85/6
scheduling [1] 93/13
scheme [9] 6/23 7/5 7/7 24/25 25/1 25/2 25/5 28/14 54/22
Schiavone [7] 40/13 40/14 40/24 52/11 52/21 62/15 82/15
Schiavonne [1] 88/2
Schiff [1] 32/15
scholars [2] 10/21 38/3
school [2] 28/9 38/14
SCHWEIKERT [3] 1/19 1/19 3/19

**scratcher** [2] 37/6 42/25
screaming [1] 12/10
scrutiny [1] 67/25
seat [2] 11/12 79/5
second [7] 8/7 17/10 19/7 19/25 30/16 43/5 83/24
secondary [2] 68/11 68/11
seconds [2] 71/12 71/12
secret [1] 47/3
section [2] 13/13 58/25
security [1] 13/3
see [11] 3/14 3/17 3/20 4/5 5/3 19/16 22/1 30/4 36/10 61/22 93/2
seen [5] 22/2 52/12 60/13 85/3 87/22
segment [1] 51/17
seized [1] 71/13
selected [4] 18/9 20/16 20/19 81/7
selecting [2] 22/14
selective [1] 62/16
Senate [18] 6/6 6/12 10/10 11/5 18/7 19/23 23/13 25/9 30/14 38/4 41/22 46/25 50/16 63/9 67/2 85/14 89/14 91/11
Senator [4] 6/9 10/15 28/22 46/23
senators [2] 6/13 70/20
sense [3] 18/20 27/8 32/12
sent [3] 7/1 55/4 55/20
sentence [5] 9/22 28/21 28/21 28/25 38/1
separate [1] 30/6
serious [1] 16/11
served [1] 38/12
set [7] 10/16 14/4 66/20 66/23 73/1 75/5 75/13
sets [2] 41/9 73/2
severalfold [1] 26/25
she'll [1] 63/22
shields [1] 43/11
shooting [3] 13/14 64/14 64/15
short [4] 5/24 23/20 43/7 87/5
shortened [1] 17/13
show [30] 18/3 20/16 22/10 23/16 23/18 24/7 39/7 44/11 49/11 52/16 52/18 53/19 54/13 54/21 56/7 56/19 56/20 58/1 58/10 60/3 58/1

74/14 74/21 78/1 78/9 82/11 85/22 86/9 87/8 89/12
showed [6] 31/9 49/1 56/10 76/23 81/3 89/13
showing [8] 10/13 52/5 52/6 60/9 79/24 81/25 88/3 88/17
shown [8] 7/11 17/4 23/24 24/4 43/8 59/7 77/14 89/2
shows [6] 24/5 24/7 42/1 42/3 42/8 58/6
side [4] 3/10 4/13 47/21 78/24
sided [3] 59/14 61/19 67/22
sides [1] 47/20
significant [2] 49/17 51/21
significantly [1] 61/14
similar [3] 13/10 21/21 79/17
simply [11] 34/16 35/9 53/25 55/1 56/13 69/1 69/3 71/14 82/12 85/16 88/19
simultaneously [1] 19/19
SINGHAL [2] 1/2 1/12
single [8] 14/12 15/13 28/14 36/13 70/6 80/20 84/23 86/12
singularly [1] 55/5
sir [2] 32/8 32/10
sit [3] 5/5 87/9 89/13
sitting [2] 6/13 20/10
situation [3] 68/23 68/25 69/7
slam [2] 8/6 42/17
slated [1] 11/4
sleepless [1] 93/15
slide [6] 12/3 13/2 36/10 81/2 81/2 89/2
slipped [2] 27/14 27/14
slipup [1] 27/17
sloppy [4] 72/16 72/18 72/22 73/1
smart [1] 15/1
social [3] 21/3 31/10 56/8
society [1] 13/22
sole [1] 75/18
somebody [1] 13/24
someone's [1] 33/7
somewhat [1] 72/13
soon [1] 23/3
sorry [8] 10/14 12/16 17/22 62/7 75/16 75/17 83/15 92/18
sort [6] 9/10 26/22 30/11 46/10 54/22 91/8
sound [1] 54/3

106

**S**

sources [2] 68/11
68/11
SOUTHERN [2] 1/1
75/24
spaces [1] 47/4
SPAN [1] 82/9
speak [4] 4/6 9/2
17/21 86/1
speaker [9] 16/11
30/18 33/23 35/9 44/7
45/23 67/6 67/14
68/25
speaker's [2] 35/5
70/13
speakers [8] 7/12
15/18 26/14 27/23
33/3 41/3 41/6 87/4
speaking [1] 19/22
specifically [5] 7/2
16/21 41/14 45/17
51/1
spectrum [2] 15/9
84/10
speech [7] 6/15 6/21
9/12 9/14 18/21 35/18
80/9
spend [1] 45/11
spin [1] 25/11
spirit [1] 35/16
spitballing [1] 26/2
spoke [2] 42/12 44/13
spoken [1] 24/15
spontaneously [1]
36/12
sports [1] 72/12
spread [1] 56/8
St [2] 16/8 49/15
St. [1] 49/22
St. Amant [1] 49/22
stage [13] 9/11 9/16
10/3 10/12 10/16 32/6
41/12 41/24 42/19
44/15 79/18 79/22
79/23
Stalin [2] 43/2 64/4
stand [1] 86/7
standard [16] 8/12
8/17 8/22 9/3 9/7
16/17 17/2 28/2 29/16
32/20 32/22 32/23
32/24 35/12 49/15
59/4
standards [1] 55/18
start [10] 3/13 5/1 5/9
10/13 13/5 48/14
49/21 63/4 78/22
78/23
started [1] 62/24
state [3] 8/10 23/4
35/3
stated [8] 21/22 34/18
50/7 53/4 67/4 68/20
77/2 88/15
statement [62] 3/6
15/13 17/9 18/3 19/7

27/1 22/5 22/6 22/9
30/1 35/8 35/10 36/16
37/1 37/17 39/3 40/12
42/22 42/23 42/24
42/25 44/11 49/13
50/3 50/4 50/9 50/15
53/1 53/6 53/10 53/19
54/4 60/21 61/11
62/15 65/1 65/7 65/10
65/11 66/2 66/2 67/16
68/1 70/11 70/19
70/25 71/1 71/17
71/24 72/1 72/17
72/21 80/20 84/15
85/6 87/22 88/4 88/7
88/8 89/3 90/5 91/16
statements [46] 7/21
14/13 15/15 15/19
22/8 22/19 24/12
24/14 25/25 26/20
26/20 26/22 31/6
33/24 35/25 37/21
37/22 41/5 41/19 46/3
46/5 46/6 47/11 48/20
49/1 49/13 49/19
54/11 57/5 60/1 61/18
65/15 66/23 68/12
74/8 77/5 77/10 80/15
82/6 82/11 84/2 85/4
85/16 87/6 89/13
89/19
states [15] 1/1 6/6 6/7
6/8 6/10 6/12 6/14
32/1 35/22 41/23 43/3
46/17 46/17 46/24
67/14
station [2] 57/11
57/23
stations [1] 57/7
statistics [1] 57/13
statues [1] 65/14
status [4] 75/1 75/4
75/20 92/23
statutory [1] 13/19
stay [2] 12/22 15/3
step [1] 67/5
STEWART [1] 2/2
sticking [1] 78/10
stood [1] 46/23
stop [2] 13/7 17/10
stories [1] 23/4
story [7] 5/22 25/7
42/2 42/2 54/23 55/2
61/14
storyline [2] 55/4 55/6
strategist [1] 21/4
streamed [1] 42/4
street [2] 1/17 13/5
stretch [1] 78/18
stricter [1] 35/12
strongest [1] 8/2
strongly [1] 51/22
stuck [1] 9/10
studio [1] 20/14
subjective [6] 16/15
16/16 28/2 32/22

32/23 33/1
108
subjectively [5] 33/3
52/14 52/16 52/18
53/19
submission [2] 59/17
59/20
submissions [1] 3/12
4/14
submit [1] 59/18
subsequent [1] 77/11
successful [1] 26/24
sue [2] 25/15 25/17
sued [1] 44/3
suffer [1] 10/1
suffered [1] 58/7
sufficient [4] 10/25
48/17 59/16 59/19
suggest [4] 9/13
15/22 30/17 55/14
suggesting [2] 61/9
61/10
Suite [2] 1/17 1/20
Sullivan [2] 8/11 16/4
sum [1] 23/24
summaries [1] 45/3
summarize [1] 68/9
summarized [1] 80/11
summary [27] 1/11
3/5 7/18 15/24 16/1
17/2 17/7 18/12 18/22
32/3 32/7 47/14 59/6
59/13 67/20 67/22
70/12 76/7 76/8 79/22
79/23 81/17 83/6 83/7
83/8 83/9 87/25
support [4] 17/3 48/19
59/6 59/9
supportable [2] 43/15
43/19
supposed [8] 31/24
34/5 34/10 39/17
39/24 47/11 68/3
92/15
Supreme [7] 6/10
17/1 34/13 34/19
34/20 35/5 35/14 43/4
49/14 55/11 59/11
67/12 68/5 68/17
68/18 68/20 85/24
sure [5] 3/22 11/10
32/16 57/12 62/18
65/18 74/2 93/14
surprising [1] 85/10
Susie [2] 20/15 81/6
Susie Xu [1] 20/15
swallows [1] 28/6
syntax [1] 69/13
system [2] 3/5 3/9

**T**

take [7] 4/18 62/16
65/22 67/4 88/10 93/8
93/21
taken [5] 60/7 60/8
63/9 64/16 66/23

talk [25] 5/16 8/11
12/1 14/7 15/16 16/2
17/9 25/5 28/13 34/11
35/17 35/23 49/21
50/21 56/7 67/24
70/14 76/17 76/19
79/21 82/3 82/13 83/3
85/9 86/15
talked [7] 10/24 16/8
24/5 26/9 72/3 88/25
89/15
talking [10] 12/4
12/17 25/5 26/10 30/2
44/18 44/19 46/9
46/20 68/6
talks [4] 13/21 42/22
42/23 54/9
taller [1] 5/21
tampering [1] 80/23
task [1] 88/1
technology [1] 21/8
telephone [1] 26/5
television [2] 23/8
23/10
tell [8] 4/10 17/17
20/24 29/12 48/2 68/8
73/10 79/9
telling [2] 21/12 79/10
ten [1] 78/18
tends [2] 52/5 88/17
terms [5] 26/22 61/22
62/23 75/7 92/22
terrible [2] 44/16
83/16
test [4] 31/23 33/10
34/4 74/25
testament [1] 8/22
tested [1] 76/6
testified [45] 7/23
18/11 18/12 18/13
18/17 18/19 18/25
19/14 20/18 20/21
21/7 21/19 22/1 22/14
22/17 22/18 24/14
27/9 27/10 27/24 28/1
28/12 28/14 29/10
29/19 30/21 36/4
36/10 37/24 44/13
44/15 45/9 45/16
45/16 48/24 53/24
54/4 80/2 80/20 80/23
81/5 81/6 84/23 84/25
86/12
testifies [2] 53/9 88/8
testify [2] 36/6 36/7
testifying [2] 27/16
30/7
testimony [5] 44/21
46/2 59/22 59/23
61/19
text [2] 43/21 74/14
thank [21] 4/9 47/15
48/8 77/18 78/15
78/16 78/25 79/2 79/5
87/20 90/1 91/1 92/3
92/4 92/19 93/3 93/7

93/12 93/13 93/22
93/23
Thanks [3] 87/9 87/17
92/16
theme [2] 51/14 52/20
then-president [1] 6/6
thing [23] 13/9 25/22
27/6 27/21 29/1 30/5
36/21 39/20 39/21
39/21 41/15 46/16
54/1 67/13 71/8 73/14
74/10 80/25 83/3 86/6
86/19 88/25 91/19
things [14] 15/17
23/11 28/13 36/5
39/10 39/12 44/16
62/19 63/1 65/5 78/19
89/6 89/21 93/1
think [106]
thinking [3] 28/3 28/4
34/4
thinks [12] 15/11 20/3
20/8 21/14 21/15 27/8
32/20 33/24 38/17
43/22 65/8 80/12
third [4] 21/1 52/10
52/11 57/8
thought [19] 6/24
16/15 20/16 21/20
21/20 22/14 27/13
27/15 29/14 31/18
33/24 35/2 37/11
37/19 38/20 51/16
77/25 79/8 92/18
three [3] 3/24 7/19
7/21 7/25 50/21 57/9
74/14
thrive [1] 35/18
tie [1] 33/1
tied [2] 43/14 43/18
time [26] 3/14 4/8 4/21
5/5 8/13 17/13 21/14
26/24 34/7 34/8 35/19
44/24 45/16 46/11
67/18 67/21 67/25
68/6 68/8 69/7 80/5
80/6 83/4 83/8 84/25
92/22
times [16] 8/10 12/5
12/5 12/15 12/21
28/20 39/21 54/12
57/9 60/15 60/17
72/11 73/19 75/5
89/15 90/10
today [4] 3/4 10/13
20/24 48/17
told [5] 7/2 9/4 70/20
80/11 92/6
Toledano [2] 70/15
83/22
ton [1] 86/14
Toobin [2] 23/12 78/3
top [3] 27/22 42/2
68/16
topic [2] 26/3 27/5
Tornillo [1] 14/9

tort [1] 74/18
totally [5] 19/15 33/20
45/4 45/25 82/16
transactions [2] 51/10
51/19
transcript [2] 1/11
94/4
transfer [1] 5/13
transpired [1] 59/25
travels [1] 93/21
treated [3] 51/13
51/15 51/16
TREMAINE [1] 2/5
trends [1] 56/8
trial [7] 6/7 41/22 42/4
44/3 82/10 92/24
93/19
trials [1] 5/23
tried [2] 41/12 68/9
tries [1] 25/11
troops [1] 36/8
Tropical [1] 9/15
true [8] 15/19 24/15
24/15 26/1 34/19 53/9
66/3 71/24
Trump [7] 11/18 12/10
15/2 20/1 42/1 42/1
46/22
Trump's [2] 12/6 87/1
truncated [1] 55/5
truth [7] 9/5 16/7 33/1
49/12 52/17 68/15
81/15
truthful [2] 25/19 33/9
try [2] 7/4 7/5
trying [13] 22/23 29/9
29/13 29/14 29/15
32/17 36/18 46/18
54/3 69/2 69/9 91/24
93/15
turn [2] 12/3 59/4
turned [4] 11/11 37/12
45/1 70/25
TV [1] 60/13
Tweet [9] 19/23 19/25
19/25 85/12 85/12
85/13 89/1 89/1 89/1
Tweeted [4] 19/19
20/7 21/11 21/12
Tweeting [1] 56/2
Tweets [4] 19/21
54/12 56/2 80/5
twice [1] 23/1
Twitter [3] 11/16 13/1
25/25
two [17] 7/21 8/15
22/9 25/13 37/1 44/20
45/8 46/8 60/20 65/22
71/6 71/7 71/8 74/13
90/12 92/8 93/16
type [4] 43/3 54/9 68/8
69/6
types [2] 43/2 90/14
typical [1] 4/12

U
U.S [1] 1/13
ultimately [1] 32/3
un [1] 43/1
un-American [1] 43/1
unafraid [1] 24/16
unambiguous [1]
36/21
unaware [1] 73/20
unbeknownst [1]
20/14
unbelievably [1]
46/16
undercut [2] 70/18
84/20
undercuts [1] 30/9
underlying [5] 35/1
37/9 41/16 70/18 73/4
undermine [1] 52/5
undermined [1] 88/18
undermines [1] 81/25
understand [16] 8/8
19/10 27/24 28/20
28/24 30/8 33/15
35/21 39/15 55/25
75/21 85/7 86/14
88/25 91/11 92/15
understanding [8]
15/18 18/16 31/2 31/4
34/10 35/17 68/19
91/16
understood [5] 9/8
17/19 20/11 48/5 48/5
undisputed [3] 41/19
42/3 42/8
unethical [1] 65/5
unfair [1] 51/10
unfairly [3] 51/14
51/15 51/16
unimpeachable [2]
12/11 15/12
UNITED [14] 1/6 6/5
6/7 6/8 6/10 6/12 6/13
32/1 35/22 41/23 43/3
46/17 46/17 46/24
unlawful [8] 27/6
27/12 29/2 29/11 30/3
50/3 60/8 60/21
unquestionably [1]
10/5
unusual [3] 46/10
46/12 47/25
upset [1] 86/20
upside [1] 70/25
use [7] 6/22 18/14
29/11 38/14 48/9 58/5
78/18
uses [1] 87/1
Usually [1] 85/25
uttered [2] 15/14 19/7

V
vacations [1] 93/18
variety [3] 51/10 68/11
69/4
various [3] 14/8 45/13

75/13
vast [1] 19/4
venues [1] 45/13
veracity [1] 16/12
verdict [4] 32/6 32/6
32/11 59/10
verifiable [1] 43/16
version [1] 80/11
versus [36] 3/3 8/10
14/9 16/22 34/7 34/8
43/5 43/24 43/25
49/22 49/24 50/24
52/2 53/3 53/4 53/13
53/15 54/6 55/11
59/11 61/19 67/18
67/20 67/21 67/25
68/6 69/7 76/3 82/13
82/14 82/20 82/21
83/4 83/8 83/21 88/5
vetted [1] 59/24
Viacom [1] 49/24
vicarious [2] 73/24
73/25
vicariously [1] 74/19
video [4] 4/23 33/11
50/2 89/2
Videotape [4] 11/9
18/24 28/5 33/18
view [8] 22/24 38/5
48/18 49/7 53/14 68/1
74/22 75/14
viewed [1] 31/14
viewer [1] 28/19
viewers [2] 57/9 57/11
views [5] 12/13 12/19
48/23 63/19 67/3
Virginia [1] 44/22
virtually [2] 49/8 75/2
virtue [2] 51/5 55/15
voice [2] 18/23 78/9
voted [1] 51/19

W
walk [1] 13/4
Walsh [1] 15/6
want [24] 3/20 4/19
5/6 5/16 9/23 17/13
17/16 17/17 24/23
33/6 33/8 42/6 47/18
50/21 59/4 63/16 72/3
74/1 78/17 82/3 82/13
83/3 86/19 92/11
wanted [14] 4/20
37/25 46/19 46/20
46/21 46/21 46/22
46/22 51/25 61/6 61/6
79/8 80/25 88/24
wants [3] 4/7 20/5
64/19
warmer [1] 93/6
wash [1] 78/6
Washington [4] 1/18
12/12 12/16 12/18
watch [3] 42/6 57/7
62/19
watched [7] 7/12

18/6 18/17 19/1
19/15 21/7 71/9
watching [3] 12/25
19/17 19/19
water [1] 86/16
way [46] 4/24 6/17
8/21 12/9 23/2 23/20
24/16 27/4 27/7 29/2
29/7 29/7 30/3 31/11
32/3 32/9 32/12 33/5
34/14 38/18 38/19
39/10 39/11 39/22
40/1 40/22 42/13
43/11 45/10 45/14
48/20 49/23 51/25
60/12 61/22 65/6 67/4
71/7 73/5 73/8 73/22
76/4 76/13 78/7 81/6
85/5
ways [4] 10/24 14/8
30/7 90/12
we've [3] 41/17 58/15
85/22
weakest [1] 8/2
web [2] 18/3 21/2
web-based [1] 18/3
website [1] 82/10
weighed [2] 49/9 60/1
weighing [4] 81/12
81/12 81/16 85/20
weird [2] 29/7 38/23
well [40] 3/7 3/21 4/4
20/21 28/9 32/19 34/6
37/14 37/16 39/16
46/24 47/16 47/20
47/21 47/22 48/9
51/14 53/21 55/22
55/23 56/18 57/12
58/19 59/12 59/24
59/25 65/2 65/9 66/6
71/3 71/10 72/6 73/9
76/7 77/11 78/4 79/16
87/18 89/5 90/21
went [11] 4/14 25/9
28/9 29/22 59/15
60/10 68/23 74/21
76/17 91/9 91/10
when I [1] 27/10
White [1] 14/19
widespread [3] 24/10
24/12 42/9
wife [1] 46/19
wildly [1] 30/17
willfully [1] 30/10
WILLIAMS [26] 1/16
1/17 3/16 3/23 5/20
48/13 75/10 79/17
79/19 79/21 80/3
80/15 81/11 81/20
82/4 82/14 82/15 83/4
83/21 84/1 84/4 85/23
86/14 86/20 87/19
92/25
Williams' [1] 80/9
willingly [1] 6/11
win [6] 8/18 34/6 34/9

41/3 45/16 46/18
winding [1] 84/12
window [1] 65/13
wish [2] 87/17 93/20
witness [7] 9/4 28/14
30/21 80/20 80/23
81/5 86/12
witnessed [1] 60/12
witnesses [9] 48/24
49/2 59/22 61/18 70/1
71/9 77/5 77/11 89/21
Wolf [4] 23/8 23/12
23/18 77/22
Wolf Blitzer [1] 23/12
woman [3] 18/5 45/5
45/19
wonderful [1] 8/22
word [5] 6/22 36/13
59/8 70/6 70/7
words [12] 10/3 14/4
18/14 29/11 33/11
42/10 69/12 74/17
87/1 87/2 87/3 87/3
work [6] 4/14 43/14
43/15 45/4 47/11 75/5
92/9 92/21
working [1] 22/3
works [2] 5/3 40/2
world [3] 13/18 40/24
45/2
worried [2] 17/23
17/23
worry [1] 5/25
worst [1] 26/13
worth [1] 33/14
wrap [1] 78/24
WRIGHT [1] 2/5
write [3] 10/19 21/11
50/25
writer [1] 67/6
writing [1] 45/23
written [4] 6/8 25/7
36/12 45/1
wrong [20] 13/3 14/24
23/19 33/16 34/2 34/6
34/17 34/18 37/3 37/6
37/12 37/20 37/24
39/24 40/19 43/22
58/24 73/18 80/5
83/18
wrote [5] 21/18 21/24
38/3 54/19 91/8

X
XIV [2] 15/2 15/8
Xu [2] 20/15 81/6

Y
yeah [2] 44/4 65/11
year [6] 8/14 44/20
44/25 44/25 49/21
77/10
years [4] 16/8 44/20
45/6 46/8
YOAKLEY [1] 2/2
York [10] 2/6 2/6 8/10

**Y**

**York... [7]** 12/5 12/5
12/15 12/21 39/20
72/11 93/4
**Yorker [1]** 17/21

**Z**

**Zambrano [2]** 66/18
66/19
**Zoom [1]** 4/18
**Zucker [3]** 26/6 55/7
55/15