UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-61872-CIV-SINGHAL/HUNT

ALAN DERSHOWITZ,

      Plaintiff,

v.

CABLE NEWS NETWORK, INC.,

      Defendant.

_____/

**<u>ORDER</u>**

**THIS CAUSE** is before the Court on Defendant Cable News Network, Inc.'s Motion for Summary Judgment (DE [213]).  The matter is fully briefed, and the Court has heard argument of counsel.  For the reasons discussed below, the Motion for Summary Judgment is granted.

I.    <u>INTRODUCTION</u>

Plaintiff, Alan Dershowitz ("Dershowitz"), is a practicing criminal defense lawyer and professor emeritus at Harvard Law School. (DE [253]) ¶¶ 1, 3).  In January 2020, Dershowitz represented then-President Donald J. Trump ("Trump") in impeachment proceedings before the United States Senate. *Id.* ¶ 20, 22.  Defendant, Cable News Network, Inc. ("CNN") owns and operates news platforms, including the television network CNN and the website CNN.com. *Id.* ¶ 2.

Dershowitz has sued CNN for defamation arising from reporting and commentary by CNN commentators on remarks Dershowitz made while testifying before the Senate during his representation of Trump.  (DE [66]). Jurisdiction is based upon diversity of citizenship and Florida law governs. 28 U.S.C. § 1332(a). (DE [1]).  CNN moves for summary judgment.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Pursuant to Fed. R. Civ. P. 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[1] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof.  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014).  However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to

---

[1] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

     B.    <u>Defamation</u>

The parties agree that Florida law applies to this dispute. In Florida, a defamation claim has "five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official…; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). A claim of defamation also requires a false statement of fact. *Id.* Statements of pure opinion are not actionable. *Zambrano v. Devanesan,* 484 So. 2d 603, 606 (Fla. 4th DCA 1986). "The distinction between fact and opinion is not always easy to perceive." *Id.* "Thus, the law recognizes that some comments may be pure expressions of opinion whereas others may be mixed expressions of opinion." *Id.*

A mixed opinion is one "based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication." *LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon-ANF, Inc.,* 842 So. 2d 881, 885 (Fla. 4th DCA 2003). "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18-19 (1990).

Whether a challenged statement is one of fact or opinion is a question of law to be decided by the court. *Turner v. Wells,* 879 F.3d 1254, 1262 (11th Cir. 2018). "In assessing

whether an allegedly libelous statement is opinion, the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication." *Rasmussen*, 946 So. 2d at 571 (citing *Hay v. Indep. Newspapers, Inc.,* 450 So. 2d 293, 295 (Fla. 2d DCA 1984)).

III.    UNDISPUTED FACTS

Trump's impeachment trial began on January 22, 2020. (DE [253] ¶ 22).  The impeachment from the House of Representatives charged abuse of power and obstruction of Congress, arising from allegations that Trump withheld military funds from Ukraine to coerce Ukraine's president to investigate Joe Biden, Trump's political rival. *Id.* ¶ 19. CNN aired and live-streamed the trial in its entirety. *Id.* ¶ 23.  The impeachment trial was covered by news media from around the world. *Id.* ¶ 24.

Dershowitz spoke at the impeachment trial on January 27 and 29, 2020. *Id.* ¶¶ 26, 28.  During his second appearance, at approximately 2:10 p.m. EST, Senator Ted Cruz asked Dershowitz, "As a matter of law, does it matter if there was a *quid pro quo*? Is it true that *quid pro quos* are often used in foreign policy?" *Id.* ¶ 30.  Dershowitz responded as follows:

> Yesterday, I had the privilege of attending the rolling-out of a peace plan by the President of the United States regarding the Israel-Palestine conflict, and I offered you a hypothetical the other day: What if a Democratic President were to be elected and Congress were to authorize much money to either Israel or the Palestinians and the Democratic President were to say to Israel, "No; I am going to withhold this money unless you stop all settlement growth" or to the Palestinians, "I will withhold the money Congress authorized to you unless you stop paying terrorists, and the President said, "Quid pro quo. If you don't do it, you don't get the money. If you do it, you get the money"? There is no one in this Chamber who would regard that as in any way unlawful. The only thing that would make a quid pro quo unlawful is if the quo were some way illegal.[2]

---
[2] Dershowitz complains CNN omitted this sentence (referred to herein as the "Illegal Quo Line") from its clips and commentary.

Now, we talked about motive. There are three possible motives that a political figure can have: One, a motive in the public interest, and the Israel argument would be in the public interest; the second is in his own political interest; and the third, which hasn't been mentioned, would be in his own financial interest, his own pure financial interest, just putting money in the bank. I want to focus on the second one for just one moment.

Every public official whom I know believes that his election is in the public interest. Mostly, you are right. Your election is in the public interest. If a President does something which he believes will help him get elected—in the public interest—that cannot be the kind of quid pro quo that results in impeachment.[3]

I quoted President Lincoln, when President Lincoln told General Sherman to let the troops go to Indiana so that they could vote for the Republican Party. Let's assume the President was running at that point and it was in his electoral interests to have these soldiers put at risk the lives of many, many other soldiers who would be left without their company. Would that be an unlawful quid pro quo? No, because the President, A, believed it was in the national interest, but B, he believed that his own election was essential to victory in the Civil War. Every President believes that. That is why it is so dangerous to try to psychoanalyze the President, to try to get into the intricacies of the human mind.

Everybody has mixed motives, and for there to be a constitutional impeachment based on mixed motives would permit almost any President to be impeached. Now, we may argue that it is not in the national interest for a particular President to get reelected or for a particular Senator or Member of Congress—and maybe we are right; it is not in the national interest for everybody who is running to be elected—but for it to be impeachable, you would have to discern that he or she made a decision solely on the basis of, as the House managers put it, corrupt motives, and it cannot be a corrupt motive if you have a mixed motive that partially involves the national interest, partially involves electoral, and does not involve personal pecuniary interest.[4]

But a complex middle case is: I want to be elected. I think I am a great President. I think I am the greatest President there ever was, and if I am not elected, the national interest will suffer greatly. That cannot be an impeachable offense.[5]

---

3 This paragraph contains what is referred to as the "Quid Pro Quo Argument."
4 This paragraph contains what is referred to as the "Sole Corrupt Motive Argument."
5 The last argument is referred to as the "Greatest President Argument."

(DE [217], Ex. 12). The words "impeachable offense" were not included in the transcript in the Congressional Record, but the video recording of Plaintiff's answer clearly contains those words.[6] *Id.* Ex. 13.

Reaction to Dershowitz' comments appeared almost instantaneously online. At 2:15 p.m., the *Washington Post* live-blog coverage included a summary entitled "Dershowitz argues that a president is immune if he views his reelection as in the public interest." (DE [219], Ex. 51). Within minutes[7], multiple Twitter users honed in on the comment "[i] If a President does something which he believes will help him get elected—in the public interest—that cannot be the kind of quid pro quo that results in impeachment" with derision and ridicule. (DE [219], Ex. 57).

CNN's account of Dershowitz' testimony began at 2:36 p.m., when reporter Nikki Carvajal submitted a report titled, "Dershowitz argues that reelection of any politician is in the public interest, therefor as a motivation can't be impeachable[.]" (DE [253], p. 25). The headline was revised a few minutes later to read "Alan Dershowitz argues presidential quid pro quos aimed at reelection are not impeachable." *Id.* This account (the *"CNN News Account"*) was posted on CNN.com and was widely disseminated internally to CNN producers and on-air personalities. *Id.*

---

[6] Dershowitz disputes that the words "an impeachable offense" are clear on the video. The Court has reviewed the video and agrees with CNN that Dershowitz ended his statement with those words.

[7] For example, at 2:14 PM, Josh Rogin tweeted, "Dershowitz just argues that if Trump believed doing something corrupt was in the public interest because it would get him reelected, that makes it not corrupt." At 2:18 PM, Robert Draper tweeted, "By Dershowitz's logic, Nixon could not be impeached for instigating a cover-up of the Watergate burglary, since in Nixon's view that public stood to benefit from his re-election (by any means necessary)." At 2:23 PM, Mo Elleithee tweeted similarly: "Using Dershowitz's logic, couldn't Nixon have justified that both the break-in and the cover-up of Watergate (which were both purely for his political interest) as 'in the national interest' and therefore not impeachable?" At 2:29, Garry Kasparov tweeted, "Wow, Dershowitz is actually making the King Louis XIV argument right now! Trump is good for the country, so anything he does to stay in power is the national interest, even if corrupt or illegal. That's the language of every king & dictator: I am the end and the means justify me." (DE [219] Ex. 57). Similar comments by others were posted after CNN's first report was made.

Throughout the course of the evening of January 29, 2020, and the next morning,

CNN broadcast and posted the accounts complained of by Dershowitz:

> "Having worked on about a dozen campaigns, there is always the sense that, boy, if we win, it's better for the country. But that doesn't give you license to commit crimes or to do things that are unethical. So, it was absurd. What I thought when I was watching it was this is un-American. This is what you hear from Stalin. This is what you hear from Mussolini, what you hear from authoritarians, from Hitler, from all the authoritarian people who rationalized, in some cases genocide, based what was in the public interest." – Joe Lockhart @ 7:11 p.m., January 29, 2020.

****

> "The President's defense team [Dershowitz] seems to be redefining the powers of the President, redefining them towards infinity. . . . If you look at what he says there it blows your mind. He says if a President is running for re-election because he thinks getting elected will help America, he can do anything, anything. And that redefines the presidency and America." – John Berman @ 6:17 a.m., January 30, 2020.

****

> "I did not go to Harvard Law, but I did go to the University of Texas School of Law, where I studied criminal law and constitutional law, but never dreamed a legendary legal mind would set them both ablaze on the Senate floor. The Dershowitz Doctrine would make presidents immune from every criminal act, so long as they could plausibly claim they did it to boost their re-election effort. Campaign finance laws: out the window. Bribery statutes: gone. Extortion: no more. This is Donald Trump's fondest figurative dream: to be able to shoot someone on Fifth Avenue and get away with it." Paul Begala on CNN.COM, January 29, 2020 @ 9:11 p.m.

***

> Anderson Cooper: I want to play what he said…. He is essentially saying any politician, because it is so important that they get elected … that they decide it's really important for everybody that they are elected, they can do essentially whatever they want in order to get elected because it's somehow in the public interest. Then Anne Milgram says: This view of the executive, the executive power that

Dershowitz basically announced today would make the President a king, it would put the President beyond the rule of law … and you and I are talking about a quid pro quo here of exchanging, withholding military aid but we could think of a lot of other things that there's no version you know, could you kill your opponent? Could you, you know, leak dirt on someone? There's countless … there's no limit to basically how badly behaved people could be and they can actually commit crimes which we know, you know, Dershowitz is essentially saying it doesn't matter what the quid pro quo is as long as you think you should be elected. (DE [66]).

Dershowitz complained about CNN's coverage and commentary on Twitter. (DE [253] ¶ 99. On January 30, 2020, Dershowitz appeared on CNN with Wolf Blitzer. (DE [219] Ex. 17). The next day he appeared on CNN again, this time with Chris Cuomo. On both shows he was interviewed about and discussed his response to Senator Cruz' question. *Id.*, Ex. 20, 21.  On Chris Cuomo's show, Dershowitz was asked whether it is his "position that a president can do whatever they want to secure their reelection as long as they think it is in the good of the people?" Dershowitz responded, "Chris, you know that's not my position…. I never said that. I never implied it. I never suggested it. CNN, MSNBC and many other networks deliberately and willfully distorted my words." *Id.,* Ex. 20, p. 10.

IV.   DISCUSSION

Dershowitz complains that he prefaced his remarks to the Senate by saying "[t]he only thing that would make a quid pro quo unlawful is if the quo were some way illegal," but the edited clips omitted that qualification. (DE [66] ¶ 18). Dershowitz argues that CNN's decision to omit the phrase, "the only thing that would make a quid pro quo unlawful is if the quo were somehow illegal," was done "intentionally and deliberately with knowledge and malice to facilitate its ability to falsely claim that plaintiff said the opposite of what he actually said." *Id.* ¶ 18. He contends that CNN "set in motion a deliberate

scheme to defraud its own audience … at the expense of [his] reputation." *Id.* ¶ 11. Dershowitz alleges that if the entire clip had been played, no panel guest would have been able to credibly make the statements they did. *Id.* ¶ 9.

CNN moves for summary judgment on the grounds that (1) Dershowitz cannot prove that CNN acted with actual malice; (2) the published statements were non-actionable expressions of pure opinion; and (3) Dershowitz cannot prove damages. Because Dershowitz is a public figure, he must establish by clear and convincing evidence that CNN acted with actual malice. *Turner,* 879 F.3d at 1273; *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974). "This is a subjective test, focusing on whether the defendant 'actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false.'" *Turner,* 879 F.3d at 1273 (quoting *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 702-03 (11th Cir. 2016) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 280 (1964))). In cases such as this that involve "the area of tension between" the First Amendment and state defamation law," the question is whether the evidence in the record could "constitutionally support a judgment for the plaintiff." *Time, Inc. v. Pape,* 401 U.S. 279, 284 (1971). For the reasons that follow, the evidence before the Court—while establishing foolishness, apathy, and an inability to string together a series of common legal principles—does not establish actual malice under the *Sullivan* standard.

This record contains no proof that any of CNN's commentators or producers either entertained "serious doubts as to the veracity" of the reports or were "highly aware that the account was probably false." Rather, CNN has produced undisputed evidence that each of the challenged publications were individually edited and produced; there was no scheme to "falsely paint Dershowitz as a constitutional scholar and intellectual who had

lost his mind." (DE [66] ¶ 8). The producers and hosts responsible for each of the four clips at issue all testified that they considered Dershowitz' comments newsworthy; they did not consider the Illegal Quo Line as a qualification or alteration of the Public Interest Argument; and they believed the clips as presented were fair and accurate. *See* (DE [214]) ¶¶ 41-49; 59-67; 74-81; 82-91). Dershowitz has not produced any evidence to contradict this.

Dershowitz disputes the credibility of the witness' testimony as "scripted and self-serving."   This is not a proper factual or legal response to an asserted statement of undisputed fact.  As the non-moving party, Dershowitz must present evidence from which a jury could reasonably rule in his favor. Simply stating the evidence is "scripted and self-serving" does not meet that burden.

Dershowitz argues that a jury could reasonably rule in his favor because CNN had notice of Dershowitz' actual views on impeachment but failed to include them.  Two days earlier, on January 27, 2020, Dershowitz told the Senate that "a crime or crime-like conduct is necessary for impeachment."   But when Dershowitz spoke on January 29, 2020, he did not qualify his statements with what he said two days earlier;[8] CNN's failure to add a two-day old qualification is not evidence that would show actual malice.  To the contrary, the evidence shows that CNN's decisionmakers considered Dershowitz' January 29 Corrupt Motive and Greatest President arguments to be new and newsworthy arguments against impeachment.   There is no evidence that would contradict that conclusion.

As CNN aptly argued during the hearing on this case, there is no requirement under the First Amendment for a reporter to talk about everything Dershowitz has ever

---

[8] CNN argues that Dershowitz "never said a crime was *always* impeachable." (DE [263], p. 16).

said about impeachment or even all the various ways one can be impeached. *See Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974) (overturning a Florida statutory requirement of a right of reply by criticized persons).  Thus, CNN's subjective view of Dershowitz' January 29 statements as new and newsworthy and different from his January 27 statements is what matters under the *Sullivan* standard.  *Sullivan* was decided in 1964 when Justice Brennan created the actual malice standard, and is a great example of how bad facts can contribute to the making of unnecessary law, and why judges and Justices should not be in the business of policy writing.

Policy-based judicial opinions have had a twisted history in American jurisprudence.  Some rulings are just ridiculously bad despite what common sense demands and what the author may have thought. *See Dred Scott v. Sanford*, 60 U.S. 393 (1857).  Other decisions cause deep-rooted political and emotional turmoil by creating a "Constitutional right" that others then believe in, that isn't anywhere in the U.S. Constitution.  *See Roe v. Wade*, 410 U.S. 113 (1973).  And in the case of *New York Times v. Sullivan*, the United States Supreme Court's holding—while laudable in a different era—that the First Amendment requires public figures to establish actual malice simply has no basis in and "no relation to the text, history or structure of the Constitution, and it baldly constitutionalized an area of law refined over centuries of common law adjudication." *Tah v. Global Witness Publishing, Inc*., 991 F.3d 231, 251 (D.C. Cir. 2021) (Silberman, J. dissenting).  But when judges write policy, the people expect them to keep doing so.  And when times change and media delivery and access changes like it has over the past 60 years, the people wrongly look to the courts and not the legislature to fix what the courts themselves created.  For this reason, these policy-based decisions are best left to the legislative branch, which is elected by the will of the people, and not to an

un-elected judge who may be King or Queen for a day (or a lifetime).  As many judges have previously noted, judicially created "doctrines" are typically cut from whole cloth. *Id.*

In *Sullivan*, an advertisement containing false information was published in the New York Times.  In total the circulation of the paper in the entire state of Alabama—where the concerned parties' alleged injury occurred—was *394* copies.  The Alabama court after a jury trial awarded the plaintiff $500,000[9] in damages.  Perhaps had the trial court carefully addressed the damages issue, *Sullivan* never would have been written.  Instead, any tension between the First Amendment (freedom of speech) and the Seventh Amendment (right to jury trial) was put to rest in the public figure defamation context.  The *Sullivan* case, decided at a time when people got their news from Walter Cronkite or David Brinkley as opposed to Twitter, is the law of the land and this Court is duty bound to follow it.[10]

It is understandable why Dershowitz brings this case.  Once Dershowitz responded to Senator Cruz' question, reporters and commentators from around the globe ran with his answer in today's "race to publish" world and spoke about his January 29 comments without contextualizing the comments with what had been said on January 27, and without any reference to impeachment law.  And again, they were not required by law to do so.  Yet, Paul Begala (after curiously stating that he went to law school) said the "Dershowitz Doctrine would make Presidents immune from every criminal act."  Of course, Dershowitz said nothing of the kind, there is no Dershowitz Doctrine, and as most law students know, reading a brief doesn't tell you about the whole case.  Joe Lockhart

---

[9] In today's dollars, the judgment in *Sullivan* would exceed $4.7 million. Federal Reserve Bank of Minneapolis, INFLATION CALCULATOR, (April 4, 2023, 2:05 p.m., https://www.minneapolisfed.org/abuot-us/monetary-policy/inflation-calculator.

[10] For an excellent discussion on *Sullivan*, albeit one written nearly forty years ago, one need only look to Richard A. Epstein, "Was New York Times v. Sullivan Wrong?" 53 University of Chicago Law Review 782 (1986).

said Dershowitz okayed "commit[ting] crimes."  John Berman said Dershowitz advocated that a President could "do anything, anything."   Anderson Cooper reported that Dershowitz said "they can actually commit crimes."  All this in the context of an answer to Senator Cruz' question, but none of it as the be all and end all on impeachment law analysis.  Not one commentator reflected on whether Dershowitz' January 27 arguments or the law on impeachment regarding high crimes and misdemeanors[11] would invalidate any of their commentary.

And as Alexander Hamilton famously noted 235 years ago when discussing the concept of impeachment:

> The subjects of its jurisdiction are those offenses which proceed from the misconduct of public men, or, in other words, from the abuse or violation of some public trust.  They are of a nature which may with peculiar propriety be denominated POLITICAL, as they relate chiefly to injuries done immediately to the society itself.

THE FEDERALIST No. 65 (Alexander Hamilton).[12] (emphasis in the original). This too was not something CNN or any other network was required to report, and, indeed, it appears was not something considered.  For Dershowitz' part, it was not responsive to Senator Cruz' specific quid pro quo question, so he didn't mention it either.  But *Sullivan* and its progeny allows the news media to ignore a fuller context because there is no record evidence of actual malice.  Dershowitz tries to identify actual malice through the text of his comments; he argues that on January 29 he "repeated his view that a quid pro quo arrangement with a foreign leader was impeachable if it involved unlawful, illegal or corrupt – in other words – criminal conduct," and that was enough for CNN and its commentators to doubt the veracity of their comments. (DE [252] p. 10).  But the transcript

---

[11] U.S. Constitution Art. II, Sec. 4.
[12] The Court prefers the edition of THE FEDERALIST edited by Professor Benjamin F. Wright (Barnes & Noble ed., 2004).  What an additional irony it would be if Professor Wright while at University of Texas Law School actually taught Begala's Constitutional Law class.

and video of Dershowitz' response does not include this statement, nor does it tie any such qualification to a quid pro quo done to protect the president's own political interest. Indeed, Dershowitz specifically focused *only* on the president's own political interest scenario:

> Now, we talked about motive. There are three possible motives that a political figure can have: One, a motive in the public interest, and the Israel argument would be in the public interest; the second is in his own political interest; and the third, which hasn't been mentioned, would be in his own financial interest, his own pure financial interest, just putting money in the bank. *I want to focus on the second one for just one moment.*
>
> *Every public official whom I know believes that his election is in the public interest.* Mostly, you are right. Your election is in the public interest. If a President does something which he believes will help him get elected—in the public interest—that cannot be the kind of quid pro quo that results in impeachment. (DE [217] Ex. 12) (emphasis added).

Dershowitz focused on the political interest motive; CNN's commentators did too.  The text of Dershowitz' January 29 statement does not support a finding that CNN acted with actual malice.

Dershowitz contends that CNN's reporting of his Senate comments violated the Society of Professional Journalists Code of Ethics, which he claims calls for journalism to be accurate and fair, provide context, and should not oversimplify or distort facts or context. (DE [253] Ex. 28).  In support, Dershowitz submitted an unauthenticated documented entitled "SPJ Code of Ethics."  He cites *Murphy v. Boston Herald, Inc.,* 865 N.E.2d 746, 765-66 (Mass. 2007) for support for his argument that evidence of breach of the Code can be considered in determining whether CNN acted with actual malice.  He also notes that this Court has already determined that CNN's account was not accurate and fair.

The Court need not consider the Code of Ethics in this case.  First, unlike the plaintiff in *Murphy,* Dershowitz has not presented expert testimony to explain how CNN's conduct fell below the standard of care for journalists.  Neither Dershowitz nor this Court is qualified to opine on journalistic ethics.  Second, the Code of Ethics itself specifically states that "[i]t is not, nor can it be under the First Amendment, legally enforceable." (DE [253] Ex. 28). *See Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 666 (1989) ("public figure libel cases are controlled by the *New York Times* standard and not by the professional standards rule").  Third, the Court's Order (DE [28]) on CNN's Motion to Dismiss held that Florida's fair report privilege did not apply.  The fair report privilege doctrine is a defense to defamation; it does not establish actual malice (but it is a doctrine).  This Court never held that CNN's broadcasts violated professional standards. The Code of Ethics has no evidentiary value on the issue of actual malice.

Next Dershowitz argues that CNN had a "preexisting story line" in its "News Account" that would support a finding of actual malice. Evidence of a "story line" can show actual malice where "a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story." *Harris v. City of Seattle,* 152 Fed. Appx. 565, 568 (9th Cir. 2005) (quoting RODNEY A. SMOLLA, 1 LAW OF DEFAMATION § 3:67 (2005)).

The evidence in the record does not support a conclusion that CNN ran a "story line" that would establish actual malice.  There was nothing "created" to fulfill a preconceived narrative; Dershowitz' statement was played in full and then subjected to independently developed commentary throughout the day and following morning.  CNN producers identified the "angle" of the days' story to be the political interest motive for a quid pro quo (DE [253] ¶¶ 8-24).  The producers and the on-air personalities involved in

the disputed comments independently identified the political interest motive as new and newsworthy. (DE [214] ¶¶ 42-76).  Nothing in the "angle" or the "News Account" gives rise to the conclusion that any of the speakers had reason to doubt the veracity of their statements.  Dershowitz has not complained that the initial "News Account" was defamatory and, further, not all the decisionmakers or speakers (including Lockhart, Milgram, and Harman) were included on the distribution. (DE [264]).  Even considering the evidence in the light most favorable to Dershowitz, there was no issue of fact arising from the creation of a "story line" from which actual malice could be inferred.

Dershowitz cites an email between John Berman and his producer as evidence of actual malice.  It is not.  First, Dershowitz' claim that Berman cites a "made up quotation" is patently false.  The words -- "I want to be elected. I think I am a great President. I think I am the greatest President there ever was, and if I am not elected, the national interest will suffer greatly. That cannot be an impeachable offense" – were included in Berman's email to a producer. (DE [253] Ex. 22).  Dershowitz claims it was "made up" but this quotation accurately reports Dershowitz' closing words to the Senate. (DE [217] Ex. 13).  It is not a "made up quotation." Second, the subject line of the e-mail – "Dersh-o-nuts…need this for all panels" – establishes foolishness but does not support a finding of constitutional actual malice.  Personal animosity does not establish actual malice. *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1198 (11th Cir. 1999) ("ill-will, improper motive, or personal animosity plays no role in determining whether a defendant acted with actual malice").  Additionally, Berman testified that he was characterizing Dershowitz' argument and he did not bear any ill will towards Dershowitz. (DE [216] Ex. 6, pp. 154-157).  Berman's email does not support a finding of actual malice.

Finally, Dershowitz argues that Paul Begala *admitted* that his statements about the Dershowitz Doctrine were false.  In his post on CNN.com, Begala stated:

> The Dershowitz Doctrine would make Presidents immune from every criminal act, so long as they could plausibly claim they did it to boost their reelection effort. Campaign finance laws: Out the window. Bribery statutes: Gone. Extortion: No more. This is Donald Trump's fondest dream, to literally be able to shoot someone on Fifth Avenue and get away with it.

Dershowitz claims that Begala stated in deposition that, "He [Dershowitz] didn't say anything like that" and, therefore, Begala presented known falsity.  But Begala's *actual* answer explained: "I'm not quoting Professor Dershowitz. He didn't say anything like that, but what I'm saying is the argument he [laid] out will be abused to justify all manner of things by politicians seeking their reelection. I don't say Dershowitz says this. I say this is a doctrine that would do this. I think it's an important distinction." (DE [216] Ex. 5 pp. 105-06).  The irony that Begala is the first person to "abuse" the doctrine *he* created but labeled with Dershowitz' name is not lost on this Court, but Dershowitz is clearly wrong in stating that Begala admitted speaking falsely.  This is not evidence of actual malice.

It is undisputed that Dershowitz' statements were thoroughly newsworthy.  Speech on the floor of the United States Senate during a president's impeachment trial ranks near the top of the scale of political speech.  In this "information age" of instant communication, immediate and intense analysis is sure to follow any such speech.  And it did.  Begala issued comments over social media from an airplane!  The record shows that mainstream media outlets, foreign media outlets, and private social media users highlighted and commented upon Dershowitz' arguments. (DE [219], Ex. 50, 51, 54, 55, 56, 57, 77, 78).

Dershowitz complains that he was defamed by the way CNN covered his arguments.  The blurring of the distinction between "news" and "commentary" fosters sympathy for Dershowitz' position.  Dershowitz's Complaint raised important issues and

this Court determined at the motion to dismiss stage that Dershowitz should have the opportunity to develop evidence that would show that CNN's reporting met the *New York Times v. Sullivan* standard of actual malice.  After full discovery, extensive briefing, and oral argument, the Court concludes that he has not. Accordingly, it is hereby

**ORDERED   AND   ADJUDGED**   that   CNN's   Motion   for   Summary Judgment   (DE [213]) is **GRANTED**. Pursuant to Fed. R. Civ. P. 58, a separate final judgment will be entered.  The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 4th day of April 2023.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF